**No. 12-7135**

───────────────────────────────────

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

─────────────────────────

**AF HOLDINGS, LLC,**

*Plaintiff-Appellee,*

v.

**DOES 1 – 1,058,**

*Defendants*,

and

**COX COMMUNICATIONS, INC.,** *et al.,*

*Appellants.*

─────────────────────────

From an Order by the U.S. District Court for the District of Columbia
The Honorable Beryl A. Howell, Judge Presiding
(Case No. 1:12-cv-00048-BAH)

─────────────────────────────────────

**APPELLANTS' JOINT OPENING BRIEF**

**(Appendix and Request for Judicial Notice Filed Separately)**

─────────────────────────────────────

Deanne E. Maynard
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, D.C.  20006-1888
Telephone:  202.887.1500
DMaynard@mofo.com

Benjamin J. Fox
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, California  90017-3543
Telephone:  213.892.5200
BFox@mofo.com

For Bright House Networks, LLC, Cox Communications, Inc. and Verizon Online LLC
(Additional Appellants and Counsel Listed on Inside Page)

### *Additional Appellants and Counsel*

Bart W. Huffman
LOCKE LORD LLP
100 Congress Avenue, Suite 300
Austin, Texas  78701
Telephone:  (512) 305-4746
Facsimile:  (512) 391-4741
BHuffman@lockelord.com

Hugh S. Balsam
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 443-0403
Facsimile:  (312) 896-6403
HBalsam@lockelord.com

Attorneys for Appellant SBC Internet Services, LLC,
d/b/a AT&T Internet Services


John D. Seiver
Ronald G. London
Leslie G. Moylan
Lisa B. Zycherman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
Telephone:  (202) 973-4200
johnseiver@dwt.com

Attorneys for Appellant Comcast Cable Communications Management, LLC

## CERTIFICATE OF PARTIES, AMICI AND RELATED CASES

**A.      Parties.**  Pursuant to Circuit Rule 5(a), the following persons or entities have appeared in the district court or are appearing in this Court:

*Plaintiff / Respondent*:  AF Holdings, LLC.

*Defendants*:  Does 1-1,058 (none of whom have appeared).

*Appellants*:  Bright House Networks, LLC; Cox Communications, Inc.; Verizon Online LLC; SBC Internet Services, LLC, d/b/a AT&T Internet Services; Comcast Cable Communications, LLC.

*Other Interested Parties*:  Andrew Fignar, Jr. and Kristi Johnson appeared in the district court.

*Amici*:  America Civil Liberties Union Foundation; American Civil Liberties Union of the Nation's Capital; the Electronic Frontier Foundation (for Appellants).

**B.      Ruling Under Review.**  The ruling under review is the district court's order dated August 6, 2012, permitting discovery of the Internet Service Providers (contained in the Appellants' Appendix at pp. 114-155).

**C.      Related Cases.**  Appellants are not aware of any related case currently pending before this Court or the U.S. District Court for the District of Columbia.

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ........................................................1

ISSUE PRESENTED ...........................................................................1

STATEMENT OF THE CASE...............................................................1

    A.    The "Mass Doe" Phenomenon in Cases Involving
           Pornographic Films ..................................................1

    B.    AF Holdings and Its Counsel's Particular Experience
           With Multi-Doe Suits................................................3

    C.    AF Holdings' Complaint, the "Alan Cooper"
           Copyright Assignment, and Allegations That
           1,058"Does" Accessed a Film at Different Times
           During a Four-Month Period. ....................................4

    D.    Plaintiff's Ex Parte Application to Take Discovery of
           the ISPs .................................................................5

    E.    The ISPs' Subscribers' Locations in at Least 20
           Different States, and ISPs That Do Not Serve Any
           Subscribers in the District of Columbia....................5

    F.    The ISPs' Motion and District Court's Order Denying
           the Motion to Quash and Certifying the Order for
           Appeal ..................................................................6

    G.    Related Order to Show Cause Proceedings
           Addressing AF Holdings' Alleged Owner and
           Copyright Assignment ..............................................7

i

# TABLE OF CONTENTS
## (continued)

Page

STANDARD OF REVIEW ...............................................................8

SUMMARY OF ARGUMENT ..........................................................9

ARGUMENT ................................................................................13

    I.      PRINCIPLES OF PERSONAL JURISDICTION AND VENUE SHOULD BE ADDRESSED AT THE OUTSET OF "DOE" LAWSUITS INVOLVING PORNOGRAPHIC FILMS ..................13

            A.    The Threshold Legal Issues of Personal Jurisdiction and Venue, Ignored by the District Court, Are Highly Probative of Whether "Good Cause" Exists for Discovery of the Internet Service Providers ...........................13

            B.    "Multi-Doe" Copyright Cases Involving Pornography Present Serious Risks for Innocent Subscribers—Risks That Are Magnified Without a Threshold Analysis of Personal Jurisdiction and Venue ..............................................21

    II.     PLAINTIFFS IN MULTI-DOE LAWSUITS SHOULD BE REQUIRED TO SHOW THAT JOINDER IS PROPER AS A PREREQUISITE FOR PURSUING DISCOVERY FROM ISPs. .....................................................................25

    III.    THE DISTRICT COURT'S ORDER, UNLESS REVERSED, WILL ENCOURAGE FORUM SHOPPING AND MAKE THE DISTRICT OF COLUMBIA THE DESTINATION VENUE FOR MULTI-DOE PORNOGRAPHY LAWSUITS. ......................32

# TABLE OF CONTENTS
## (continued)

**Page**

IV.    THE WAVES OF "DOE" PORNOGRAPHY CASES
FLOODING THE COURTS PRESENT AN UNDUE
BURDEN ON THE ISPs, THE JUDICIARY AND
THE PUBLIC ..................................................................................33

V.    THE SERIOUS CHARGES OF FRAUD ON THE
JUDICIAL SYSTEM BY AF HOLDINGS AND ITS
PUTATIVE OWNERS PROVIDE AN ADDITIONAL
BASIS FOR REVERSAL, OR MAY PROPERLY BE
ADDRESSED BY THIS COURT .......................................................35

CONCLUSION ...................................................................................37

CERTIFICATE OF COMPLIANCE .......................................................41

CORPORATE DISCLOSURE STATEMENTS .......................................42

ADDENDUM OF STATUTES ..............................................................46

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash*,
  No. 12-cv-00186, 2012 U.S. Dist. LEXIS 62980
  2012 WL 1648838 (S.D. Cal. May 4, 2012) ...................................................17

*\*AF Holdings LLC v. Doe*,
  No. 2:12-cv-6636, 2013 U.S. Dist. LEXIS 16924,
  (C.D. Cal. Feb. 7, 2013) ...................................................................................7

*\*AF Holdings LLC v. Doe*,
  No. 12-cv-1523, 2012 U.S. Dist. LEXIS 134870,
  2012 WL 4339072 (S.D. Cal. Sept. 20, 2012) .................................................19

*AF Holdings LLC v. Does 1-96*,
  No. C-11-3335, 2011 U.S. Dist. LEXIS 109816,
  2011 WL 4502413 (N.D. Cal. Sept. 27, 2011)..................................................22

*\*AF Holdings LLC v. Does 1-96*,
  No. C-11-3335, 2011 U.S. Dist. LEXIS 134655,
  2011 WL 5864174 (N.D. Cal. Nov. 22, 2011) .................................................19

*AF Holdings, LLC v. Does 1-97*,
  No. C-11-3067, 2011 U.S. Dist. LEXIS 126225,
  2011 WL 5195227 (N.D. Cal. Nov. 1, 2011)....................................................28

*AF Holdings LLC v. Does 1-135*,
  No. 11-CV-03336, 2012 U.S. Dist. LEXIS 7493,
  (N.D. Cal. Jan. 19, 2012) ...................................................................................3

*Baxter v. Palmigiano*,
  425 U.S. 308, 96 S. Ct. 1551 (1976) .................................................................8

*Authorities upon which Appellants principally rely are marked with asterisks.

iv

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Berlin Media Art v. Does 1-654*,
   No. 11-3770, 2011 U.S. Dist. LEXIS 120257,
   2011 WL 36383080 (N.D. Cal. Oct. 18, 2011) ...................................18

*Boy Racer, Inc. v. Doe*,
   No. C 11-2329, 2011 U.S. Dist. LEXIS 132404,
   2011 WL 7444063 (N.D. Cal. Nov. 16, 2011) ...................................24

*Boy Racer, Inc. v. Does 1-60*,
   No. C 11-01738, 2011 U.S. Dist. LEXIS 92994,
   2011 WL 3652521 (N.D. Cal. Aug. 19, 2011) ...................................30

*Bubble Gum Prods. v. Does 1-80*,
   No. 12–20367, 2012 U.S. Dist. LEXIS 100203,
   2012 WL 2953309 (S.D. Fla. July 19, 2012) ...................................28

*\*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462, 105 S. Ct. 2174 (1985).........................................16, 17

*Call of the Wild Movie, LLC v. Does 1-1,062*,
   770 F. Supp. 2d 332 (D.D.C. 2011)...........................................18, 20

*\*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*,
   148 F.3d 1080 (D.C. Cir. 1998)...................................................9, 14

*\*DigiProtect USA Corp. v. Does 1-240*,
   No. 10 Civ. 8760, 2011 U.S. Dist. LEXIS 109464,
   2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) .....................16, 17, 26

*Digital Sin, Inc. v. Does 1-176*,
   279 F.R.D. 239 (S.D.N.Y. 2012) ...................................................22

*Digital Sin, Inc. v. Does 1-5698*,
   No. C 11-04397, 2011 U.S. Dist. LEXIS 128033,
   2011 WL 5362068 (N.D. Cal. Nov. 4, 2011) ...................................22

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Digital Sins, Inc. v. Does 1-245*,
No. 11 Civ. 8170, 2012 U.S. Dist. LEXIS 69286,
2012 WL 1744838 (S.D.N.Y. May 15, 2012) .............................................23, 29

*Donkeyball Movie, LLC v. Does 1-171*,
810 F. Supp. 2d 20 (D.D.C. 2011)......................................................................26

*EEOC v. Peabody W. Coal Co.*,
610 F.3d 1070 (9th Cir. 2010) ............................................................................9

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,
638 F. Supp. 2d 1 (D.D.C. 2009).......................................................................14

*FTC v. J.K. Publ'ns, Inc.*,
99 F. Supp. 2d 1176 (C.D. Cal. 2000) ................................................................8

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980) ............................................................................14

*Hard Drive Prods. v. Does 1-30*,
No. 2:11-cv-345, 2011 U.S. Dist. LEXIS 119333,
2011 WL 4915531 (E.D. Va. Oct. 17, 2011).......................................18, 20, 22

*\*Hard Drive Prods. v. Does 1-90*,
No. C 11-3825, 2012 U.S. Dist. LEXIS 45509,
2012 WL 1094653 (N.D. Cal. Mar. 30, 2012) .......................................3, 19, 22

*Hard Drive Prods. v. Does 1-130*,
No. C-11-3826, 2011 U.S. Dist. LEXIS 132449,
2011 WL 5573960 (N.D. Cal. Nov. 16, 2011) .....................................11, 22, 23

*Hard Drive Prods. v. Does 1-188*,
809 F. Supp. 2d 1150 (N.D. Cal. 2011) ......................................................18, 26

*Helmer v. Doletskaya*,
393 F.3d 201 (D.C. Cir. 2004).........................................................................16

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re BitTorrent Adult Film Copyright Infringement Cases*,
   No. 11-3995, 2012 U.S. Dist. LEXIS 61447,
   2012 WL 1570765 (E.D.N.Y. May 1, 2012) ....................................3, 21, 28, 30

*In re BitTorrent Copyright Infringement Cases*,
   No. 12-1188, 2013 U.S. Dist. LEXIS 17851,
   2013 WL 501443 (C.D. Ill. Feb. 11, 2013) .................................................27, 29

*In re Micron Tech., Inc. Sec. Litig.*,
   264 F.R.D. 7 (D.D.C. 2010).........................................................................14, 34

*In re Sealed Case*,
   827 F.2d 776 (D.C. Cir. 1987)...........................................................................9

*In re Sealed Case (Med. Records)*,
   381 F.3d 1205 (D.C. Cir. 2004)..........................................................................9

*K-Beech, Inc. v. Does 1-85*,
   No. 3:11-cv-469, 2011 U.S. Dist. LEXIS 124581,
   2011 WL 9879174 (E.D. Va. Oct. 5, 2011).......................................................29

*K-Beech, Inc. v. Does 1-41*,
   No. V-11-46, 2012 U.S. Dist. LEXIS 31803,
   2012 WL 773683 (S.D. Tex. Mar. 8, 2012) ......................................................31

*Latif v. Obama*,
   677 F.3d 1175 (D.C. Cir. 2012)...........................................................................8

*Liberty Media Holdings, LLC v. BitTorrent Swarm*,
   277 F.R.D. 672 (S.D. Fla. 2011)........................................................................28

*Lightspeed v. Does 1-1,000*,
   No. 10 C 5604, 2011 U.S. Dist. LEXIS 35392,
   2011 WL 8179131 (N.D. Ill. Mar. 31, 2011) ....................................................30

*Linder v. Dep't of Defense*,
   133 F.3d 17 (D.C. Cir. 1998)........................................................................14, 36

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Lumiere v. Mae Edna Wilder, Inc.*,
  261 U.S. 174, 43 S. Ct. 312 (1923) ...................................................................15

\*Malibu Media, LLC v. Does 1-11,
  286 F.R.D. 113 (D.D.C. 2012) ..................................................2, 20, 26, 28, 29

*Malibu Media, LLC v. Does 1-5*,
  No. 12 Civ. 2950, 2012 U.S. Dist. LEXIS 77469,
  2012 WL 2001968 (S.D.N.Y. June 1, 2012) ....................................................23

\*Malibu Media, LLC v. Does 1-10,
  No. 2:12-cv-01642, 2012 U.S. Dist. LEXIS 152500,
  (C.D. Cal. Oct. 10, 2012)...........................................................................21, 31

*Malibu Media, LLC v. Does 1-10*,
  No. 2:12-cv-3623, 2012 U.S. Dist. LEXIS 89286,
  2012 WL 5382304 (C.D. Cal. June 27, 2012)............................................22, 29

*Malibu Media, LLC v. Does 1-28*,
  No. 12-cv-2599-WJM, 2012 U.S. Dist. LEXIS 144501,
  2012 WL 4755358 (D. Colo. Oct. 5, 2012)................................................10, 22

\*MCGIP, LLC v. Does 1-149,
  No. C-11-02331, 2011 U.S. Dist. LEXIS 108109,
  2011 WL 4352110 (N.D. Cal. Sept. 16, 2011)........................................2, 19, 31

*Media Prods. v. Does 1-26*,
  No. 12 Civ. 3719, 2012 U.S. Dist. LEXIS 125366,
  2012 WL 3866492 (S.D.N.Y. Sept. 4, 2012) ......................................................3

*Mick Haig Prods. v. Does 1-670*,
  687 F.3d 649 (5th Cir. 2012) .............................................................................23

\*Millenium TGA v. Doe,
  No. 10-C-5603, 2011 U.S. Dist. LEXIS 110135
  2011 WL 7444064 (N.D. Ill. Sept. 26, 2011)........................................16, 17, 18

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Millennium TGA, Inc. v. Comcast Cable Commun. LLC*,
  286 F.R.D. 8 (D.D.C. 2012)......................................................2, 20, 24, 25, 33

*New Sensations, Inc. v. Does 1-1,474*,
  No. C-11-2770, 2011 U.S. Dist. LEXIS 140670,
  2011 WL 7460100 (N.D. Cal. Dec. 7, 2011) ......................................................18

*Next Phase Distrib., Inc. v. Does 1-27*,
  284 F.R.D. 165 (S.D.N.Y. 2012) ......................................................30

*Northwestern Mem'l Hosp. v. Ashcroft*,
  362 F.3d 923 (7th Cir. 2004) ......................................................34

*Nu Image, Inc. v. Does 1-23,322*,
  799 F. Supp. 2d 34 (D.D.C. 2011).........................................6, 15, 16, 17, 18, 35

*On the Cheap, LLC v. Does 1-5011*,
  280 F.R.D. 500 (N.D. Cal. 2011)..........................................................17, 28, 31

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340, 98 S. Ct. 2380 (1978)......................................... 11, 14, 21, 30, 34

*Pacific Century Ltd. v. Does 1-37*,
  282 F.R.D. 189 (N.D. Ill. 2012)......................................................2, 14, 21, 34, 35

*Patrick Collins, Inc. v. Doe*,
  288 F.R.D. 233 (E.D.N.Y. 2012)......................................................30, 31

*Patrick Collins, Inc. v. Does*,
  No. C 11-2766, 2011 U.S. Dist. LEXIS 140913,
  2011 WL 7460101 (N.D. Cal. Dec. 7, 2011)......................................................18

*Patrick Collins, Inc. v. Does 1-10*,
  No. JFM 8:12-cv-00094, 2012 U.S. Dist. LEXIS 47689,
  2012 WL 1144980 (D. Md. Apr. 4, 2012) ......................................................30

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Patrick Collins, Inc. v. Does 1-23*,
   No. 11-cv-15231, 2012 U.S. Dist. LEXIS 40536,
   2012 WL 1019034 (E.D. Mich. Mar. 26, 2012)................................................30

*Patrick Collins, Inc. v. Does 1-44*,
   No. JFM 8:12-cv-00020, 2012 U.S. Dist. LEXIS 47686,
   2012 WL 1144854 (D. Md. Apr. 4, 2012)........................................................26

*Penguin Group (USA), Inc. v. Am. Buddha*,
   640 F.3d 497 (2d Cir. 2011) ..............................................................................16

*Raw Films, Inc. v. Does 1-32*,
   No. 1:11-cv-2939, 2011 U.S. Dist. LEXIS 149215,
   2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) ...................................................28

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.*,
   351 F.3d 1229 (D.C. Cir. 2003)...........................................................................9

*SBO Pictures, Inc. v. Does 1-87*,
   No. Civ. A 11-1962, 2012 U.S. Dist. LEXIS 6968,
   2012 WL 177865 (D.D.C. Jan. 19, 2012)..................................................15, 17

*SBO Pictures, Inc. v. Does 1-57*,
   No. RWT 12cv22, 2012 U.S. Dist. LEXIS 56578,
   (D. Md. Apr. 19, 2012) .....................................................................................28

*Segretti v. State Bar of Cal.*,
   15 Cal. 3d 878, 544 P.2d 929 (1976)...................................................................8

*Third Degree Films, Inc. v. Does 1-131*,
   280 F.R.D. 493 (D. Ariz. 2012).........................................................................30

*Third Degree Films, Inc. v. Doe*,
   No. DKC 11-3007, 2012 U.S. Dist. LEXIS 59233,
   2012 WL 1514807 (D. Md. Apr. 27, 2012) .......................................................31

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States v. Bruce*,
  89 F.3d 886 (D.C. Cir. 1996) ........................................................................35

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
  608 F.3d 871 (D.C. Cir. 2010) ......................................................................9

*\*West Coast Prods. v. Does 1-1,911*,
  No. 11-1687, 2011 U.S. Dist. LEXIS 156802,
  (D.D.C. Oct. 25, 2011) ................................................................................17

*\*West Coast Prods. v. Does 1-1,434*,
  No. 11-55, 2012 U.S. Dist. LEXIS 110847,
  (D.D.C. Aug. 6, 2012) ................................................................................34

*West Coast Prods. v. Does 1-5,829*,
  275 F.R.D. 9 (D.D.C. 2011) ........................................................................20

## CONSTITUTIONS, STATUTES AND RULES

U.S. Const., 5th Amend. ...........................................................................4, 8, 36

17 U.S.C. § 101 ..............................................................................................1

28 U.S.C. § 1292 ............................................................................................6

28 U.S.C. § 1331 ............................................................................................1

28 U.S.C. § 1338 ............................................................................................1

28 U.S.C. § 1400 ..........................................................................................18

D.C. Code § 13-423 ......................................................................................15

D.C. R. Prof. Conduct 3.3 ...........................................................................35

Fed. R. Civ. P. 11 ........................................................................................36

Fed. R. Civ. P. 20 ................................................................12, 25, 26, 29, 30

## TABLE OF AUTHORITIES
### (continued)

Page(s)

Fed. R. Civ. P. 26 ......................................................................9, 11, 14, 26

Fed. R. Civ. P. 45 ...............................................................................33

## JURISDICTIONAL STATEMENT

Subject matter jurisdiction is based on the U.S. Copyright Act, 17 U.S.C. § 101, and 28 U.S.C. §§ 1331, 1338(a). The district court certified for appeal its order dated August 6, 2012, addressing discovery of the Internet Service Providers (ISPs) and, on December 7, 2012, this Court granted the ISPs permission to appeal.

## ISSUE PRESENTED

In a lawsuit alleging that 1,058 John Doe defendants engaged in file-sharing of a sexually explicit film, did the district court err in permitting plaintiff AF Holdings to obtain the personal information of the ISPs' subscribers before addressing the threshold issues of personal jurisdiction, venue, or joinder?

## STATEMENT OF THE CASE

### A.    The "Mass Doe" Phenomenon in Cases Involving Pornographic Films

This appeal arises from one among many hundreds of recently filed actions by Plaintiff's counsel that seek from Internet Service Providers the names, addresses, home telephone numbers and email addresses for the ISPs' subscribers. The cases typically involve pornographic films and follow "a common arc":

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery [before any Rule 26 conference]; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement

> demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle.

*MCGIP, LLC v. Does 1-149*, 2011 U.S. Dist. LEXIS 108109, at *11 n.5 (N.D. Cal. Sept. 16, 2011) (action filed by AF Holdings' counsel); *see also Millennium TGA, Inc. v. Comcast Cable Commun. LLC*, 286 F.R.D. 8, 15-16 (D.D.C. 2012). "Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements—a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access *en masse* to the identities of alleged infringers." *MCGIP*, *supra*, at *11 n.5.

Courts are increasingly critical of the burdens these cases impose on the ISPs, Internet subscribers and the judiciary—and wary that the information sought in "mass Doe" actions may be based on unreliable pre-filing investigations or used to improperly coercive payments before naming and serving any actual defendant, contrary to the role of federal courts to decide actual cases and controversies. As such, a growing majority of district courts are denying leave to conduct discovery of the ISPs, reconsidering earlier *ex parte* grants of permission to take discovery, or dismissing the actions outright. *See*, *e.g.*, *Malibu Media, LLC v. Does 1-11*, 286 F.R.D. 113, 115-17 (D.D.C. 2012) (summarizing recent multi-Doe decisions and concluding that "swarm joinder is not appropriate"); *Pacific Century Ltd. v. Does 1-37*, 282 F.R.D. 189, 195-96 (N.D. Ill. 2012) (same); *In re BitTorrent*

*Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447

(E.D.N.Y. May 1, 2012); *see also Media Prods. v. Does*, 2012 U.S. Dist. LEXIS

125366, at *4-7 (S.D.N.Y. Sept. 4, 2012) (citing additional authority and noting

that "[i]t is difficult to even imagine the extraordinary amount of time federal

judges have spent on these cases").  Additional authority cited *infra*, pp. 13-24.

### B.    AF Holdings and Its Counsel's Particular Experience With Multi-Doe Suits

AF Holdings and its counsel are frequent filers of multi-Doe lawsuits

involving pornography:  In response to an Order to Show Cause issued in February

2012, AF Holdings' counsel, Prenda Law, declared that it had filed 118 separate

multi-Doe suits filed in the last two years, and at that time *not a single defendant*

*had been served.*  (Appendix ["App."] 97-105.)  A fortiori, few, if any, of these

cases reach a litigated judgment.  (*Id.*)  *See also AF Holdings LLC v. Does 1-135*,

2012 U.S. Dist. LEXIS 7493 (N.D. Cal. Jan. 19, 2012) (order to show cause for

failure to serve John Doe after obtaining his personal information).

In a parallel case in the Northern District of California, Plaintiff's counsel

acknowledged that the information sought in Prenda Law's cases is placed in a

national database and could be used to demand payments *en masse* from

subscribers.  *Hard Drive Prods. v. Does*, 2012 U.S. Dist. LEXIS 45509, at *16

(N.D. Cal. Mar. 16, 2012) ("At the hearing, plaintiff's counsel disclosed that the

3

information received in response to subpoenas to ISPs is sent to a database where all subscriber information discovered in all of plaintiff's lawsuits is maintained.").

### C.    AF Holdings' Complaint, the "Alan Cooper" Copyright Assignment, and Allegations That 1,058 "Does" Accessed a Film at Different Times During a Four-Month Period

AF Holdings is apparently a limited liability company formed in the island of Nevis in the Caribbean Sea.  (App. at 4, ¶ 9.)  Plaintiff alleges that 1,058 "Doe" defendants used BitTorrent file-sharing software to download or upload a sexually explicit film entitled "Popular Demand."  (App. 1.)

Plaintiff claims to have acquired rights to the film through an assignment from a California company; the written assignment appears to have been signed by "Alan Cooper" on behalf of AF Holdings.  (App. 33.)  The Corporate Disclosure Statements do not identify any person or entity affiliated with plaintiff, other than AF Holdings, with an interest in this litigation.  (App. 156-59.)  AF Holdings does not allege any presence in, or tie to, the District of Columbia.  (App. 1-7.)[1]

The Internet subscribers are identified only by a list of Internet Protocol ("IP") addresses and their corresponding ISPs.  An exhibit submitted by Plaintiff

---

[1] As discussed in Section G *infra*, Plaintiff's counsel of record recently pleaded the Fifth Amendment during an Order to Show Cause hearing in a related "Doe" lawsuit.  (RJN 251-53.)  Evidence elicited in the related AF Holdings case reflects that Plaintiff's cases are being prosecuted for the sole benefit of Prenda Law's principals, who are the beneficial owners of Plaintiff and have created fake owners or forged signatures in court filings to hide their interests in these cases.

lists the Internet access dates and times allegedly associated with each IP address, which range over a four-month period.  (App. 4, 9-31.)

### D.     Plaintiff's Ex Parte Application to Take Discovery of the ISPs

On January 18, 2012, Plaintiff filed a motion seeking leave to serve subpoenas on the ISPs, ostensibly to "determine the true identities of the Doe defendants" based on the list of IP addresses.  (App. 35.)  The moving papers did not contain any evidence indicating the locations of the Internet subscribers. (App. 1-57.)  On January 30, 2012, without receiving or requesting an opposition or setting a hearing, the court granted Plaintiff's motion.  (App. 58.)

### E.     The ISPs' Subscribers Are Located in at Least 20 Different States and Several ISPs Have No Subscribers in the District

The Internet subscribers whose personal information is sought here are residents of more than 20 states, with substantial concentrations in the Western and Southern United States.  (App. 64, 72, 78, 84.)  Three ISPs (Cox, AT&T, and Bright House) do not even provide residential Internet service in the District of Columbia and, thus, have no Internet subscribers here.  (App. 64, 72, 78.)

The discovery authorized by the district court also targets ISPs that provide only regional (or local) Internet access in areas far outside the district:  *e.g.*, Alaska Communications Systems Group; Baja Broadband; Bel Air Internet; Bend Cable Communications; Buckeye Cablevision; Cincinnati Bell Telephone; Great Lakes Comnet; Guadalupe Valley Telephone Corp.; Hawaiian Telecom Services Co.;

Missouri Network Alliance; Panhandle Telecommunications; Roseville Telephone

Company; and SureWest Kansas Operations.  (App. 9-31.)

### F.    The ISPs' Motion and the District Court's Order Denying the Motion to Quash and Certifying the Order for Appeal

AT&T, Bright House, Cox and Verizon filed a joint motion to quash the

subpoenas issued to them; because Comcast objected to Plaintiff's subpoena

pursuant to Rule 45, Plaintiff filed a motion to compel against Comcast.  The court

heard argument on both motions as well as expert testimony concerning BitTorrent

and "geolocation" technology.[2]  On August 6, 2012, the court issued its order

denying the ISPs' motions to quash and granting AF Holdings' motion to compel.

(App. 114-145.)  In so doing, the court declined to require any threshold

evidentiary showing of personal jurisdiction over the Does, as required by Judge

Wilkins in *Nu Image*, 799 F. Supp. 2d at 38-39, and other courts.  Instead, the

district court held that any consideration of personal jurisdiction, joinder or venue

was premature until after discovery of the ISPs had been taken.  The court

acknowledged the split of authority, certified its order for appeal pursuant to

28 U.S.C. § 1292(b) and stayed the action pending appeal.  (App. 106, 153-55.)

On December 7, 2012, this Court granted the ISPs permission to appeal.

---

[2] *See Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40 (D.D.C. 2011) (describing the "geolocation services that are generally available to the public to derive the approximate location of the IP addresses" assigned to subscribers' Internet connections).

G.    **Related Order to Show Cause Proceedings Addressing AF Holdings' Alleged Owner and Copyright Assignment**

Following the stay issued by the district court, AF Holdings continued to pursue discovery from the ISPs through a series of virtually identical cases filed in other districts across the country. *See*, *e.g.*, *AF Holdings LLC v. Doe*, 2013 U.S. Dist. LEXIS 16924 (C.D. Cal. Feb. 7, 2013). Court records in the consolidated *AF Holdings v. Doe* cases pending in the Central District of California (case no. 12-cv-8333) contain evidence that plaintiffs affiliated with Prenda Law have used fake names in court filings to identify their corporate ownership or rights to the pornography, including "Alan Cooper" (a former caretaker of Prenda lawyer John Steele's vacation property, who has accused Steele of identity theft); "Salt Marsh," based on "Anthony Saltmarsh" (allegedly a boyfriend of attorney Steele's sister); and "Alan Moay," a/k/a "Alan Mony," a/k/a "Allen Mooney." (RJN 9, 12-123.)[3]

In a startling Order to Show Cause hearing on March 11, 2013, a former Prenda lawyer, Brett Gibbs, testified that Prenda's principals, John Steele and Paul Hansmeiser, created a holding company to make themselves the "client" in

---

[3] The copyright assignment here is identical to one submitted by AF Holdings in the Central District of California. (*Compare* App. 33 & RJN 276.) The California district court's order dated March 5, 2013 ordered *two* "Alan Coopers" to appear at the Order to Show Cause. (RJN 124.) One Alan Cooper appeared and testified convincingly that Plaintiff's counsel, Mr. Steele, had stolen his identity and used his name on court filings without consent. (RJN 146-157.) At the conclusion of the hearing, the court noted that it appeared beyond dispute that Mr. Cooper's identity had been stolen. (RJN 220, lns. 10-12.)

7

AF Holdings' multi-Doe lawsuits—yet Plaintiff has not disclosed this ownership

interest in its many lawsuits, or to this Court. (*See* App. 156-59.)

On April 2, 2013, in response to a renewed Order to Show Cause, the key

figures in AF Holdings' nationwide series of cases (including Plaintiff's current

counsel of record) appeared in federal court in Los Angeles and *pleaded the Fifth*

*Amendment*, refusing to answer the court's questions about their involvement in

and pursuit of these cases. (RJN 251-53.)[4]  Incredibly, AF Holdings continues

undeterred in pursuing substantially the same discovery in this Court, based on the

same business model and the same "Alan Cooper" copyright assignment.

## STANDARD OF REVIEW

A district court's ruling on a motion to quash or to compel ordinarily is

reviewed for abuse of discretion.  "Because a 'district court by definition abuses its

discretion when it makes an error of law,' the 'abuse-of-discretion standard

includes review to determine that the discretion was not guided by erroneous legal

---

[4] In civil cases, including in response to the Order to Show Cause in the
Central District of California addressing attorney misconduct, a person's refusal to
answer questions based on the Fifth Amendment permits the court to draw all
reasonable adverse inferences that the answers, if provided, would be harmful to
the person refusing to testify.  *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976);
*Latif v. Obama*, 677 F.3d 1175, 1193 (D.C. Cir. 2012); *Segretti v. State Bar of*
*Cal.*, 15 Cal. 3d 878, 886 (1976) (attorney disciplinary proceeding "is not a
criminal case for purposes of the Fifth Amendment privilege"); *FTC v. J.K.*
*Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1197-99 (C.D. Cal. 2000) (even where parallel
criminal proceedings are pending and the target is jailed for civil contempt, adverse
inferences based on invocation of the Fifth Amendment can be appropriate).

conclusions.'" *In re Sealed Case* (*Med. Records*), 381 F.3d 1205, 1211 (D.C. Cir. 2004) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

Whether personal jurisdiction, venue and joinder should be addressed at the outset to evaluate "good cause" for allowing pre-Rule 26 discovery (*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) presents legal questions that are reviewed de novo. *See, e.g.*, *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.*, 351 F.3d 1229, 1233 (D.C. Cir. 2003); *see also* App. 153 (district court's order recognizing "that *the legal questions* regarding joinder, personal jurisdiction, and venue are controlling questions of law"); *In re Sealed Case*, 827 F.2d 776, 777 (D.C. Cir. 1987).[5]

## SUMMARY OF ARGUMENT

The district court's authorization for Plaintiff to pursue the personal information for more than 1,000 Internet subscribers in a single lawsuit stands in stark contrast to the vast majority of recent decisions addressing the "multi-Doe" pornographic lawsuit phenomenon.  Plaintiff's counsel's hundreds of cases filed in courts across the country have prompted a long line of authority (while, unfortunately, straining the limited resources of the judiciary), such that few courts

---

[5] *See also United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 886 (D.C. Cir. 2010) (ruling on personal jurisdiction reviewed de novo); *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1076 (9th Cir. 2010) (legal conclusions underlying ruling on joinder reviewed de novo).

will permit today the 1,000-plus subscriber discovery permitted below.  Through this action, Plaintiff hopes to create a "safe haven" in the District of Columbia for pursuing the largest amount of subscribers' information, at the lowest cost possible, and without any threshold legal analysis of whether Plaintiff's claims for copyright infringement could proceed in the forum.  Indeed, Plaintiff's counsel's multi-Doe filings appear to migrate from forum to forum, not based on the location of targeted Internet subscribers or the situs of alleged harm, but on the forum's perceived willingness to permit discovery of the ISPs without restriction.

Due to unsecured and shared Internet connections in Internet subscribers' homes, the contact information that Plaintiff seeks is not necessarily a reliable indicator of the true identities of the "Does" who allegedly downloaded Plaintiff's pornography.[6]  Yet the record developed in Plaintiff's many cases shows that the information sought is being used primarily to compile a contact list for Plaintiff to demand "settlement" payments (typically ranging from $2,000-$4,000) from *each* subscriber identified in discovery, before any defendant is named or served in the lawsuits.  Accordingly, these cases present a substantial risk that the ISPs will be

---

[6] "For example, 'subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' Works.'"  *Malibu Media, LLC v. Does 1-28*, 2012 U.S. Dist. LEXIS 144501, at *9 (D. Colo. Oct. 5, 2012).

required to disclose innocent subscribers' information for extra-judicial processes, in cases that rarely, if ever, are tested on their merits.

The risks to innocent subscribers and the prospects for abuse in Plaintiff's cases are compounded where, as here, the Internet subscribers reside in faraway states, and thus, "whether guilty of copyright infringement or not—would [] have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded.  This creates great potential for a coercive and unjust 'settlement.'"[7]

The district court's conclusion that rules governing personal jurisdiction and venue provide no impediment to pre-Rule 26 discovery of the ISPs is legal error.  A showing of "good cause," which is required for discovery ostensibly intended to identify defendants, requires an evaluation of whether the information sought from the ISPs would be used to name and serve defendants in the forum.  *See*, *e.g*., *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352-53 & n.17 (1978) (where "the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied").  The Copyright Act and the District of Columbia's long-arm statute limit the court's reach to defendants who reside in the district.  And the uncontroverted evidence before the district

---

[7] *Hard Drive Prods. v. Does 1-130*, 2011 U.S. Dist. LEXIS 132449, at *9 (N.D. Cal. Nov. 16, 2011) (lawsuit by Plaintiff's counsel).

court showed that few, if any, of the targeted Internet subscribers reside in the District of Columbia—as publicly available geolocation software used by Plaintiff's counsel in other cases confirms. The district court's decision to defer any consideration of personal jurisdiction or venue until after the subscribers' personal information had been disclosed to Plaintiff requires reversal.

The court's decision to permit discovery of the ISPs before deciding whether the 1,000-plus "Does" are misjoined provides an additional basis for reversal. Plaintiff, by routinely declining to name and serve defendants after obtaining the subscribers' personal information, virtually ensures that Rule 20's requirements for joinder will go unaddressed if not evaluated at the outset. And as a growing majority of courts have concluded, deferring a ruling on joinder deprives the courts of filing fees and encourages a proliferation of improperly coercive lawsuits. Given the groundswell of published opinions that disagree with the lower court and have severed or dismissed non-resident "Does" or all Does except for "Doe No. 1," deferring a ruling on joinder in a suit that seeks *nationwide* subscriber information also encourages forum shopping—as the record here shows persuasively.

Contrary to AF Holdings' arguments, these mass Doe lawsuits, taken alone or together, impose an undue burden on the ISPs and afford standing to the ISPs to object and bring to the Court's attention the multiple defects with Plaintiff's lawsuits. The split within this Circuit—and the lower court order's departure from

a growing consensus among other districts—creates an untenable situation that

threatens to make this Circuit a destination venue for 1,000-plus Doe suits that

have been widely decried by other courts as an improper use of judicial process.

Finally, the serious issues of misconduct and fraud on the courts identified in

the related AF Holdings cases in the Central District of California provide an

additional basis for reversal, and may properly be addressed through the inherent

disciplinary powers of this Court.  For the reasons explained herein, the district

court's order permitting discovery of the ISPs should be reversed.

## ARGUMENT

## I.     PRINCIPLES OF PERSONAL JURISDICTION AND VENUE SHOULD BE ADDRESSED AT THE OUTSET OF "DOE" LAWSUITS INVOLVING PORNOGRAPHIC FILMS

### A.     The Threshold Legal Issues of Personal Jurisdiction and Venue, Ignored by the District Court, Are Critical to Deciding Whether "Good Cause" Exists for Discovery of the Internet Service Providers

Discovery of the identifying information for more than 1,000 subscribers

through subpoenas to ISPs is improper because the vast majority of the subscribers

have no connection to this forum and thus could not be sued here even if,

*arguendo*, Plaintiff were to use the information it seeks from the ISPs to name

defendants and then to attempt to serve them.  (App. 64, 72, 78, 84.)

Plaintiff's request to pursue discovery of the ISPs before a Rule 26

conference (purportedly to "identify defendants," *see* App. 35) must be supported

by a showing of good cause. *Caribbean Broad.*, 148 F.3d at 1090 ("plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant"); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored," and discovery to identify a "Doe" must be supported by good cause); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11 (D.D.C. 2009) (plaintiff must "reasonably demonstrate[] that it can supplement its jurisdictional allegations through discovery").

Personal jurisdiction over the Does and proper venue are necessary prerequisites for good cause:  Where, as here, the information sought is unlikely to be used to pursue claims against Defendants in the forum, pre-Rule 26 discovery should be denied. *Oppenheimer*, 437 U.S. at 353 & n.17 ("when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied"); *see also Pacific Century*, 282 F.R.D. at 195-96 (citing and quoting *Oppenheimer*).[8]

---

[8] As explained in Section IV *infra*, where, as here, the underlying action is defective or defendants are not subject to suit, any burden put upon a third party to identify "Does" is an *undue* burden. *Nu Image*, 799 F. Supp. 2d at 37; *see also Linder v. Dep't of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) (whether a subpoena is proper "'must be determined according to the facts of the case,' such as the party's need … and the nature and importance of the litigation"); *In re Micron Tech. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) ("The 'undue burden' test requires district courts to be 'generally sensitive' to the costs imposed on third parties").

Personal jurisdiction in copyright litigation is limited by the District of Columbia's long-arm statute. *Lumiere v. Mae Edna Wilder, Inc*., 261 U.S. 174, 177 (1923) (the Copyright Act does not permit nationwide service of process); *Nu Image*, 799 F. Supp. 2d at 38 & n.4 (same); *SBO Pictures, Inc. v. Does 1-87*, 2012 U.S. Dist. LEXIS 6968, at *3-4 (D.D.C. Jan. 19, 2012) ("The Copyright Act does not provide for the exercise of personal jurisdiction over alleged infringers on a nationwide or other basis. Plaintiff must therefore predicate the court's jurisdiction over the infringers on the reach of District of Columbia law.").

The district's long-arm statute provides, in pertinent part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's …
>
> (3) *causing tortious injury in the District of Columbia by an act or omission in the District of Columbia . . .*

D.C. Code § 13-423 (emphasis added).

Because copyright infringement is a tort and the Does are accused of doing nothing other than downloading or uploading Plaintiff's film via their computers without authorization, the long-arm statute requires "tortious injury in the District of Columbia by an act or omission in the District of Columbia." *Nu Image*, 799 F.

15

Supp. 2d at 38-39 (citing *Penguin Group*, *Inc. v. Am. Buddha*, 640 F.3d 497, 500-01 (2d Cir. 2011); *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)).[9]

In *Nu Image*, Judge Wilkins held that requiring plaintiff to make a prima-facie evidentiary showing that all Does are likely to reside in this district—before serving subpoenas on the ISPs—comports with fundamental notions of fairness and does not impose any real burden on plaintiff, given the "geolocation services that are generally available to the public to derive the approximate location of the IP addresses identified for each putative defendant."  799 F. Supp. 2d at 40.

*Nu Image*'s conclusion is consistent with long-established principles of personal jurisdiction, *i.e.*, that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State."  *Burger King*, 471 U.S. at 475.  Faced with a proliferation of mass Doe actions and a growing body of written work discussing the characteristics of

_____

[9] *See also DigiProtect USA Corp. v. Does 1-240*, 2011 U.S. Dist. LEXIS 109464, at *8-10 (S.D.N.Y. Sept. 26, 2011) (personal jurisdiction in a BitTorrent copyright action requires intentional conduct showing that defendant availed itself of the forum, which is not satisfied merely by showing that hundreds of defendants in different locations accessed the same film); *Millenium TGA v. Doe*, 2011 U.S. Dist. LEXIS 110135, at *7 (N.D. Ill. Sept. 26, 2011) (same; rejecting plaintiff's argument concerning personal jurisdiction, "the logical extension would be that everybody who used P2P software such as BitTorrent would subject themselves to jurisdiction in every state.  This is a far cry from the requirement that 'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State'"; quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

BitTorrent file-sharing systems, other courts have reached similar conclusions—
with several of them revisiting earlier rulings that permitted broad Doe discovery.
*See*, *e.g.*, *DigiProtect*, 2011 U.S. Dist. LEXIS 109464, at *8-10 ("reject[ing]
[plaintiff's] argument that [the court] has personal jurisdiction as to all 240
defendants, if any one resides in New York… The mere fact that BitTorrent
protocol and eDonkey network employ 'swarming' capacity is insufficient to
confer jurisdiction"); *Millenium*, 2011 U.S. Dist. LEXIS 110135, at *4-5 (denying
request for discovery of ISPs where Prenda Law failed to establish that defendant's
"infringing activities were directed towards this forum and bring him or her within
this court's jurisdiction"); *On the Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500,
505 (N.D. Cal. 2011) (explaining that the effect of Plaintiff's arguments "would be
that everybody who used . . . BitTorrent would subject themselves to jurisdiction in
every state," a result inconsistent with *Burger King*, 471 U.S. at 475).[10]

---

[10] *See also SBO Pictures*, 2012 U.S. Dist. LEXIS 6968, at *6-9 (following
*Nu Image* and denying request for discovery of ISPs); *West Coast Prods. v. Does
1-1911*, 2011 U.S. Dist. LEXIS 156802, *3 (D.D.C. Oct. 25, 2011) (same; Jackson,
J.); *808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash*, 2012 U.S.
Dist. LEXIS 62980, at *17 (S.D. Cal. May 4, 2012) (discussing conflicting
precedent and concluding that an affirmative showing of personal jurisdiction over
the Does is needed to establish good cause for discovery; "The judicial process
should not be manipulated to obtain confidential information about Defendants not
subject to the Court's jurisdiction"); *New Sensations, Inc. v. Does 1-1,474*, 2011
U.S. Dist. LEXIS 140670, at *7-9 (N.D. Cal. Dec. 7, 2011) (citing *Nu Image* and
explaining that "[w]here Plaintiff has made no effort to determine jurisdiction, the
administration of justice is not served by requiring out-of-state recipients of

(Footnote continues on next page.)

17

For the same reasons that personal jurisdiction is lacking over many of the Does, venue is improper under the governing venue statute, 28 U.S.C. § 1400(a), which requires that all defendants must be subject to suit in this district. *Nu Image*, 799 F. Supp. 2d at 37-38, 43; *see also Millenium*, 2011 U.S. Dist. LEXIS 110135, *8-9 (explaining that "the personal jurisdiction analysis is directly tied to the determination of whether venue is appropriate," and denying request for discovery and dismissing action where defendants were not located in the forum).

Requiring AF Holdings to make an evidentiary showing that the "Does" are subject to suit in this district and that venue is proper would not take this Plaintiff

---

(Footnote continued from previous page.)

subpoenas to bring challenges to the subpoenas in far-flung jurisdictions"); *Hard Drive Prods. v. Does 1-188*, 809 F. Supp. 2d 1150, 1160-64 (N.D. Cal. 2011) (quashing subpoenas where Plaintiff's counsel failed to provide a sufficient showing that the Doe defendants were properly subject to suit as part of the same "swarm"; summarizing decisions that address mechanics of BitTorrent protocols); *Hard Drive Prods. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, at *7-10 (E.D. Va. Oct. 17, 2011) (citing *Hard Drive*, *supra*, with approval); *Berlin Media Art v. Does 1-654*, 2011 U.S. Dist. LEXIS 120257, at *4-6 (N.D. Cal. Oct. 18, 2011) (denying request for discovery of the identities of Does 1-654 based on jurisdictional principles and the court's research: "with minimal effort, the Court was able to utilize one of many free and publicly available services to look up the locations affiliated with IP addresses for which Plaintiff seeks discovery"); *Patrick Collins*, 2011 U.S. Dist. LEXIS 140913, at *4-5 (explaining that "even if one or more of the unidentified defendants allegedly downloaded the file at some point during the time period in question from a computer located in this District, the Court is not aware of any caselaw that suggests that it has personal jurisdiction over all 2,590 Defendants based on this connection"). But see *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 345-46 (D.D.C. 2011) (permitting discovery of identifying information for 1,000-plus subscribers).

or its counsel by surprise:  Other courts have required AF Holdings to justify

discovery of the personal information for far fewer Does than those alleged to be

involved in this action.  *See*, *e.g.*, *AF Holdings LLC v. Doe*, 2012 U.S. Dist. LEXIS

134870, at *15 (S.D. Cal. Sept. 20, 2012) (denying leave to serve subpoena on ISP

that sought personal information for a single subscriber, where Plaintiff failed to

submit evidence showing that personal jurisdiction likely existed over the

subscriber); *AF Holdings LLC v. Does 1-96*, 2011 U.S. Dist. LEXIS 134655, at *9

(N.D. Cal. Nov. 22, 2011) (requiring a prima facie showing that each defendant

resides in the district and is thus subject to personal jurisdiction in California).

Plaintiff's argument, echoed by the lower court's order, that consideration of

personal jurisdiction is "premature" because Internet subscribers residing in far-

away states could consent to jurisdiction ignores the reality of AF Holdings

counsel's many cases:  "By not naming or serving a single defendant, [Plaintiff]

ensures that this case will not progress beyond its infant stages and therefore, the

court will never have the opportunity to evaluate" the threshold legal issues

presented.  *MCGIP*, 2011 U.S. Dist. LEXIS 108109, at *10; *see also* App. 97-105

(listing 118 multi-Doe lawsuits filed by Prenda in which no defendant had been

served).  Other courts, familiar with Prenda's business model, have recognized the

importance of addressing threshold legal issues at the outset.  *See*, *e.g.*, *Hard Drive

Prods. v. Does 1-90*, *supra*, 2012 U.S. Dist. LEXIS 45509, at *12-16 (describing

the pattern in Prenda's many cases and citing Plaintiff's counsel's admission that subscriber information is fed into a national "database where all subscriber information discovered in all of plaintiff's lawsuits is maintained"); *Hard Drive Prods. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, at *9 (E.D. Va. Oct. 17, 2011) (describing the same pattern, including the "threatening phone call … by [Prenda's principal] John Steele"); *Millennium TGA, Inc. v. Comcast Cable Communs. LLC*, 286 F.R.D. 8, 13-15 & n.9 (D.D.C. 2012) (same).

Indeed, the case law has evolved so quickly that today, few, if any, district courts will permit nationwide discovery in 1,000-plus Doe suits.  Even Judge Howell, who presided below and wrote *Call of the Wild*, 770 F. Supp. 2d 332, recently issued an order that departs from that court's own precedent—rejecting a request for broad-ranging discovery of the ISPs and ruling that plaintiff in a multi-Doe pornography case that alleged "hacking" of websites was required to submit admissible *evidence* ("a sworn declaration") to support the hacking claims against the Does.  (*Guava v. Doe*, No. 12-cv-1661 (D.D.C. Feb. 13, 2013), contained at RJN 281.)[11]  And, District Judge Huvelle, who authored *W. Coast Prods., Inc. v. Does 1-5,829*, 275 F.R.D. 9 (D.D.C. 2011) (permitting discovery of the ISPs), recently reversed course in *Malibu Media, LLC v. Does 1-11*, 286 F.R.D. 113, 116-

---

[11] In *Guava*, Plaintiff's counsel here subsequently failed to submit admissible evidence and instead voluntarily dismissed the action.  (RJN 281.)

17 (D.D.C. 2012), dismissing Does 2-11 and thus mooting plaintiff's subpoenas to

the ISPs that sought information for more than a single subscriber.

Accordingly, principles of personal jurisdiction and venue— and the

interests of uniformity of decision—weigh heavily in favor of reversal.

**B.    "Multi-Doe" Copyright Cases Involving Pornography
Present Serious Risks for Innocent Subscribers—
Risks That Are Magnified Without a Threshold Analysis of
Personal Jurisdiction and Venue**

In evaluating discovery requests, "a court is not required to blind itself to the

purpose for which a party seeks information."  *Pacific Century*, 282 F.R.D. at 195

(quoting *Oppenheimer*, 437 U.S. at 353).  Courts are recognizing with increasing

frequency that Plaintiff's requested discovery is improper because it is unlikely to

lead to Plaintiff identifying, suing by name, and serving the Does:

> [T]he [sought-after] subscriber information is not a reliable
> indicator of the actual infringer's identity.  Due to the
> proliferation of wireless internet and wireless-enabled
> mobile computing (laptops, smartphones, and tablet
> computers), it is commonplace for internet users to share the
> same internet connection, and thus, share the same IP
> address.  Family members, roommates, employees, or
> guests may all share a single IP address ….

*Malibu Media v. Does*, 2012 U.S. Dist. LEXIS 152500, at *8-9 (C.D. Cal. Oct. 10,

2012) (denying discovery of ISPs in 33 consolidated multi-Doe lawsuits); *see also*

*In re: Adult Film Copyright Cases*, 2012 U.S. Dist. LEXIS 61447, at *8 (E.D.N.Y.

May 1, 2012) ("[T]he assumption that the person who pays for Internet access at a

given location is the same individual who allegedly downloaded a single sexually

explicit film is tenuous, and one that has grown more so over time.").[12]

   The prevalence of unsecured Internet connections in subscribers' homes, and

computer viruses that permit remote users to download content without a

homeowner's consent, have not, however, discouraged Plaintiff's counsel from

demanding pre-service-of-process "settlement" payments via form letters, followed

by phone calls to the targeted subscribers.  *See*, *e.g.*, *Hard Drive Prods.*, 2012 U.S.

Dist. LEXIS 45509, at *12-16 (discussing Prenda's national settlement database);

*Hard Drive Prods. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, at *9 (discussing

threatening phone call by Prenda's principal, John Steele).  This prospect for abuse

has caused courts to deny discovery outright, explaining that "courts are not cogs

in a plaintiff's copyright-enforcement business model."  *Malibu Media v. Does 1-*

*10*, 2012 U.S. Dist. LEXIS 89286, at *9 (C.D. Cal. June 27, 2012).  For example,

---

[12] Other courts have noted the problem of "false positives" from Plaintiffs'
requested discovery:  The targeted Does necessarily "encompass not only those
who allegedly committed copyright infringement— proper defendants to Plaintiff's
claims—but ISP 'Subscriber[s]' over whose internet connection the Work
allegedly was downloaded."  *Hard Drive Prods. v. Does 1-130*, *supra*, 2011 U.S.
Dist. LEXIS 132449, at *6-7; *Malibu Media, LLC v. Does 1-28*, 2012 U.S. Dist.
LEXIS 144501, at *9 (D. Colo. Oct. 5, 2012) (same); *Digital Sin, Inc. v. Does 1-*
*176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (same); *Digital Sin*, *Inc. v. Does 1-*
*5698*, 2011 U.S. Dist. LEXIS 128033, at *10 (N.D. Cal. Nov. 4, 2011) (same);
*AF Holdings LLC v. Does 1-96*, 2011 U.S. Dist. LEXIS 109816, at *6-7 (N.D. Cal.
Sept. 27, 2011) (denying leave to conduct discovery of the ISPs where experience
with Plaintiff showed that the Internet subscribers were not the alleged infringers).

> The court is familiar with lawsuits like this one. . . . plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.

*Id.* at *8-9. Plaintiff's approach of indiscriminately demanding payments before naming any defendant means that the "individual—whether guilty of copyright infringement or not—would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement.'" *Hard Drive Prods. v. Does 1-130*, *supra*, 2011 U.S. Dist. LEXIS 132449, at *9; *Malibu Media, LLC v. Does 1-5*, 2012 U.S. Dist. LEXIS 77469, at *2 (S.D.N.Y. June 1, 2012) ("This court shares the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses"); *Digital Sins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 69286, at *9 (S.D.N.Y. May 15, 2012).[13]

---

[13] *Mick Haig Prods. E.K. v. Does 1-670*, 687 F.3d 649, 652 (5th Cir. 2012) (criticizing tactic of "suing anonymous internet users for allegedly downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars—a tactic that [counsel] has employed all across the state and that has been replicated by others").

23

The risks to innocent subscribers—and the burdens imposed by Plaintiff's

cases—are magnified where, as here, the subscribers reside in far-off states.

As Judge Wilkins explained in another case filed by Plaintiff's current counsel,

> There is no rhyme or reason as to why the rights of all the
> 351 subscribers should be heard and adjudicated in the
> District of Columbia.... Experience has shown that many of
> the subscribers are laypersons without legal background,
> and that most will not have counsel and will therefore
> appear *in propria persona*. Given that, *it is very important
> that these subscribers are not subject to litigating in an
> arbitrarily-selected forum that is hundreds, or even
> thousands, of miles away from their residences*.

*Millennium*, 286 F.R.D. at 12-13 (emphasis added).

The district court's order does not adequately address the conclusions of the

many courts (and Plaintiff's counsel's own representations) that the targeted

Internet subscribers are not necessarily the "Does" who allegedly accessed

Plaintiff's film. *Compare* App. 138-143 and *Boy Racer, Inc. v. Doe*, 2011 U.S.

Dist. LEXIS 132404, at *11-12 (N.D. Cal. Nov. 16, 2011) (citing Plaintiff's

counsel's admission that the sought-after discovery is insufficient to identify

alleged infringers). Indeed, the order is internally inconsistent in the status it

ascribes to the targeted Internet subscribers: The court recognizes that "Plaintiff

… has not asserted claims against the individuals associated with the Listed IP

Addresses" (App. 137), yet states that "plaintiff has set forth cognizable claims of

copyright infringement against the unknown individuals identified only by the Listed IP Addresses" (App. 138).

While jurisdictional discovery may be proper in certain circumstances where "*a party*'s contacts" with the forum are unclear (App. 142), it is not warranted for a fishing expedition that lacks any evidentiary showing that the "Does" are likely to be found in the forum. *See*, *e.g.*, *Millennium*, 286 F.R.D. at 16 ("the federal courts, and its subpoena power, are not to be used to gather information that is only relevant to invalid claims, for that is tantamount to a fishing expedition").

For these additional reasons, the district court's order should be reversed.

## II.  PLAINTIFFS IN MULTI-DOE LAWSUITS SHOULD BE REQUIRED TO SHOW THAT JOINDER IS PROPER AS A PREREQUISITE FOR PURSUING DISCOVERY FROM ISPs

Plaintiff's lawsuit improperly seeks to join 1,058 "Does" based solely on the allegation that the Does used BitTorrent software to access Plaintiff's film at different times over a four-month period—without collaborating in any active way or sharing the same "seed file" for the pornography.  (App. 4, 9-31.)  The court committed legal error by concluding that compliance with Rule 20's requirements for joinder "need not be considered at this procedural juncture."  (App. 132.)

Joinder is permissible only where, *inter alia*, all defendants' actions are part of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).  The wide range of dates and times over which the

1,058 Does are alleged to have accessed "Popular Demand" is fatally inconsistent with Plaintiff's assertion that the Does were acting in concert, or as part of the "same series of transactions," and stands in stark contrast to the vast majority of recent opinions that have concluded that allegations of participation in a BitTorrent "swarm" of unidentified Internet users is insufficient to satisfy Rule 20.

"A majority of courts … have specifically held that the properties of BitTorrent are insufficient to support joinder." *Patrick Collins, Inc. v. Does 1-44*, 2012 U.S. Dist. LEXIS 47686, at *18 (D. Md. Apr. 4, 2012); *see also Malibu Media v. Does 1-11*, 286 F.R.D. at 115-16 ("A growing number of district courts have recently held that swarm joinder is not appropriate.") (quoting *Malibu Media v. Does 1-54*, 2012 U.S. Dist. LEXIS 103390, at *5-6 (D. Colo. July 25, 2012)). For BitTorrent users to be part of the same "swarm," users must have "downloaded the movie from the same website during overlapping times" with the other users. *DigiProtect*, 2011 U.S. Dist. LEXIS 109464, at *9-10; *cf. Donkeyball Movie, LLC v. Does 1-17*1, 810 F. Supp. 2d 20, 28 (D.D.C. 2011) (decision by Judge Howell, quoting plaintiff's declaration that swarming is possible only "so long as th[e] first seed peer is online at the time the subsequent peer downloads a file").

As explained in *Hard Drive Prods*., 809 F. Supp. 2d at 1163,

> Under the BitTorrent Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the downloading of each other's copies of the work at issue—or even participated in or contributed to the

> downloading by any of the Does 1-188…. The bare fact
> that a Doe clicked on a command to participate in the
> BitTorrent Protocol *does not mean that they were part of
> the downloading by unknown hundreds or thousands of
> individuals across the country or across the world*.

AF Holdings' allegations, by contrast, are virtually identical to those that

have been rejected in multi-Doe cases coordinated for resolution by other courts:

> The exhibits to the Complaints negate any inference that
> might be drawn from the boilerplate allegations that the
> Does' acts were part of the same transaction. Instead they
> show that each Doe defendant's computer communicated
> via BitTorrent with the investigator's computer on
> different dates over the course of weeks or months and
> that at some prior time each of the Does had downloaded
> the same movie.

*In re BitTorrent Copyright Infringement Cases*, 2013 U.S. Dist. LEXIS 17851, at

*14-15 (C.D. Ill. Feb. 11, 2013) (ruling in 11 multi-Doe cases coordinated for

resolution); *compare* App. 9-31 (Plaintiff's list of IP addresses and "access dates").

Even assuming, *arguendo*, that the "same transaction, occurrence, or series

of transactions or occurrences" might include automated file-sharing among users

who are unaware of each other, it could not include the users here, who may have

downloaded excerpts of the same film days, weeks, or months apart.

The district court concluded that the Does' alleged activities were merely

"logically related" and might "*potentially*" be "part of the same swarm."

(App. 135; emphasis added.) But for joinder to be proper, Plaintiff "must allege

27

facts that permit the court at least to infer some actual, concerted exchange of data between [the Doe] defendants." *Malibu Media v. Does 1-11*, 286 F.R.D. at 116 (quotation omitted; alteration in original).[14]   "Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period." *Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011).[15]   Here, AF Holdings made no showing that the 1,058 Does were acting in concert.  Again, joining multiple Does

---

[14] *See also Malibu Media, LLC v. John Does 1-23*, 2012 U.S. Dist. LEXIS 58860, at *9-10 (E.D. Va. May 30, 2012) ("a plaintiff must allege facts that permit the court at least to infer some actual, concerted exchange of data between those defendants"); *SBO Pictures, Inc. v. Does 1-57*, 2012 U.S. Dist. LEXIS 56578, at *5-6 (D. Md. Apr. 19, 2012) ("the better-reasoned decisions have held that where a plaintiff has not plead that any defendant shared file pieces directly with one another, the first prong of the permissive joinder is not satisfied"); *BitTorrent Copyright Cases*, 2012 U.S. Dist. LEXIS 61447, at *33 (same); *AF Holdings, LLC v. Does 1-97*, 2011 U.S. Dist. LEXIS 126225, at *7-8 (denying request to serve subpoenas where "Plaintiff has not alleged that any of the ninety-seven Doe Defendants exchanged any piece of the relevant file with each other or actually acted in concert with one another"); *Bubble Gum Prods. v. Does 1-80*, 2012 WL 2953309 (S.D. Fla. July 19, 2012) (reconsidering earlier order permitting discovery and dismissing Does 2-80 due to misjoinder and quashing subpoenas to ISPs).

[15] *See also On the Cheap, LLC v. Does 1-5011*, 280 F.R.D. at 503 ("plaintiff has not established that joinder would be proper under FRCP 20(a)(2) merely because defendants used BitTorrent to download the same film"); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 675 (S.D. Fla. 2011) (same; time span of two months); *Pacific Century Int'l Ltd. v. Doe*, 2011 U.S. Dist. LEXIS 73837, at *12 (N.D. Cal. July 8, 2011) ("Plaintiff glosses over the fact that BitTorrent users may upload different initial files of a given work, which results in the creation of distinct swarms … , [and] the participants in the first swarm would not interact with those in the second swarm"); *K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *5 (E.D. Va. Oct. 5, 2011) (same).

28

in a single suit based on nothing more than allegations that anonymous Internet users accessed excerpts of a film from remote locations without any direct interaction, or even awareness of participation of the other Internet users, does not satisfy Rule 20's requirements.  *E.g.*, *Malibu Media v. Does 1-11*, 286 F.R.D. at 116 ("what we have here [are 11] separate and discrete transactions in which [11] individuals used the same method to access a file via the Internet—no concerted action whatever, and no series of related occurrences—at least, not related in any way except the method that was allegedly used to violate the law"; quoting *Digital Sins v. Does 1-245*, 2012 U.S. Dist. LEXIS 69286); *BitTorrent Copyright Cases*, 2013 U.S. Dist. LEXIS 17851, at *14-15; *see also* authority cited in fn. 13-14.

Plaintiff's motivation for filing a 1,000-plus Doe action is well-documented: Plaintiff seeks to obtain the largest volume of subscribers' information, at the least cost and with minimal judicial oversight, for the purpose of sending subscribers pre-service-of-process payment demands.  (*See* pp. 19-24 *supra*, citing opinions in other Prenda cases and counsel's admission that the subscribers' information is used in a national database; *see also* App. 97-105.)  The criticism of this model is appropriate and overwhelming, *e.g.*:  "The [c]ourt will not idly watch what is essentially an extortion scheme ….  If [plaintiff] desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it."  *Malibu Media*, 2012 U.S. Dist. LEXIS 89286, at *9; *see also Third Degree Films, Inc. v. Does 1-131*, 280

F.R.D. 493, 500 (D. Ariz. 2012) (noting lost filing fees and other ill-effects); *Patrick Collins, Inc. v. Doe*, 288 F.R.D. 233 (E.D.N.Y. 2012) (same); *BitTorrent Copyright Cases*, 2012 U.S. Dist. LEXIS 61447, at *38-39 (ignoring Rule 20 "results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as many doe defendants as possible").[16]

The district court acknowledged Plaintiff's pattern of making en masse payment demands before naming or serving any defendant, but stated that it was "of no consequence to the Court."  (App. 139.)  The U.S. Supreme Court appears to disagree—noting that discovery should be taken only for the proper purpose of pursuing claims in the forum.  *Oppenheimer*, 437 U.S. at 353 n.17 ("[A] court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.").

---

[16] *See also Patrick Collins, Inc. v. Does 1-10*, 2012 U.S. Dist. LEXIS 47689, at *10-11 (D. Md. Apr. 4, 2012) (same; severing and dismissing Does 2-10); *Patrick Collins, Inc. v. Does 1-23*, 2012 U.S. Dist. LEXIS 40536, at *14-16 (E.D. Mich. Mar. 26, 2012) (same); *Lightspeed v. Does 1-1000*, 2011 U.S. Dist. LEXIS 35392, at *5-6 (N.D. Ill. Mar. 31, 2011); *Boy Racer, Inc. v. Does 1-60*, 2011 U.S. Dist. LEXIS 92994, at *10 (N.D. Cal. Aug. 19, 2011); *Next Phase Distrib., Inc. v. Does 1-27*, 284 F.R.D. 165, 169-172 (S.D.N.Y. 2012) (exercising discretionary severance in cases with dozens of "Does").

The district court's approach and Plaintiff's pattern of declining to name and serve actual defendants (*see* App. 97-115) "effectively precludes consideration of joinder issues at a later point in the proceedings…. Deferring a ruling on joinder, then, would encourage[] Plaintiffs … to join (or misjoin) as many doe defendants as possible." *MCGIP*, 2011 U.S. Dist. LEXIS 108109, at *10 (citation omitted); *see also K-Beech, Inc. v. Does 1-41*, 2012 U.S. Dist. LEXIS 31803, at *7-15 (S.D. Tex. Mar. 8 2012) (same).[17]

A number of districts have moved far away from the "mass" Doe model, mandating *single* Doe complaints in Plaintiff's counsel's cases and similar actions. For example, the Eastern District of New York recently ordered that "Plaintiff and their counsel are directed that ***any future actions*** of a similar nature in this district be filed ***as separate actions against each John Doe defendan****t*, so as to avoid unfair outcomes, improper joinder and waste of judicial resources, and to ensure the proper payment of filing fees." *Patrick Collins*, 288 F.R.D. 233 (emphasis added); *see also Third Degree Films, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 59233, at *13 (D. Md. Apr. 27, 2012) (same; "Plaintiff must separately file individual cases against each Doe Defendant."); *Malibu Media*, 2012 U.S. Dist. LEXIS 152500, at *9-16 (denying leave to take discovery in 33 coordinated multi-Doe actions, and

---

[17] Plaintiff's business model has caused at least one court to question "whether this film was produced for commercial purposes or for purposes of generating litigation and settlements." *On the Cheap*, 280 F.R.D. at 504 n.6.

severing all Does except for "Doe 1").  Given the prospects for abuse of the multi-

Doe model, the ISPs respectfully submit that the "single Doe" approach required

by the Eastern District of New York, District of Maryland, and Central District of

California may be the most appropriate model.  In any event, given recent

precedent, the *1,000-plus* Doe suit approved below is a distinct outlier.

Accordingly, the court's failure to evaluate this lawsuit for compliance with

Rule 20's requirements for joinder provides a compelling basis for reversal.

### III.   THE DISTRICT COURT'S ORDER, UNLESS REVERSED, WILL ENCOURAGE FORUM SHOPPING AND MAKE THE DISTRICT OF COLUMBIA THE DESTINATION VENUE FOR MULTI-DOE PORNOGRAPHY LAWSUITS

The district court acknowledged the "potential for forum-shopping" created

by its order authorizing disclosure of a nationwide list of Internet subscribers'

personal information, but "decline[d] to comment" on it.  (App. 154.)  The record

reflects that Plaintiff's counsel's cases have migrated across the country, with the

venues selected, not by the locus of the parties or situs of harm, but based on

counsel's perceptions of which forum is most likely to authorize the greatest

discovery, at the lowest cost, with the least judicial oversight.  (App. 97-105.)

The specter of intra-district, judge-specific shopping in Plaintiff's counsel's

cases further underscores the problem with the lower court's approach.  The ISPs

raised below Plaintiff's counsel's practice of filing complaints and dismissing them

*vel non* based on the judicial assignment—only to re-file in another court.

(App. 92-94.)  When presented with the same facts, Judge Wilkins quoted with approval Judge Huvelle's finding:  "Plaintiff's actions a[re] akin to 'judge shopping.'… This Court could not agree more."  *Millennium*, 286 F.R.D. at 10.[18]

The ISPs respectfully submit that the district courts in this Circuit should not be the destination for 1,000-plus Doe cases that are brought primarily to compile mailing lists—not to adjudicate actual cases or controversies.

## IV.   THE WAVES OF "DOE" PORNOGRAPHY CASES FLOODING THE COURTS PRESENT AN UNDUE BURDEN ON THE ISPs, THE JUDICIARY AND THE PUBLIC

The district court questioned, without deciding, the standing of the ISPs to object that Plaintiff's subpoenas, taken alone or together, impose an undue burden on the ISPs.  (App. 127-28.)  As the recipients of the discovery requests, the ISPs necessarily have standing to object.  Fed. R. Civ. P. 45(c)(3)(A)(iv); *see also Millennium*, 286 F.R.D. at 10 ("Deciding the instant motion to compel by Plaintiff is the functional equivalent of deciding a motion to quash by Comcast.").

---

[18] In the *Millennium* litigation, Plaintiff's counsel here filed a multi-Doe suit in the District of Columbia, dismissed it voluntarily soon after assignment to Judge Wilkins, and re-filed essentially the same complaint days later in the Southern District of Texas—based on the same film and seeking discovery regarding the same 939 IP addresses.  286 F.R.D. at 10.  Follow-on enforcement proceedings on the subpoena issued to Comcast were initiated in the District of Columbia (unaccompanied by any notice of related case) and assigned to Judge Huvelle, who properly identified Plaintiff's maneuvering as "judge shopping."  *Id.*

The ISPs submitted sufficient evidence of the burdens imposed by Plaintiff's subpoenas to raise the legal issues presented here.  (App. 63, 71-72, 83-84.) Simply put, any burden caused by Plaintiff's subpoenas is an *undue* one where the information sought from the ISPs is not likely to be used to serve defendants in the underlying lawsuits, or where the underlying suit is procedurally defective and thus unlikely to proceed on the merits. *Oppenheimer*, 437 U.S. at 353 & n.17 (where "the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied"); *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928-29 (7th Cir. 2004) (rejecting argument that a subpoena causes no undue burden merely because "the *administrative* hardship of compliance would be modest," but considering instead "the rash of suits around the country" and the publicity generated); *In re Micron Tech.*, *Inc. Sec. Litig.*, 264 F.R.D. 7, 9-10 (D.D.C. 2010) (explaining that a subpoena can impose an "undue burden" even where the witness has already identified the requested documents).

Indeed, courts have recognized as self-evident the burdens these "mass Doe" cases impose on the ISPs, the public, and the judiciary. *West Coast Prods. v. Does 1-1,434*, 2012 U.S. Dist. LEXIS 110847, at *3 (D.D.C. Aug. 6, 2012) ("these cases have imposed and will continue to impose extraordinary burdens on the courts and the Internet Service Providers"); *Pacific Century*, 282 F.R.D. at 197 (noting the cumulative burdens these subpoenas impose on the ISPs and explaining that "it is

34

difficult for the ISPs to object before the approval of early discovery, given that

they likely will not learn of such cases until they are served with a subpoena")

*Nu Image*, 799 F. Supp. 2d at 37 ("the Court has a duty to prevent undue burden,

harassment, and expense of third parties").[19]

## V. THE SERIOUS CHARGES OF FRAUD ON THE JUDICIAL SYSTEM BY AF HOLDINGS AND ITS PUTATIVE OWNERS PROVIDE AN ALTERNATIVE BASIS FOR REVERSAL, AND MAY PROPERLY BE ADDRESSED BY THIS COURT

AF Holdings and its counsel owe a duty of candor to the Court, and a duty of

fairness to appellants. *See*, *e.g.*, *United States v. Bruce*, 89 F.3d 886, 894 (D.C.

Cir. 1996) (citing D.C. R. Prof. Conduct 3.3, Candor Towards the Tribunal).

The Court retains inherent disciplinary power over counsel appearing before it. *Id.*

In the stunning Order to Show Cause hearing in the Central District of

California on March 11, 2013, AF Holdings' former in-house counsel, Brett Gibbs,

testified that Prenda's principals, John Steele and Paul Hansmeiser, created a

holding company (Livewire Holdings) to make themselves the "client" in

AF Holdings' multi-Doe lawsuits—yet Plaintiff has not disclosed this relationship

in their many federal court filings, including in this Court.  (RJN 213, lns. 18-23;

*compare* App. 157-59 [corporate disclosure statement]; Fed. R. App. P. 26.1(a).)

---

[19] *See also Pacific Century*, 282 F.R.D. at 199 ("producing any information about non-parties placed an undue burden on the ISPs, because information about non-parties was irrelevant to the plaintiffs' civil conspiracy and copyright claims").

The Order to Show Cause elicited evidence that Prenda's principals have relied on fictitious persons as "clients" (including "Alan Cooper," who purportedly signed the Copyright Assignment on which this action is premised, *see* App. 33) and submitted fake documents in support of their Doe suits, in an effort to obtain Internet subscribers' information by any means, without regard for the rule of law. (*E.g.*, RJN 146-57.)  The response to this evidence by Prenda's principals—and AF Holdings' counsel here—was to *plead the Fifth Amendment*.  (RJN 251-53.)[20]

The serious issues concerning attorney misconduct and potentially forged documents were not identified for the court below; they necessarily affect the "good cause" analysis and provide an alternative basis for reversal to address the evidence now being considered in the pending disciplinary proceedings in the Central District of California.  *See*, *e.g.*, *Linder*, 133 F.3d at 24 (whether good cause exists "'must be determined according to the facts of the case,' such as the party's need … and the nature and importance of the litigation").

Plaintiff's representations to this Court about the existence of "Alan Cooper" and the authenticity of the Copyright Assignment on which this lawsuit is based can also properly be addressed by this Court.  *See* AF Holdings' "Notice of

---

[20] As noted at p. 8, n.4 *supra*, an attorney's pleading of the Fifth Amendment in response to an Order to Show Cause in civil litigation supports the inference that answers to the Court's questions would have been harmful for the attorney.

Allegations" filed in this Court on March 15, 2013 and App. 159; *compare*

RJN 213, 220, 251-53 and Fed. R. Civ. P. 11.  It defies credulity that Plaintiff and

its counsel could insist that "good cause" supports discovery, while invoking the

Fifth Amendment's privilege against self-incrimination in attorney disciplinary

proceedings in other virtually identical "Doe" civil litigation.

## CONCLUSION

For all the reasons discussed herein, the district court's order authorizing

discovery from the Internet Service Providers should be reversed.


Dated:  May 6, 2013                    Respectfully submitted,


                                       By:  _____/s/ Benjamin J. Fox_____
                                              Benjamin J. Fox
                                       (*Signature block continues on next page*)

Deanne E. Maynard
Marc A. Hearron
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, D.C.  20006-1888
Telephone:  202.887.1500
Facsimile:  202.887.0763
DMaynard@mofo.com

Benjamin J. Fox
Giancarlo Urey
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017-3543
Telephone:  213.892.5200
Facsimile:  213.892.5454
BFox@mofo.com

*Attorneys for Appellants*
Bright House Networks LLC,
Cox Communications, Inc.,
Verizon Online LLC

*(Signatures Continue on Following Pages)*

Dated:  May 6, 2013                          Respectfully submitted,

                                             LORD LOCKE LLP


                                             By:  ___/s/ Bart W. Huffman_____
                                                  Bart W. Huffman

                                                  LOCKE LORD LLP
                                                  100 Congress Avenue, Suite 300
                                                  Austin, Texas  78701
                                                  Telephone:  (512) 305-4746
                                                  Facsimile:  (512) 391-4741
                                                  BHuffman@lockelord.com

                                                  Hugh S. Balsam
                                                  LOCKE LORD LLP
                                                  111 South Wacker Drive
                                                  Chicago, IL 60606
                                                  Telephone:  (312) 443-0403
                                                  Facsimile:  (312) 896-6403
                                                  HBalsam@lockelord.com


                                                  *Attorneys for Appellant*
                                                  SBC Internet Services, LLC,
                                                  d/b/a AT&T Internet Services

Dated:  May 6, 2013                    Respectfully submitted,

                                       DAVIS WRIGHT TREMAINE LLP


                                       By:  ____/s/ John D. Seiver_____
                                              John D. Seiver

                                              1919 Pennsylvania Ave., N.W.
                                              Suite 800
                                              Washington, D.C. 20006
                                              Telephone:  (202) 973-4200
                                              johnseiver@dwt.com

                                              *Attorneys for Appellant*
                                              Comcast Cable Communications
                                              Management, LLC

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1,

the attached brief is proportionately spaced, has a typeface of 14 points or more

and contains 9,646 words.

Counsel relies on the computer program used to create this brief for the

word count.


By:   /s/ Benjamin J. Fox
         Benjamin J. Fox

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure Rule 26.1, counsel for the undersigned appellants states:

Bright House Networks, LLC: Bright House Networks, LLC ("BHN") is wholly owned by Time Warner Entertainment – Advance/Newhouse Partnership ("TWEAN"). The general partners of TWEAN are Time Warner Entertainment Company, L.P., Time Warner NY Cable LLC and Advance/ Newhouse Partnership. Time Warner Cable Inc. is the ultimate parent of Time Warner Entertainment Company L.P. and Time Warner NY Cable LLC. No publicly held corporation owns 10 percent or more of BHN's stock.

Cox Communications, Inc.: Cox Communications, Inc. is wholly owned by Cox Enterprises, Inc. No other publicly held corporation owns 10 percent or more of Cox Communication, Inc.'s stock.

Verizon Online LLC: Verizon Online LLC is wholly owned by GTE Wireless Incorporated, which is wholly owned by GTE Corporation, which is more than 90 percent owned by Verizon Communications, Inc. No other publicly held corporation owns 10 percent or more of Verizon Online LLC's stock.

As relevant to the litigation, the appellants are Internet service providers.


Dated:  May 6, 2013                          Respectfully Submitted,


                                             MORRISON & FOERSTER LLP


                                             By:   /s/ Benjamin J. Fox
                                                   Benjamin J. Fox

                                                   *Attorneys for Appellants*
                                                   Bright House Networks, LLC,
                                                   Cox Communications, Inc.
                                                   and Verizon Online LLC

43

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure Rule 26.1, counsel for the undersigned appellant states that SBC Internet Services, LLC is wholly owned by BellSouth Corporation, which is wholly owned by AT&T Inc.  No publicly held company owns 10% of more of the stock of AT&T Inc.

As relevant to the litigation, SBC Internet Services, LLC is an Internet service provider.

Dated:  May 6, 2013                    Respectfully Submitted,

                                       LOCKE LORD LLP


                                       By:    /s/ Bart W. Huffman
                                              Bart W. Huffman

                                              *Attorneys for Appellant*
                                              SBC Internet Services, LLC, d/b/a
                                              AT&T Internet Services

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure Rule 26.1, counsel for the undersigned appellant states that Comcast Cable Communications, LLC is wholly owned by Comcast Holdings Corporation, which is wholly owned by Comcast Corporation, whose stock is publicly traded.  No publicly held company owns 10% or more of the stock of Comcast Corporation.

As relevant to the litigation, Comcast Cable Communications, LLC is an Internet service provider.


Dated:  May 6, 2013                    Respectfully Submitted,

                                       DAVIS WRIGHT TREMAINE LLP


                                       By:    /s/ John D. Seiver
                                              John D. Seiver

                                              *Attorneys for Appellant*
                                              Comcast Cable Communications
                                              Management, LLC

# ADDENDUM

## Addendum Table of Contents

Fed. R. Civ. P. 20 ................................................................................................. A-1

Fed. R. Civ. P. 26 ................................................................................................. A-2

D.C. Code § 13-423 ............................................................................................. A-3



UNITED STATES CODE SERVICE
Copyright © 2013 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved

*** Current through changes received April 17, 2013 ***

FEDERAL RULES OF CIVIL PROCEDURE
TITLE IV. PARTIES

**Go to the United States Code Service Archive Directory**

*USCS Fed Rules Civ Proc R 20*

Review Court Orders which may amend this Rule.

Rule 20. Permissive Joinder of Parties

(a) Persons Who May Join or Be Joined.
  (1) *Plaintiffs.* Persons may join in one action as plaintiffs if:
    (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
    (B) any question of law or fact common to all plaintiffs will arise in the action.
  (2) *Defendants.* Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:
    (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
    (B) any question of law or fact common to all defendants will arise in the action.
  (3) *Extent of Relief.* Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

(b) Protective Measures. The court may issue orders--including an order for separate trials--to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

**HISTORY:**
  (Amended July 1, 1966; Aug. 1, 1987; Dec. 1, 2007.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

**A-1**

Other provisions:

**Notes of Advisory Committee.** The provisions for joinder here stated are in substance the provisions found in England, California, Illinois, New Jersey, and New York. They represent only a moderate expansion of the present federal equity practice to cover both law and equity actions.

With this rule compare also former Equity Rules 26 (Joinder of Causes of Action), 37 (Parties Generally--Intervention), 40 (Nominal Parties), and 42 (Joint and Several Demands).

The provisions of this rule for the joinder of parties are subject to Rule 82 (Jurisdiction and Venue Unaffected).

*Note to Subdivision (a).* The first sentence is derived from English Rules Under the Judicature Act (The Annual Practice, 1937) O. 16, r 1. Compare Calif. Code Civ. Proc. (Deering, 1937) §§ 378, 379a; Ill. Rev. Stat. (1937) ch. 110, §§ 147-148; N.J. Comp. Stat. (2 Cum. Supp., 1911-1924), N.Y.C.P.A. (1937) §§ 209, 211. The second sentence is derived from English Rules Under the Judicature Act (The Annual Practice, 1937) O. 16, r 4. The third sentence is derived from O. 16, r 5, and the fourth from O. 16, rr 1 and 4.

*Note to Subdivision (b).* This is derived from English Rules Under the Judicature Act (The Annual Practice, 1937) O. 16, rr 1 and 5.

**Notes of Advisory Committee on 1966 amendments.** See the amendment of Rule 18 (a) and the Advisory Committee's Note thereto. It has been thought that a lack of clarity in the antecedent of the word "them," as it appeared in two places in Rule 20(a), contributed to the view, taken by some courts, that this rule limited the joinder of claims in certain situations of permissive party joinder. Although the amendment of Rule 18(a) should make clear that this view is untenable, it has been considered advisable to amend Rule 20(a) to eliminate any ambiguity. See 2 Barron & Holtzoff, Federal Practice & Procedure 202 (Wright ed. 1961).

A basic purpose of unification of admiralty and civil procedure is to reduce barriers to joinder; hence the reference to "any vessel," etc.

**Notes of Advisory Committee on 1987 amendments.** The amendments are technical. No substantive change is intended.

**Notes of Advisory Committee on 2007 amendments.** The language of Rule 20 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

**NOTES:**

Related Statutes & Rules:

Collusive and improper joinder of parties, jurisdiction of district courts, *28 USCS § 1359.*
Necessary joinder of parties, *USCS Rules of Civil Procedure, Rule 19.*
Misjoinder and nonjoinder of parties, *USCS Rules of Civil Procedure, Rule 21.*
Interpleader, *USCS Rules of Civil Procedure, Rule 22.*
Intervention, *USCS Rules of Civil Procedure, Rule 24.*
Substitution of parties, *USCS Rules of Civil Procedure, Rule 25.*

Research Guide:

Federal Procedure:

4 Moore's Federal Practice (Matthew Bender 3d ed.), ch 17, Plaintiff and Defendant; Capacity; Public Officers § 17.11.
4 Moore's Federal Practice (Matthew Bender 3d ed.), ch 18, Joinder of Claims §§ 18.02-18.04, 18.20, 18.23.
4 Moore's Federal Practice (Matthew Bender 3d ed.), ch 19, Required Joinder of Parties §§ 19.02, 19.03, 19.06.
4 Moore's Federal Practice (Matthew Bender 3d ed.), ch 20, Permissive Joinder of Parties §§ 20.02 et seq.
4 Moore's Federal Practice (Matthew Bender 3d ed.), ch 21, Misjoinder and Nonjoinder of Parties §§ 21.02, 21.03,



UNITED STATES CODE SERVICE
Copyright © 2013 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved

*** Current through changes received April 17, 2013 ***

FEDERAL RULES OF CIVIL PROCEDURE
TITLE V. DISCLOSURES AND DISCOVERY

**Go to the United States Code Service Archive Directory**

*USCS Fed Rules Civ Proc R 26*

Review Court Orders which may amend this Rule.

THE CASE NOTES SEGMENT OF THIS DOCUMENT HAS BEEN SPLIT INTO 4 DOCUMENTS.
THIS IS PART 1.
USE THE BROWSE FEATURE TO REVIEW THE OTHER PART(S).

Rule 26. Duty to Disclose; General Provisions Governing Discovery

(a) Required Disclosures.

(1) *Initial Disclosure.*

(A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy--or a description by category and location--of all documents, electrically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

(B) Proceedings Exempt from Initial Disclosure. The following proceedings are exempt from initial disclosure:

(i) an action for review on an administrative record;

(ii) a forfeiture action in rem arising from a federal statute;

USCS Fed Rules Civ Proc R 26

identifying those the party expects to present and those it may call if the need arises;

(ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

(iii) an identification of each document or other exhibit, including summaries of other evidence--separately identifying those items the party expects to offer and those it may offer if the need arises.

(B) Time for Pretrial Disclosures; Objections. Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made--except for one under *Federal Rule of Evidence 402* or *403*--is waived unless excused by the court for good cause.

(4) *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

(b) Discovery Scope and Limits.

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

(2) *Limitations on Frequency and Extent.*

(A) When Permitted. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

(B) Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

(3) *Trial Preparation: Materials.*

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative

concerning the litigation.

(C) Previous Statement. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

(i) a written statement that the person has signed or otherwise adopted or approved; or

(ii) a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

(4) *Trial Preparation: Experts.*

(A) Deposition of an Expert Who May Testify. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

(B) Trial-Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

(C) Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

(i) relate to compensation for the expert's study or testimony;

(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

(D) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(E) Payment. Unless manifest injustice would result, the court must require that the party seeking discovery:

(i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

(ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

(5) *Claiming Privilege or Protecting Trial-Preparation Materials.*

(A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(B) Information Produced. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

(c) Protective Orders.

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where

USCS Fed Rules Civ Proc R 26

the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2) *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

(3) *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

(d) Timing and Sequence of Discovery.

(1) *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

(2) *Sequence.* Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

(A) methods of discovery may be used in any sequence; and

(B) discovery by one party does not require any other party to delay its discovery.

(e) Supplementing Disclosures and Responses.

(1) *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

(2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

(f) Conference of the Parties; Planning for Discovery.

(1) *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable--and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b).

(2) *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.



LEXIS DISTRICT OF COLUMBIA CODE ANNOTATED
Copyright 2012 by Matthew Bender & Company, Inc.,
a member of the LexisNexis Group.
All rights reserved.

*** Current through September 19, 2012, and through D.C. Act 19-448 ***
*** Annotations current through November 23, 2012 ***

DIVISION II. JUDICIARY AND JUDICIAL PROCEDURE
TITLE 13. PROCEDURE GENERALLY
CHAPTER 4. CIVIL JURISDICTION AND SERVICE OUTSIDE THE DISTRICT OF COLUMBIA
SUBCHAPTER II. BASES OF PERSONAL JURISDICTION OVER PERSONS OUTSIDE THE DISTRICT OF COLUMBIA

**GO TO DISTRICT OF COLUMBIA CODE ARCHIVE DIRECTORY**

*D.C. Code § 13-423* (2012)

§ 13-423. Personal jurisdiction based upon conduct

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

(7) marital or parent and child relationship in the District of Columbia if:

D.C. Code § 13-423

(A) the plaintiff resides in the District of Columbia at the time the suit is filed;

(B) such person is personally served with process; and

(C) in the case of a claim arising from a marital relationship:

(i) the District of Columbia was the matrimonial domicile of the parties immediately prior to their separation, or

(ii) the cause of action to pay spousal support arose under the laws of the District of Columbia or under an agreement executed by the parties in the District of Columbia; or

(D) in the case of a claim affecting the parent and child relationship:

(i) the child was conceived in the District of Columbia and such person is the parent or alleged parent of the child;

(ii) the child resides in the District of Columbia as a result of the acts, directives, or approval of such person; or

(iii) such person has resided with the child in the District of Columbia.

(E) Notwithstanding the provisions of subparagraphs (A) through (D), the court may exercise personal jurisdiction if there is any basis consistent with the United States Constitution for the exercise of personal jurisdiction.

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

**HISTORY:** July 29, 1970, *84 Stat. 549,* Pub. L. 91-358, title I, § 132(a); 1973 Ed., *§ 13-423*; 1981 Ed., *§ 13-423*; Mar. 10, 1983, D.C. Law 4-200, § 4, 30 DCR 125.

**NOTES:** SECTION REFERENCES. --This section is referenced in *§ 48-804.02.*

LEGISLATIVE HISTORY OF LAW 4-200. --Law 4-200, the "District of Columbia Adoption of the Uniform Child Custody Jurisdiction and Marital or Parent and Child Long-Arm Jurisdiction Amendments Act of 1982," was introduced in Council and assigned Bill No. 4-237. The Bill was adopted on first and second readings on Nov. 16, 1982, and Dec. 14, 1982, respectively. Signed by the Mayor on Dec. 28, 1982, it was assigned Act No. 4-284 and transmitted to both Houses of Congress for its review.

### LexisNexis 50 State Surveys, Legislation & Regulations

Personal Jurisdiction & Service of Process

ANALYSIS  Constitutionality  In general.  Construction  Act and effect  Alter ego exception.  Applicability to states. Burden of proof  Claim arising from enumerated acts.  Conduct in District  Conspiracy  Contracts  Contracting to supply services.  Corporate shield doctrine.  Discovery  Due process  Employee  Evidence insufficient.  Exclusive basis of jurisdiction.  Fiduciary shield doctrine.  First Amendment -- Right to petition  Government contacts doctrine  Implied consent to jurisdiction  Interactive website  Internet services  Jurisdiction -- Found -- Not found  Jurisdictional discovery  Legislative intent  Libel  Link between injury and transacted business  Minimum contacts  Newsgathering  Parent and subsidiary  Persistent course of conduct  Purposeful availment  Reasonable connection  Scope of jurisdiction  Service of summons  Services rendered.  Solicitation of customers  Standard of proof  Sufficiency of pleading.  Tortious injury.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on May 6, 2013.

Counsel for appellee are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated:  May 6, 2013                    By:   /s/ Benjamin J. Fox