No. 12-7135

-------------------------------------------------------

### IN THE UNITED STATES COURT OF APPEALS

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

-------------------------------------------------

### AF HOLDINGS, LLC,

*Plaintiff-Appellee,*

v.

### DOES 1 – 1,058,

*Defendants*,

and

### COX COMMUNICATIONS, INC., *et al.*,

*Appellants.*

-------------------------------------------------

From an Order by the U.S. District Court for the District of Columbia
The Honorable Beryl A. Howell, Judge Presiding
(Case No. 1:12-cv-00048-BAH)

-------------------------------------------------------------------

### APPELLANTS' REQUEST FOR JUDICIAL NOTICE

### (Opening Brief and Appendix Filed Separately)

-------------------------------------------------------------------

Deanne E. Maynard
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, D.C.  20006-1888
Telephone:  202.887.1500
DMaynard@mofo.com

Benjamin J. Fox
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone:  213.892.5200
BFox@mofo.com

For Bright House Networks, LLC, Cox Communications, Inc. and Verizon Online LLC
(Additional Appellants and Counsel Listed on Inside Page)

*Additional Appellants and Counsel*

Bart W. Huffman
LOCKE LORD LLP
100 Congress Avenue, Suite 300
Austin, Texas  78701
Telephone:  (512) 305-4746
Facsimile:  (512) 391-4741
BHuffman@lockelord.com

Hugh S. Balsam
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 443-0403
Facsimile:  (312) 896-6403
HBalsam@lockelord.com

Attorneys for Appellant SBC Internet Services, LLC,
d/b/a AT&T Internet Services


John D. Seiver
Ronald G. London
Leslie G. Moylan
Lisa B. Zycherman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
Telephone:  (202) 973-4200
johnseiver@dwt.com

Attorneys for Appellant Comcast Cable Communications Management, LLC

Pursuant to Rule 201 of the Federal Rules of Evidence, Appellants respectfully request that the Court take judicial notice of the following documents:

**Exhibit A.**  An Order to Show Cause issued in the consolidated actions *AF Holdings v. Doe* and *Ingenuity 13 LLC v. Doe*, Case No. 2:12-cv-8333 (ECF No. 48) in the U.S. District Court for the Central District of California, directed to Brett Gibbs, Esq., of Prenda Law, counsel of record for plaintiffs.

**Exhibit B.**  A Response to the Order to Show Cause in the consolidated *AF Holdings* action in the Central District of California, Case No. 2:12-cv-8333, filed on February 19, 2013, by the Doe defendant (ECF No. 52).

**Exhibit C.**  A Supplemental Declaration of Morgan Pietz, Esq., counsel for the Doe defendant, and selected exhibits, in response to the Order to Show Cause in the consolidated *AF Holdings* action pending in the Central District of California, Case No. 2:12-cv-8333 (ECF No. 53).

**Exhibit D.**  An Order dated March 5, 2013 in the consolidated *AF Holdings* action in C.D. Cal. No. 2:12-cv-8333, requiring principals of Prenda Law or Livewire Holdings (including John Steele, Paul Duffy and Mark Lutz) to appear at the Order to Show Cause on March 11, 2013, in the Central District of California.

**Exhibit E.**  The court reporter's transcript of the Order to Show Cause hearing of March 11, 2013, in the consolidated *AF Holdings* action in the Central District of California, Case No. 2:12-cv-8333.

**Exhibit F.**  The court reporter's transcript of the renewed Order to Show Cause hearing of April 2, 2013, in the consolidated *AF Holdings* action in the Central District of California, Case No. 2:12-cv-8333.

**Exhibit G.**  The complaint and "Copyright Assignment" (Ex. B to the complaint) filed in *AF Holdings LLC v. Doe* in the Central District of California, Case No. 2:12-cv-05709, which was consolidated with Case No. 2:12-cv-8333.

**Exhibit H.**  A copy of the docket report from the federal courts' PACER/ECF website service in *Guava, LLC v. John Doe*, U.S. District Court for the District of Columbia Case No. No. 1:12-cv-01661, including a minute order issued by District Judge Beryl Howell on October 18, 2012.

*        *        *

The court records identified above are publicly available through the federal courts' PACER/ECF website <www.pacer.gov>, and their authenticity is not subject to reasonable dispute.  *See*, *e.g.*, *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (citing the court's "authority to judicially notice related proceedings in other courts").  The hearing transcripts in the consolidated *AF Holdings* action, C.D. Cal. No. 2:12-cv-8333, may be obtained independently through the court reporter's office for the Central District of California, and their authenticity is not subject to reasonable dispute.  *See*, *e.g.*, *Xydas v. United States*,

2

445 F.2d 660, 668 n.22 (D.C. Cir. 1971) (court transcripts are properly subject to judicial notice).


Dated:  May 6, 2013                        Respectfully submitted,


                                           By:      /s/ Benjamin J. Fox

                                                Deanne E. Maynard
                                                Marc A. Hearron
                                                MORRISON & FOERSTER LLP
                                                2000 Pennsylvania Ave., NW
                                                Washington, D.C.  20006-1888
                                                Telephone:  202.887.1500
                                                Facsimile:  202.887.0763
                                                DMaynard@mofo.com

                                                Benjamin J. Fox
                                                Giancarlo Urey
                                                MORRISON & FOERSTER LLP
                                                707 Wilshire Blvd., Suite 6000
                                                Los Angeles, CA  90017-3543
                                                Telephone:  213.892.5200
                                                Facsimile:  213.892.5454
                                                BFox@mofo.com

                                                *Attorneys for Appellants*
                                                Bright House Networks LLC,
                                                Cox Communications, Inc.,
                                                Verizon Online LLC


                                           (*Signatures Continue on Following Pages*)


3

Dated:  May 6, 2013                         Respectfully submitted,

                                            LORD LOCKE LLP


                                            By:    /s/ Bart W. Huffman

                                                    LOCKE LORD LLP
                                                    100 Congress Avenue, Suite 300
                                                    Austin, Texas  78701
                                                    Telephone:  (512) 305-4746
                                                    Facsimile:  (512) 391-4741
                                                    BHuffman@lockelord.com

                                                    Hugh S. Balsam
                                                    LOCKE LORD LLP
                                                    111 South Wacker Drive
                                                    Chicago, IL 60606
                                                    Telephone:  (312) 443-0403
                                                    Facsimile:  (312) 896-6403
                                                    HBalsam@lockelord.com


                                                    *Attorneys for Appellant*
                                                    SBC Internet Services, LLC,
                                                    d/b/a AT&T Internet Services

Dated:  May 6, 2013                    Respectfully submitted,

                                       DAVIS WRIGHT TREMAINE LLP


                                       By:     /s/ John D. Seiver

                                             1919 Pennsylvania Ave., N.W.
                                             Suite 800
                                             Washington, D.C. 20006
                                             Telephone:  (202) 973-4200
                                             johnseiver@dwt.com

                                             *Attorneys for Appellant*
                                             Comcast Cable Communications
                                             Management, LLC

# EXHIBIT A

# EXHIBIT A

1
2
3
4
5
6
7                          **UNITED STATES DISTRICT COURT**
8                          **CENTRAL DISTRICT OF CALIFORNIA**
9
10   INGENUITY 13 LLC,                    | Case Nos. 2:12-cv-8333-ODW(JCx)
11                          Plaintiff,    | **ORDER TO SHOW CAUSE RE**
          v.                              | **SANCTIONS FOR RULE 11 AND**
12   JOHN DOE,                            | **LOCAL RULE 83-3 VIOLATIONS**
13                          Defendant.
14

15        The Court hereby orders Brett L. Gibbs, attorney of record for AF Holdings

16   LLC and Ingenuity 13 LLC, to appear on March 11, 2013, at 1:30 p.m., to justify his

17   violations of Federal Rule of Civil Procedure 11 and Local Rule 83-3 discussed

18   herein.[1]

19   **A.    Legal Standard**

20        The Court has a duty to supervise the conduct of attorneys appearing before it.

21   *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996). The power to punish

22   contempt and to coerce compliance with issued orders is based on statutes and the

23   Court's inherent authority. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512

---

24   [1] The violations discussed herein were committed in the following related cases: *AF Holdings LLC v.*
25   *Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012); *AF Holdings LLC v. Doe*, No.
     2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-
26   6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-
27   ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx)
     (C.D. Cal. filed Sept. 27, 2012). To facilitate this matter, Mr. Gibbs will be given the opportunity to
28   address these violations together in one hearing rather than in several separate hearings.

**RJN 1**

1    U.S. 821, 831 (1994). And though this power must be exercised with restraint, the

2    Court has wide latitude in fashioning appropriate sanctions to fit the conduct. *See*

3    *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).

4    **B.      Rule 11(b)(3) Violations**

5           By presenting a pleading to the Court, an attorney certifies that—after

6    conducting a reasonable inquiry—the factual contentions in the pleading have

7    evidentiary support or, if specifically so identified, will likely have evidentiary

8    support after a reasonable opportunity for further investigation or discovery. Fed. R.

9    Civ. P. 11(b)(3). This precomplaint duty to find supporting facts is "not satisfied by

10   rumor or hunch." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th

11   Cir. 1992). The reasonableness of this inquiry is based on an objective standard, and

12   subjective good faith provides no safe harbor. *Golden Eagle Distrib. Corp. v.*

13   *Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986); *F.D.I.C. v. Calhoun*, 34 F.3d

14   1291, 1296 (5th Cir. 1994); *Knipe v. Skinner*, 19 F.3d 72, 75 (2d Cir. 1994). The

15   Court wields the discretion to impose sanctions designed to "deter repetition of the

16   conduct or comparable conduct by others similarly situated." Fed R. Civ. P 11(c)(4).

17          In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed

18   Aug. 2, 2012), the Court ordered Plaintiff on December 20, 2012, to show cause why

19   it failed to timely serve the Defendant or, if the Defendant has already been served, to

20   submit the proof of service. (ECF No. 12.) In response, Plaintiff noted that the delay

21   was because it waited to receive a response from the subscriber of the IP address

22   associated with the alleged act of infringement. (ECF No. 14.) Plaintiff further noted:

23   "Though the subscriber, David Wagar, remained silent, Plaintiff's investigation of his

24   household established that Benjamin Wagar was the likely infringer of Plaintiff's

25   copyright." (ECF No. 14, at 2.) Based on this investigation, Plaintiff filed an

26   Amended Complaint, substituting Benjamin Wagar for John Doe. (ECF No. 13.)

27          Plaintiff's Amended Complaint alleges the following in connection with

28   Benjamin Wagar:

**RJN 2**

Case 2:12-cv-08333-ODW-JC   Document 48   Filed 02/07/13   Page 3 of 11   Page ID #:602

- "Defendant Benjamin Wagar ('Defendant') knowingly and illegally reproduced and distributed Plaintiff's copyrighted Video by acting in concert with others via the BitTorrent file sharing protocol and, upon information and belief, continues to do the same." (AC ¶ 1);
- "Defendant is an individual who, upon information and belief, is over the age of eighteen and resides in this District." (AC ¶ 4);
- "Defendant was assigned the Internet Protocol ('IP') address of 96.248.225.171 on 2012-06-28 at 07:19:47 (UTC)." (AC ¶ 4);
- "Defendant, using IP address 96.248.225.171, without Plaintiff's authorization or license, intentionally downloaded a torrent file particular to Plaintiff's Video, purposefully loaded that torrent file into his BitTorrent client—in this case, Azureus 4.7.0.2—entered a BitTorrent swarm particular to Plaintiff's Video, and reproduced and distributed the Video to numerous third parties." (AC ¶ 22);
- "Plaintiff's investigators detected Defendant's illegal download on 2012-06-28 at 07:19:47 (UTC). However, this is a [*sic*] simply a snapshot observation of when the IP address was *observed* in the BitTorrent swarm; the conduct took itself [*sic*] place before and after this date and time." (AC ¶ 23);
- "The unique hash value in this case is identified as F016490BD8E60E184EC5B7052CEB1FA570A4AF11." (AC ¶ 24).

In a different case, *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), Plaintiff essentially makes the same response to the Court's December 20, 2012 Order To Show Cause (ECF No. 12): "Though the subscriber, Marvin Denton, remained silent, Plaintiff's investigation of his household established that Mayon Denton was the likely infringer of Plaintiff's copyright." (ECF No. 13, at 2.)  And based on this information, Plaintiff filed an Amended Complaint (ECF No. 16), similar in all respects to the one filed against Benjamin

**RJN 3**

1   Wagar in *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed
2   Aug. 2, 2012), with the following technical exceptions:

3   • "Defendant was assigned the Internet Protocol ('IP') address of 75.128.55.44
4     on 2012-07-04 at 07:51:30 (UTC)." (AC ¶ 4);

5   • "Defendant . . . purposefully loaded that torrent file into his BitTorrent
6     client—in this case, μTorrent 3.1.3 . . . ." (AC ¶ 22);

7   • "The unique hash value in this case is identified as
8     0D47A7A035591B0BA4FA5CB86AFE986885F5E18E." (AC ¶ 24.)

9   Upon review of these allegations, the Court finds two glaring problems that
10  Plaintiff's technical cloak fails to mask.  Both of these are obvious to an objective
11  observer having a working understanding of the underlying technology.

12        *1.   Lack of reasonable investigation of copyright infringement activity*

13  The first problem is how Plaintiff concluded that the Defendants actually
14  downloaded the entire copyrighted video, when all Plaintiff has as evidence is a
15  "snapshot observation."  (AC ¶ 23.)  This snapshot allegedly shows that the
16  Defendants were downloading the copyrighted work—at least at that moment in time.
17  But downloading a large file like a video takes time; and depending on a user's
18  Internet-connection speed, it may take a long time.  In fact, it may take so long that the
19  user may have terminated the download.  The user may have also terminated the
20  download for other reasons.  To allege copyright infringement based on an IP
21  snapshot is akin to alleging theft based on a single surveillance camera shot: a photo
22  of a child reaching for candy from a display does not automatically mean he stole it.
23  No Court would allow a lawsuit to be filed based on that amount of evidence.

24  What is more, downloading data via the Bittorrent protocol is not like stealing
25  candy.  Stealing a piece of a chocolate bar, however small, is still theft; but copying an
26  encrypted, unusable piece of a video file via the Bittorrent protocol may not be
27  copyright infringement.  In the former case, some chocolate was taken; in the latter
28  case, an encrypted, unusable chunk of zeroes and ones.  And as part of its prima facie

**RJN 4**

copyright claim, Plaintiff must show that Defendants copied the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). If a download was not completed, Plaintiff's lawsuit may be deemed frivolous.

In this case, Plaintiff's reliance on snapshot evidence to establish its copyright infringement claims is misplaced. A reasonable investigation should include evidence showing that Defendants downloaded the entire copyrighted work—or at least a usable portion of a copyrighted work. Plaintiff has none of this—no evidence that Defendants completed their download, and no evidence that what they downloaded is a substantially similar copy of the copyrighted work. Thus, Plaintiff's attorney violated Rule 11(b)(3) for filing a pleading that lacks factual foundation.

### 2.  *Lack of reasonable investigation of actual infringer's identity*

The second problem is more troublesome. Here, Plaintiff concluded that Benjamin Wagar is the person who illegally downloaded the copyrighted video. But Plaintiff fails to allege facts in the Amended Complaint to show how Benjamin Wagar is the infringer, other than noting his IP address, the name of his Bittorrent client, and the alleged time of download.[2] Plaintiff's December 27, 2012 Response to the Court's Order to Show Cause re Lack of Service sheds some light:

> Though the subscriber, David Wagar, remained silent, Plaintiff's investigation of his household established that Benjamin Wagar was the likely infringer of Plaintiff's copyright. As such, Plaintiff mailed its Amended Complaint to the Court naming Benjamin Wagar as the Defendant in this action. (ECF No. 14, at 2.)

The disconnect is how Plaintiff arrived at this conclusion—that the actual infringer is a member of the subscriber's household (and not the subscriber himself or anyone else)—when all it had was an IP address, the name of the Bittorrent client used, the alleged time of download, and an unresponsive subscriber.

---

[2] This analysis similarly applies in *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), where Plaintiff fails to allege sufficient facts to show how Mayon Denton is the infringer.

**RJN 5**

1     Plaintiff's December 27, 2012 Discovery Status Report gives additional insight

2    into Plaintiff's deductive process:

> In cases where the subscriber remains silent, Plaintiff conducts
> investigations to determine the likelihood that the subscriber, or someone
> in his or her household, was the actual infringer. . . . For example, if the
> subscriber is 75 years old, or the subscriber is female, it is statistically
> quite unlikely that the subscriber was the infringer.   In such cases,
> Plaintiff performs an investigation into the subscriber's household to
> determine if there is a likely infringer of Plaintiff's copyright. . . .
> Plaintiff bases its choices regarding whom to name as the infringer on
> factual analysis. (ECF No. 15, at 24.)

10  The Court interprets this to mean: if the subscriber is 75 years old or female, then

11  Plaintiff looks to see if there is a pubescent male in the house; and if so, he is named

12  as the defendant.  Plaintiff's "factual analysis" cannot be characterized as anything

13  more than a hunch.

14     Other than invoking undocumented statistics, Plaintiff provides nothing to

15  indicate that Benjamin Wagar is the infringer.  While it is plausible that Benjamin

16  Wagar is the infringer, Plaintiff's deduction falls short of the reasonableness standard

17  required by Rule 11.

18     For instance, Plaintiff cannot show that Benjamin is the infringer instead of

19  someone else, such as: David Wagar; other members of the household; family guests;

20  or, the next door neighbor who may be leeching from the Wagars' Internet access.

21  Thus, Plaintiff acted recklessly by naming Benjamin Wagar as the infringer based on

22  its haphazard and incomplete investigation.

23     Further, the Court is not convinced that there is no solution to the problem of

24  identifying the actual infringer.  Here, since Plaintiff has the identity of the subscriber,

25  Plaintiff can find the subscriber's home address and determine (by driving up and

26  scanning the airwaves) whether the subscriber, (1) has Wi-Fi, and (2) has password-

27  protected his Wi-Fi access, thereby reducing the likelihood that an unauthorized user

28  outside the subscriber's home is the infringer.  In addition, since Plaintiff is tracking a

**RJN 6**

1   number of related copyrighted videos, Plaintiff can compile its tracking data to

2   determine whether other copyrighted videos were downloaded under the same IP

3   address.   This may suggest that the infringer is likely a resident of the subscriber's

4   home and not a guest.   And an old-fashioned stakeout may be in order: the presence of

5   persons within the subscriber's home may be correlated with tracking data—the

6   determination of who would have been in the subscriber's home when the download

7   was initiated may assist in discovering the actual infringer.

8         Such an investigation may not be perfect, but it narrows down the possible

9   infringers and is better than the Plaintiff's current investigation, which the Court finds

10  involves nothing more than blindly picking a male resident from a subscriber's home.

11  But this type of investigation requires time and effort, something that would destroy

12  Plaintiff's business model.

13        The Court has previously expressed concern that in pornographic copyright

14  infringement lawsuits like these, the economics of the situation makes it highly likely

15  for the accused to immediately pay a settlement demand.   Even for the innocent, a

16  four-digit settlement makes economic sense over fighting the lawsuit in court—not to

17  mention the benefits of preventing public disclosure (by being named in a lawsuit) of

18  allegedly downloading pornographic videos.

19        And copyright lawsuits brought by private parties for damages are different

20  than criminal investigations of cybercrimes, which sometimes require identification of

21  an individual through an IP address.   In these criminal investigations, a court has some

22  guarantee from law enforcement that they will bring a case only when they actually

23  have a case and have confidently identified a suspect.   In civil lawsuits, no such

24  guarantees are given.   So, when viewed with a court's duty to serve the public interest,

25  a plaintiff cannot be given free rein to sue anyone they wish—the plaintiff has to

26  actually show facts supporting its allegations.

27  / / /

28  / / /

7

**RJN 7**

### C.    Local Rule 83-3 Violations

Under Local Rule 83-3, the Court possesses the power to sanction attorney misconduct, including: disposing of the matter; referring the matter to the Standing Committee on Discipline; or taking "any action the Court deems appropriate." L.R. 83-3.1. This includes the power to fine and imprison for contempt of the Court's authority, for: (1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) misbehavior of any of its officers in their official transactions; or, (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command.  18 U.S.C. § 401.

The Court is concerned with three instances of attorney misconduct.  The first and second instances are related and concern violating the Court's discovery order. The third instance concerns possible fraud upon the Court.

*1.    Failure to comply with the Court's discovery order*

In *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012) and *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), the Court ordered Plaintiff to "cease its discovery efforts relating to or based on information obtained through any abovementioned Rule 45 subpoenas." (ECF No. 13, at 1; ECF No. 10, at 1.)  Further, Plaintiff was required to name all persons that were identified through any Rule 45 subpoenas. (*Id.*)

Plaintiff responded on November 1, 2012, and indicated that it did not obtain any information about the subscribers in both of these cases.  (ECF No. 10, at 6–7, 10.)[3]  But in response to the Court's subsequent Orders to Show Cause, Plaintiff not only named the subscribers, but recounted its efforts to contact the subscriber and find additional information.  (ECF No. 15; ECF No. 18.)

This conduct contravenes the Court's order to cease discovery.  Plaintiff has provided no justification why it ignored the Court's order.

---

[3] This response was filed in *AF Holdings LLC v. Doe*, No. 2:12-cv-5709-ODW(JCx) (C.D. Cal. filed July 2, 2012).

**RJN 8**

  *2. Fraud on the Court*

   Upon review of papers filed by attorney Morgan E. Pietz, the Court perceives that Plaintiff may have defrauded the Court. (ECF No. 23.)[4] At the center of this issue is the identity of a person named Alan Cooper and the validity of the underlying copyright assignments.[5] If it is true that Alan Cooper's identity was misappropriated and the underlying copyright assignments were improperly executed using his identity, then Plaintiff faces a few problems.

   First, with an invalid assignment, Plaintiff has no standing in these cases. Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose. And third, the Court will not idle while Plaintiff defrauds this institution.

**D. Conclusion**

   Accordingly, the Court hereby **ORDERS** Brett L. Gibbs, **TO SHOW CAUSE** why he should not be sanctioned for the following:

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas;

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas;

/ / /

---

[4] Although the papers revealing this possible fraud were filed in *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), this fraud, if true, was likely committed by Plaintiff in each of its cases before this Court.

[5] For example, in *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), Plaintiff filed a copyright assignment signed by Alan Cooper on behalf of Plaintiffs. (ECF No. 16-1.)

**RJN 9**

1    • In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal.
2       filed Aug. 2, 2012), violating Rule 11(b)(2) by:
3          o alleging copyright infringement based on a snapshot of Internet
4             activity, without conducting a reasonable inquiry; or,
5          o alleging that Benjamin Wagar is the infringer, without conducting
6             a reasonable inquiry;
7    • In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal.
8       filed Aug. 2, 2012), violating Rule 11(b)(2) by:
9          o alleging copyright infringement based on a snapshot of Internet
10            activity, without conducting a reasonable inquiry; or,
11         o alleging that Mayon Denton is the infringer, without conducting a
12            reasonable inquiry;
13   • In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal.
14      filed Sept. 27, 2012), perpetrating fraud on the Court by
15      misappropriating the identity of Alan Cooper and filing lawsuits based
16      on an invalid copyright assignment.

17   This order to show cause is scheduled for hearing on March 11, 2013, at 1:30
18   p.m., to provide Mr. Gibbs the opportunity to justify his conduct. Based on the
19   unusual circumstances of this case, the Court invites Morgan E. Pietz to present
20   evidence concerning the conduct outlined in this order. The Court declines to sanction
21   Plaintiffs AF Holdings LLC and Ingenuity 13 LLC at this time for two reasons:
22   (1) Mr. Gibbs appears to be closely related to or have a fiduciary interest in Plaintiffs;
23   and; (2) it is likely Plaintiffs are devoid of assets.

24   If Mr. Gibbs or Mr. Pietz so desire, they each may file by February 19, 2013, a
25   brief discussing this matter. The Court will also welcome the appearance of Alan
26   Cooper—to either confirm or refute the fraud allegations.

27   Based on the evidence presented at the March 11, 2013 hearing, the Court will
28   consider whether sanctions are appropriate, and if so, determine the proper

**RJN 10**

1  punishment.   This may include a monetary fine, incarceration, or other sanctions
2  sufficient to deter future misconduct.  Failure by Mr. Gibbs to appear will result in the
3  automatic imposition of sanctions along with the immediate issuance of a bench
4  warrant for contempt.

5         **IT IS SO ORDERED.**

6         February 7, 2012

7

8         _____

9                  **OTIS D. WRIGHT, II**
10              **UNITED STATES DISTRICT JUDGE**

11

12

13        -

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

**RJN 11**

# EXHIBIT B

# EXHIBIT B

1  Morgan E. Pietz (SBN 260629)
   THE PIETZ LAW FIRM
2  3770 Highland Ave., Ste. 206
   Manhattan Beach, CA 90266
3  mpietz@pietzlawfirm.com
   Telephone:  (310) 424-5557
4  Facsimile :  (310) 546-5301

5
   Attorney for Putative John Doe in 2:12-cv-08333-ODW-JC
6
                 **UNITED STATES DISTRICT COURT**
7
                 **CENTRAL DISTRICT OF CALIFORNIA**
8

9   INGENUITY 13, LLC, a Limited          Case Number: 2:12-cv-08333-ODW-JC
       Liability Company Organized Under
10    the Laws of the Federation of Saint    Case Assigned to:
11    Kitts and Nevis,                      District Judge Otis D Wright, II

12              Plaintiff,                  Discovery Referred to:
13                                          Magistrate Judge Jacqueline Chooljian
       v.
14
                                           **PUTATIVE JOHN DOE'S RESPONSE**
15   JOHN DOE,                              **TO ORDER TO SHOW CAUSE RE**
16                                          **SANCTIONS FOR RULE 11 AND**
                Defendant.                  **LOCAL RULE 83-3 VIOLATIONS**
17                                          **AND REQUEST FOR RELIEF**
18

19

20

21

22

23

24

25

26

27

28

-1-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 12**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... 2

I. INTRODUCTION AND SUMMARY ................................................................. 4

II. FACTUAL AND PROCEDURAL BACKGROUND ......................................... 6

    (a) Procedural History of Prenda's Related AF Holdings and Ingenuity 13 Cases in the Central District of California ........................................................ 6

    (b) Factual Background on Prenda's Various Straw Men and Sham Entities ......... 11

        (1) Alan Cooper: John Steele's Former Caretaker; Victim of Identity Theft ........ 11

        (2) Mark Lutz: John Steele's Former Paralegal; Fraudulent Corporate Representative For Hire ......................................................................... 12

        (3) "Salt Marsh" a/k/a Anthony Saltmarsh: John Steele's Sister's Roommate (Boyfriend?) at Arizona Address Linked to Alan Cooper and Other Prenda Shell Entities; New Prenda Straw Man ................................. 13

        (4) The Fraudulent Allen Mooney a/k/a "Alan Moay" a/k/a "Alan Mony" Verification in an Illinois Prenda Case ..................................................... 15

        (5) Collusion Between Prenda and the "Defendant" in Minnesota Case ........... 17

        (6) Recent Rebranding of Prenda Law and Mr. Gibbs' New Career as "In House Counsel" for Various Prenda Shell Entities ................................. 17

        (7) Paul Duffy, John Steele and Paul Hansemier – Other Attorneys Who Share Responsibility with Mr. Gibbs for Overseeing Prenda's Fraudulent Litigation Scheme ................................................................. 18

III. ARGUMENT ................................................................................................... 21

    (a) All of Prenda's Cases Before this Court are "Sham" Lawsuits Exempted from the Protections of the *Noerr-Pennington* Doctrine ........................................... 21

        (1) The "Sham" Lawsuit Exceptions to the *Noerr-Pennington* Doctrine ............ 21

        (2) Intentional Use of Forged Copyright Assignment Agreements in the AF Holdings Cases Deprive These Cases of Legitimacy ............................... 23

        (3) The Ingenuity 13 Cases—Indeed, all of Prenda's Cases—Qualify as "Sham" Litigation Because The Cases Are Brought for an Improper Purpose, Without Regard to the Merits .................................................... 24

    (b) Given the Circumstances of These Cases, Prenda Routinely Fails to Comply with its Rule 11(b)(3) Obligations ...................................................................... 25

        (1) Mr. Gibbs' Past Statements on the Rule 11 Implications of These Cases ....... 25

        (2) "Inquiry Reasonable Under the Circumstances" .......................................... 26

        (3) Other Examples of Prenda's Shoddy "Investigation" ................................... 27

        (4) The "Snapshot" Theory of Copyright Infringement ..................................... 27

    (c) There is No Excuse for Violating the Court's Discovery Order ....................... 28

IV. CURSORY REBUTTAL TO MR. GIBBS' OSC RESPONSE ................................... 28

V. RELIEF REQUESTED ........................................................................................ 29

-2-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 13**

    (a)  Substantial Monetary Sanction Against Prenda Law, Inc. in an Amount
        Sufficient to Have a Significant Deterrent Effect on a Repeat Bad Actor ........ 29

    (b)  Award of Attorneys Fees and Costs, as Compensatory Sanction, Payable by Mr.
        Brett Gibbs ................................................................................................ 30

    (c)  Striking of the Complaint With Prejudice, and Specific Factual Findings ........ 32

    (d)  Such Other Relief as the Court Deems Just and Proper .................................... 32

VI. CONCLUSION ............................................................................................... 33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 14**

Case 2:12-cv-08333-ODW-JC   Document 52   Filed 02/19/13   Page 4 of 33   Page ID #:743

"Roman law criminalized *calumnia* (from which we get the word 'calumny'), which meant the support of fraudulent, groundless, or frivolous litigation for profit."[1]

## I. INTRODUCTION AND SUMMARY

Over the last two and a half years, attorneys associated with Prenda Law, Inc.[2] have filed at least 348 lawsuits, against over 16,000 John Doe defendants. *See* Declaration of Morgan E. Pietz re: Prenda Law, Inc., ¶¶ 19–20 (ECF No. 40-1, filed 1/14/2013) ("Dec'l. re: Prenda Law"). According to the self-proclaimed pioneer of Prenda's "copyright troll" business model, attorney John L. Steele, in so doing, Prenda has made "a few million dollars."[3] At best, these lawsuits are all questionable—for all of the reasons previously explained by this Court.

What seems increasingly clear though is that Prenda, and its "of counsel" here, Mr. Brett Gibbs, have crossed the Rubicon in these cases, by resorting to fraud, which includes identity theft, sham offshore shell companies, and forged documents.

The AF Holdings cases are all founded upon forgeries. In each AF Holdings case before this Court, attached as "Exhibit A" to the complaint is a forged copyright assignment agreement supposedly signed by "Alan Cooper." This fact transforms each of these cases into fraudulent, sham litigation, and possibly renders Prenda a criminal conspiracy. Further, as detailed, *infra*, "Alan Cooper" is not the only bogus "client" name Prenda has used in its court filings; it appears there are other straw

---

[1] Anthony J. Seebok, *The Inauthentic Claim*, 64 VAND. L. REV. 61 at p. 75 (2011); *citing* Max Radin, *Maintenance by Champerty*, 24 CAL. L. REV. 48, 59-60 (1936). Vestiges of this sentiment survive in California, in the form of the seldom-enforced criminal prohibition on "barratry". Cal. Pen. Code §§ 158–159.

[2] Prenda Law, Inc. was formerly known as Steele Hansemier, PLLC (a Chicago divorce law firm). Since the name "Prenda" has lately become somewhat toxic, the lawyers behind this scheme are now using several aliases, including: "Anti-Piracy Law Group, LLC" (Prenda's newest successor entity, organized in Illinois); "Alpha Law Firm, LLC" (Mr. Paul Hansemeier's firm, organized in Minnesota) and "Livewire Holdings, LLC" (a newer affiliate listing a business address that is a UPS store with private mailbox and package services in Washington, D.C.).

[3] *See* http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/

-4-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

RJN 15

1  men (with various connections to John Steele) out there. There is new evidence of

2  Prenda submitting a fraudulent and unarguably false "client" verification in a case in

3  Illinois, and disturbing revelations regarding collusion between Prenda and a

4  "defendant" who agreed to stipulate to ISP subpoenas in another case in Minnesota.

5    Aside from the pattern of fraud with respect to every instance where people

6  connected to Prenda's "clients" had to be identified to a court, there is another

7  deeply troubling pattern in this litigation. Mr. Gibbs has repeatedly represented to

8  various courts that, in his view, the mere fact that a person happens to pay the

9  Internet bill is not sufficient, by itself, to establish a good faith factual basis for an

10  allegation that this person is the John Doe defendant in a case like this. Dec'l. re:

11  Prenda Law, ¶¶ 21–22. Mr. Gibbs has previously conceded—indeed, he was

12  specifically warned on this exact point by Jude Seeborg—that under the

13  circumstances of these cases, further "investigation" is required to name somebody

14  in a complaint, to comply with Rule 11(b)(3). *Id.* Contrary to these several

15  representations, and in defiance of specific warnings, in several instances Mr. Gibbs

16  has apparently gone ahead and publicly named people as defendants (or tried to do

17  so), without conducting the requisite objectively reasonable additional investigation.

18  The bad faith inherent in 'shooting first, and identifying targets later,'[4] is

19  substantially compounded given that: (i) these cases are calculated to embarrass

20  (because the content at issue is pornography); (ii) Prenda makes a point of publicly

21  shaming named defendants on its website, as a warning to others; and (iii) most

22  cases are dismissed without prejudice at the first hint of trouble. The whole

23  enterprise borders on bad faith, at the very least. Further, as detailed, *infra*, the

24  Wagar and Denton cases are not the only examples of Prenda's shoddy

25  "investigations"; undersigned counsel is aware of at least three other, similar cases

26

27  [4] *Boy Racer, Inc. v. Does 1-22*, No. 11 C 2984, Slip Op. (N.D. Ill. May 9, 2011) (Shadur,

28  J.) (Court "rejected attorney [John] Steele's effort to shoot first and identify his targets
later," and made clear that suits against a "passel of 'Does'" would not succeed).

-5-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 16**

1   where Mr. Gibbs similarly named a defendant recklessly (or tried to), leaving it to

2   defendants to prove their innocence based on a lax interpretation of Rule 11(b)(3).

3         Finally, there is simply no excuse for violating the Court's orders to cease

4   discovery efforts.  Mr. Gibbs proffered explanation is that he interpreted the Court's

5   OSC staying discovery as allowing continued "informal" discovery.  According to

6   Mr. Gibbs' response to the instant OSC,[5]

7                    "Mr. Gibbs believed and interpreted the October 19, 2012

8                    Orders as only precluding him from engaging in any

9                    formal discovery efforts *such as pressuring the ISPs to*

10                   *respond to the subpoenas* that had been served and

11                   precluding him from serving any additional subpoenas.

12                   (Gibbs Decl. ¶ 20)."  ECF No. 49, at 9:20-22.

13  Yet as confirmed by at least one ISP—AT&T—notwithstanding this representation,

14  Prenda did in fact "pressur[e] the ISPs to respond to the subpoenas" notwithstanding

15  Mr. Gibbs's interpretation of the stay order.  Dec'l. of Bart Huffman; Dec'l. of

16  Camille D. Kerr.[6]  The pressure may have been applied from Mr. Duffy's office in

17  Chicago, but the bottom line is that even under Mr. Gibb's current interpretation of

18  the stay order, is was violated, more than once, in at least one case.  *Id.*

19        **II.  FACTUAL AND PROCEDURAL BACKGROUND**

20  **(a)    Procedural History of Prenda's Related AF Holdings and Ingenuity 13**

21  **        Cases in the Central District of California**

22        On July 2, 2012, Mr. Brett Gibbs, who lists himself on the pleadings as "of

23  Counsel" to Prenda Law, Inc.,[7] began filing multiple actions in the Central District

---

[5] Undersigned counsel had about an hour to review Mr. Gibbs response to the OSC prior to filing this document.

[6] Concurrently filed herewith.

[7] In reality, Mr. Gibbs appears act as a functional Chief Operating Officer for Prenda Law.  There is evidence that Mr. Gibbs hires Prenda's "local counsel." Dec'l. re: Prenda Law, Exhibit L, p.

-6-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS**
**FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

RJN 17

1    of California on behalf of AF Holdings, LLC and Ingenuity 13, LLC.  By September

2    of 2012, the grand total was 45 cases filed by Mr. Gibbs on behalf of these two

3    entities, each against a single "John Doe" defendant identified only by IP address.

4         All of the AF Holdings cases in this district were transferred to Judge Wright

5    as related cases, pursuant to Section 3.1 of General Order 08-05, on October 4, 2012.

6    *AF Holdings, LLC v. John Doe*, 12-cv-5709-ODW, ECF No. 7, 10/4/12.  Shortly

7    thereafter, Judge Wright issued an Order to Show Cause in the related AF Holdings

8    cases. *AF Holdings, LLC v. John Doe*, 12-cv-5709-ODW, ECF No. 9, 10/19/12 (the

9    "**AF Holdings OSC re: Early Discovery**").  The order required Prenda to explain

10   "how it would proceed to uncover the identity of the actual infringer once it has

11   obtained subscriber information—given that the actual infringer may be a person

12   entirely unrelated to the subscriber—while also considering how to minimize

13   harassment and embarrassment of innocent citizens." *AF Holdings OSC re: Early*

14   *Discovery*, pp. 2-3 (emphasis added).  Plaintiff submitted a response on November

15   1, 2012, which did not go into great detail.

16        On November 28, 2012, after being engaged by the client just before the

17   subpoena return deadline, undersigned counsel, on behalf of the putative John Doe

18   defendant in *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, filed an ex

19   parte application for a stay of the subpoena return date. ECF No. 13. This ex parte

20   application was granted, *nunc pro tunc*, by Magistrate Judge Walsh on December 3,

21

22

23   132:23–24; 134:9–10; 138:15–17 (Prenda's former local counsel in Florida, while being
24   questioned by Judge Scriven of Florida, states "Well, Mr. Gibbs apparently is a principal at Prenda
     Law, to my understanding").  There is also evidence that Mr. Gibbs' email address
25   "blgibbs@wefightpiracy.com" is used as the email of record on Prenda pleadings all over the
     country.  Dec'l. re: Prenda Law, ¶ 12, Exhibit C (pleading filed in Nebraska by local counsel there,
26   but using "blgibbs@wefightpiracy.com" as the email address for counsel of record).

27   *See* Dec'l. of Morgan E. Pietz re: Prenda Law, Inc. ¶¶ 8, 12, Exhibit N, p. 132, li. 23-24.  (All
28   page references to the Exhibits to the Dec'l. of Morgan E. Pietz re: Prenda Law, Inc. are to the
     continuous pagination on the bottom right).

-7-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 18**

Case 2:12-cv-08333-ODW-JC   Document 52   Filed 02/19/13   Page 8 of 33   Page ID #:747

1   2013, extending the subpoena return deadline in 12-cv-8333 until December 29,
2   2012. ECF No. 16.
3       On December 3, 2012, undersigned counsel filed a Notice of Related Cases
4   identifying the multiple Ingenuity 13 cases filed by Prenda in this district as related
5   to the AF Holdings cases already assigned to Judge Wright. *AF Holdings, LLC v.*
6   *John Doe*, 12-cv-5709-ODW, ECF No. 11.   This notice pointed out a number of
7   similarities between the Ingenuity 13 and AF Holdings cases, and also mentioned,
8   for the first time, the evidence suggesting a possible misappropriation of the identity
9   of one Alan Cooper of Minnesota. *Id.*  Shortly thereafter, undersigned counsel, on
10  behalf of a different client in the Northern District of California, also filed a similar
11  "administrative motion to relate cases" in the AF Holdings and Ingenuity 13 cases in
12  the Northern District. *See AF Holdings, LLC v. John Doe*, N.D. Cal. No. 4:12-cv-
13  02049-PJH, ECF No. 40, 12/13/12.
14      On December 17, 2012, Mr. Gibbs filed three sanctions motions against
15  undersigned counsel.  One sanctions motion was filed here in 12-cv-8333, at ECF
16  No. 22.  Another sanctions motion was filed here in 12-cv-5709 at ECF No. 15,
17  which was somewhat inexplicable given that undersigned counsel had not appeared
18  in that action (other than to file the Notice of Related Cases).  Stranger still, in the
19  Northern District, a sanctions motion was filed in the low-numbered case, 4:12-cv-
20  2049-PJH at ECF No. 42, not in the case where undersigned counsel had actually
21  appeared on behalf of a client (i.e., in *Ingenuity 13, LLC v. John Doe*, N.D. Cal. No.
22  3:12-cv-4976-JSW).  Notably, none of these sanctions motions asserted that any of
23  the allegations about Alan Cooper were incorrect.  Plaintiff's arguments (that
24  attempting to relate cases together for coordination constituted a vexatious
25  multiplication of legal proceedings) were frivolous, and all of the sanctions motions
26  were denied.
27      On December 18, 2012, undersigned counsel, on behalf of the putative John
28  Doe defendant in *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, filed a

-8-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 19**

1  second ex parte application seeking a further stay of the subpoena return date, and
2  also seeking leave to propound limited early discovery to explore the apparent Alan
3  Cooper fraud.  ECF No. 23.

4     On December 19, 2012, all of the Ingenuity 13 cases pending in the Central
5  District were also transferred to Judge Wright as related cases, per General Order
6  08-05. *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, ECF No. 24.

7     On December 20, 2012, the Court issued minute orders in each of the
8  Ingenuity 13 cases that essentially adopted in the Ingenuity 13 cases the procedure
9  already put in place in the *AF Holdings OSC re: Early Discovery*.  Prior orders
10 authorizing subpoenas were vacated, and Mr. Gibbs was ordered to do further
11 explain how a list of ISP subscribers would be used to identify actual infringing
12 John Doe defendants, prior to being given the keys to discovery. *See Ingenuity 13,*
13 *LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, ECF No. 28, 12/20/12.

14    Also on December 20, 2012, for some of the older AF Holdings cases, which
15 had been filed over 120-days earlier, the Court issued an Order to Show Cause re:
16 Lack of Service. *AF Holdings, LLC v. John Doe*, 12-cv-5709-ODW, ECF No. 16.
17 Plaintiff responded to this order on the Rule 4(m) issue in at least a few of the cases,
18 on December 27, 2012. *See, e.g., id.* at ECF No. 18.

19    On December 26, 2012, the Court granted undersigned's ex parte application
20 (ECF No. 23) seeking leave to propound limited written discovery exploring the
21 Alan Cooper issue.  ECF No. 32.  That order set a 14-day window in which to
22 propound the requested written discovery. *Id.*

23    On December 31, 2012, plaintiff filed disqualification motions in most (if not
24 all) of the related cases pending before Judge Wright. *E.g., Ingenuity 13*, No. 12-cv-
25 8333 at ECF No. 37.  Undersigned counsel filed a comprehensive reply to the
26 disqualification motion on January 14, 2013.  ECF No. 40.  On January 15, 2013, the
27 disqualification motion was denied by Judge Fitzgerald.

28

-9-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS**
**FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 20**

1    On January 4, 2013, undersigned counsel did indeed serve, via overnight mail,
2  the Court-authorized written discovery delving into the Alan Cooper issue.
3  Supplemental Dec'l. of Morgan E. Pietz ("Supp. Dec'l.") ¶ 6.
4    About a week before the Alan Cooper discovery responses were due in the 12-
5  cv-8333 action, on the evening of January 28, 2013, Mr. Gibbs began voluntarily
6  dismissing all of the related AF Holdings and Ingenuity 13 cases in the Central
7  District of California—all without prejudice.
8    Mr. Gibbs wrote undersigned counsel on January 29, 2013 stating "I will be
9  entering my notice of withdrawal as counsel of record for Ingenuity13 and AF
10  Holdings in all cases filed in California.  Mr. Paul Duffy will be substituting in as
11  counsel." Exhibit P.  Subsequent to the email from Mr. Gibbs, Mr. Duffy did
12  substitute in as counsel in most of the Northern District of California AF Holdings
13  and Ingenuity 13 cases.  Paul Duffy has previously represented himself to a Florida
14  court as Prenda's "sole principal." On February 6, 2013, Paul Duffy initiated an
15  attempt to meet and confer about this case, the 12-cv-8333 action, by sending an
16  email to undersigned counsel requesting to meet and confer about this case. *Id.*
17  Undersigned counsel and Mr. Duffy mutually agreed to have a meet and confer
18  telephone conference about this case (as well as about a few other matters) set for
19  11:30 a.m. on February 8, 2013. *Id.*
20    Around 8:30 a.m. on February 8, 2013, the Court entered the instant Order to
21  Show Cause re Sanctions on the ECF docket (ECF No. 48, dated February 7, 2013).
22  Mr. Duffy did not answer the phone when undersigned counsel attempted to call
23  him, as mutually agreed, at 11:30 a.m. on February 8.  Instead, starting on the
24  afternoon on February 8, 2013, Mr. Duffy began dismissing the final cases left,
25  mainly in the Northern District of California, which Prenda had filed on behalf of
26  AF Holdings and Ingenuity 13.  (The Central District cases were mostly dismissed
27  on January 28 and 29, 2013).  As of the date hereof, every case in California that
28  Prenda could dismiss voluntarily, without paying prevailing party attorneys fees (in

-10-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 21**

1   other words, all cases except the ones where a defendant had answered), has now

2   been dismissed.  Further, according to a PACER search conducted February 11,

3   2013, most, but not quite all, of the AF Holdings and Ingenuity 13 cases have now

4   been dismissed nationally, presumably most, if not all of them, without prejudice.

5   **(b)    Factual Background on Prenda's Various Straw Men and Sham Entities**

6       (1)    Alan Cooper: John Steele's Former Caretaker; Victim of Identity Theft

7           Most of the facts relating to Alan Cooper have already been explained, most

8   comprehensively in the Dec'l. re: Prenda Law submitted in support of the opposition

9   to the disqualification motion (ECF No. 40-1, at ¶¶ 29–42).

10          However, there are two new developments worth reporting: first, Alan

11  Cooper, through his attorney Paul Godfread, has filed a civil lawsuit against John

12  Steele, Prenda Law, and others alleging misappropriation of his identity. Exhibit Q.

13  Second, at a 30(b)(6) deposition of AF Holdings conducted by undersigned counsel

14  on February 19, 2013, a designated representative for AF Holdings blamed any

15  potential problems with the "Alan Cooper" signature on John Steele.[8]  According to

16  AF Holdings 30(b)(6) deponent Paul Hansemeier, AF Holdings' sole manager and

17  sole employee Mark Lutz directed John Steele (Mr. Lutz's former boss at Steele

18  Hanemeier PLLC) to obtain the signature, and Mr. Steele returned a signed

19  document.

20          Prenda's unilateral, voluntary dismissal of this action, just prior to the

21  deadline for a response on the Alan Cooper-focused written discovery, is another

22  fact pointing to potential fraud, rather than some kind of benign coincidence

23  involving a second "Alan Cooper." Mr. Gibbs' response to the instant OSC says that

24  the complaint is not based on an invalid *copyright assignment*.  Notably though, the

25  response does *not* deny that AF Holdings cases are based on a *forgery*.

26

27

28  [8] Given that this deposition was conducted earlier today, in San Francisco, no transcript is yet available.

-11-

**RJN 22**

  (2) <u>Mark Lutz: John Steele's Former Paralegal; Fraudulent Corporate</u>
     <u>Representative For Hire</u>

  The episode where Prenda attempted to perpetrate a fraud on the court, in *Sunlust Pictures, Inc. v. Tuan Nguyen*, M.D. Fl. Case No. 8:12-CV-1685-T-35MAP, by holding out John Steele's former paralegal, Mark Lutz, as a principal of Prenda's "client" has also been previously explained. Dec'l. re: Prenda Law ¶¶ 39–40, <u>Exhibit</u> <u>N</u> (transcript of hearing where Judge Scriven invites sanctions motion for attempted fraud on the Court).

  However, there are new developments *Sunlust* case—more fraud.  In an attempt to minimize and explain away the first attempted fraud on the Court and oppose a John Doe sanctions motion, Prenda apparently submitted what appears to be a fraudulent declaration to the Court.  Specifically, Prenda tried to explain the absence of a true principal for the client, Sunlust Pictures, at the November 27 hearing by submitting a declaration explaining that the company's true principal, "Daniel Webber" was out of the country at the time of the hearing. *Sunlust Pictures, Inc. v. Tuan Nguyen*, M.D. Fl. Case No. 8:12-CV-1685-T-35MAP at ECF No. 40-2, ¶ 5, 12/20/12 (original, sworn affidavit of "Daniel Webber" stating he was in India on November 27, 2012). As defense counsel in *Sunlust* immediately pointed out, there were two big problems with this story: first, Daniel Weber spells his name with one 'b,' not two, and, second, his Twitter feed places him in Los Angeles, not India, on November 27, 2012.  *Id.* at ECF No. 46 (defendants second motions for sanctions).  Accordingly, after being notified of these inconsistencies by defense counsel, on December 26, 2012, Prenda, through outside counsel specializing in white collar criminal deense, filed a purported "corrected" version of the Daniel Weber declaration, this time spelling Mr. Weber's name correctly, and, more importantly, changing the key fact that he had actually been in Los Angeles on November 27, 2011, not India. *Id.* at ECF No. 44-1, ¶ 5 ("corrected" affidavit stating that "Daniel Webber" was actually in Los Angeles on November 27, 2012).

-12-

1    In short, Prenda has shown in *Sunlust* that when accused of fraud, it attempted

2 to explain its actions and avoid responsibility by making further (supposedly

3 inadvertent) misrepresentations.

4    (3)    "Salt Marsh" a/k/a Anthony Saltmarsh: John Steele's Sister's

5    Roommate (Boyfriend?) at Arizona Address Linked to Alan Cooper

6    and Other Prenda Shell Entities; New Prenda Straw Man

7    A closer and more sustained review of various past Prenda court filings has

8 revealed new facts suggesting that "Alan Cooper" is not the only straw man Prenda

9 has used, when pressed to identify individuals associated with Prenda's various

10 sham entities. Just as Alan Cooper was John Steele's former caretaker, and Mark

11 Lutz was John Steele's former paralegal, another purported "client" representative

12 with a personal connection to John Steele has also recently been discovered.  In

13 various filings in the Northern District of California, when pressed to identify a

14 client contact on an ADR Certification, Prenda identified a person named "Salt

15 Marsh" as the "AF Holdings Owner." *E.g., AF Holdings v. John Doe*, N.D. Cal. No.

16 12-cv-2396-EMC, ECF No. 8, 7/20/12.[9]  Exhibit R.

17    After the "Alan Cooper" revelations resulted in newfound scrutiny of Prenda

18 "client" contacts, Nicholas Ranallo, an attorney in Northern California did some

19 digging on "Salt Marsh," since that seems like a made up name.  Mr. Ranallo

20 recently summarized his findings in a declaration.  Exhibit S ("Ranallo Dec'l.").

21 This declaration by Mr. Ranallo was filed on February 11, 2013, in opposition to

22 Prenda's emergency motion to stay a pending 30(b)(6) deposition of AF Holdings.

23 The stay was denied, and the 30(b)(6) deposition of AF Holdings is currently set to

24

25

26

27

28

---

[9] A similar ADR Certification, which is mandated in the Northern District of California by Local Rule 16-8(b), was filed in most if not all Prenda cases in the Northern District of California that progressed so far as service of process on a named defendant.  However, per Mr. Ranallo, in Prenda's most recent ADR Certification, the new client

-13-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

RJN 24

1   occur on February 19, 2013.[10]  This N.D. Cal. AF Holdings case, which is one where

2   the defendant responded to the complaint, is one of the very few AF Holdings or

3   Ingenuity 13 cases now left anywhere in the country.

4          Without going into all of the details, which are contained in the Ranallo

5   declaration, suffice it to say that although "Salt Marsh" appears to be a bogus name,

6   but there *is* a man named Anthony Saltmarsh, who has apparently shared several

7   residences with John Steele's Sister, Jayme C. Steele. Presumably then, the reputed

8   owner of AF Holdings, "Salt Marsh" is actually Anthony Saltmarsh, who is the live-

9   in boyfriend of John Steele's sister Jayme.

10          Further, a residential address in Phoenix apparently co-occupied by Anthony

11   Saltmarsh and Jayme Steele has also been linked to several Prenda straw men and

12   sham entities, including Alan Cooper. Ranallo Dec'l. ¶¶ 8–14.  Prenda previously

13   represented VPR Internationale in various copyright infringement suits.  Dec'l. re:

14   Prenda Law, ¶ 11.  According to the Nevada Secretary of State, all officer positions

15   at VPR Inc. are held by "Alan Cooper," and the address given for Mr. Cooper in

16   each instance is 4532 East Villa Theresa Drive, Phoenix, AZ 85032. Ranallo Dec'l,

17   "Exhibit D."  Similarly, an Internet search of that same address revealed what

18   appears to be an archived WHOIS record for an Internet domain name registration of

19   <notissues.com> which lists "Alan Cooper" as the registrant, technical contact, and

20   administrative contact, but using johnlsteele@gmail.com as the email address of

21   record, and 4532 East Villa Theresa Drive, Phoneix, AZ 85032 as the mailing

22   address of record.  Exhbit T.  According to public database searches on Anthony

23   Saltmarsh and Jayme Steele, both of them resided at 4532 East Villa Theresa Drive,

24   Phoenix, AZ 85032.

25

26   ───────────────

27   [10] Undersigned counsel recently appeared as co-counsel with Mr. Ranallo, in connection with the
     scheduled AF Holdings 30(b)(6) deposition.  *See* AF Holdings v. John Doe, N.D. Cal. No. 12-cv-
28   2396-EMC, ECF No. 58, 2/14/13.

-14-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

| | |
|---|---|
| 1 | In short, it appears that Prenda/John Steele has used his sister's house as a |
| 2 | front for Prenda's litigation activities.  The name "Alan Cooper," at least one Prenda |
| 3 | sham entity, VPR, Inc., and John Steele's personal email account are all linked to |
| 4 | this address.  Further, it appears that John Steele has used his sister's apparent live- |
| 5 | in boyfriend Anthony Saltmarsh, or a misleading twist on his name (i.e., "Salt |
| 6 | Marsh") as the newest Prenda straw man. |

7      (4)    <u>The Fraudulent Allen Mooney a/k/a "Alan Moay" a/k/a "Alan Mony"</u>

8              <u>Verification in an Illinois Prenda Case</u>

| | |
|---|---|
| 9 | A few days before the Alan Cooper revelations came to light, and just the |
| 10 | *Sunlust* hearing where the attempted fraud on the court occurred, Prenda file a |
| 11 | verified petition for presuit discovery in St. Clair County, Illinois on behalf of |
| 12 | "Guava, LLC," another offshore shell company.  *Guava, LLC v. Comcst,* Circuit |
| 13 | Court of St. Clair Count, Illinois, No. 12-MR-417. This petition, (like a more |
| 14 | expansive version of a federal Rule 27 petition) invokes a rule of Illinois state |
| 15 | procedure to seek leave to subpoena IP address records from 330 Internet users, was |
| 16 | required to be verified by rule, and is purportedly verified by "Alan Moay."  <u>Exhibit</u> |
| 17 | <u>U</u>.  The petition also asserted, as a verified fact, that "venue is proper because at |
| 18 | least one of the Doe defendants resides in St. Clair County, Illinois.  Further, |
| 19 | Comcast transacts business in St. Clair County, Illinois." |
| 20 | Defense counsel in that case, including the undersigned, ultimately picked up |
| 21 | on two problems with this petition: first, the verification is suspicious because "Alan |
| 22 | Moay" is a bogus name; there is no record of any such person with that name |
| 23 | existing in the United States.  There are also other suspicious elements of the |
| 24 | verification: although it purports to be notarized, there is no notary name, seal or |
| 25 | registration number, and the font on the verification is different than the font on the |
| 26 | petition itself.  Second, after Comcast ran the records through it database, it was |
| 27 | ultimately revealed that not a single one of the 330 IP addresses at issue were |
| 28 | actually linked to St. Clair County.  This is because Comcast does not do business |

-15-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

1  there; Charter is the local franchised cable operator.  The suit was brought in St.

2  Clair county, on the basis of demonstrably false venue and jurisdictional allegations,

3  solely as a matter of forum shopping. Exhibit U, ¶ 6; *see* Exhibit V.

4      When pressed on the bogus affiant "Alan Moay," Prenda changed its story.

5  Prenda's current story (as of 1:00 p.m. on February 18, 2013) is that the verification

6  does not say "Alan Moay" at all; rather, it says "Alan Mony."  The problem with the

7  new story (aside from the fact the verification says Alan Moay) is that "Alan Mony"

8  is also a bogus name.  Exhibit V.

9      However, as noted in the attached reply brief filed recently by undersigned

10 counsel in St. Clair County, the name "Allan Mooney" is a name that has been

11 linked to Prenda previously. *Id.*  According to the Minnesota Secretary of State, a

12 man named "Allan Mooney" was previously listed as the manager of MCGIP, LLC,

13 another shell company plaintiff on whose behalf Prenda has filed various federal

14 lawsuits. *Id.*  The address for "Allan Mooney" on the MCGIP business entity detail

15 was care of Alpha Law Group, LLC, which is the newest firm of Prenda founder

16 Paul Hansemeier. One "Alan Mooney" is also a current client of Alpha Law / Paul

17 Hansemeier, in *Mooney v. Priceline.Com Incorporated et al.*, No. 12-cv- 02731-

18 DWF-JSM (D. Minn. Oct. 26, 2012). *Id.*

19     In short, Prenda appears to have filed yet another bogus verification,[11] this

20 time in state Court in Illinois.  The purported affiant links Prenda's fraudulent

21 activities in Illinois to Mr. Paul Hansemeier of Minnesota, who was the other

22 original founder of Prenda (and whose brother Peter still signs all of the technical

23 declarations for Prenda).

24     In response to this allegation of another fraudulent Prenda verification, Mr.

25 Gibbs retorts that

26

---

27 [11] The original bogus pre-suit discovery verification, purportedly signed by "Alan Cooper," was
28 filed by Mr. Gibbs in *In the Matter of a Petition by Ingenuity 13, LLC*, E.D. Cal. Case No. 11-mc-
0084-JAM-DAD, ECF No. 1.

-16-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 27**

Case 2:12-cv-08333-ODW-JC    Document 52    Filed 02/19/13    Page 17 of 33    Page ID #:756

1       (5)    Collusion Between Prenda and the "Defendant" in Minnesota Case

2       Since Prenda has mainly stopped filing "swarm joinder" suits against multiple

3 Does, given the trouble that theory has run into in federal Courts, it has now resorted

4 to new tactics. One example of the new tactics are the state pre-suit discovery cases,

5 like Guava, LLC v. Comcast, in St. Clair County, discussed above.

6       However, the other new tactic Prenda has employed is to make a back room

7 deal with a John Doe it has previously identified, whereby Prenda agrees not to

8 pursue that person, in exchange for which that person will agree to be named and

9 served, and stipulate to early discovery against a passel of "John Doe" co-

10 conspirators. Apparently, Prenda steers such people (one can imagine Prenda

11 chooses the people who are particularly worried about their cases) to certain

12 lawyers, and these lawyers then agree on behalf of the named lead defendant, to

13 stipulate to far-reaching discovery. Details of this kind of collusion (all in the name

14 of obtaining ISP subscriber information) are explained in the declaration from the

15 attorney for Spencer Merkel in Guava, LLC v. Merkel, a Minnesota suit seeking

16 discovery on Does all over the country. Exhibit W.

17       (6)    Recent Rebranding of Prenda Law and Mr. Gibbs' New Career as "In

18            House Counsel" for Various Prenda Shell Entities

19       Recently, Mr. Gibbs has substituted out of various Prenda cases as counsel of

20 record. Far from washing his hands of his involvement with Prenda though, and

21 trying to start anew, Mr. Gibbs has simply changed hats. Mr. Gibbs has recently

22 purported to be "in house counsel" for at least three different Prenda-related sham

23 entities.[12] This new role for Mr. Gibbs only further supports the Court's suspicion

24 that Mr. Gibbs has a pecuniary interest in the Prenda shell companies.

25

26 [12] According to the February 19, 2013 deposition of AF Holdings' 30(b)(6) deponent, Paul
Hansemeier, the amended substitution of attorney form Mr. Gibbs filed in N.D. Cal. 12-cv-4221, at
27 ECF No. 22 (filed 1/30/13), which identified Mr. Gibbs as "In-House Counsel, AF Holdings,
LLC" is incorrect, and Mr. Gibbs is now, as of two weeks later, not in house counsel to AF
28 Holdings. Incidentally, the same day that Mr. Gibbs filed the amended substitution of counsel in

-17-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 28**

 (7) <u>Paul Duffy, John Steele and Paul Hansemier – Other Attorneys Who Share Responsibility with Mr. Gibbs for Overseeing Prenda's Fraudulent Litigation Scheme</u>

 Mr. Gibbs surely bears a significant amount of responsibility for Prenda's egregious actions, but he has not acted alone—the fraud here is systematic, and part of a conspiracy involving several other lawyers and laypeople.

 Attorney Paul A. Duffy proclaimed himself the "sole principal" of Prenda Law last fall in a letter to the Court in the *Sunlust* case. <u>Exhibit Y</u>. Mr. Duffy is admitted to the State Bar of California[13] (although he primarily practices in Chicago; in addition to California, Mr. Duffy is also admitted Illinois, Massachusetts and Washington, DC)[14], and has appeared as counsel for record for Prenda in various Ingenuity 13 and AF Holdings cases in California. <u>Exhibit Z</u>. Moreover, Mr. Duffy attempted to meet and confer with undersigned counsel about this case, 12-cv-8333, indicating he is involved with this particular litigation now before this Court. <u>Exhibit P</u>.

 Attorney John L. Steele, like Mr. Gibbs, also purports to merely be "of counsel" to Prenda. Dec'l. re: Prenda Law, <u>Exhibit D</u> (Steele's April 20, 2012, entry of appearance as "of counsel" to Prenda in DC case); *but see* <u>Exhibit N</u>, p. 139:5 (Steele tells Judge Scriven on November 27, 2012, "I'm not an attorney with any law firm right now.") *then see* Supp'l Dec'l. ¶ 15 (After appearing at a February 13, 2013, hearing for Guava, LLC, Steele confirmed to several people that he is still

---

that action (1/30/13), he also sent out a letter to several hundred ISP subscribers identified in the St. Clair County Guava, LLC case identifying himself as "In-House Counsel, Guava LLC." <u>Exhibit X</u>. Finally, as noted below, Mr. Gibbs' special counsel in this action has also identified him in the instant OSC response as in-house counsel for Livewire Holdings, LLC, the purported new owner of AF Holdings (note the letterhead used to send out the Guava letter). ECF No. 49, fn 1.

[13] http://members.calbar.ca.gov/fal/Member/Detail/224159

[14] http://www.wefightpiracy.com/paul-duffy.php

-18-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

1    currently "of counsel" to Prenda Law).  However, together with Paul Hansemier,

2    Mr. Steele was the founder of Prenda's predecessor in interest, Steele Hansemier,

3    PLLC.  Morover, as indicated, *supra*, in sections II(b)(1)-(3), Mr. Steele's

4    fingerprints are all over Prenda's various frauds.  Almost every time Prenda has had

5    to identify a person connection to a "client" shell entity, the person Prenda has held

6    out to the world has been a current or former close associate of John Steele.  Mr.

7    Steele indicates on his LinkedIn page that he "sold [his] client book to Prenda Law

8    in 2011," but in reality, Mr. Steele appears to remain heavily involved in Prenda.

9    Exhibit AA.  For example, in the Forbes article (fn 3, *supra*) Mr. Steele brags about

10   Prenda litigation as if he is speaking about himself.  Similarly, many lawyers who

11   deal with Prenda on a regular basis could testify to the fact that inquiries to Prenda

12   are routinely answered by Mr. Steele himself.

13        Attorney Paul L. Hansemeier is also one of the founders of this scheme, and

14   his latest firm, "Alpha Law Firm, LLC," appears to be nothing more than Prenda's

15   newest trade name in Minnesota.[15]  Like Prenda, the "Alpha Law Firm" also

16   represents the shell company "Guava, LLC" in CFAA / BitTorrent litigation. *See*

17   *Guava, LLC v. Spencer Merkel*, Hennepin County, Minnesota District Court No. 27-

18   CV-12-20976, Exhibit BB.  Alpha Law's counsel of record in the Guava case, Mr.

19   Michael Dugas, was a former associate for Prenda Law. Exhibit CC. Admittedly,

20   Mr. Hansemeier has apparently made some attempts to try and distance himself from

21   Mr. Steele, and the Prenda name, at least on paper, by creating a new firm name for

22   himself.  However, the continued involvement of Alpha Law in the Guava litigation,

23   as well as the role Mr. Hansemeier's client Allan Mooney may have played in the

24   bogus verification in the St. Clair County, Illinois Guava case (where Prenda is

25

26

27   [15] At the February 19, 2013 30(b)(6) deposition of AF Holdings, Mr. Hansemeier testified that in
28   cases his Alpha Law Firm settled for AF Holdings, the proceeds were paid and deposited into the
     Prenda trust account, not the Alpha Law Firm trust account.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 30**

1  counsel of record, not Alpha Law) suggests Mr. Hansemeier remains involved
2  behind the scenes.

3        Prenda also uses "local counsel" in many jurisdictions around the country.
4  With the possible exception of the Dugases in Minnesota, who may be involved in
5  management, many of these local attorneys appear to have ended up working with
6  Prenda by answering Craigslist ads, and may not comprehend what they are getting
7  themselves into.  Since Mr. Gibbs is admitted in California, he has been counsel of
8  record in all of Prenda's California cases, since the early days of Steele Hansemeier
9  (excepting Paul Duffy's recent substitution for Mr. Gibbs in a handful of cases in the
10 Northern District of California).

11       In terms of non-attorneys participating in Prenda's scheme, the top of the list
12 would be Paul Hansemeier's brother Peter Hansemeier, who has been Prenda's
13 "technical" expert since the early days of Steele Hansemeier.  Close behind Peter
14 Hansemeier would be Mark Lutz, a man who wears many hats for Prenda.  In
15 addition to being Mr. Steele's former paralegal, Mr. Lutz is a seasoned telephone
16 solicitor who helps pressure John Doe defendants into settling, and he is also
17 apparently a fraudulent corporate representative for hire, who is Prenda's go-to
18 person to identify as a "client" contact in initial disclosures. On its website, Mr. Lutz
19 is currently listed as a founder of Livewire Holdings, LLC, Prenda's newest affiliate,
20 which has an office at a UPS Store in Washington, DC.  Also possibly involved in
21 this scheme, but to an unknown degree would be John Steele's sister Jayme C.
22 Steele, her co-habitant (boyfriend?) Anthony Saltmarsh, and Allan Mooney (Paul
23 Hansemier's client) who is perhaps the "Alan Mony" currently reputed to be the
24 principal of Guava, LLC.

25       In short, Mr. Gibbs has had lots of help in defrauding this Court; several other
26 attorneys and laypeople connected to Prenda Law are also culpable.

27
28

-20-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 31**

### III. ARGUMENT

(a)    **All of Prenda's Cases Before this Court are "Sham" Lawsuits Exempted from the Protections of the *Noerr-Pennington* Doctrine**

If Prenda had an explanation for the "Alan Cooper" situation, other than intentional fraud, it would have come out by now.  Rather than rehash the documentary evidence on a factual issue that will be addressed at the March 11 hearing, this section instead addresses the legal ramifications that flow from confirmation of the Prenda's fraud.

One important consequence of confirming that Prenda misappropriated Alan Cooper's identity would be that Prenda and the lawyers associated with it would lose any potential tort immunity under the *Noerr-Pennington* doctrine.[16]  Further, even without forged documents in the copyright chain of title, Prenda's cases still qualify as "sham" lawsuits.

(1)    The "Sham" Lawsuit Exceptions to the *Noerr-Pennington* Doctrine

Often, plaintiffs can escape tort liability for filing questionable lawsuits by relying on protections of the *Noerr-Pennington* doctrine, which is the federal counterpart to state law litigation privileges.  Essentially, the *Noerr-Pennington* doctrine protects litigants from retaliatory countersuits when they are using the courts to petition or influence the government (including by filing lawsuits), because such activity is protected under the Petition Clause of the First Amendment to the U.S. Constitution. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657 (1965).

However, there is a general exception to the Noerr-Pennington doctrine for "sham" lawsuits. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 511 (1972).  In an appeal from a Ninth Circuit copyright infringement

---

[16] This pre-assumes that the Noerr Pennington doctrine, which was originally aimed at antitrust injury, is applicable to lawsuits seeking redress for copyright infringement.

-21-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

1  case, the U.S. Supreme Court established a two-part test for sham lawsuits. *Prof'l*

2  *Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49 (1993).  First, a sham

3  lawsuit is one that is so "objectively baseless" that "no reasonable litigant could

4  realistically expect success on the merits." *Id.* at 60.  If the first part of the test is

5  met, courts should then examine the plaintiff's subjective motivation, and in so

6  doing, "the court should focus on whether the baseless suit conceals 'an attempt to

7  interfere directly' with the business relationships of a competitor." *Id.*

8      Since *Prof'l Real Estate*, the "sham" lawsuit exception to the *Noerr-*

9  *Pennington* doctrine has been extended beyond "objectively baseless" lawsuits to

10  include fraudulent lawsuits.  Although the U.S. Supreme Court has not explicitly

11  reached the fraud exception to the *Noerr-Pennington* doctrine, it did leave open the

12  possibility for such a rule (seemingly on purpose) in *Prof'l Real Estate*. *Id.* at fn 6

13  (the Court "need not decide here whether and, if so, to what extent Noerr permits the

14  imposition of antitrust liability for a litigants fraud or other misrepresentations.")

15  Several Courts of Appeal,[17] including the Ninth Circuit, have picked up on this

16  *dicta*, and explicitly endorsed a fraudulent litigation exception to the *Noerr-*

17  *Pennington* doctrine.  In *Kottle v. Northwest Kidney Ctrs.*, 146 F. 3d 1056, 1060 (9th

18  Cir. 1998) the Ninth Circuit explained that where the litigation behavior at issue

19  "consists of making intentional misrepresentations to the court, litigation can be a

20  sham if 'a party's knowing fraud upon, or its intentional misrepresentations to, the

21  court deprive the litigation of its legitimacy." *Id. quoting Liberty Lake Inv., Inc. v.*

22  *Magnuson*, 12 F.3d 155, 158 (9th Cir. 1993); *see also Clipper Exxpress v. Rocky*

23  *Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1260 (9th Cir. 1980).

24      In *Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552 F. 3d

25  1033 (9th Cir. 2009), the Ninth Circuit further explained that there are essentially

26

27  [17] *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F. 3d 834, 842 (7th Cir. 2011); *Whelan v. Abell*, 48 F. 3d 1247, 1254-55 (D.C. Cir. 1995); *Potters Medical Center v. City Hosp. Ass'n.*, 800

28  F.2d 568, 580 (6th Cir. 1986); *Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*, 756 F.2d 986, 994 (4th Cir. 1985); *Israel v. Baxter Labs., Inc.*, 466 F.2d 272, 278 (D.C. Cir. 1972)

-22-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS**
**FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

Case 2:12-cv-08333-ODW-JC   Document 52   Filed 02/19/13   Page 23 of 33   Page ID #:762

1    three different kinds of "sham" lawsuits that are not immunized by *Noerr-*
2    *Pennington*: (i) "where the lawsuit is objectively baseless and the defendant's motive
3    in bringing it was unlawful"; (ii) "where the conduct involves a series of lawsuits
4    brought pursuant to a policy of starting legal proceedings without regard to the
5    merits and for an unlawful purpose,"; and (iii) "if the allegedly unlawful conduct
6    consists of making intentional misrepresentations to the court, litigation can be
7    deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations
8    to, the court deprive the litigation of its legitimacy." *Id.* at 1045; *quoting Sosa v.*
9    *DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (citations and internal quotation
10   marks omitted).

11            (2)    Intentional Use of Forged Copyright Assignment Agreements in the AF
12                   Holdings Cases Deprive These Cases of Legitimacy

13           The AF Holdings cases before this Court are the most obvious "sham"
14   lawsuits, because each case is founded upon a forged copyright assignment
15   agreement, purportedly executed for AF Holdings by "Alan Cooper."[18]  In each AF
16   Holdings case, Prenda's standing and ability to bring the suit in the first place is
17   essentially void *ab initio*.  If Mr. Gibbs argues that he did not know the document
18   was forged when he signed the complaint that does not get him or Prenda off the
19   hook; someone at Prenda (*i.e.*, the person who forged Alan Cooper's signature) was
20   attempting to deceive the Court.[19]  In short, with respect to the forged copyright

21   ────────────────────────────────────
22   [18] The Ingenuity 13 cases instead attach a Copyright Office printout indicating that the movies at
     issue were works made for hire for Ingenuity 13, LLC.  *See, e.g., Ingenuity 13, LLC v. John Doe*,
23   C.D. Cal. No. 12-cv-8333, ECF No. 1, p. 14.

24   [19] The motive for all of Prenda's fraud appears to be an attempt to hide the fact that Prenda and/or
25   the lawyers associated with it have essentially become their own clients, by taking a direct
     pecuniary interest in the outcome of the litigation, through the use of the offshore shell companies.
26   That motive means that the failure to identify the Prenda lawyers as people with a pecuniary
     interest in the outcome of the litigation in accord with Local Rule 7.1-1 would also be separately
27   sanctionable, per L.R. 83-3. *See, Righthaven, LLC v. Democractic Underground, LLC*, D. Nev.
     No. 10-cv-1356, ECF No. 137, 7/15/11 (imposing $5,000 monetary sanction for failure to disclose
28   party with pecuniary interest in litigation per Local Rule 7.1).
                                              -23-
     **PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS**
     **FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 34**

1  assignment agreements, Prenda's fraud was intentional, and it goes straight to the

2  heart of the legitimacy of each of the AF Holdings cases, all of which are rendered

3  "sham" lawsuits by the forgery. *See Kaiser Foundation, supra*, 552 F. 3d at 1045;

4  *Sosa*, 437 F.3d at 938; *Kottle*, 146 F. 3d at 1060.

5       (3)   The Ingenuity 13 Cases—Indeed, all of Prenda's Cases—Qualify as

6               "Sham" Litigation Because The Cases Are Brought for an Improper

7               Purpose, Without Regard to the Merits

8       The following definition of the second kind of fraudulent "sham" lawsuit

9  perfectly describes Prenda's entire business model: "a series of lawsuits brought

10  pursuant to a policy of starting legal proceedings without regard to the merits and for

11  an unlawful purpose." *See Kaiser Foundation, supra*, 552 F. 3d at 1045.

12       Imagine for a moment what might constitute hard proof of a "policy" of

13  "starting legal proceedings without regard to the merits." In considering this

14  question, the Court need look no farther than Exhibit F to the Dec'l. re: Prenda Law,

15  which is the status report filed by Mr. Gibbs on February 24, 2012, admitting that

16  during the previous year and a half, he and Prenda had filed 118 mass-defendant

17  copyright infringement lawsuits, against 15,878 John Does, but not a single

18  defendant had ever been served in any of these cases.

19       The same pattern has held in the single-defendant cases filed by Prenda. Over

20  and over again, the record has shown that if Prenda cannot get a default judgment,

21  and a John Doe starts to effectively stick up for him or herself, or if a Court takes an

22  active role overseeing the cases, Prenda simply unilaterally dismisses the case,

23  without prejudice. That was exactly what happened in each of the Ingenuity 13 and

24  AF Holdings cases pending in this district.

25       As for Prenda's unlawful purpose, that would be profit through extortion and

26  intimidation. These cases are not really about vindicating copyright rights. Rather,

27  they are about using the threat of statutory damages, and (where they can get away

28  with it) the Court's subpoena power, to leverage Internet users into paying quick

-24-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

1   settlements, upon threat of grave public embarrassment.  That Prenda's scheme is

2   unlawful, and not merely improper is further confirmed by California's criminal

3   prohibition on barratry, which makes unlawful the stirring up of three or more

4   actions "with a corrupt or malicious intent to vex and annoy." Cal. Pen. Code §§

5   158–59.

6       In sum, all of Prenda's lawsuits in this district are "sham" litigation within the

7   meaning of the fraud exceptions to the *Noerr-Pennington* doctrine.

8   **(b)    Given the Circumstances of These Cases, Prenda Routinely Fails to**

9   **Comply with its Rule 11(b)(3) Obligations**

10      The role Rule 11 standards should play in cases like these with respect to

11  investigation of claims, good faith factual allegations, and borderline legal

12  arguments, has been an underexplored topic in BitTorrent cases.

13      (1)    Mr. Gibbs' Past Statements on the Rule 11 Implications of These Cases

14      A litigant other than Mr. Gibbs could perhaps make an argument (though not

15  a convincing one) that merely paying the Internet bill for a household is enough, by

16  itself, to justify naming and serving that person as a defendant in a case like this.

17  However, Mr. Gibbs should not now be heard to make such an argument, because he

18  knows better—Mr. Gibbs has gone on record with his view about this issue, multiple

19  times, in prior court filings.

20      As further detailed in the Dec'l. re: Prenda Law, ¶¶ 21-22, on at least four

21  separate occasions, Mr. Gibbs has addressed this Rule 11 issue with various other

22  courts.  Mr. Gibbs has confidently assured the courts that, in his view, additional

23  investigation beyond the ISP subpoena is *required* in order to have a good faith basis

24  to allege that an Internet user is a defendant in a case like this.  When Prenda is

25  seeking to obtain extensions of a Rule 4(m) deadline, and trying to explain to

26  suspicious Judges why no John Doe defendants have been named and served, this

27  has been the answer: 'Nobody has yet been served, because Prenda needed to do

28

-25-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS**
**FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

RJN 36

1    more investigation of the ISP subscribers identified in the subpoena return in order
2    to have a good faith basis to name and serve them.'

3          If and to the extent that Mr. Gibbs now reverses course and suggests that the
4    subpoena return itself is sufficient, under Rule 11(b)(3) to justify signing a
5    complaint naming someone as a defendant, he should be judicially estopped from
6    making the argument, because it directly contradicts his prior stance on this issue.

7          (2)   "Inquiry Reasonable Under the Circumstances"
8          In considering the objective reasonableness of Prenda's additional
9    "investigation" of Mr. Wagar and Mr. Denton which led to Mr. Gibbs signing a
10   pleading naming them as defendants, several "circumstances" should be considered.

11         First, Prenda's lawsuits are calculated to embarrass, because they all involve
12   allegations of illegally downloading pornography.  Given the salacious content, and
13   the fact that in a case like this, the embarrassing allegations can turn a person with
14   meritorious defenses into an immediate loser, Prenda (and similar pornography
15   plaintiffs) should have a heightened duty under this rule.  That is, under the
16   circumstances of these cases, with their propensity to embarrass, the investigation
17   required to name someone as a defendant should be a little higher than in cases
18   involving more mundane content.  Because the stakes for the defendant are higher,
19   so should they be higher for the plaintiff as well.[20]

20         Second, Prenda's routine practice of publicly shaming the people it "names"
21   on its website is another circumstance that should be taken into account when
22   evaluating the objective reasonableness of Mr. Gibb's conduct here.  Similarly,
23   third, Prenda's routine practice of dismissing most of its cases without prejudice at
24   the first hint of trouble, is another circumstance that should be taken into
25   consideration.

26
27   [20] If Prenda objects to being held to a higher pleading standard based on the content of the
     copyrighted works at issue, then it could simply seek leave to name people under seal, or subject to
28   a protective order guarding against public disclosure (Prenda never does this) which is another way
     to mitigate the harm.

-26-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

RJN 37

1    Fourth, Prenda has hundreds of these lawsuits against tens of thousands of

2  defendants; as a professional BitTorrent copyright infringement litigant, a higher

3  degree of factual certainty and investigation can and should be required of Prenda

4  than might be asked of other litigants.

5    Taken together, all four of these circumstances militate in favor of a finding

6  that Mr. Gibb's factual investigation in the Wagar and Denton cases was objectively

7  unreasonable.

8    (3)   Other Examples of Prenda's Shoddy "Investigation"

9    Notwithstanding his several representations to various Courts, and the specific

10 warning on this issue from Judge Seeborg, Mr. Gibbs has repeatedly relied on

11 shoddy, objectively unreasonable investigations in order to try and name people in

12 complaints.  Mr. Wagar and Mr. Denton are not alone; other Internet users

13 victimized by Mr. Gibbs' lax interpretation of Rule 11(b)(3) include Jesse Nason,

14 Josh Hatfield, and John Botson.

15    The circumstances of Mr. Gibb's shoddy additional "investigation" in the

16 Nason and Hatfield cases are described in detail in the Dec'l re: Prenda Law, ¶¶ 23-

17 28.  Mr. Gibbs' insufficient investigation in the Botson case is memorialized at *AF*

18 *Holdings, LLC v. John Doe*, N.D. Cal. No. 12-cv-02048-EJD (ECF No. 30, 11/6/12).

19    In each of these cases, when pressed to explain the "investigation" that had

20 supposedly identified the defendant, Mr. Gibbs responded with paltry "facts," which

21 turned out to the incorrect.

22    (4)   The "Snapshot" Theory of Copyright Infringement

23    Undersigned counsel agrees with the Court that based on the factual

24 allegations at issue in this group of cases, accusing the defendants of copyright

25 infringement likely veers into questionable territory.

26    In sum, Mr. Gibbs decision to name Mr. Wagar and Mr. Denton is part of

27 another pattern, whereby Mr. Gibbs has taken a purposefully lax stance on Rule

28 11(b), in order to maximize the extortionate impact of these kinds of cases.

-27-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS**
**FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 38**

Case 2:12-cv-08333-ODW-JC   Document 52   Filed 02/19/13   Page 28 of 33   Page ID #:767

**(c)   There is No Excuse for Violating the Court's Discovery Order**

These violations speak for themselves.  Apparently, while under orders from the Court to suspend discovery efforts, Prenda continued right on running the usual playbook.  As noted above, Mr. Gibbs' proffered explanation does not hold water in light of the directly contradictory declarations offered by AT&T.  Dec'l. of Bart Huffman; Dec'l. of Camille D. Kerr.

## IV.  CURSORY REBUTTAL TO MR. GIBBS' OSC RESPONSE

The first thing that should be pointed out about Mr. Gibbs OSC response is that somebody is mistaken (or lying) about who owns AF Holdings.  On the same day that Mr. Gibbs special counsel filed a pleading stating that AF Holdings was recently sold to Livewire Holdings, LLC, an AF Holdings 30(b)(6) witness sat in a deposition and testified that AF Holdings sole owner is a Nevis trust.  Mr. Hansemeier testified at the deposition that AF Holdings is not sure who formed this trust (other than the paid incorporator), where it is organized, whether there are any trust documents, what the name of the trust is, who might have a beneficial ownership interest in the trust, or who would have authority to terminate the trust. Mr. Hansemeier sat there and testified to all this with Mr. Gibbs (who, according to his own special counsel, at ECF No. 49. p.1, became general counsel of the company that acquired AF Holdings, Livewire Holdings, LLC back in January) right there at his side, as counsel of record for AF Holdings.  In short, the story his evening is that AF Holdings was sold several weeks ago to Livewire Holdings (Mr. Gibbs new employer).  But the story this afternoon was that AF Holdings is owned by a mystery trust.  Clearly, someone is wrong.

A second, major misrepresentation in the OSC response: when Mr. Gibbs first saw the name Alan Cooper.  Mr. Gibbs' special counsel states that "Indeed, the first time Mr. Gibbs saw the name "Alan Cooper" was on the copyright assignment that was attached to the complaints in the litigations regarding the copyrights." ECF No. 49, at 25:5-8.  This is also false.  *See* Exhibit L.  Assuming he looked at the verified

-28-

PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF

**RJN 39**

1   petition he filed before filing it (which special counsel says was his custom and

2   practice) Mr. Gibbs would have seen Alan Cooper's name on the verification page to

3   a petition Mr. Gibbs filed (while still at Steele Hansemeier) for Ingenuity 13 back in

4   2011 in *In the Matter of a Petition by Ingenuity 13, LLC*, E.D. Cal No. 11-mc-0084,

5   ECF No. 1, p. 8 (<u>Exhibit L</u>).  Special counsel's attempt to explains away this prior,

6   verification, with a "/s/" signature with Alan Cooper's name on it are not

7   convincing.  Depending on when "exhaustion of all appeals" occurred in that action,

8   Mr. Gibbs likely would have still been under a duty to keep a copy of the original as

9   of December 2012 when he was being asked to produce it.  *See* E.D. Cal. L.R.

10  131(f).[21]

11          Finally, the attempt to explain away the apparently fraudulent verification in

12  the St. Clair County, Illinois Guava action (a case where Mr. Gibbs has recently

13  started signing his name to demand letters) should not be credited.  Although the

14  verification in that case purports to be "notarized," the "notarization" consists of an

15  illegible squiggle, and Prenda still has not disclosed the name, notary seal number,

16  or state of registration of the purported notary.  Further, it also appears that Prenda

17  may be playing games with the spelling of Alan Mooney.

18                                    **V.  RELIEF REQUESTED**

19  (a)      **Substantial Monetary Sanction Against Prenda Law, Inc. in an Amount**

20            **Sufficient to Have a Significant Deterrent Effect on a Repeat Bad Actor**

21          In order to have a meaningful deterrent effect on a litigation enterprise which

22  has bragged about making millions of dollars in this kind of litigation, and which has

---

[21] "**(f) Non-Attorney's Electronic Signature.** Documents that are required to be signed by a person who is not the attorney of record in a particular action (verified pleadings, affidavits, papers authorized to be filed electronically by persons in pro per, etc.), may be submitted in electronic format bearing a "/s/" and the person's name on the signature line along with a statement that counsel has a signed original, e.g., "/s/ John Doe (original signature retained by attorney Mary Roe)." It is counsel's duty to maintain this original signature for one year after the exhaustion of all appeals. This procedure may also be followed when a hybrid electronic/paper document is filed, i.e., the conventionally served document may also contain an annotated signature in lieu of the original."

PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF

**RJN 40**

1   repeatedly ignored ethical duties, and skirted rules on perjury, a substantial sanction
2   is appropriate. Mr. Gibbs has filed 45 sham lawsuits in this district. A sanction of
3   $10,000 per suit would work out to $450,000, which is an amount that would have a
4   meaningful deterrent effect on Prenda and its associated attorneys. If the Court
5   deems that amount too high, perhaps the Court would consider instead a sanction of
6   $4,000 per case, which is the amount Ingenuity 13 has sought for up-front
7   settlements in the cases now before this Court. *See* ECF No. 13-2, p. 1 (email from
8   Mr. Gibbs to Mr. Pietz offering to settle the 12-cv-8333 action for $4,000 at the
9   outset of litigation).

10       This sanction should be paid to the Clerk of Court by Prenda Law, Inc., and if
11   not satisfied by Prenda itself, the attorneys running Prenda, including Mr. Gibbs,
12   should make good on the amount owing as a matter of personal liability as attorneys
13   engaged in a fraudulent (but extremely profitable) enterprise.

14       Sanctions are also appropriate "when an attorney is cavalier or bent on
15   misleading the court; intentionally acts without a plausible basis; [or] when the
16   entire course of the proceedings was unwarranted." *Miera v. Dairyland Ins. Co.*, 143
17   F.3d 1337, 1342 (10th Cir. 1998) (quotations and internal citations omitted); *see also*
18   *In re: Estate of Ferdinand E. Marcos Human Rights Litigation*, Ninth Circuit No.
19   11-15487 (unpublished) (October 24, 2012) (affirming $353,600,000 contempt
20   judgment and $100,000 per day contempt sanction).[22]

21   **(b)    Award of Attorneys Fees and Costs, as Compensatory Sanction, Payable**
22   **by Mr. Brett Gibbs**

23       On behalf of the putative John Doe defendant in 12-cv-8333, undersigned
24   counsel has billed substantial time in this matter. Calling Prenda to account for its
25   various frauds on the Court is time-consuming, detail-oriented work. Further, Mr.
26   Gibbs has filed several frivolous motions in this matter, including two identical

27

28   _____

[22] A copy of this unpublished opinion is attached as Exhibit DD.

-30-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS**
**FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

1   sanctions motions against the undersigned, and an entirely frivolous disqualification
2   motion, which undersigned counsel spent considerable time responding to. The total
3   costs and attorneys fees billable to the client to date in this matter is likely to be
4   close to $25,000. If the Court so desires, undersigned counsel would be happy to
5   substantiate these costs and fees at or after the hearing on the sanctions motion.
6       Undersigned counsel shares the Court's suspicion that Prenda's shell
7   companies do not have any assets. Indeed, in an opposition to a motion by a named
8   defendant to require AF Holdings to post and undertaking to proceed with the case,
9   Mr. Gibbs specifically argued that the undertaking should not be granted because, if
10  it was, AF Holdings could not pay it. *See AF Holdings v. Navasca*, N.D. Cal. No.
11  12-cv-2396-EMC, ECF No. 34, p. 1 ("Plaintiff simply cannot afford to post the
12  $48,000 required by the *Trinh* Court to pursue its claims.")
13      Further, at the February 19, 2013 30(b)(6) deposition of AF Holdings, the
14  company's corporate representative Paul Hansemeier testified that AF Holdings has
15  "never recognized any income" and that all of the company's assets fit into one of
16  two categories. The first asset category is that AF Holdings owns copyrights.
17  According to Mr. Hansemeier, the second class of assets is that, to the extent that AF
18  Holdings has cash, *all of the cash is located in the client trust accounts* of AF
19  Holdings' various attorneys, including Prenda Law, Inc. and the Anti-Piracy Law
20  Group. Mr. Hansemeier testified that aside from reimbursement for costs and
21  attorneys fees, all of the rest of AF Holdings money simply sits in its attorneys' trust
22  accounts, so it can be used to finance further litigation.[23]
23      Although undersigned counsel is loathe to do so, under the circumstances of
24  this case, it is respectfully requested that the attorneys fee award be made payable by
25  Mr. Gibbs. It seems wrong that a massive enterprise that brags about making
26  millions of dollars should somehow avoid paying attorneys fees by pleading penury.
27
28  [23] Undersigned counsel is doing his best to faithfully render this testimony, which was offered
    earlier today.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 42**

Case 2:12-cv-08333-ODW-JC   Document 52   Filed 02/19/13   Page 32 of 33   Page ID #:771

1      *See Mick Haig Prods. E.K. v. Does 1-160*, 687 F.3d 649, 652 (5th Cir. 2012)

2    (upholding sanctions entered against a mass BitTorrent copyright plaintiff's

3    attorney).  Further, ***the imposition of attorney fees "must be available in***

4    ***appropriate circumstances notwithstanding a private party's effort to cut its losses***

5    ***and run out of court, using Rule 41 as an emergency exit."*** Cooter & Gell v.

6    Hartmarx Corp., 496 U.S. 384, 390 (1990) (citing Danik, Inc. v. Hartmarx Corp.,

7    875 F.2d 890, 895 (D.C. 1989)).

8    **(c)      Striking of the Complaint With Prejudice, and Specific Factual Findings**

9           The putative John Doe in 12-cv-8333 further requests that, as a sanction, the

10   complaint in this matter be stricken with prejudice.  *See id.*

11          In addition, it is requested that the Court find that the AF Holdings cases in

12   this district are fraudulent, "sham" litigation because they are founded on forged

13   copyright assignment agreements, making the entire action illegitimate. *Kaiser*

14   *Foundation, supra*, 552 F. 3d at 1045

15          Similarly, it is requested that the Court find that the Ingenuity 13 cases in this

16   district are fraudulent, "sham" litigation because the cases were brought for an

17   improper purpose, without regard to the merits.  *Id.*

18          It is also requested that the Court find that Prenda "excited" the AF Holdings

19   and Ingenuity 13 cases in this district, and that these cases were brought "with a

20   corrupt or malicious intent to vex and annoy." *See* Cal. Pen. Code §§ 158–59.  If the

21   Court is inclined to consider the entry of a vexatious litigant or pre-filing sanction,

22   undersigned counsel would be willing to further brief the issue.

23   **(d)      Such Other Relief as the Court Deems Just and Proper**

24          To the extent other sanctions may be appropriate, such further measures are

25   left to the sound discretion of the Court.

26

27

28

-32-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS**
**FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

Case 2:12-cv-08333-ODW-JC   Document 52   Filed 02/19/13   Page 33 of 33   Page ID #:772

## VI.  CONCLUSION

The conduct of Prenda and its "of counsel" Mr. Gibbs in these cases undermines the integrity of the courts and the public's confidence in the justice system.  Here, Prenda has shown is that it is willing to do just about anything to obtain grist for its national "settlement" mill.  Repeatedly, in hundreds of actions filed in courts across the country, Prenda has resorted to misrepresentations, half-truths, and questionable tactics, if not outright fraud, forgery, and identity theft. Until now, Prenda has gotten away with quite a lot of these kinds of tactics because it simply abandons its lawsuits, via a voluntary dismissal, after obtaining subpoena returns, and some settlements.  Indeed, as noted above, Mr. Gibbs is already at it again, now sending out demand letters on behalf of Guava, LLC, which is now purportedly owned by Livewire Holdings, LLC not a mystery trust. Exactly who is responsible for the worst of Prenda's actions here may not yet be clear, but this is the archetypical type of case, where there is a pattern of bad action that is done in such a way to avoid scrutiny, where a major sanctions is appropriate as a deterrent.  This Court is urged not to go easy on Mr. Gibbs or Prenda Law.


Respectfully submitted,

DATED: February 19, 2013              THE PIETZ LAW FIRM


                                      /s/ Morgan E. Pietz

                                      Morgan E. Pietz
                                      THE PIETZ LAW FIRM
                                      Attorney for Putative John Doe(s)
                                      Appearing on Caption

-33-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**RJN 44**

# EXHIBIT C

# EXHIBIT C

Case 2:12-cv-08333-ODW-JC   Document 53   Filed 02/20/13   Page 1 of 4   Page ID #:773

Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:  (310) 424-5557
Facsimile :  (310) 546-5301

Attorney for Putative John Doe in 2:12-cv-08333-ODW-JC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

INGENUITY 13, LLC, a Limited
    Liability Company Organized Under
    the Laws of the Federation of Saint
    Kitts and Nevis,

              Plaintiff,

        v.

JOHN DOE,

              Defendant.

Case Number: 2:12-cv-08333-ODW-JC

Case Assigned to:
District Judge Otis D Wright, II

Discovery Referred to:
Magistrate Judge Jacqueline Chooljian

**SUPPLEMENTAL DECLARATION
OF MORGAN E. PIETZ**

-1-

SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ

**RJN 45**

I, Morgan E. Pietz, have personal knowledge of the facts alleged herein and hereby declare as follows:

1.      I am a member in good standing of the State Bar of California, duly admitted to the practice of law in the state and federal courts of the State of California.

2.      I represent ISP subscribers who have been targeted by Ingenuity 13, LLC, through its counsel Prenda Law, Inc. f/k/a Steele Hansemeier PLLC ("Prenda") in copyright infringement cases Ingenuity 13 filed in both the Central District of California, and the Northern District of California. I also represent other clients in other cases brought by Prenda on behalf of other entities, sometimes along with local counsel, in other courts.

3.      I represent a putative John Doe defendant in the case indicated on the caption above.

4.      My clients in the Prenda cases, including this case, each received letters from their ISPs informing them that Prenda was attempting to subpoena their identity as part of a lawsuit. Generally, my clients are the people who happen to pay the Internet bill for their household, not necessarily the people who actually committed the alleged infringement or other wrongful conduct. However, Prenda constructs its lawsuits so as to make it unclear what exactly is the status of my clients. The complaint does not exactly come out and say that the ISP subscriber equals the John Doe defendant. However, the requests for early discovery, seeking leave to issue ISP subpoenas, generally tend to conflate ISP subscriber with Doe defendant.

5.      A comprehensive "Declaration of Morgan E. Pietz re: Prenda Law, Inc." was previously filed in this action at ECF No. 40-1. *Exhibit letters herein are continued from that prior declaration*.

6.      I did serve the Alan Cooper written discovery on Mr. Gibbs, via overnight mail, on January 4, 2013.

**SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ**

**RJN 46**

7.    Attached as <u>Exhibit P</u> hereto is a true and correct copy of an email chain I received wherein Mr. Gibbs notified me that Mr. Duffy would be substituting into this case as counsel of record, and an email where Mr. Duffy attempted to meet and confer with on 12-cv-8333.

8.    Attached as <u>Exhibit Q</u> hereto is a true and correct copy of Alan Cooper's complaint for identity theft, etc.

9.    Attached as <u>Exhibit R</u> hereto is a true and correct copy of documents identifying "Salt Marsh" as the "owner" of AF Holdings.

10.    Attached as <u>Exhibit S</u> hereto is a true and correct copy of a declaration attorney Nicholas Ranallo prepared regarding Anthony Saltmarsh.

11.    Attached as <u>Exhibit T</u> hereto is a true and correct copy of a website registration document showing "Alan Cooper" at an address in Phoenix linked to, John Steele, his sister and Anthony Saltmarsh.

12.    Attached as <u>Exhibit U</u> hereto is a true and correct copy of the petition in the St. Clair County Guava, LLC case, which appears to be verified by "Alan Moay" or "Alan Mony".

13.    Attached as <u>Exhibit V</u> hereto is a true and correct copy of my reply in the St. Clair County Guava, LLC case.

14.    Attached as <u>Exhibit W</u> hereto is a true and correct copy of the declaration about the collusion in a Minnesota Guava LLC case.

15.    John Steele told me, in front of others, on February 13, 2013 in St. Clair County that he is currently of counsel to Prenda Law.

16.    Attached as <u>Exhibit X</u> hereto is a true and correct copy of a demand letter, dated January 30, 2013, from the St. Clair County case listing Mr. Gibbs as in house counsel for Guava, LLC.

17.    Attached as <u>Exhibit Y</u> hereto is a true and correct copy of a letter Mr. Duffy sent to Judge Scriven in Florida wherein he represents that he is the sole principal of Prenda Law.

-3-

**SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ**

**RJN 47**

18.    Attached as <u>Exhibit Z</u> hereto is a true and correct copy of Mr. Duffy's bio from the wefightpiracy.com website, accessed February 20, 2013.

19.    Attached as <u>Exhibit AA</u> hereto is a true and correct copy of John L. Steele's LinkedIn profile where he states that he "sold [his] client book to Prenda Law in 2011."

20.    Attached as <u>Exhibit BB</u> hereto is a true and correct copy of a complaint listing wherein Paul Hansemeier's firm Alpha Law Firm, LLC represents Guava, LLC in Minnesota.

21.    Attached as <u>Exhibit CC</u> hereto is a true and correct copy of the LinkedIn profile for Michael Dugas listing Prenda Law.

22.    Attached as <u>Exhibit DD</u> hereto is a true and correct copy of an unpublished Ninth Circuit sanctions opinion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted,

DATED: February 20, 2013
Executed this day at Manhattan Beach, California, by

                                    */s/ Morgan E. Pietz*
                                    Morgan E. Pietz, Declarant

-4-

**SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ**

**RJN 48**

**<u>EXHIBIT Q</u> TO SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ, ESQ., FILED IN *INGENUITY 13 v. DOE*, C.D. CAL. NO. 2:12-cv-8333 (Dkt. 53)**

| | |
|---|---|
| STATE OF MINNESOTA<br>COUNTY OF HENNEPIN | DISTRICT COURT<br>FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Alan Cooper,<br><br>       Plaintiff<br><br>v.<br><br>John Lawrence Steele, Prenda Law Inc., AF Holdings, LLC, Ingenuity13, LLC,<br><br>       Defendants | Court File No.:<br><br><br>Complaint |

Alan Cooper, for his Complaint states and alleges as follows:

## INTRODUCTION

Defendant John Steele and the law firm Prenda Law, Inc. have falsely used Plaintiff Alan Cooper's name as an officer or director of two St. Kitts & Nevis based limited liability companies for the purpose of concealing the their true owners and to defraud others. All Defendants have worked together and used Plaintiff's name in furtherance of their scheme to demand settlements relating to alleged copyright infringement from individuals across the nation. Plaintiff asks this court for damages and injunctive relief so that he can be compensated for unlawful use of his name and to prevent any further unlawful use.

## JURISDICTION AND VENUE

1. Plaintiff is an individual residing in Mille Lacs County, Minnesota.

2. Defendant John Lawrence Steele is an individual residing in Cook County, IL. Steele's tortious conduct described in this Complaint was directed at Minnesota and he has knowingly caused the injuries described in this Complaint within Minnesota.

1

RJN 50

Furthermore, he also owns land in Aitkin County, MN. Therefore he is subject to personal jurisdiction pursuant to Minn. Stat. § 543.19.

3. Defendant Prenda Law, Inc. is a corporation with principal offices in Chicago, Illinois. Prenda has directed its tortious activities described in this Complaint towards individuals residing in the State of Minnesota and otherwise directed its business activities within the State of Minnesota including filing lawsuits within the State and sending settlement demands to residents of Minnesota.

4. Defendant Prenda Law, Inc. has at various times operated under the names "Steele Hansmeier, PLLC" and "Anti Piracy Law Group" but these entities are either identical, alter-ego identities, or are successor or predecessor firms. All of these law firms have the same principals, business model, and clients.

5. Defendant AF Holdings, LLC is a Nevis based limited liability company and has brought several lawsuits in the State of Minnesota fraudulently using Plaintiff's name as an officer or director. AF Holdings, LLC's conduct directed at Minnesota subjects it to personal jurisdiction within the state because this lawsuits arises out of its activities within Minnesota.

6. Defendant Ingenuity13, LLC is a Nevis based limited liability company and has brought several lawsuits in the State of Minnesota fraudulently using Plaintiff's name as an officer or director. Ingenuity13, LLC's conduct directed at Minnesota subjects it to personal jurisdiction within the state because this lawsuits arises out of its activities within Minnesota.

7. Venue is appropriate in Hennepin County because the tortious acts occurred in part within Hennepin County, including the use of Alan Cooper's name, by Defendants and for the benefit of Defendants in lawsuits filed in the U.S. District Court for the

2

**RJN 51**

District of Minnesota, located in Hennepin County.

## FACTS

8. Plaintiff had been hired in 2006 as a caretaker for a property Steele owns in Aitkin County.

9. Plaintiff was allowed to stay in a guest house on the property and helped with remodeling and general maintenance of the property.

10. While visiting his property, Steele had on several occasions discussed his plans and early successes in carrying out a massive, nationwide copyright enforcement litigation strategy.

11. Steele had also told Plaintiff that if anyone asked about any companies, that Plaintiff was not to answer and to call Steele directly.

12. Plaintiff confronted Steele, but was unable to determine what companies Steele was talking about.

13. Steele has in fact sued tens of thousands of individuals for copyright infringement nationwide.

14. Plaintiff has not participated in any part of Steele's litigation activities.

15. Steele and his law firm, Steele Hansmeier, PLLC, now known as Prenda Law, Inc. have gained significant attention due to the scope of their litigation.

16. Steele claims that he is merely "of counsel" with Prenda Law, Inc., but in fact controls operations at Prenda Law, Inc.

17. Sometime in November 2012, Plaintiff was informed that his name was being used as an officer or director of AF Holdings, LLC, a client of Prenda Law, Inc.

18. In various lawsuits filed in the past year, AF Holdings, LLC through its counsel has filed copies of copyright assignment agreements that bear the signature of an "Alan

3

**RJN 52**

Cooper" signing on behalf of AF Holdings, LLC.

19. A copy of one such assignment is attached as Exhibit A to this Complaint.

20. The signature of "Alan Cooper" in Exhibit A was not made by Plaintiff.

21. On at least one occasion, an "Alan Cooper" has acted as the manager of another client of Prenda Law, Ingenuity13, LLC.

22. A copy of one such document is attached as Exhibit B to this Complaint.

23. Again, Plaintiff did not sign the document shown as Exhibit B.

24. As described above, Steele and Plaintiff entered into an agreement for Cooper to care for Steele's property, a copy of that agreement is attached as Exhibit C.

25. Steele and the other Defendants used the signature in Exhibit C or another of Plaintiff's signatures as the model for creating the signature that appears on Exhibit A.

26. AF Holdings, LLC has filed over 200 copyright lawsuits in federal district courts across the nation within the past year.

27. Ingenuity13, LLC has filed over 50 copyright lawsuits in federal district courts across the nation within the past year.

28. All Defendants knew that Plaintiff's name was being used, without Plaintiff's knowledge, as an officer, director, or shareholder of both AF Holdings, LLC and Ingenuity13, LLC.

29. All Defendants intended to use Alan Cooper's name for their own benefit on AF Holdings, LLC and Ingenuity13, LLC documents.

30. All Defendants have in fact benefited from using Plaintiff's name for their own benefit on AF Holdings, LLC and Ingenuity13, LLC documents.

31. Defendants knew that Alan Cooper had not authorized the use of his name or signature on AF Holdings, LLC and Ingenuity13, LLC documents.

4

Case 2:12-cv-08333-ODW-JC   Document 53-1   Filed 02/20/13   Page 16 of 130   Page ID
#:792

32. Both Steele and Prenda Law, Inc. participated in the creation of AF Holdings, LLC and Ingenuity13, LLC.

33. Defendants Steele and Prenda Law have actual control of Defendants AF Holdings LLC and Ingenuity13, LLC.

34. AF Holdings, LLC and Ingenuity13, LLC exist solely as instruments of Steele and Prenda Law, Inc.

35. Both Steele and Prenda Law, Inc. chose to organize AF Holdings, LLC and Ingenuity13, LLC in the nation of St. Kitts & Nevis because of the strict corporate privacy laws in that country.

36. Plaintiff's counsel made several attempts to contact Defendants about the use of the name "Alan Cooper" in lawsuits by AF Holdings, LLC and Ingenuity13, LLC.

37. Defendant Steele, when he heard that Prenda Law, Inc. had been contacted by Plaintiff's counsel did not respond to Plaintiff's counsel but rather called Plaintiff several times within a matter of minutes.

38. Despite repeated requests by Plaintiff's counsel, Defendants have not offered any explanation as to why Alan Cooper's name appears on documents relating to lawsuits filed by AF Holdings, LLC and Ingenuity13, LLC.

39. Plaintiff through his counsel filed the letter attached as Exhibit D in cases filed by AF Holdings, LLC and Ingenuity13, LLC in the District of Minnesota.

40. Defendants have claimed that the letter is "false" but have never attempted to explain what in particular about the allegations contained within that letter are false.

41. Defendants have never identified another person by the name of Alan Cooper who could plausibly have signed the documents shown as Exhibit A or Exhibit B.

5

**RJN 54**

## COUNT I

### INVASION OF PRIVACY - APPROPRIATION

42. Plaintiff repeats and realleges the above as if fully set forth below.

43. Defendants have appropriated Plaintiff's name for their own benefit.

44. Defendants did not have Plaintiff's permission to use his name to sign documents on behalf of AF Holdings, LLC or Ingenuity13, LLC

45. Defendants knew that the did not have Plaintiff's permission to use his name to sign documents on behalf of AF Holdings, LLC or Ingenuity13, LLC

46. Defendants intended to benefit and in fact did benefit by using Alan Cooper's name for corporate documents to conceal the true identities of officers, directors, and shareholders of AF Holdings, LLC and Ingenuity13, LLC.

### COUNT II

### VIOLATION OF MINN. STAT. § 325D.44

47. Plaintiff repeats and realleges the above as if fully set forth below.

48. Defendants, working in concert, have engaged in the following deceptive trade practices prohibited by Minn. Stat. § 325D.44.

49. By using Plaintiff's name as if he had signed documents on their behalf, Defendants have caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

50. Plaintiff is not the source of any of Defendants' goods or services and has never sponsored, approved or certified any of Defendants' goods or services.

51. By using Plaintiff's name in connection with documents signed on behalf of AF Holdings, LLC and Ingenuity13, LLC, Defendants have caused a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or

6

**RJN 55**

certification by, another, namely Alan Cooper.

52. Plaintiff has no affiliation, connection, or association with Defendants and has never certified Defendants or their actions.

53. By filing documents in court, bearing Plaintiff's name, Defendant Prenda Law, Inc. has created the false appearance of affiliation, connection, association, or certification of Defendants' activities

54. Defendants actions, taken as a whole, create a likelihood that there would be confusion or misunderstanding relating to whether Alan Cooper was involved in any way with Defendants and their business activities.

## COUNT III

## CIVIL CONSPIRACY

55. Plaintiff repeats and realleges the above as if fully set forth below

56. All Defendants have entered an agreement to use Plaintiff's name as if he were an officer or director of Defendants AF Holdings, LLC and Ingenuity13, LLC.

57. The use of Plaintiff's name in this manner is both unlawful and tortious.

58. By entering into this agreement, all Defendants have conspired to commit tortious acts as described within this Complaint.

59. Plaintiff has been damaged by these unlawful and tortious acts.

60. Each Defendant must therefore be held liable for any tortious act committed by any other Defendant.

## COUNT III

## ALTER EGO - PIERCING CORPORATE VEIL - AF HOLDINGS, LLC

61. Plaintiff repeats and realleges the above as if fully set forth below.

62. AF Holdings, LLC is not a properly organized limited liability corporation.

7

**RJN 56**

63. Upon information and belief, AF Holdings, LLC is a mere instrumentality of Steele and Prenda Law, Inc.

64. AF Holdings, LLC has never had an officer or director named Alan Cooper who signed the document shown as Exhibit A.

65. Upon information and belief, either Steele or someone working at his request signed the document as "Alan Cooper" shown as Exhibit A.

66. Upon information and belief, AF Holdings, LLC has no true officers or directors.

67. Upon information and belief, AF Holdings, LLC has fraudulently used Plaintiff's name and thereby used the LLC to perpetrate a fraud.

68. Upon information and belief, AF Holdings, LLC is and at all times was insufficiently capitalized for purposes of corporate undertaking.

69. Upon information and belief, AF Holdings, LLC observed little or no corporate formalities.

70. Upon information and belief, AF Holdings, LLC was insolvent or non-existent at time of the copyright assignment in question and throughout 2012 when it initiated numerous lawsuits.

71. Upon information and belief, AF Holdings, LLC's funds, to the extent it had any, were used solely for the benefit of the dominant members.

72. Upon information and belief, AF Holdings, LLC did not have functioning officers or directors other than its attorneys including Defendant John Steele.

73. Upon information and belief, AF Holdings, LLC has little or no corporate records.

74. Upon information and belief, AF Holdings, LLC's existence was a mere facade for individual dealings of its dominant members.

75. For the reasons above, AF Holdings, LLC's owners or members must be liable for AF

8

Holdings, LLC's actions.

## COUNT IV

### ALTER EGO - PIERCING CORPORATE VEIL - INGENUITY13, LLC

76. Plaintiff repeats and realleges the above as if fully set forth below.

77. Ingenuity13, LLC is not a properly organized limited liability corporation.

78. Upon information and belief, Ingenuity13, LLC is a mere instrumentality of Steele and Prenda Law, Inc.

79. Ingenuity13, LLC has never had an officer or director named Alan Cooper who could have signed the document shown as Exhibit B.

80. Defendant Prenda Law, Inc. is obligated to retain the original signed version of the document shown as Exhibit B.

81. Plaintiff's counsel has requested to see or to be provided with a copy of the original signed version of the document shown as Exhibit B.

82. Defendants have not produced for Plaintiff's counsel copies of the signed version of the document shown as Exhibit B.

83. Upon information and belief, Ingenuity13, LLC has no true officers or directors.

84. Upon information and belief, Ingenuity13, LLC has fraudulently used Plaintiff's name and thereby used the LLC to perpetrate a fraud.

85. Upon information and belief, Ingenuity13, LLC is and at all times was insufficiently capitalized for purposes of corporate undertaking.

86. Upon information and belief, Ingenuity13, LLC observed little or no corporate formalities.

87. Upon information and belief, Ingenuity13, LLC was insolvent or non-existent at time of the copyright assignment in question and throughout 2012 when it initiated

9

**RJN 58**

numerous lawsuits.

88. Upon information and belief, Ingenuity13, LLC's funds, to the extent it had any, were used solely for the benefit of the dominant members.

89. Upon information and belief, Ingenuity13, LLC did not have functioning officers or directors other than its attorneys including Defendant John Steele.

90. Upon information and belief, Ingenuity13, LLC has little or no corporate records.

91. Upon information and belief, Ingenuity13, LLC's existence was a mere facade for individual dealings of its dominant members.

92. For the reasons above, Ingenuity13, LLC's owners or members must be liable for Ingenuity13, LLC's actions.

## COUNT V

### ALTER EGO - PIERCING CORPORATE VEIL - PRENDA LAW, INC.

93. Plaintiff repeats and realleges the above as if fully set forth below.

94. Prenda Law, Inc. was an Illinois based corporation engaged in the practice of law.

95. Prenda Law, Inc. was not properly organized as a professional services corporation under Illinois law, as required of law firms organized as corporations.

96. Prenda Law, Inc. did not file an annual renewal due in late 2012.

97. Despite having not filed an annual renewal, Prenda Law, Inc. continued to provide legal services including litigating cases on behalf of AF Holdings, LLC and Ingenuity13, LLC which made use of documents purportedly signed by Plaintiff.

98. Upon information and belief, Prenda Law, Inc. is a mere instrumentality of Steele.

99. Upon information and belief, officers of Prenda Law, Inc. have fraudulently used Plaintiff's name and thereby used the corporation to perpetrate a fraud.

100. Upon information and belief, Prenda Law, Inc. is and at all times was insufficiently

10

**RJN 59**

capitalized for purposes of corporate undertaking.

101. Upon information and belief, Prenda Law, Inc. observed little or no corporate formalities.

102. Upon information and belief, Prenda Law, Inc. was insolvent or non-existent at time of transaction in question.

103. Upon information and belief, Prenda Law, Inc.'s funds, to the extent it had any, were used solely for the benefit of the dominant shareholder.

104. Upon information and belief, Prenda Law, Inc. has little or no corporate records.

105. Upon information and belief, Prenda Law, Inc. was controlled by individuals other than its shareholders.

106. Upon information and belief, Prenda Law, Inc.'s existence was a mere facade for individual dealings of Steele.

107. For the reasons above, Prenda Law, Inc.'s owners or shareholders must be liable for it's actions.

WHEREFORE, Plaintiff Alan Cooper prays for judgment of the Court against the Defendants for the following relief:

1.      Monetary damages against all parties;

2.      Reasonable costs and disbursements;

3.      Injunctive relief, including, an order forbidding the further use of Plaintiff Alan Cooper's name in connection with any of Defendants' activities;

4.      Declarative relief, including, a determination that Plaintiff never acted signed documents on behalf of AF Holdings, LLC or Ingenuity13, LLC and has never been an officer or director of AF Holdings, LLC or Ingenuity13, LLC;

11

**RJN 60**

5.    Leave of the Court to amend this Complaint to add a claim for punitive

damages;

6.    For such other relief as the Court determines to be fair and equitable.


Dated: January 23, 2013                    GODFREAD LAW FIRM, PC

                                           By: _____
                                           Paul Godfread (389316)
                                           100 South Fifth Street, Suite 1900
                                           Minneapolis, MN 55402
                                           (612) 284-7325

                                           Attorney for Plaintiff, Alan Cooper




ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable

attorney and witness fees may be awarded pursuant to Minnesota Statutes § 549.211,

subd. 2, to the party against whom the allegations in this pleading are asserted.


Dated: January 22, 2013                    GODFREAD LAW FIRM, PC

                                           By: _____
                                           Paul Godfread (389316)


12

**RJN 61**

**<u>EXHIBIT R</u> TO SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ, ESQ., FILED IN *INGENUITY 13 v. DOE*, C.D. CAL. NO. 2:12-cv-8333 (Dkt. 53)**

Case 2:12-cv-08333-ODW-JC Document 58 Filed 02/07/13 Page 25 of 30   Page ID
#:801

1 | Brett L. Gibbs, Esq. (SBN 251000)
  | Of Counsel to Prenda Law Inc.
2 | 38 Miller Avenue, #263
  | Mill Valley, CA 94941
3 | 415-325-5900
  | blgibbs@wefightpiracy.com
4 |
  | *Attorney for Plaintiff*
5 |
6 |
7 |                IN THE UNITED STATES DISTRICT COURT FOR THE
8 |                    NORTHERN DISTRICT OF CALIFORNIA
9 |                        SAN FRANCISCO DIVISION
10 |
11 | AF HOLDINGS LLC,                        )    No. 3:12-cv-02396 EMC
12 |                                         )
   |            Plaintiff,                   )    **ADR CERTIFICATION BY PARTIES**
13 |     v.                                  )    **AND COUNSEL**
   |                                         )
14 | JOHN DOE,                               )
   |                                         )
15 |            Defendant.                   )
   |                                         )
16 | _____)
17 |
18 |              **ADR CERTIFICATION BY PARTIES AND COUNSEL**
19 |
       Pursuant to Civil L.R. 16-8(b) and ADR L.R. 3-5(b), each of the undersigned certifies that he
20 | or she has:
21 |
       (1) Read the handbook entitled "*Dispute Resolution Procedures in the Northern District of*
22 |       *California*" on the Court's ADR Internet site www.adr.cand.uscourts.gov *(Limited*
          *printed copies are available from the clerk's office for parties in cases not subject to the*
23 |       *court's Electronic Case Filing program (ECF) under General Order 45);*
       (2) Discussed the available dispute options provided by the Court and private entities; and
24 |    (3) Considered whether this case might benefit from any available dispute resolution options.
25 |
26 | Dated: July 20, 2012                    ___/s/ Salt Marsh, AF Holdings Owner_____
   |                                                          PARTY
27 |
28 | Dated: July 20, 2012                    ___/s/ Brett L. Gibbs, Esq., Trial Counsel___
   |                                                         COUNSEL

**RJN 63**

**<u>EXHIBIT S</u> TO SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ, ESQ., FILED IN *INGENUITY 13 v. DOE*, C.D. CAL. NO. 2:12-cv-8333 (Dkt. 53)**

RJN 64

Case 2:12-cv-08333-ODW-JC Document 155 Filed 02/02/13 Page 27 of 30   Page ID #:803

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., <br><br> Plaintiff, <br><br> v. <br><br> JOE NAVASCA <br><br><br> Defendants. | Case No. 3:12-cv-02396-EMC <br><br> **Declaration of Nicholas Ranallo in Opposition to Motion to Shorten Time/Motion for Stay of Discovery** |

**DECLARATION OF NICHOLAS RANALLO**

1.      I am an attorney duly licensed to practice in the State of California and before the

District Court for the Northern District of California.  I am attorney of record for

Joe Navasca, and this declaration is based on personal knowledge of the matters

set forth herein or, to the extent so identified, upon information and belief formed

after reasonable inquiry as described herein.

2.      On Friday, February 8, 2013, I received an electronic file from Joe Navasca

comprised of a voicemail recording left at his residence on the same date.

**RJN 65**

Paragraph 5, below, represents my personal transcription of the voicemail message. I have retained an electronic copy of the message and can provide it to the court upon request.

3.  Upon information and belief, the individual speaking in the voicemail message is Mark Lutz. This belief is based on my recognition of Mr. Lutz' voice from numerous past conversations with Mr. Lutz in his role as paralegal for Steele Hansmeier/Prenda Law.

4.  On Friday, February 8, 2013, I sent a copy of the voicemail to Brett Gibbs requesting explanation. Beyond noting that I did not represent Jovino, Mr. Gibbs provided no information regarding why a law firm that is not formally involved in this case is seeking settlement from an individual that is not the defendant in this case, and/or seeking to amend the complaint to name an individual that was previously "eliminated" as a likely infringer.

5.  The following represents my personal transcription of the February 8 voicemail. I have endeavored to be as accurate as possible:

    "Yes, uh, this message is for Jovino. It's, uh, Anti-Piracy Law Group giving you a call about a couple of letters we mailed you which had to do with the copyright infringement lawsuit that you are a part of. And..um..yeah, I mean, we haven't entered into a settlement agreement as of yet. And, prior to moving forward and modifying the complaint to add your name, our client just asked us to give you a quick call. You know, I suppose if you want to avoid the expense and time that is associated with a case like this, call us back. We can be reached at (800) 380-0840. Your reference number is 84080. Thank you."

6.  The telephone number identified in the message above is the number listed for Prenda Law, Inc., on its wefightpiracy.com web site.

7.     The reference number noted above corresponds to prior letters from Plaintiff
regarding the allegations of infringement from this case.

SALT MARSH

8.     "Salt Marsh" is the individual identified as an "Owner" of AF Holdings in ECF
No. 8 in this case, as well as numerous other cases in this district.

9.     I am not aware of any individual with the actual name "Salt Marsh" that is
associated with AF Holdings or John Steele.

10.    However, upon information and belief, an individual named Tony or Anthony
Saltmarsh does exist, and has documented associations with John Steele's family
and the mysterious Alan Cooper, as described further herein.

11.    Upon information and belief, Tony Saltmarsh previously lived at 4532 E. Villa
Theresa Drive in Phoenix Arizona, 85032.  This belief is based upon a "past
address" search through peoplesmart.com. of the address and Mr. Saltmarsh.  A
copy of Mr. Saltmarsh's full report is annexed hereto as Exhibit B.

12.    Upon information and belief, Jayme Steele also previously lived at 4532 E. Villa
Theresa Drive in Phoenix, Arizona.   This belief is likewise based on
peoplesmart.com "past address" search for Ms. Steele.  A copy of this report is
annexed hereto as Exhibit C.

13.    Upon information and belief, the 4532 E. Villa Theresa address was also
previously used by VPR, Inc., a former Steele Hansmeier client.  This belief is
based on a review of the Nevada Secretary of State entity details attached hereto as
Exhibit D.

14.     Upon information and belief, Alan Cooper was identified as, inter alia, the President and Treasurer of VPR, Inc. and likewise associated with the 4532 East Villa Theresa address.  This belief is likewise based on a review of the Nevada Secretary of State entity details, a copy of which are annexed hereto as Exhibit D.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration is executed on this 11th day of February, 2013, in Boulder Creek, California.


/s/  Nicholas R. Ranallo
Nicholas Ranallo

# Exhibit A

Case 2:12-cv-08333-ODW-JC Document 68 Filed 02/07/13 Page 1 of 11 Page ID #:808

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC, | Case Nos. 2:12-cv-8333-ODW(JCx) |
| Plaintiff, | **ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS** |
| v. | |
| JOHN DOE, | |
| Defendant. | |

The Court hereby orders Brett L. Gibbs, attorney of record for AF Holdings LLC and Ingenuity 13 LLC, to appear on March 11, 2013, at 1:30 p.m., to justify his violations of Federal Rule of Civil Procedure 11 and Local Rule 83-3 discussed herein.[1]

**A.    Legal Standard**

The Court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996). The power to punish contempt and to coerce compliance with issued orders is based on statutes and the Court's inherent authority. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512

---

[1] The violations discussed herein were committed in the following related cases: *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012); *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012). To facilitate this matter, Mr. Gibbs will be given the opportunity to address these violations together in one hearing rather than in several separate hearings.

Supplemental Exhibits - Page 32

**RJN 70**

Case 2:12-cv-08333-ODW-JC Document 86 Filed 02/07/13 Page 3 of 32 Page ID
#:809

1    U.S. 821, 831 (1994). And though this power must be exercised with restraint, the
2    Court has wide latitude in fashioning appropriate sanctions to fit the conduct. *See*
3    *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).

4    **B.     Rule 11(b)(3) Violations**

5          By presenting a pleading to the Court, an attorney certifies that—after
6    conducting a reasonable inquiry—the factual contentions in the pleading have
7    evidentiary support or, if specifically so identified, will likely have evidentiary
8    support after a reasonable opportunity for further investigation or discovery. Fed. R.
9    Civ. P. 11(b)(3). This precomplaint duty to find supporting facts is "not satisfied by
10   rumor or hunch." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th
11   Cir. 1992). The reasonableness of this inquiry is based on an objective standard, and
12   subjective good faith provides no safe harbor. *Golden Eagle Distrib. Corp. v.*
13   *Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986); *F.D.I.C. v. Calhoun*, 34 F.3d
14   1291, 1296 (5th Cir. 1994); *Knipe v. Skinner*, 19 F.3d 72, 75 (2d Cir. 1994). The
15   Court wields the discretion to impose sanctions designed to "deter repetition of the
16   conduct or comparable conduct by others similarly situated." Fed R. Civ. P 11(c)(4).

17         In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed
18   Aug. 2, 2012), the Court ordered Plaintiff on December 20, 2012, to show cause why
19   it failed to timely serve the Defendant or, if the Defendant has already been served, to
20   submit the proof of service. (ECF No. 12.) In response, Plaintiff noted that the delay
21   was because it waited to receive a response from the subscriber of the IP address
22   associated with the alleged act of infringement. (ECF No. 14.) Plaintiff further noted:
23   "Though the subscriber, David Wagar, remained silent, Plaintiff's investigation of his
24   household established that Benjamin Wagar was the likely infringer of Plaintiff's
25   copyright." (ECF No. 14, at 2.) Based on this investigation, Plaintiff filed an
26   Amended Complaint, substituting Benjamin Wagar for John Doe. (ECF No. 13.)

27         Plaintiff's Amended Complaint alleges the following in connection with
28   Benjamin Wagar:

Supplemental Exhibits - Page 33

**RJN 71**

- "Defendant Benjamin Wagar ('Defendant') knowingly and illegally reproduced and distributed Plaintiff's copyrighted Video by acting in concert with others via the BitTorrent file sharing protocol and, upon information and belief, continues to do the same." (AC ¶ 1);
- "Defendant is an individual who, upon information and belief, is over the age of eighteen and resides in this District." (AC ¶ 4);
- "Defendant was assigned the Internet Protocol ('IP') address of 96.248.225.171 on 2012-06-28 at 07:19:47 (UTC)." (AC ¶ 4);
- "Defendant, using IP address 96.248.225.171, without Plaintiff's authorization or license, intentionally downloaded a torrent file particular to Plaintiff's Video, purposefully loaded that torrent file into his BitTorrent client—in this case, Azureus 4.7.0.2—entered a BitTorrent swarm particular to Plaintiff's Video, and reproduced and distributed the Video to numerous third parties." (AC ¶ 22);
- "Plaintiff's investigators detected Defendant's illegal download on 2012-06-28 at 07:19:47 (UTC). However, this is a [*sic*] simply a snapshot observation of when the IP address was *observed* in the BitTorrent swarm; the conduct took itself [*sic*] place before and after this date and time." (AC ¶ 23);
- "The unique hash value in this case is identified as F016490BD8E60E184EC5B7052CEB1FA570A4AF11." (AC ¶ 24.)

In a different case, *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), Plaintiff essentially makes the same response to the Court's December 20, 2012 Order To Show Cause (ECF No. 12): "Though the subscriber, Marvin Denton, remained silent, Plaintiff's investigation of his household established that Mayon Denton was the likely infringer of Plaintiff's copyright." (ECF No. 13, at 2.) And based on this information, Plaintiff filed an Amended Complaint (ECF No. 16), similar in all respects to the one filed against Benjamin

Supplemental Exhibits - Page 34

3

**RJN 72**

Case 2:12-cv-08333-ODW-JC Document 86 Filed 02/07/13 Page 35 of 42 Page ID #:811

1  Wagar in *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed
2  Aug. 2, 2012), with the following technical exceptions:

3  • "Defendant was assigned the Internet Protocol ('IP') address of 75.128.55.44
4     on 2012-07-04 at 07:51:30 (UTC)." (AC ¶ 4);

5  • "Defendant . . . purposefully loaded that torrent file into his BitTorrent
6     client—in this case, μTorrent 3.1.3 . . . ." (AC ¶ 22);

7  • "The   unique   hash   value   in   this   case   is   identified   as
8     0D47A7A035591B0BA4FA5CB86AFE986885F5E18E." (AC ¶ 24.)

9      Upon review of these allegations, the Court finds two glaring problems that
10 Plaintiff's technical cloak fails to mask. Both of these are obvious to an objective
11 observer having a working understanding of the underlying technology.

12      *1.   Lack of reasonable investigation of copyright infringement activity*

13      The first problem is how Plaintiff concluded that the Defendants actually
14 downloaded the entire copyrighted video, when all Plaintiff has as evidence is a
15 "snapshot observation." (AC ¶ 23.) This snapshot allegedly shows that the
16 Defendants were downloading the copyrighted work—at least at that moment in time.
17 But downloading a large file like a video takes time; and depending on a user's
18 Internet-connection speed, it may take a long time. In fact, it may take so long that the
19 user may have terminated the download. The user may have also terminated the
20 download for other reasons. To allege copyright infringement based on an IP
21 snapshot is akin to alleging theft based on a single surveillance camera shot: a photo
22 of a child reaching for candy from a display does not automatically mean he stole it.
23 No Court would allow a lawsuit to be filed based on that amount of evidence.

24      What is more, downloading data via the Bittorrent protocol is not like stealing
25 candy. Stealing a piece of a chocolate bar, however small, is still theft; but copying an
26 encrypted, unusable piece of a video file via the Bittorrent protocol may not be
27 copyright infringement. In the former case, some chocolate was taken; in the latter
28 case, an encrypted, unusable chunk of zeroes and ones. And as part of its prima facie

1  copyright claim, Plaintiff must show that Defendants copied the copyrighted work.
2  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). If a download
3  was not completed, Plaintiff's lawsuit may be deemed frivolous.

4      In this case, Plaintiff's reliance on snapshot evidence to establish its copyright
5  infringement claims is misplaced. A reasonable investigation should include evidence
6  showing that Defendants downloaded the entire copyrighted work—or at least a
7  usable portion of a copyrighted work. Plaintiff has none of this—no evidence that
8  Defendants completed their download, and no evidence that what they downloaded is
9  a substantially similar copy of the copyrighted work. Thus, Plaintiff's attorney
10  violated Rule 11(b)(3) for filing a pleading that lacks factual foundation.

11      2.    *Lack of reasonable investigation of actual infringer's identity*

12      The second problem is more troublesome. Here, Plaintiff concluded that
13  Benjamin Wagar is the person who illegally downloaded the copyrighted video. But
14  Plaintiff fails to allege facts in the Amended Complaint to show how Benjamin Wagar
15  is the infringer, other than noting his IP address, the name of his Bittorrent client, and
16  the alleged time of download.[2] Plaintiff's December 27, 2012 Response to the Court's
17  Order to Show Cause re Lack of Service sheds some light:

18      Though the subscriber, David Wagar, remained silent, Plaintiff's
19      investigation of his household established that Benjamin Wagar was the
        likely infringer of Plaintiff's copyright. As such, Plaintiff mailed its
20      Amended Complaint to the Court naming Benjamin Wagar as the
21      Defendant in this action. (ECF No. 14, at 2.)

22  The disconnect is how Plaintiff arrived at this conclusion—that the actual infringer is
23  a member of the subscriber's household (and not the subscriber himself or anyone
24  else)—when all it had was an IP address, the name of the Bittorrent client used, the
25  alleged time of download, and an unresponsive subscriber.

26

27  _____
    [2] This analysis similarly applies in *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D.
    Cal. filed Aug. 2, 2012), where Plaintiff fails to allege sufficient facts to show how Mayon Denton is
28  the infringer.

Supplemental Exhibits - Page 36

**RJN 74**

1    Plaintiff's December 27, 2012 Discovery Status Report gives additional insight
2    into Plaintiff's deductive process:

3    In cases where the subscriber remains silent, Plaintiff conducts
4    investigations to determine the likelihood that the subscriber, or someone
     in his or her household, was the actual infringer. . . . For example, if the
5    subscriber is 75 years old, or the subscriber is female, it is statistically
6    quite unlikely that the subscriber was the infringer.  In such cases,
     Plaintiff performs an investigation into the subscriber's household to
7    determine if there is a likely infringer of Plaintiff's copyright. . . .
8    Plaintiff bases its choices regarding whom to name as the infringer on
     factual analysis.  (ECF No. 15, at 24.)
9

10   The Court interprets this to mean: if the subscriber is 75 years old or female, then
11   Plaintiff looks to see if there is a pubescent male in the house; and if so, he is named
12   as the defendant.  Plaintiff's "factual analysis" cannot be characterized as anything
13   more than a hunch.

14   Other than invoking undocumented statistics, Plaintiff provides nothing to
15   indicate that Benjamin Wagar is the infringer.  While it is plausible that Benjamin
16   Wagar is the infringer, Plaintiff's deduction falls short of the reasonableness standard
17   required by Rule 11.

18   For instance, Plaintiff cannot show that Benjamin is the infringer instead of
19   someone else, such as: David Wagar; other members of the household; family guests;
20   or, the next door neighbor who may be leeching from the Wagars' Internet access.
21   Thus, Plaintiff acted recklessly by naming Benjamin Wagar as the infringer based on
22   its haphazard and incomplete investigation.

23   Further, the Court is not convinced that there is no solution to the problem of
24   identifying the actual infringer.  Here, since Plaintiff has the identity of the subscriber,
25   Plaintiff can find the subscriber's home address and determine (by driving up and
26   scanning the airwaves) whether the subscriber, (1) has Wi-Fi, and (2) has password-
27   protected his Wi-Fi access, thereby reducing the likelihood that an unauthorized user
28   outside the subscriber's home is the infringer.  In addition, since Plaintiff is tracking a

6

**RJN 75**

number of related copyrighted videos, Plaintiff can compile its tracking data to determine whether other copyrighted videos were downloaded under the same IP address. This may suggest that the infringer is likely a resident of the subscriber's home and not a guest. And an old-fashioned stakeout may be in order: the presence of persons within the subscriber's home may be correlated with tracking data—the determination of who would have been in the subscriber's home when the download was initiated may assist in discovering the actual infringer.

Such an investigation may not be perfect, but it narrows down the possible infringers and is better than the Plaintiff's current investigation, which the Court finds involves nothing more than blindly picking a male resident from a subscriber's home. But this type of investigation requires time and effort, something that would destroy Plaintiff's business model.

The Court has previously expressed concern that in pornographic copyright infringement lawsuits like these, the economics of the situation makes it highly likely for the accused to immediately pay a settlement demand. Even for the innocent, a four-digit settlement makes economic sense over fighting the lawsuit in court—not to mention the benefits of preventing public disclosure (by being named in a lawsuit) of allegedly downloading pornographic videos.

And copyright lawsuits brought by private parties for damages are different than criminal investigations of cybercrimes, which sometimes require identification of an individual through an IP address. In these criminal investigations, a court has some guarantee from law enforcement that they will bring a case only when they actually have a case and have confidently identified a suspect. In civil lawsuits, no such guarantees are given. So, when viewed with a court's duty to serve the public interest, a plaintiff cannot be given free rein to sue anyone they wish—the plaintiff has to actually show facts supporting its allegations.

/ / /

/ / /

**RJN 76**

## C.     Local Rule 83-3 Violations

Under Local Rule 83-3, the Court possesses the power to sanction attorney misconduct, including: disposing of the matter; referring the matter to the Standing Committee on Discipline; or taking "any action the Court deems appropriate." L.R. 83-3.1. This includes the power to fine and imprison for contempt of the Court's authority, for: (1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) misbehavior of any of its officers in their official transactions; or, (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command. 18 U.S.C. § 401.

The Court is concerned with three instances of attorney misconduct. The first and second instances are related and concern violating the Court's discovery order. The third instance concerns possible fraud upon the Court.

### 1.     Failure to comply with the Court's discovery order

In *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012) and *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), the Court ordered Plaintiff to "cease its discovery efforts relating to or based on information obtained through any abovementioned Rule 45 subpoenas." (ECF No. 13, at 1; ECF No. 10, at 1.) Further, Plaintiff was required to name all persons that were identified through any Rule 45 subpoenas. (*Id.*)

Plaintiff responded on November 1, 2012, and indicated that it did not obtain any information about the subscribers in both of these cases. (ECF No. 10, at 6–7, 10.)[3] But in response to the Court's subsequent Orders to Show Cause, Plaintiff not only named the subscribers, but recounted its efforts to contact the subscriber and find additional information. (ECF No. 15; ECF No. 18.)

This conduct contravenes the Court's order to cease discovery. Plaintiff has provided no justification why it ignored the Court's order.

---

[3] This response was filed in *AF Holdings LLC v. Doe*, No. 2:12-cv-5709-ODW(JCx) (C.D. Cal. filed July 2, 2012).

**RJN 77**

1       2.    *Fraud on the Court*

2       Upon review of papers filed by attorney Morgan E. Pietz, the Court perceives

3  that Plaintiff may have defrauded the Court. (ECF No. 23.)[4] At the center of this

4  issue is the identity of a person named Alan Cooper and the validity of the underlying

5  copyright assignments.[5] If it is true that Alan Cooper's identity was misappropriated

6  and the underlying copyright assignments were improperly executed using his

7  identity, then Plaintiff faces a few problems.

8       First, with an invalid assignment, Plaintiff has no standing in these cases.

9  Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as

10  these cases were filed for a facially improper purpose. And third, the Court will not

11  idle while Plaintiff defrauds this institution.

12  **D.    Conclusion**

13       Accordingly, the Court hereby **ORDERS** Brett L. Gibbs, **TO SHOW CAUSE**

14  why he should not be sanctioned for the following:

15      • In *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal.

16         filed Aug. 1, 2012), violating the Court's October 19, 2012 Order

17         instructing AF Holdings to cease its discovery efforts based on

18         information obtained through any earlier-issued subpoenas;

19      • In *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal.

20         filed Aug. 2, 2012), violating the Court's October 19, 2012 Order

21         instructing AF Holdings to cease its discovery efforts based on

22         information obtained through any earlier-issued subpoenas;

23  / / /

24

25  [4] Although the papers revealing this possible fraud were filed in *Ingenuity 13 LLC v. Doe*, No. 2:12-

26  cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), this fraud, if true, was likely committed by Plaintiff in each of its cases before this Court.

27  [5] For example, in *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2,

28  2012), Plaintiff filed a copyright assignment signed by Alan Cooper on behalf of Plaintiffs. (ECF No. 16-1.)

Supplemental Exhibits - Page 40

**RJN 78**

Case 2:12-cv-08333-ODW-JC Document 48 Filed 02/07/13 Page 10 of 14 Page ID #:609
#:817

- In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), violating Rule 11(b)(2) by:
  - o alleging copyright infringement based on a snapshot of Internet activity, without conducting a reasonable inquiry; or,
  - o alleging that Benjamin Wagar is the infringer, without conducting a reasonable inquiry;
- In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), violating Rule 11(b)(2) by:
  - o alleging copyright infringement based on a snapshot of Internet activity, without conducting a reasonable inquiry; or,
  - o alleging that Mayon Denton is the infringer, without conducting a reasonable inquiry;
- In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), perpetrating fraud on the Court by misappropriating the identity of Alan Cooper and filing lawsuits based on an invalid copyright assignment.

This order to show cause is scheduled for hearing on March 11, 2013, at 1:30 p.m., to provide Mr. Gibbs the opportunity to justify his conduct. Based on the unusual circumstances of this case, the Court invites Morgan E. Pietz to present evidence concerning the conduct outlined in this order. The Court declines to sanction Plaintiffs AF Holdings LLC and Ingenuity 13 LLC at this time for two reasons: (1) Mr. Gibbs appears to be closely related to or have a fiduciary interest in Plaintiffs; and; (2) it is likely Plaintiffs are devoid of assets.

If Mr. Gibbs or Mr. Pietz so desire, they each may file by February 19, 2013, a brief discussing this matter. The Court will also welcome the appearance of Alan Cooper—to either confirm or refute the fraud allegations.

Based on the evidence presented at the March 11, 2013 hearing, the Court will consider whether sanctions are appropriate, and if so, determine the proper

Supplemental Exhibits - Page 41

**RJN 79**

Case 2:11-cv-08333-ODW-JCG Document 65-5 Filed 07/02/10/11 Page 12 of 12 Page ID #10
#:818

1 | punishment.   This may include a monetary fine, incarceration, or other sanctions

2 | sufficient to deter future misconduct.  Failure by Mr. Gibbs to appear will result in the

3 | automatic imposition of sanctions along with the immediate issuance of a bench

4 | warrant for contempt.

5 |      **IT IS SO ORDERED.**

6 |      February 7, 2012

7 |

8 |

9 |                        **OTIS D. WRIGHT, II**
                   **UNITED STATES DISTRICT JUDGE**

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

Supplemental Exhibits - Page 42

11

**RJN 80**

# Exhibit B

# Contact Report
**Tony Saltmarsh**

Report Expiration
July 30, 2013

| | |
|---|---|
| *Name* | Tony Saltmarsh |
| *Age* | 28 |
| *Date of Birth* | 1/17/1985 |
| *Phone Number* | N/A |
| *Additional Phone Numbers* | 603-224-4510, 601-848-5514 |
| *Most Recent Address* | 314 W Monte Cristo Ave, Phoenix, AZ 85023-7420 |
| *Ali    /Name Variations* | Anthony J Saltmarsh |

**Email:**

| | |
|---|---|
| b****@comcast.net | **Tony Saltmarsh**<br>122 Bow Bog Road<br>Bow, NH 03304 |
| b****@attbi.com | **Tony Saltmarsh**<br>122 Bow Bog Road<br>Bow, NH 03304 |
| b****@aol.com | **Tony Saltmarsh**<br>122 Bow Bog Road<br>Bow, NH 03304 |
| b****@attbi.com | **Tony Saltmarsh**<br>122 Bow Bog Road<br>Bow, NH 03304 |
| b****@attbi.com | **Tony Saltmarsh**<br>122 Bow Bog Road<br>Bow, NH 03304<br>601-848-5514 |
| b****@comcast.net | **Tony Saltmarsh**<br>122 Bow Bog Rd<br>Bow, NH 03304-3902 |
| b****@attb1.com | **Tony Saltmarsh**<br>122 Bow Bog Rd<br>Bow, NH 03304-3902 |
| b****@geocities.com | **Tony Saltmarsh**<br>122 Bow Bog Rd<br>Bow, NH 03304-3902 |
| t****@msn.com | **Tony Saltmarsh**<br>122 Bow Bog Rd<br>Bow, NH 03304-3902 |

**4 addresses were found**

| Address | City, State, Zip | Phone | Added | Updated |
|---|---|---|---|---|

**RJN 82**

| 314 W Monte Cristo Ave | Phoenix, AZ 85023-7420 | | 7/2011 | 7/2011 |
|---|---|---|---|---|
| 4532 E Villa Theresa Dr | Phoenix, AZ 85032-1554 | | 4/2009 | 4/2009 |
| 17212 N Scottsdale Rd, Apt 2312 | Scottsdale, AZ 85255-9615 | | 2/2007 | 9/2007 |
| 122 Bow Bog Rd | Bow, NH 03304-3902 | 603-224-4510 | | 2007 |

**Possible Relatives**

Possible relatives are people who are likely relatives of Tony Saltmarsh based on matching surname and shared addresses. Please note that this will not include all relatives.

**5 possible relatives were found**

**Aaron A Saltmarsh**
**Alexander W Saltmarsh**
**Brandy Eileen Saltmarsh**
**Davis**
**Stephanie L Edwards**
**Name**                                                                    Age  Address

**RJN 83**

# Exhibit C

Case 2:12-cv-08333-ODW-JC-Document-155-Filed-02/01/13-Page-47-of-88    Page ID #:823

# Contact Report
## Jayme C Steele

Report Expiration
July 30, 2013

Name Jayme C Steele
Age 35
Date of Birth 3/30/1977
P -592-0011
Additional P 702-223-5209, 952-903-5343

Most Recent Address 314 W Monte Cristo Ave, Phoenix, AZ 85023-7420
Ali /Name Jamey Steele
Variations

**14 addresses were found**

| Address Added Updated | City, State, Zip | Phone |
|---|---|---|
| 314 W Monte Cristo Ave 7/2011 7/2011 | Phoenix, AZ 85023-7420 | |
| 21251 220th St 6/2005 11/2006 | Mc Grath, MN 56350-4117 | 320-592-0011 |
| 3743 Ir ton Ave 2/2000 12/2005 | Miami, FL 33133-6105 | |
| 7641 128th St W 12/1995 | Saint Paul, MN 55124-9767 | |
| 21468 E Bonanza Way | Queen Creek, AZ 85142-3291 | |
| 21067 220th St | Mc Grath, MN 56350-4019 | 320-592-0011 |
| 4532 E Villa Theresa Dr | Phoenix, AZ 85032-1554 | |

**RJN 85**

Case 2:12-cv-08333-ODW-JC Document 55 Filed 02/20/13 Page 48 of 89   Page ID #:824

| 4404 Sandhorse Ct | Las Vegas, NV 89130-5212 | 702-223-5209 |
|---|---|---|
| 222 Zamora Ave, Apt 7 | Coral Gables, FL 33134-3930 | |
| 7511 Bristol Village Dr | Minneapolis, MN 55438-2562 | 952-903-5343 |
| 3160 Florida Ave | Miami, FL 33133-5113 | |
| 824 Jefferson Ave | Miami Beach, FL 33139-5632 | |
| 5533 Lagorce Dr | Miami Beach, FL 33140-2107 | |

**Possible Relatives**

Possible relatives are people who are likely relatives of Jayme C Steele based on matching surname and shared addresses. Please note that this will not include all relatives.

**4 possible relatives were found**

Deborah A Steele
Elizabeth N Steele
John Lawrence Steele Jr
John L J Steel

Name                              Age  Address

**RJN 86**

# Exhibit D

# VPR INC.

## Business Entity Information

| Status: | Default | File Date: | 11/9/2010 |
|---|---|---|---|
| Type: | Domestic Corporation | Entity Number: | E0540532010-2 |
| Qualifying State: | NV | List of Officers Due: | 11/30/2012 |
| Managed By: | | Expiration Date: | |
| NV Business ID: | NV20101804310 | Business License Exp: | 11/30/2012 |

## Registered Agent Information

| Name: | SPIEGEL & UTRERA, P.A. | Address 1: | 1785 EAST SAHARA AVENUE, SUITE 490 |
|---|---|---|---|
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89104 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

## Financial Information

| No Par Share Count: | 0 | Capital Amount: | $ 75,000.00 |
|---|---|---|---|
| Par Share Count: | 75,000.00 | Par Share Value: | $ 1.00 |

## Officers

☐ Include Inactive Officers

### President - ALAN COOPER

| Address 1: | 4532 EAST VILLA THERESA DR | Address 2: | |
|---|---|---|---|
| City: | PHOENIX | State: | AZ |
| Zip Code: | 85032 | Country: | |
| Status: | Active | Email: | |

### Secretary - ALAN COOPER

| Address 1: | 4532 EAST VILLA THERESA DR | Address 2: | |
|---|---|---|---|
| City: | PHOENIX | State: | AZ |
| Zip Code: | 85032 | Country: | |
| Status: | Active | Email: | |

Supplemental Exhibits - Page 50

**RJN 88**

2/3/13     Case 2:12-cv-08333-ODW-JC Document 58-4 Filed 06/02/13 Page 50 of 63     Page ID #:827

| Treasurer - ALAN COOPER | | | |
|---|---|---|---|
| Address 1: | 4532 EAST VILLA THERESA DR | Address 2: | |
| City: | PHOENIX | State: | AZ |
| Zip Code: | 85032 | Country: | |
| Status: | Active | Email: | |
| Director - ALAN COOPER | | | |
| Address 1: | 4532 EAST VIL | | |
| | | | |
| | | | |
| | | | |

| | les of Incorporation | | |
|---|---|---|---|
| Document Number: | 20100841806-90 | # of Pages: | 4 |
| File Date: | 11/9/2010 | Effective Date: | |
| Initial Stock Value: Par Value Shares: 75,000 Value: $ 1.00 No Par Value Shares: 0 ---------------------------------------------------------------- Total Authorized Capital: $ 75,000.00 | | | |
| Action Type: | Initial List | | |
| Document Number: | 20100868226-35 | # of Pages: | 1 |
| File Date: | 11/17/2010 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20120252442-44 | # of Pages: | 1 |
| File Date: | 4/10/2012 | Effective Date: | |
| (No notes for this action) | | | |

<u>**EXHIBIT V**</u> **TO SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ, ESQ., FILED IN *INGENUITY 13 v. DOE*, C.D. CAL. NO. 2:12-cv-8333 (Dkt. 53)**

# IN THE CIRCUIT COURT
## FOR THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

|  |  |
|---|---|
| GUAVA, LLC, | Case Number: 12-MR-417 |
| Petitioner, | |
| | Assigned to Honorable Andrew J. Gleeson |
| v. | |
| COMCAST CABLE COMMUNICATIONS, LLC, | |
| Respondent. | Hearing Date:   February 21, 2013 |
| | Hearing Time:   11:00 A.M. |
| | Hearing Place:  Courtroom 404, |
| | County Bldg., Belleville, IL |

## CONSOLIDATED REPLY IN SUPPORT OF JOHN DOES' MOTIONS TO QUASH

The oppositions filed in this matter only make it increasingly clear that this case is but the latest example of intentional fraud on the Court by the attorneys associated with Prenda Law, Inc.

**(a)**    **Fraud on the Court**

First, it is irrefutable that there are at least two obvious lies contained in plaintiff's Rule 224 Petition. Paragraph 6 of the Petition sates, in no uncertain terms, and *not* on information and belief, that "Venue is proper because at least one of the John Doe Defendants resides in St. Clair County, Illinois. Further, Comcast transacts business in St. Clair County, Illinois." Petition ¶ 6. As shown by the spreadsheet prepared by Comcast, attached hereto as Exhibit R (table showing IP addresses by county)[1], this statement, which was verified under penalty of perjury (although by whom is anyone's guess) is 100% false. *According to Comcast's records, not a single John Doe defendant actually resides in St. Clair County.* There is a simple reason for this: *Comcast does not transact business in St. Clair County*—Charter is the franchised cable operator in the area. Making a stretch argument to try and find a home for a case in St. Clair County is one thing. Resorting to outright fraud to achieve that goal is another. This is no mere mistake. Particularly in view of all the other suspiciously convenient "mistakes" Prenda appears to have made in this case,

---

[1] The Exhibit lettering used here is continued from the Exhibits to the Declaration of Morgan E. Pietz re: Prenda Law, Inc, which filed by Mr. Pietz in connection with his Motion to Quash.

- 1 -

**RJN 91**

and its sordid record of fraud on various other Courts around the country, this Court should see past any excuse of mere incompetence and recognize this as an intentional and deliberate fraud.

Second, beyond the lie used to establish jurisdiction and venue, the entire petition action and everything that has flowed from it is all a fraud, because the petition is fraudulently verified. More than a month ago, attorney Thomas Leverso, on behalf of a John Doe, filed a Rule 237 Petition and related Order to Show Cause pointing out the myriad reasons the verification filed in this case is not credible. In response to these very serious allegations that Prenda has filed yet another[2] fraudulent verification, this time here in this action, Prenda has repeated its usual playbook of ignoring the problem for as long as possible, making procedural objections, and then trying to explain a fraud as some kind of clerical error. The verification appears to say "Alan Moay," and as Mr. Leverso noted in his Rule 237 Petition, etc., that is a bogus name; according to an investigator using national databases, there is no record of anyone in the United States with such a name.

Prenda's new story, per its opposition to Mr. Leverso's Rule Petition, is that the verification does not say "Alan Moay," rather, it says "Alan Mony." Opp to Leverson Motion, p. 5. First of all, this, too, is false. The verification very clearly says "Alan Moay." Prenda has been requested to bring the original verification document to the next hearing to settle this argument; but if past is prologue, it won't. *See* Exhibit S (post 2/13 meet and confer email chain).

More importantly though, it now appears that "***Alan Mony," the supposed new name of the verifying "client," is also a bogus name***. The same kind of national database search which revealed that there is no "Alan Moay" in the U.S. yields the same results for "Alan Mony"; it's a bogus name; there is no record of any such person. Exhibit T (investigator report on "Alan Mony"). The closest name anywhere in the U.S. is for an "Allan Mony" with two l's. *Id.* What does ring a bell though, as far as Prenda goes, is the name "Allan Mooney." A man named "Allan Mooney" has previously been listed as the manager of MCGIP, LLC, one of Prenda's earlier

---

[2] Another example of a fraudulent verification filed by Prenda, supposedly signed by "Alan Cooper" was attached as Exhibit L to the Dec'l of Morgan E. Pietz. That verification, along with various copyright assignment agreements also supposedly signed by "Alan Cooper" on behalf of Prenda sham entities, is the subject of the scathing Order to Show Cause re: Sanctions from Judge Wright of the Central District of California, a copy of which was lodged with this Court at the last hearing. *See Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, ECF No. 48.

- 2 -

**RJN 92**

mysterious shell company plaintiffs (which Prenda's lawyers probably own). See Exhibit U, (Minnesota Secretary of State business entity detail for MCGIP, LLC.) According to the Minnesota Secretary of State, the official address for MCGIP, LLC is "care of Alpha Law Group," at Alpha law's office in Minnesota. Alpha Law Group is the newest firm name being used by John Steele's former (current?) law partner Paul Hansemeier, who is also the brother of Prenda's current preferred technical expert Pete Hansemeier.[3] Further, a man using the email address "amooney29@gmail.com" is apparently involved in the online adult entertainment business, per an Adult Industry News article where Allan Mooney was selling the domain name <orgasms.com>, a copy of which is attached hereto as Exhibit V. Finally, one "Alan Mooney" is also a current client of Alpha Law / Paul Hansemeier, in *Mooney v. Priceline.Com Incorporated et al.*, No. 12-cv-02731-DWF-JSM (D. Minn. Oct. 26, 2012). Exhibit W (Hennepin County, Minnesota, complaint listing Paul Hansemeier of Alpha Law Firm LLC as attorney of record for plaintiff "Alan Mooney").

After Prenda's newest story was learned by defense counsel the morning of the 2/13 hearing in this matter,[4] Prenda's past connections to a man named "Allan Mooney" were pointed out to Prenda in follow up attempt meet and confer emails. Specifically, Prenda's past history with "Allan Mooney" was detailed, and all three of Prenda's lawyers in this case were asked to confirm that the new story was that the person who verified the petition spells his name "Alan Mony." Prenda's response, in its entirety (by way of Mr. Hoerner) was "The issues have already been briefed. See you in court." Accordingly, Mr. Hoerner was then advised that since he was the only one who had signed the opposition stating that the affiants name is "Alan Mony"[5] the defendants

---

[3] For background on how John Setele and Paul Hansemeier's firm started this scheme as Steele Hansemeier, PLLC, but then rebranded as Prenda Law, Inc., refer to the Declaration of Morgan E. Pietz re: Prenda Law, Inc., ¶¶ 5–13.

[4] This brings up yet another fraud in this case: the proofs of service on Prenda's oppositions. Attorney Morgan Pietz, at least, never received a copy of the opposition that was supposedly mailed to him on February 11, 2013. Just whose name is on that proof of service anyway? While this kind of thing is not usually worth making a fuss over, with Prenda, it is part of a pattern, and, unfortunately, completely typical.

[5] All of the other oppositions, other than the one where Prenda says the name of the client is really "Alan Mony" were signed by Paul Duffy of Chicago. Presumably, Mr. Hoerner signed the

- 3 -

would proceed on the assumption that this spelling was correct, but would seek costs and fees if Prenda later decided to try and change its story, given the refusal to meet and confer on the issue.

As noted in Mr. Pietz's motion, and supporting declaration, this is not the first time that very serious questions have been raised about Prenda using false names to sign to Court documents, including verifications and declarations offered under penalty of perjury. Pietz Motion, p. 8; Dec'l. of Morgan E. Pietz re: Prenda Law, Inc., ¶¶ 29–42. In fact, this is not even the first time that Prenda, after being accused of fraud on the Court, has responded to that fraud with more fraud; an example which also involved Prenda's misspelling of the name of the supposed affiant. In *Sunlust Pictures, LLC v. Nguyen*, M.D. Fl. No. 12-cv-1685, Prenda attempted to perpetrate another fraud on the Court (holding out John Steele's former paralegal as a "principal" of Sunlust Pictures), all as stated in the hearing transcript attached as <u>Exhibit N</u> to the Dec'l. of Morgan E. Pietz re: Prenda Law, Inc. In an attempt to explain that fraud, Prenda ended up submitting a fraudulent declaration, where the person signing it supposedly misspelled his own name on the signature line. The true principal of *Sunlust* is named Daniel Weber; but the first declaration which *he* supposedly signed, and which Prenda filed in their response to the sanctions motion spelled it "Webber" with to b's. The first declaration was also full of other lies (i.e., that Weber was out of the US during the hearing he had been ordered to attend), which defense counsel there immediately pointed out. Eventually, actual Daniel Weber did file a corrected declaration attempting to explain away his (attorney's) lies in the previous declaration. The fraudulent first declaration, which attempted to explain the fraud on the court, is now the subject of a second sanctions motion. *Sunlust Pictures, LLC v. Nguyen*, M.D. Fl. No. 12-cv-1685 (ECF No. 46, 12/31/13) attached hereto as <u>Exhibit X</u>.

**(b)    Merits of Movants' Objections to Plaintiff's Rule 224 Petition**

Plaintiff's oppositions have no retort to the argument, made by Mr. Pietz in his motion to quash, that use of a Rule 224 petition here is *unnecessary* because the plaintiffs are already sufficiently identified (by I.P. address) that they can be sued for damages without resort to Rule

---

opposition (to Mr. Leverso's motion) containing the name "Alan Mony" so that Prenda can pretend there was some transcription error on the spelling over the phone, to explain why it is that Prenda has misspelled the name of the purported verifying client for a second time in this case, after being accused of fraud on that issue.

- 4 -

**RJN 94**

224 discovery. On its face, Rule 224 is narrowly limited to situations where discovery is

"necessary," and *Gaynor v. Burlington Northern and Santa Fe Railway*, 750 N.E.2d 307 (2001)

clarifies that if a plaintiff has enough information already to sue for damages, Rule 224 discovery

should be denied. Here, as in Gaynor, the existence of a parallel action for damages (here, the

*Lightspeed* case) conclusively proves that Rule 224 discovery is not a "condition precedent" to

filing a complaint for damages. Even if we accept plaintiff's dubious representation that Guava,

LLC has "has no corporate or other relation" to Lightspeed Media Corporation (Opp. to Leverso

Motion, p. 1), it does not matter. Regardless of whether Lighspeed and Guava are the same entity

or not, the bottom line is that Prenda has already proven conclusively, through the *Lightspeed* case,

that in its view, Prenda can file a complaint against a single John Doe defendant, *identified only by

IP address*, and then make its case using the regular discovery provisions of Rule 201. If suing a

John Doe identified by solely by IP address for damages was sufficient for Prenda in *Lightspeed*,

why is Rule 224 discovery now suddenly a "condition precedent" to filing the *exact* same kind of

suit here now? Prenda has filed hundreds of complaints for damages, based on an IP address

alone; its new position that it now believes Rule 224 discovery is *required* before it can file such

complaints is another misrepresentation made in bad faith.

Movants cited chapter and verse, black letter law, that when considering a Rule 224

Petition, the Court should apply a Section 2-615 analysis to the claims at issue. *See, e.g.,* Pietz

Motion, pp. 9. Having established that proposition, movants then cited a slew of CFAA cases[6] all

of which clearly establish that plaintiff's claims do not pass muster under a Section 2-615 analysis.

*See, e.g.,* Pietz Motion, pp. 16–20. Plaintiff responded to this array of authority in its opposition

with a bit of a curveball. Rather than argue that the allegations in the Petition state a valid claim

under the Computer Fraud and Abuse Act, plaintiff instead premises its argument on the notion

that a Section 2-615 analysis of the underlying claim is not required in a Rule 224 petition action.

Simply put, plaintiff needs to (re?)-read the many cases cited by movants which establish this point

as black letter law. The closest plaintiff comes to a coherent argument on this issue is the

observation that many of the Rule 224 cases cited by movants involved underlying claims for

---

[6] No cases were needed on the Computer Tampering claim; the relief sought here is barred on the
face of the statute itself, since there are no allegations of a virus or malware. *See* Pietz Motion, pp.
19–20.

defamation, rather than underlying claims for CFAA or Computer Tampering violations. So what? The point of general standards for analysis is that they can be used in different circumstances. Whatever the underlying claim at issue, the law is clear that the applicable analysis that should be applied to Rule 224 petitions is a Rule 2-615 analysis. Plaintiffs are correct to note that "illegal hacking is not protected by the First Amendment;" however, neither, for that matter, is defamation protected by the First Amendment. Plaintiff's entire argument on the Section 2-615 analysis makes no sense and should be viewed as a tacit admission that the allegations in the Petition, if true, could not state a causes of action for CFAA or Computer Tampering.

One argument plaintiff does engage with in the oppositions is movants point that the petition is overbroad insofar as it requests phone numbers, emails and MAC addresses. As argued in Mr. Pietz's motion, Rule 224 petitions are limited to information needed to *identify* defendants, and in most cases, a name and address is sufficient for that purpose. Here, plaintiff wants the phone numbers, emails and MAC addresses not to *identify* potential defendants, but because it wants to hold Internet subscribers *responsible* for infringement.[7] But Rule 224 does not permit discovery to reach blame or liability; it is limited to identification of a potential defendant. Movants cite cases standing for the proposition that this means a name and address, no more. Plaintiff cites no authority suggesting that phone numbers, emails, or MAC addresses are appropriate information for a Rule 224 Petition, and there is none.

(c)    **Response to Plaintiff's Counter Arguments in the Oppositions**

Plaintiff's main responsive counter-argument is that movants supposedly do not have standing to challenge a subpoena seeking their identifying information. First, this argument ignores this Court's December 12, 2012 order, which explicitly grants ISP subscribers like movants an opportunity to object this petition action. Second, Rule 224, on its face, provides for a required hearing. Third, this Court was correct to invite movants to object, because movants absolutely do have standing to object to the release of their identifying information to a litigant engaged in a fraudulent, extortionate enterprise. Even if plaintiffs were acting in good faith, and this entire action was not predicated on various frauds, movants would still have standing to object

---

[7] *See also* the copy of the Guava, LLC extortion letter being used in this case, which was lodged with the Court at the 2/13 hearing.

- 6 -

**RJN 96**

to the release of their information.  As expounded in further detail in Mr. Leverso's motion (pp. 2-5), movants here do have standing to object. The court need only look at essentially any reported appellate case on Rule 224 petitions ever decided to verify this proposition; the challenging party is almost always the third party about whom information is being sought (i.e., the real party in interest), not the respondent with the records.  Like a subpoena, the Rule 224 petition, seeks to infringe upon movants legitimate interests to be free of oppression, embarrassment, or undue burden. *See Bush v. Catholic Diocese*, 351 Ill.App.3d 588, 591, 814 N.E.2d 135 (3d Dist. 2004); *United States v. Ranieri*, 670 F .2d 702,772 (7th Cir. l982) *accord Special Mkts. Ins. Consultants, Inc. v. Lynch*, Case No. 11 C 9181, 2012 WLl565348 (N.D. Ill. May 2, 2012).

Plaintiff's other featured argument, that movants do not have "approval to proceed anonymously," is a complete red herring.  As the court rightly noted at the February 13, 2013 hearing with respect to the *in pro per* litigant in attendance, the main issue being litigated right now is whether the Movants should be identified to the plaintiff. The time to brief the issue anonymous participation in judicial proceedings, and the potential limited use of a "John Doe" pseudonym for purposes of the public docket, is after the court determines whether Movants should be identified in the first place and if these people are actually sude for damages.  Either the Court is going to deny the petition so that no information is disclosed, or it is going to order that Comcast identify the Movants to the plaintiff.  Plaintiff's position that 'in order to object to plaintiff's subpoena seeking to identify you, you need to first identify yourself to the plaintiff' is plainly a Catch 22 that makes no sense.

Most of the balance of plaintiff's oppositions amount to little more than personal attacks on certain of the defense attorneys involved in this action.  With respect to the attacks on Mr. Pietz, Judge Wright's order from the Central District of California, relating to a series of related cases where Mr. Pietz was very involved, speaks for itself. *Ingenuity 13, LLC v. John Doe* , C.D. Cal. No. 12-cv-8333, ECF No. 48 (copy lodged with the Court at the 2/13 hearing).  Since that order has been issued, Paul Duffy (counsel here) and Prenda Law have more or less dismissed all Ingenuity 13 and AF Holdings cases in California, and most of them across the country—which could perhaps be viewed as a tacit admission that all of Prenda's AF Holdings and Ingenuity 13

- 7 -

cases were also fraudulent upon inception—just like the fraudulently verified petition full of lies about venue and jurisdiction currently before this Court.

Finally, the extortion letter from Brett Gibbs,[8] as "in house counsel for Guava, LLC," clarifies what the movants have suspected all along: that this case is not really a 'password hacking' CFAA case, but a BitTorrent copyright infringement case in disguise. Mr. Gibbs' letter makes clear that really, the gravamen of the complaint against the John Does is not that they breached a computer network; its that they engaged in file-sharing on BitTorrent (which is possibly copyright infringement, but not computer fraud). This only lends further support to the notion that this whole suit is a transparent attempt to abuse this Court's jurisdiction, and the Rule 224 process, to seek the kind of discovery that Prenda is now routinely denied in copyright infringement cases in federal court. Again, Prenda has told the Court one thing—*i.e.*, that it wants to sue people under the CFAA—but then done another—*i.e.*, try and then use the subpoena return info to bring claims for copyright infringement.

**(d)     Conclusion**

The kind of abuse Prenda Law is up to—lying about jurisdiction and venue, systemic filing of bogus verifications and other documents, filing claims that cannot withstand even basic legal scrutiny, pressuring people to "settle" when it knows many such people are probably totally innocent—undermine the very integrity of the legal system. These missteps are not mistakes. They are part of a calculated scheme that, even without all of the fraud, comes very close to extortion. However, the Declaration of Morgan E. Pietz makes clear that his case is part of a systemic, calculated national conspiracy, which (particularly if Alan Cooper's allegations of identity theft prove true) may very well be a criminal enterprise. Accordingly, movants respectfully request that this court follow Judge Wright's lead, and come down on Prenda Law like a ton of bricks. Prenda's various frauds on various courts—including this one—have gone on for long enough. The Rule 224 subpoena should be denied as to the movants, and the next and final issue the Court should then consider is awarding sanctions and attorneys fees.

As of 12:00 noon PST on Friday February 15, 2013, undersigned counsel is authorized to report that in addition to Mr. Pietz's clients with IP address numbers 71.229.73.180 and

---

[8] This letter is the second document lodged with the Court at the February 13, 2013 hearing.

67.162.81.65; attorney Thomas Leverso, on behalf of his client with I.P. address number
68.58.68.84; attorney Earl Hubbs, on behalf of his client with IP address number 24.14.130.85;
and attorney Holly A. Reese on behalf of her client with IP address number 79.29.36.240; all join
in this consolidated reply.


Respectfully submitted,

DATED: February 15, 2013,



_____

Morgan E. Pietz (CA Bar No. 260629)*
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
Telephone:    (310) 424-5557
Facsimile :    (310) 546-5301
* *Pro Hac Vice*
Attorney for Movants

Laura K. Beasley (IL Bar No. 6274537)
JOLEY, NUSSBAUMER, OLIVER,
          DICKERSON & BEASLEY, P.C.
8 East Washington Street
Belleville, Illinois 62220
Tel: (618) 235-2020
Fax: (618) 235-9632
Local Counsel for Movants


## CERTIFICATE/PROOF OF SERVICE

On this day, I, on oath, state that I on this day I served this notice and true and accurate copies of
the above documents by personal service and/or mailing copies to each entity to whom they were
directed by depositing the same in the U.S. Mail, proper postage prepaid in full, at a U.S. Postal
Depository on this day before the hour of 4:00 p.m.


Dated: February 15, 2013    _____

                            Morgan E. Pietz (CA Bar No. 260629)*
                            THE PIETZ LAW FIRM


- 9 -

## SERVICE LIST

Kevin T. Hoerner
BECKER, PAULSON, HOERNER &
THOMPSON, P.C.
5111 West Main Street
Belleville, IL 62226

Paul Duffy
PRENDA LAW, INC.
2 North LaSalle Street, 13th Floor
Chicago, IL 60602

*Attorneys for Petitioner*

Comcast Cable Communications, LLC
c/o Subpoena Response Team
650 Centerton Road
Moorestown, NJ 08057

*In-House Legal For Respondent*

John D. Siever
DAVIS WRIGHT TREMAINE
1919 Pennsylvania Avenue NW
Suite 800
Washington, DC 20006-3401

*Outside Counsel for Respondent*

Andrew Toennies
714 Locust Street
St. Louis, MO 63101

*Local Counsel for Respondent*

Laura K. Beasley (IL Bar No. 6274537)
JOLEY, NUSSBAUMER, OLIVER,
& BEASLEY, P.C.
8 East Washington Street
Belleville, Illinois 62220

Thomas V. Leverso
LAW OFFICES OF THOMAS V. LEVERSO
33 West Higgins Road, Suite 3080
South Barrington, IL 6001

Erin K. Russell
THE RUSSELL FIRM
23 South Wacker Drive, 84th Floor
Chicago, IL 60606

Earl Hubbs
RICK REED
6464 West Main, Suite 1B
Belleville, IL 62223

Annie Bode Callahan
SMITH AMUNDSEN
12312 Olive Boulevard, Suite 100
St. Louis, MO 63141

Holly A. Reese
GOLDENBERG HELLER ANTOGNOLI &
ROWAND, P.C.
2227 South State Route 157
P.O. Box 959
Edwardsville, Illinois 62025

*Attorneys for ISP Subscribers*

- 10 -

| TICKET # | IP ADDRESS | CUSTOMER CITY | CUSTOMER COUNTY | CUSTOMER STATE |
|---|---|---|---|---|
| 431809 | 173.9.253.149 | PEOTONE | WILL | IL |
| 431810 | 23.25.47.84 | ROSELLE | DUPAGE, COOK | IL |
| 431811 | 24.1.107.63 | EVANSTON | COOK | IL |
| 431812 | 24.1.191.211 | CHICAGO | COOK | IL |
| 431813 | 24.1.141.155 | SPRINGFIELD | SANGAMON | IL |
| 431814 | 24.1.175.233 | CHICAGO | COOK | IL |
| 431815 | 24.1.75.199 | DECATUR | MACON | IL |
| 431816 | 24.12.113.158 | MOUNT PROSPECT | COOK | IL |
| 431817 | 24.1.95.156 | CHICAGO | COOK | IL |
| 431818 | 24.1.98.146 | CHICAGO | COOK | IL |
| 431819 | 24.12.116.87 | CHICAGO | COOK | IL |
| 431820 | 24.12.160.43 | BUFFALO GROVE | COOK | IL |
| 431821 | 24.12.160.5 | ROLLING MEADOWS | COOK | IL |
| 431822 | 24.12.17.76 | CHICAGO | COOK | IL |
| 431824 | 24.12.235.189 | LIBERTYVILLE | LAKE | IL |
| 431825 | 24.12.215.82 | EVANSTON | COOK | IL |
| 431826 | 24.12.255.78 | CHICAGO | COOK | IL |
| 431827 | 24.12.30.72 | AURORA | KANE, DUPAGE, ETC | IL |
| 431828 | 24.12.9.239 | CHICAGO | COOK | IL |
| 431829 | 24.13.103.83 | CHICAGO | COOK | IL |
| 431830 | 24.13.118.250 | CHICAGO | COOK | IL |
| 431831 | 24.13.137.179 | CHICAGO | COOK | IL |
| 431832 | 24.13.161.156 | SCHAUMBURG | DUPAGE | IL |
| 431834 | 24.13.172.38 | ARLINGTON HEIGHTS | COOK, LAKE | IL |
| 431835 | 24.13.178.197 | SCHAUMBURG | DUPAGE | IL |
| 431836 | 24.13.187.100 | GLENDALE HEIGHTS | DUPAGE | IL |
| 431837 | 24.13.235.108 | HIGHLAND PARK | LAKE | IL |
| 431838 | 24.13.59.132 | CHICAGO | COOK | IL |
| 431839 | 24.14.103.125 | CHICAGO | COOK | IL |
| 431840 | 24.14.116.211 | DEKALB | DEKALB | IL |
| 431841 | 24.14.122.52 | BENSENVILLE | DUPAGE | IL |
| 431842 | 24.14.13.193 | MUNDELEIN | LAKE | IL |
| 431845 | 24.14.130.85 | CHICAGO | COOK | IL |
| 431846 | 24.14.162.27 | NORRIDGE | COOK | IL |
| 431847 | 24.14.168.183 | CHICAGO | COOK | IL |
| 431848 | 24.14.175.58 | TINLEY PARK | COOK | IL |
| 431849 | 24.14.188.2 | GLEN ELLYN | DUPAGE | IL |
| 431850 | 24.14.191.2 | GLEN ELLYN | DUPAGE | IL |
| 431851 | 24.14.191.209 | GLEN ELLYN | DUPAGE | IL |
| 431852 | 24.14.211.234 | NEW LENOX | WILL | IL |
| 431853 | 24.14.22.26 | ADDISON | DUPAGE | IL |
| 431854 | 24.14.226.226 | NEW LENOX | WILL | IL |
| 431855 | 24.14.50.22 | OAK PARK | COOK | IL |
| 431856 | 24.15.0.234 | WILLOWBROOK | DUPAGE | IL |
| 431857 | 24.15.108.237 | CREST HILL | WILL | IL |
| 431858 | 24.15.188.130 | DOWNERS GROVE | DUPAGE | IL |
| 431859 | 24.15.194.37 | DEERFIELD | LAKE | IL |
| 431860 | 24.15.21.54 | BELLWOOD | COOK | IL |
| 431861 | 24.15.225.33 | MUNDELEIN | COOK | IL |
| 431862 | 24.15.29.44 | CHAMPAIGN | CHAMPAIGN | IL |
| 431863 | 24.15.48.154 | OAK PARK | COOK | IL |
| 431864 | 24.15.94.96 | LOCKPORT | WILL | IL |
| 431865 | 24.63.77.213 | CHESTNUT HILL | MIDDLESEX | MA |
| 431866 | 24.7.197.117 | CHAMPAIGN | CHAMPAIGN | IL |
| 431867 | 24.7.199.112 | CHAMPAIGN | CHAMPAIGN | IL |
| 431868 | 24.7.214.221 | WESTMONT | DUPAGE | IL |
| 431869 | 50.129.14.36 | CHICAGO | COOK | IL |
| 431870 | 50.129.252.207 | CHICAGO | COOK | IL |
| 431871 | 50.129.68.62 | ROCKFORD | WINNEBAGO | IL |
| 431872 | 50.129.69.141 | MACHESNEY PARK | WINNEBAGO | IL |
| 431873 | 50.129.92.32 | DEKALB | DEKALB | IL |
| 431874 | 50.140.131.57 | ADDISON | DUPAGE | IL |

HIGHLIGHT = GEO-CODED RESULTS ONLY
ALL OTHERS FROM ACCOUNT RECORDS

1

**RJN 101**

| TICKET # | IP ADDRESS | CUSTOMER CITY | CUSTOMER COUNTY | CUSTOMER STATE |
|---|---|---|---|---|
| 431875 | 50.140.165.240 | CHICAGO | COOK | IL |
| 431876 | 50.140.169.244 | CHICAGO | COOK | IL |
| 431877 | 50.140.178.114 | BOLINGBROOK | WILL, DUPAGE | IL |
| 431878 | 50.141.247.73 | DEKALB | DEKALB | IL |
| 431879 | 50.141.173.240 | CHICAGO | COOK | IL |
| 431880 | 50.141.215.254 | BROOKFIELD | COOK | IL |
| 431881 | 50.141.254.153 | FORT WAYNE | ALLEN | IN |
| 431882 | 50.77.161.249 | CHICAGO | COOK | IL |
| 431883 | 67.162.108.239 | CHICAGO | COOK | IL |
| 431884 | 67.162.29.173 | DEKALB | DEKALB | IL |
| 431885 | 67.162.29.246 | DEKALB | DEKALB | IL |
| 431886 | 67.162.38.22 | CHICAGO | COOK | IL |
| 431887 | 67.162.39.33 | CHICAGO | COOK | IL |
| 431888 | 67.162.47.179 | WAUKEGAN | LAKE | IL |
| 431889 | 67.162.51.34 | WORTH | COOK | IL |
| 431890 | 67.162.81.65 | CHICAGO | COOK | IL |
| 431891 | 67.163.4.99 | DEKALB | DEKALB | IL |
| 431892 | 67.163.69.45 | COUNTRYSIDE | COOK | IL |
| 431893 | 67.163.76.75 | ORLAND PARK | COOK | IL |
| 431894 | 67.163.89.166 | JOLIET | WILL, KENDALL | IL |
| 431895 | 67.163.9.43 | MOUNT PROSPECT | COOK | IL |
| 431896 | 67.165.167.146 | BARTLETT | KANE,DUPAGE,COOK | IL |
| 431897 | 67.165.178.74 | CHICAGO | COOK | IL |
| 431898 | 67.165.179.58 | CHICAGO | COOK | IL |
| 431909 | 67.165.182.136 | CHICAGO | COOK | IL |
| 431910 | 67.165.183.182 | CHICAGO | COOK | IL |
| 431911 | 67.167.112.222 | GLEN ELLYN | DUPAGE | IL |
| 431912 | 67.167.13.9 | QUINCY | ADAMS | IL |
| 431913 | 67.167.13.99 | QUINCY | ADAMS | IL |
| 431914 | 67.167.18.189 | BUFFALO GROVE | COOK | IL |
| 431915 | 67.167.210.178 | CHICAGO | COOK | IL |
| 431916 | 67.167.246.116 | WARRENVILLE | DUPAGE | IL |
| 431917 | 67.173.104.228 | WAUKEGAN | LAKE | IL |
| 431918 | 67.173.113.134 | WOODRIDGE | DUPAGE | IL |
| 431919 | 67.173.142.217 | WESTMONT | DUPAGE | IL |
| 431920 | 67.173.41.116 | LOMBARD | DUPAGE | IL |
| 431921 | 67.173.67.242 | ROLLING MEADOWS | COOK | IL |
| 431922 | 67.173.71.42 | CHICAGO | COOK | IL |
| 431923 | 67.173.81.33 | PALATINE | COOK | IL |
| 431924 | 67.173.94.229 | WAUKEGAN | LAKE | IL |
| 431925 | 67.174.12.22 | RIVER FOREST | COOK | IL |
| 431926 | 67.174.24.44 | ITASCA | DUPAGE | IL |
| 431927 | 67.174.3.197 | CHANNAHON | WILL | IL |
| 431928 | 67.174.7.214 | STONE PARK | COOK | IL |
| 431929 | 67.175.164.253 | MELROSE PARK | COOK | IL |
| 431931 | 67.175.167.179 | CHICAGO | COOK | IL |
| 431932 | 67.175.201.238 | CHICAGO | COOK | IL |
| 431933 | 67.175.219.14 | DEKALB | DEKALB | IL |
| 431934 | 67.175.225.135 | SCHILLER PARK | COOK | IL |
| 431935 | 67.175.34.7 | WESTERN SPRINGS | COOK | IL |
| 431936 | 67.175.45.113 | CHICAGO | COOK | IL |
| 431937 | 67.175.62.183 | LOCKPORT | WILL | IL |
| 431938 | 67.176.150.212 | CHICAGO | COOK | IL |
| 431939 | 67.175.64.86 | CHICAGO | COOK | IL |
| 431940 | 67.175.7.224 | CHICAGO | COOK | IL |
| 431942 | 67.176.153.52 | LAKE IN THE HILLS | MCHENRY | IL |
| 431943 | 67.176.182.107 | BLOOMINGTON | MCLEAN | IL |
| 431944 | 67.184.1.244 | LISLE | DUPAGE | IL |
| 431945 | 67.184.166.20 | ALGONQUIN | MCHENRY, KANE | IL |
| 431946 | 67.184.177.95 | CHICAGO | COOK | IL |
| 431947 | 67.184.228.60 | WEST DUNDEE | KANE | IL |
| 431948 | 67.184.24.103 | NORTH AURORA | KANE | IL |

HIGHLIGHT = GEO-CODED RESULTS ONLY
ALL OTHERS FROM ACCOUNT RECORDS

2

**RJN 102**

Case 2:12-cv-08333-ODW-JC   Document 53-1   Filed 02/20/13   Page 106 of 130   Page ID #:882

| TICKET # | IP ADDRESS | CUSTOMER CITY | CUSTOMER COUNTY | CUSTOMER STATE |
|---|---|---|---|---|
| 431949 | 67.184.86.237 | ROSELLE | DUPAGE, COOK | IL |
| 431950 | 67.186.127.41 | BOLINGBROOK | WILL, DUPAGE | IL |
| 431951 | 67.186.83.184 | ORLAND PARK | COOK | IL |
| 431952 | 67.186.86.5 | DANVILLE | VERMILION | IL |
| 431953 | 67.186.92.192 | CAROL STREAM | DUPAGE | IL |
| 431954 | 68.51.99.159 | ELGIN | KANE, COOK | IL |
| 431955 | 68.57.197.175 | NORRIDGE | COOK | IL |
| 431956 | 68.57.219.140 | CHICAGO | COOK | IL |
| 431957 | 68.57.231.126 | ROCKFORD | WINNEBAGO | IL |
| 431958 | 68.57.233.25 | CHICAGO | COOK | IL |
| 431959 | 68.58.155.157 | CHICAGO | COOK | IL |
| 431960 | 68.58.68.84 | ROCKFORD | WINNEBAGO | IL |
| 431961 | 69.136.14.225 | DECATUR | MACON | IL |
| 431962 | 69.136.9.65 | DECATUR | MACON | IL |
| 431963 | 69.245.251.141 | CHICAGO | COOK | IL |
| 431964 | 69.246.215.8 | WAUCONDA | LAKE | IL |
| 431965 | 69.246.223.186 | CRYSTSAL LAKE | MCHENRY | IL |
| 431966 | 71.194.120.21 | PALATINE | COOK | IL |
| 431967 | 71.194.120.232 | PALATINE | COOK | IL |
| 431968 | 71.194.185.170 | CHICAGO | COOK | IL |
| 431969 | 71.194.189.101 | STREAMWOOD | COOK | IL |
| 431970 | 71.194.248.8 | NEW LENOX | WILL | IL |
| 431971 | 71.194.47.68 | NEW LENOX | WILL | IL |
| 431972 | 71.194.6.203 | AURORA | KANE, KENDALL, ETC | IL |
| 431973 | 71.194.75.167 | SCHILLER PARK | COOK | IL |
| 431974 | 71.194.76.21 | ROSELLE | DUPAGE. COOK | IL |
| 431975 | 71.194.86.35 | SKOKIE | COOK | IL |
| 431977 | 71.201.196.162 | CHICAGO | COOK | IL |
| 431978 | 71.201.20.218 | CHICAGO | COOK | IL |
| 431979 | 71.201.200.210 | BERWYN | COOK | IL |
| 431981 | 71.201.225.111 | BELLWOOD | COOK | IL |
| 431982 | 71.201.240.10 | ROMEOVILLE | WILL | IL |
| 431983 | 71.201.48.224 | FOREST PARK | COOK | IL |
| 431984 | 71.201.53.217 | CHICAGO | COOK | IL |
| 431985 | 71.201.68.61 | CHICAGO | COOK | IL |
| 431986 | 71.228.2.201 | SPRING VALLEY | BUREAU | IL |
| 431987 | 71.228.2.27 | LA SALLE | LASALLE | IL |
| 431988 | 71.228.23.118 | NAPERVILLE | DUPAGE, WILL | IL |
| 431989 | 71.228.23.45 | NAPERVILLE | DUPAGE, WILL | IL |
| 431990 | 71.229.73.180 | BLOOMINGTON | MCLEAN | IL |
| 431991 | 71.229.75.58 | NORMAL | MCLEAN | IL |
| 431992 | 71.239.129.20 | WHEATON | DUPAGE | IL |
| 431993 | 71.239.186.221 | ZION | LAKE | IL |
| 431994 | 71.239.187.67 | GRAYSLAKE | LAKE | IL |
| 431995 | 71.239.253.249 | CHICAGO | COOK | IL |
| 431996 | 71.239.27.180 | CHICAGO | COOK | IL |
| 431997 | 71.239.43.67 | NEW LENOX | WILL | IL |
| 431998 | 71.239.44.253 | CHICAGO | COOK | IL |
| 431999 | 71.239.55.92 | HUNTLEY | MCHENRY, KANE | IL |
| 432000 | 71.239.61.141 | CHICAGO | COOK | IL |
| 432001 | 71.239.90.45 | GURNEE | LAKE | IL |
| 432002 | 71.57.3.17 | NAPERVILLE | DUPAGE, WILL | IL |
| 432003 | 71.57.33.24 | NILES | COOK | IL |
| 432004 | 71.57.44.80 | FRANKLIN PARK | COOK | IL |
| 432006 | 71.57.63.157 | JOLIET | WILL, KENDALL | IL |
| 432007 | 71.57.92.76 | ROSELLE | DUPAGE, COOK | IL |
| 432008 | 75.150.227.205 | ROSELLE | DUPAGE, COOK | IL |
| 432009 | 76.16.1.11 | DOWNERS GROVE | DUPAGE | IL |
| 432012 | 76.16.189.233 | EVERGREEN PARK | COOK | IL |
| 432013 | 76.16.213.19 | CHICAGO | COOK | IL |
| 432014 | 76.16.243.52 | SCHAUMBURG | DUPAGE | IL |
| 432015 | 76.16.255.164 | CHICAGO | COOK | IL |

HIGHLIGHT = GEO-CODED RESULTS ONLY
ALL OTHERS FROM ACCOUNT RECORDS

3

**RJN 103**

| TICKET # | IP ADDRESS | CUSTOMER CITY | CUSTOMER COUNTY | CUSTOMER STATE |
|---|---|---|---|---|
| 432016 | 76.23.65.126 | CHICAGO | COOK | IL |
| 432017 | 76.23.68.15 | WAUKEGAN | LAKE | IL |
| 432018 | 76.23.78.180 | PEORIA | PEORIA | IL |
| 432019 | 76.29.26.158 | MORTON GROVE | COOK | IL |
| 432020 | 76.29.32.36 | CHICAGO | COOK | IL |
| 432021 | 76.29.35.172 | ANTIOCH | LAKE | IL |
| 432022 | 76.29.36.240 | CHICAGO | COOK | IL |
| 432023 | 76.29.44.43 | CHICAGO | COOK | IL |
| 432024 | 76.29.53.56 | PALATINE | COOK | IL |
| 432025 | 76.29.63.21 | PALATINE | COOK | IL |
| 432026 | 76.29.79.47 | CICERO | COOK | IL |
| 432027 | 76.29.97.30 | POSEN | COOK | IL |
| 432028 | 98.193.110.119 | PLAINFIELD | WILL, KENDALL | IL |
| 432029 | 98.193.41.242 | HUNTLEY | MCHENRY | IL |
| 432030 | 98.193.9.222 | WAUKEGAN | LAKE | IL |
| 432031 | 98.206.106.234 | OAK FOREST | COOK | IL |
| 432032 | 98.206.11.227 | GLENVIEW | COOK | IL |
| 432033 | 98.206.118.16 | MERRIONETTE PARK | COOK | IL |
| 432034 | 98.206.198.204 | CHICAGO | COOK | IL |
| 432035 | 98.206.227.66 | MOKENA | WILL | IL |
| 432037 | 98.206.231.28 | HINSDALE | DUPAGE | IL |
| 432038 | 98.206.245.122 | CHICAGO | COOK | IL |
| 432039 | 98.206.38.123 | CHICAGO | COOK | IL |
| 432040 | 98.206.40.164 | CHICAGO | COOK | IL |
| 432041 | 98.206.44.107 | CHICAGO | COOK | IL |
| 432042 | 98.206.48.241 | MCHENRY | MCHENRY | IL |
| 432043 | 98.206.98.9 | WARRENVILLE | DUPAGE | IL |
| 432044 | 98.212.11.69 | ROCKFORD | WINNEBAGO | IL |
| 432045 | 98.212.135.39 | URBANA | CHAMPAIGN | IL |
| 432047 | 98.212.155.105 | CHAMPAIGN | CHAMPAIGN | IL |
| 432048 | 98.212.190.193 | DES PLAINES | COOK | IL |
| 432049 | 98.212.196.209 | CHAMPAIGN | CHAMPAIGN | IL |
| 432050 | 98.212.197.162 | CHAMPAIGN | CHAMPAIGN | IL |
| 432051 | 98.212.220.251 | KEWANEE | HENRY | IL |
| 432052 | 98.212.227.110 | ROCKFORD | WINNEBAGO | IL |
| 432053 | 98.212.36.159 | BELVIDERE | BOONE | IL |
| 432054 | 98.212.49.254 | | | |
| 432055 | 98.212.62.146 | ROCKFORD | WINNEBAGO | IL |
| 432056 | 98.213.105.3 | SPRINGFIELD | SANGAMON | IL |
| 432057 | 98.213.108.128 | CHICAGO | COOK | IL |
| 432058 | 98.213.127.203 | ROCKFORD | WINNEBAGO | IL |
| 432059 | 98.213.129.83 | LOVES PARK | WINNEBAGO, BOONE | IL |
| 432063 | 98.213.154.107 | ROCKFORD | WINNEBAGO | IL |
| 432064 | 98.213.161.246 | CHICAGO | COOK | IL |
| 432066 | 98.213.177.66 | CHICAGO | COOK | IL |
| 432067 | 98.213.182.122 | CHICAGO | COOK | IL |
| 432069 | 98.213.192.42 | LOVES PARK | WINNEBAGO,BOONE | IL |
| 432070 | 98.213.208.66 | CHICAGO | COOK | IL |
| 432071 | 98.213.210.20 | CHICAGO | COOK | IL |
| 432072 | 98.213.227.230 | CHERRY VALLEY | WINNEBAGO, BOONE | IL |
| 432073 | 98.213.232.172 | JUSTICE | COOK | IL |
| 432074 | 98.213.38.72 | CHICAGO | COOK | IL |
| 432075 | 98.213.47.27 | HARWOOD HEIGHTS | COOK | IL |
| 432076 | 98.213.51.85 | WILMETTE | COOK | IL |
| 432077 | 98.213.86.34 | GLENWOOD | COOK | IL |
| 432078 | 98.213.93.81 | GLENWOOD | COOK | IL |
| 432079 | 98.214.161.8 | PEORIA | PEORIA | IL |
| 432080 | 98.214.170.43 | DUNLAP | PEORIA | IL |
| 432082 | 98.214.217.213 | DECATUR | MACON | IL |
| 432083 | 98.215.116.187 | BLOOMINGTON | MCLEAN | IL |
| 432084 | 98.215.210.179 | SPRINGFIELD | SANGAMON | IL |
| 432085 | 98.215.212.122 | SPRINGFIELD | SANGAMON | IL |

HIGHLIGHT = GEO-CODED RESULTS ONLY
ALL OTHERS FROM ACCOUNT RECORDS

4

**RJN 104**

| TICKET # | IP ADDRESS | CUSTOMER CITY | CUSTOMER COUNTY | CUSTOMER STATE |
|---|---|---|---|---|
| 432086 | 98.215.224.142 | CHICAGO | COOK | IL |
| 432087 | 98.215.227.45 | CHICAGO | COOK | IL |
| 432088 | 98.215.249.197 | SPRINGFIELD | SANGAMON | IL |
| 432089 | 98.215.32.36 | CHICAGO | COOK | IL |
| 432090 | 98.215.35.193 | CHICAGO | COOK | IL |
| 432091 | 98.215.54.93 | BLOOMINGTON | MCLEAN | IL |
| 432092 | 98.215.77.122 | CHICAGO | COOK | IL |
| 432093 | 98.215.86.225 | BLOOMINGTON | MCLEAN | IL |
| 432096 | 98.222.132.14 | CHAMPAIGN | CHAMPAIGN | IL |
| 432097 | 98.222.55.252 | URBANA | CHAMPAIGN | IL |
| 432098 | 98.222.65.129 | QUINCY | ADAMS | IL |
| 432099 | 98.222.74.155 | BARRINGTON | COOK | IL |
| 432100 | 98.222.75.251 | LAKE ZURICH | LAKE | IL |
| 432101 | 98.222.90.191 | PEORIA | PEORIA | IL |
| 432102 | 98.223.10.117 | BEACH PARK | LAKE | IL |
| 432103 | 98.223.168.201 | CHICAGO | LAKE | IL |
| 432104 | 98.223.212.218 | GLENDALE HEIGHTS | DUPAGE | IL |
| 432105 | 98.223.3.225 | HOFFMAN ESTATES | COOK,LASALLE | IL |
| 432106 | 98.223.8.13 | BEACH PARK | LAKE | IL |
| 432107 | 98.223.8.234 | ZION | LAKE | IL |
| 432108 | 98.223.89.194 | BLOOMINGTON | MCLEAN | IL |
| 432112 | 98.226.118.15 | ROCKFORD | WINNEBAGO | IL |
| 432122 | 98.226.17.78 | ORLAND HILLS | COOK | IL |
| 432123 | 98.226.211.151 | ELK GROVE VILLAGE | DUPAGE | IL |
| 432124 | 98.226.68.25 | BERWYN | COOK | IL |
| 432125 | 98.227.107.209 | CHICAGO | COOK | IL |
| 432126 | 98.227.107.24 | CHICAGO | COOK | IL |
| 432127 | 98.227.110.118 | CHICAGO | COOK | IL |
| 432128 | 98.227.134.132 | KANKAKEE | KANKAKEE | IL |
| 432129 | 98.227.137.60 | CARPENTERSVILLE | KANE | IL |
| 432130 | 98.227.146.114 | CARPENTERSVILLE | KANE | IL |
| 432131 | 98.227.166.161 | CALUMET CITY | COOK | IL |
| 432132 | 98.227.220.235 | GLENDALE HEIGHTS | DUPAGE | IL |
| 432133 | 98.227.221.131 | GLENDALE HEIGHTS | DUPAGE | IL |
| 432134 | 98.227.240.143 | MATTESON | COOK | IL |
| 432135 | 98.227.36.247 | DEKABL | DEKALB | IL |
| 432136 | 98.227.93.145 | RICHTON PARK | COOK | IL |
| 432137 | 98.228.179.208 | DEKALB | DEKALB | IL |
| 432138 | 98.228.138.109 | NAPERVILLE | DUPAGE, WILL | IL |
| 432139 | 98.228.196.35 | NILES | COOK | IL |
| 432140 | 98.228.214.119 | ARLINGTON HEIGHTS | COOK, LAKE | IL |
| 432141 | 98.228.231.69 | ARLINGTON HEIGHTS | COOK, LAKE | IL |
| 432142 | 98.228.239.222 | ARLINGTON HTS | CHAMPAIGN | IL |
| 432143 | 98.228.50.64 | CHAMPAIGN | CHAMPAIGN | IL |
| 432144 | 98.228.245.111 | SCHAUMBURG | DUPAGE | IL |
| 432145 | 98.228.72.139 | CHICAGO | COOK | IL |
| 432146 | 98.228.73.51 | CHICAGO | COOK | IL |
| 432147 | 98.253.133.48 | BURBANK | COOK | IL |
| 432149 | 98.253.178.180 | WEST CHICAGO | DUPAGE | IL |
| 432150 | 98.253.188.21 | CHICAGO | COOK | IL |
| 432151 | 98.253.233.38 | WILMETTE | COOK | IL |
| 432152 | 98.253.39.234 | WHEELING | COOK | IL |

HIGHLIGHT = GEO-CODED RESULTS ONLY
ALL OTHERS FROM ACCOUNT RECORDS

5

RJN 105



Morgan Pietz <morganpietz@gmail.com>

## Urgent M&C Request on Guava v. Comcast - St. Clair County 12-MR-417

**Morgan E. Pietz** <mpietz@pietzlawfirm.com>                                    Thu, Feb 14, 2013 at 9:15 AM
To: Kevin Hoerner <kth@bphlaw.com>
Cc: "paduffy@wefightpiracy.com" <paduffy@wefightpiracy.com>, "johnlsteele@gmail.com"
<johnlsteele@gmail.com>, "jlsteele@wefightpiracy.com" <jlsteele@wefightpiracy.com>,
"lbeasley@ilmoattorneys.com" <lbeasley@ilmoattorneys.com>, "Thomas V. Leverso" <tvleverso@gmail.com>,
Erin Russell <erin@russellfirmchicago.com>, "John D. Seiver" <johnseiver@dwt.com>,
"atoennies@lashlybaer.com" <atoennies@lashlybaer.com>, "holly@ghalaw.com" <holly@ghalaw.com>,
"acallahan@sakawys.com" <acallahan@sakawys.com>

Thanks, Kevin. Just to be clear then, you signed the pleading, and you are now re-confirming that it was
correct: the person who verified the petition in this action is named "Alan Mony."

We will proceed on that basis then.

If you change your story later, after refusing to meet and confer on this now, I am going to have to no choice
but to seek attorneys' fees.

Best regards,
Morgan

On Thu, Feb 14, 2013 at 8:32 AM, Kevin Hoerner <kth@bphlaw.com> wrote:

> The issues have already been briefed.  See you in court.
>
>
> **Kevin T. Hoerner**
>
> **Attorney at Law**
>
> **Becker, Paulson, Hoerner & Thompson, P.C.**
>
> **5111 West Main Street**
>
> **Belleville, Illinois 62226**
>
> **Phone: 618.235.0020**
>
> **From:** morganpietz@gmail.com [mailto:morganpietz@gmail.com] **On Behalf Of** Morgan E. Pietz
> **Sent:** Thursday, February 14, 2013 10:29 AM
> **To:** paduffy@wefightpiracy.com; Kevin Hoerner; johnlsteele@gmail.com; jlsteele@wefightpiracy.com
> **Cc:** lbeasley@ilmoattorneys.com; Thomas V. Leverso; Erin Russell; John D. Seiver;
> atoennies@lashlybaer.com; holly@ghalaw.com; acallahan@sakawys.com
>
>
> **Subject:** Urgent M&C Request on Guava v. Comcast - St. Clair County 12-MR-417

1 of 4                                                                          2/15/13 11:36 AM

**RJN 106**

John, Paul, and Kevin,

In the interest of advancing the issues in this case, and ensuring that we don't have any more surprises at the hearing next week, I'd like to meet and confer with you on an important new issue in this case, stemming from your oppositions, on an expedited basis.

In Court yesterday, I asked Kevin if "Alan Moay" actually exists.  That may seem like an unusual question to ask, but as you know, my experience with the mysterious "Alan Cooper" involved in your other lawsuits has conditioned me to be skeptical.

Kevin told me that someone did verify the petition in this case, but that there may have been some kind of typo on the name, but that he was not sure on the details.

Having now reviewed your opposition to Tom Leverso's motion (p. 5), I see that the new story is that the verification supposedly says "Alan Mony" not "Alan Moay."  The verification sure looks like "Alan Moay" to me.  Since it appears there may be a factual dispute about that point, I would ask you to bring the original with you to Court next week.

More importantly, the name "Alan Mony" rings a bell.  I note that a man named "Allan Mooney" has previously been listed as the manager of MCGIP, LLC, one of Prenda's earlier shell company plaintiffs.  I further note that the address for MCGIP, LLC is "care of" Alpha Law Group, the most recent affiliation for John's former (current?) law partner Paul Hansemeier, who is also the brother of Prenda's current preferred technical expert Pete Hansemeier.  See the attached Minnesota Secretary of State business entity detail for MCGIP, LLC.  Further, I note that a man with the name "Allen Mooney" is apparently involved in the online adult entertainment business, per the attached Adult Industry News article where Allan Mooney was selling the domain name <orgasms.com>.  Finally, I note that one "Alan Mooney" is also a current client of Alpha Law / Paul Hansemeier, in *Mooney v. Priceline.Com Incorporated et al.*, No. 12-cv-02731-DWF-JSM (D. Minn. Oct. 26, 2012) (listing Paul Hansemeier of Alpha Law Firm LLC as attorney of record for plaintiff "Alan Mooney").  See the attached copy of the original Hennepin County complaint in that matter.

I further note that this is not the fist time there have been questions about Prenda submitting bogus verifications (*see* Alan Cooper).  For that matter, it is not the first time a supposed Prenda "client" has supposedly had trouble spelling their own name correctly on the signature line of a document where they swore to tell the truth under penalty of perjury (*see* Daniel Web[b]er in the *Sunlust* case, where I understand that the sanctions motions for both the initial fraud on the Court, and the subsequent fraudulent declaration trying to explain the first fraud, are still pending).

I note that unlike the other oppositions I received, which were supposedly signed by Paul Duffy, that in the opposition to Mr. Leverso's motion, which was the only one communicating the supposed new spelling for

2 of 4                                                                                                  2/15/13 11:36 AM

**RJN 107**

your verifying client "Alan Mony", Kevin Hoerner signed, rather than counsel from Chicago. Perhaps this is to maintain plausible deniability so that when it turns out the person's name is really "Allan Mooney" you can blame it on a miscommunication over the phone? All of this just seems like a ploy to try and explain away that there are too many letters for "Allan Mooney" to be mistaken for "Alan Moay."

I would really like to believe that *this* case is not also a fraud, and that you are not attempting to cover up one lie with another (again). But like I said, experience has taught me to be skeptical where Prenda is concerned.

So, in light of all these facts, and in order to give you an opportunity, in good faith, to explain yourself prior to the hearing, I have two questions:

(1) What is the correct spelling of the name of the person who verified the petition, what is that person's address, and are "Allen Mooney" of MCGIP fame, and "Alan Moay/Mony" the verifying "client" here, the same person?

(2) Since you repeatedly note in the oppositions that your verification is legitimate because it is notarized, what is the name, state, registration number, and business address for the notary who supposedly witnessed Mr. Al[l]an Moay/Mony/Mooney sign the verification?

Note that these good faith meet and confer questions are separate and apart from the issue of whether it is appropriate for Tom to use a Rule 237 and OSC procedure to compel you to produce the affiant and notary to testify at an evidentiary hearing. For sure, we will get to that at the hearing next week.

I would like to incorporate and address your response on these questions into a combined reply, as courtesy to the Court. In order to give the Judge time to read everything, I plan to file the reply on Friday. Accordingly, I must insist that you get back to me by tonight (2/14). If this case is not a fraud, then you should have no problem providing this information, since I assume it must be readily at hand. And then just bring the original verification with you next week.

Please feel free to give me a call if you'd like to discuss.


Best regards,

Morgan


On Thu, Feb 7, 2013 at 2:33 PM, Morgan E. Pietz <mpietz@pietzlawfirm.com> wrote:

**RJN 108**

Paul,

As you know, since I served you with a copy, I filed a motion to quash in this case.

I have not seen any kind of a response to my motion, or to any of the other similar motions filed by the other attorneys representing other Does. Did you file a response? If you did, or if you are still planning on doing so, please make sure you serve me with a copy ASAP.

Best regards,
Morgan

P.S. Note that I could not find an email address for Earl Hubbs, who I understand is also counsel for another objecting John Doe. If anyone else has it, please forward this correspondence to him.

--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com

--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com

--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com

**RJN 109**

2/15/2013

**TO:** Morgan Pietz

FAX: (310) 546-5301

PHONE: (310) 424-5557

**FROM:** Thomas Leverso

FAX: 630-627-1360

PHONE: 630-936-9902

PAGES: 18 (including this Cover

RE: "Alan Mony"

CC: N/A

COMMENTS:

Morgan:

Our investigation was able to turn up an "Allan Mony" in
Indiana with two letter "L's". His only alias/alternate
spelling is the name "Allen" with the letter "E" and still
two letter "L's".

Regards,

T.

☐ URGENT

☐ PLEASE COMMENT

☐ PLEASE REVIEW

☐ FOR YOUR RECORDS

Law Offices of Thomas V. Leverso 33 West Higgins Road, Suite 1030, South Barrington, IL 60010

**FAX**

**RJN 110**

# <u>EXHIBIT X</u> TO SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ, ESQ., FILED IN *INGENUITY 13 v. DOE*, C.D. CAL. NO. 2:12-cv-8333 (Dkt. 53)

 LLC

2100 M STREET NORTHWEST | SUITE 170-417 | WASHINGTON DC | 20037
P 888-588-WIRE (9473) | F 888-964-WIRE (9473)

01/30/2013
SENT VIA U.S. MAIL


Re: Guava LLC v. Comcast Cable Communications LLC
12-MR-417 Ref #███████

Dear ███████████████

This letter is to provide you legal notice that a lawsuit involving you has been filed in St. Clair County, Illinois. The case, Guava LLC v. Comcast Cable Communications, LLC, was filed on November 20, 2012 in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois Law Division. The purpose of this letter is to put you on notice of impending litigation and allow you the opportunity to seek legal counsel or speak with someone from our office regarding this matter.

Our company, Guava LLC, operates computer systems on behalf of our clients, who are adult content producers. Our computers were breached and our files were stolen. Our engineers observed your Internet account distributing these files via BitTorrent. BitTorrent is associated with such websites and software as the Pirate Bay and Transmission. For more information regarding BitTorrent you may reference online sources.

In the course of discovery, we issued subpoenas to various Internet Service Providers (ISPs) to obtain the identifying information of the wrongdoers. On November ███ 2012 ████████ UTC, our engineers observed your IP address, ███████████, trading in the files that were taken from our company's computers. Your ISP, Comcast, turned over records confirming that you were the account holder of IP ███████████ on the date in question. Based on this information, we will seek to hold you (or the person who used your Internet account) liable for this conduct. For your reference, we have enclosed a copy of the petition that was filed in this lawsuit. Please understand that if we are forced to proceed against you individually for the acts we observed your subscriber account committing, the actual complaint naming you as a defendant could possibly include additional counts, depending on what violations were observed.

Under the applicable rules of civil procedure, our lawsuit against you personally will not commence unless we serve you with a complaint. Please consider this letter to constitute formal notice that we demand that you not delete any files from your computer or any other devices under your control or in your possession. You have an affirmative obligation to preserve evidence, including router logs and computer files. A failure to do so may subject you to additional liability. You should consult an attorney to understand your obligations in this regard.

Many account holders contact our company to find out more about our claims or to resolve them before we refer this matter to our attorneys. While we certainly are willing to discuss resolution, we are also preparing to litigate this matter in the event a resolution is not reached. We have found that the earlier we are able to reach a resolution, the less expensive it is for both you and our company. As time passes, we (and you) will incur attorney's fees and court costs. The amount for which would be willing to resolve this matter for today will increase over time in proportion to the fees and expenses we incur.

As you know, being named as a defendant in a lawsuit can be time-consuming, distressing and expensive. Although we have endeavored to provide you with accurate information, our interests are directly adverse to yours and you should not rely on the information provided in this letter for assessing your position in this case. Only an attorney who represents you can be relied upon for a comprehensive analysis of our company's claims. Our records indicate that you are not represented by an attorney. If you are represented by an attorney please forward this letter to him or her and have your attorney contact our office immediately to indicate their representation.

PLEASE BE ON NOTICE: Due to the serious nature of this matter, we are referring this matter to our attorneys for further prosecution against you in 21 days if we do not hear from you.

Sincerely,

Brett Gibbs
In-House Counsel, Guava LLC
Licensed only in the state of California.

# Notice of Offer of Settlement
### Formal Date of Offer: 01/31/2013

Pursuant to our obligation to attempt to resolve our legal claims prior to filing a lawsuit against you personally, we hereby provide you the following settlement offer. If you reject our offer, or we do not hear from you within 21 days of the date of this letter, we will direct our attorneys to file a lawsuit against you personally. We believe that due to several factors, including our good faith offer to settle at this early stage of the case, we would be entitled to full damages.

We have weighed several aspects of this case, including our likelihood of success, our likely recovery of damages, the availability of an attorney's fees award, and the extreme burden of litigation on all parties. In exchange for a comprehensive release of all legal claims in this matter, which will enable you to avoid becoming a named defendant in a lawsuit, we will accept the sum of $4,000.00 as full settlement for our claims. This offer will expire in 21 days at 4:00 p.m. CST.

To reiterate: If you act promptly, you will avoid being named as a defendant in a lawsuit. You may pay the settlement amount by:

    (a) Mailing a check or money order payable to 'Guava LLC' to:
        Guava LLC
        2100 M Street Northwest, Suite 170-417
        Washington DC, 20037-1233

    (b) Completing and faxing the enclosed payment authorization to
        1-888-964-9473.

It is very important to include your five digit reference number on your method of payment. Regardless of your payment method, once we have processed the settlement, we will send you your signed Release as confirmation that your payment has been processed and that our company's claims have been released.

Our records indicate that you are not represented by an attorney. If you are represented by an attorney please forward this offer of settlement to your attorney and have your attorney contact our office immediately to indicate their representation.

**RJN 114**

 LLC

2100 M STREET NORTHWEST | SUITE 170-417 | WASHINGTON DC | 20037
P 888-588-WIRE (9473) |F 888-964-WIRE (9473)

## PAYMENT AUTHORIZATION

I hereby authorize Guava, LLC to withdraw funds from the bank account or credit card listed below for the settlement amount and legal issue referred to on my Release and herein below.

Case Name and Reference #: _____

**PAYOR INFORMATION**

Payor's Name: _____

Billing Address: _____

_____

Telephone Number: _____    Email address:_____

Signature: _____    Date: _____

_____

**PAYMENT INFORMATION**

Payment amount:    $ _____

Name on Bank Account / Credit Card: _____

**If paying via bank account:**

Type of Account: Checking / Savings

Routing Number: _____    Account Number: _____

**If paying via credit or debit card:**

Card Number: _____    Exp. Date: _____

Card Type:    ☐ Master Card    ☐ Visa    ☐ AmEx    ☐ Discover

CID Number: _____ (this is the last three digits on the back of your Master Card, Visa, or Discover Card, or the four digit number in the upper right corner on the front of your AmEx)

Fax, scan & email, or mail this authorization to:

Guava, LLC
2100 M Street Northwest, Suite 170-417
Washington, DC 20037
Fax: 888.964.WIRE (9473)
email: accounting@livewireholdings.com

w w w . l i v e w i r e h o l d i n g s . c o m



Supplemental Exhibits - Page 145

**RJN 115**

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

GUAVA LLC,                                    )
                    Petitioner,               )
          v.                                  )
                                              )     No. 12-MR-417
COMCAST CABLE COMMUNICATIONS, LLC,            )
                    Respondent.               )

FILED
ST. CLAIR COUNTY
DEC 1 2 2012
CIRCUIT CLERK

22

ORDER GRANTING PETITION FOR DISCOVERY BEFORE SUIT TO IDENTIFY
RESPONSIBLE PERSONS AND ENTITIES AND DENYING RESPONDENT'S
MOTION TO DISMISS

THIS CAUSE, having come before this Court on Petitioner's Petition for Discovery

before Suit to Identify Responsible Persons and Entities ("Petition") and Respondent's Motion to

Dismiss, and the Court having reviewed said Petition, the Memorandum of Law filed in support

thereof, and Respondent's Motion to Dismiss; the parties are present through counsel; the Court

having heard argument and being otherwise duly advised in the premises, hereby makes the

following:

## FINDINGS OF FACT

1.      Petitioner alleges that the identifying information of Respondent's subscribers and

the forensic information contained on the subscribers' computers is under an imminent threat of

permanent destruction.

2.      Although Respondent has the ability to preserve the identifying information of its

subscribers, it has no control over the forensic information stored on its subscriber's computers.

3.      Petitioner alleges that this forensic information consists, *inter alia*, of computer

logs that are stored exclusively on the Doe Defendant's computers. The computer logs are

electronic files that are subject to being overwritten, deleted or modified.

1

4.    Petitioner alleges that the computer logs contain information that will be necessary for Petitioner to prove its underlying case.

5.    Petitioner alleges that if this information is destroyed, Petitioner will have no means of bringing suit against individuals who allegedly hacked into Petitioner's computer systems.

6.    Petitioner alleges that any delay in providing Petitioner with the identifying information of Respondent's subscribers will irreparably harm Petitioner.

IT IS ORDERED AND ADJUDGED as follows:

1.    Respondent's Motion to Dismiss is DENIED and Petitioner's Rule 224 Petition is GRANTED.

2.    Respondent shall provide any affected subscribers with a copy of Petitioner's Petition and a copy of this Order on or before December 26, 2012.

3.    Any subscriber seeking to file an Objection or a Motion to Quash, Dismiss or Sever, must do so by filing said pleading with the Clerk of the Circuit Court, St. Clair County, Illinois, on or before January 25, 2013.

4.    Except as to those subscribers who file a timely pleading as described in paragraph 3 above, Respondent shall provide Petitioner with the true name, address, telephone number, e-mail address, Media Access Control ("MAC") address for each of the John Does ("Does") to whom Respondent assigned an Internet Protocol ("IP") address as set forth on Exhibit A to the Petition on or before January 30, 2013, except for the IP addresses for which Respondent has no identifying information, as long as Respondent identifies said IP addresses.

2

**RJN 117**

5.    If a subscriber files an Objection, Motion to Quash, Dismiss or Sever, Respondent shall withhold the identifying information associated with that particular subscriber, pending resolution by the Court as set forth below.

6.    All Objections, Motions to Quash, Dismiss or Sever shall be set for hearing on February 13, 2013 at 9:00 A.M. before the Honorable Andrew J. Gleeson in Courtroom 404, St. Clair County Building, Belleville, Illinois.

7.    Petitioner shall pay Respondent's reasonable costs in identifying and notifying its subscribers under the terms of this Order. If necessary, the Court shall resolve any disputes between Respondent and Petitioner regarding the reasonableness of the amount proposed to be charged by Respondent after the information is provided to Petitioner.

Entered this 12th day of December, 2012.

Andrew J. Gleeson
Circuit Judge

FILED
ST. CLAIR COUNTY

DEC 1 2 2012

CIRCUIT CLERK

22

3

**RJN 118**

<u>**EXHIBIT Y**</u> **TO SUPPLEMENTAL DECLARATION OF
MORGAN E. PIETZ, ESQ., FILED IN *INGENUITY 13
v. DOE*, C.D. CAL. NO. 2:12-cv-8333 (Dkt. 53)**

Case 8:12-cv-01685-MSS-MAP Document 31-21 Filed 12/04/12 Page 201 of 23 PageID #596

Exhibit A



Protecting Intellectual Property

November 18, 2012

Paul A. Duffy
Prenda Law, Inc.
161 N. Clark St. Ste 3200
Chicago, IL 60601

Honorable Judge Mary S. Scriven
U.S. District Court for the Middle District of Florida
Sam M. Gibbons U.S. Courthouse
801 North Florida Ave.
Tampa, FL 33602

Re: Order at Dkt. 17 in Case no. 8:12-cv-01685-MSS-MAP

Dear Judge Scriven:

I have very recently been made aware that the Court ordered "a principal of Prenda Law, Inc." to appear in person at a motion to dismiss hearing scheduled for November 27, 2012 in case number 8:12-cv-01685-MSS-MAP. (Dkt. 17.) As the sole principal of Prenda Law, Inc. ("Prenda"), that would be me. For the record, I was never served with notice of the Court's order or otherwise made aware of it---until very recently via a phone call from a fellow attorney.

As an initial matter, I must respectfully inform the Court that I am located in Chicago, Illinois and my attendance at the hearing would require air travel. Due to a recent surgery on my eye, my doctor has ordered me not to travel by air due to the high risk of catastrophic injury or death due to changes in air pressure. I will be pleased to provide the Court with a surgeon's note upon request. Further, on November 27, 2012, I have three status hearings at 10:00 a.m. (EST) scheduled in the U.S. District Court for the Northern District of Illinois.

I also respectfully question how my appearance could benefit the Court, particularly since I am not representing *anyone* in this case and have no authority to speak on anyone's behalf. It would clearly be improper for me to make any statement in a matter pending in a jurisdiction in which I am not licensed and on behalf of a client that I do not represent.

In light of the foregoing statements, I pray that the Court will excuse my attendance at the November 27, 2012 hearing.


cc: Counsel of Record (via e-mail)


Sincerely,

Paul A. Duffy, Esq

Fax: 312.893.5677          161 N Clark St., Suite 3200, Chicago, IL 60601          Tel: 312.880.9160

www.wefightpiracy.com          Supplemental Exhibits - Page 150

**RJN 120**

<u>**EXHIBIT Z**</u> **TO SUPPLEMENTAL DECLARATION OF MORGAN E. PIETZ, ESQ., FILED IN *INGENUITY 13 v. DOE*, C.D. CAL. NO. 2:12-cv-8333 (Dkt. 53)**



About the Firm   Firm Resources   Attorneys   **PRENDA LAW INC.** Intellectual Property Attorneys   Practice Areas   Giving   Case Samples

Call: 1-800-380-0840

## MENU

Founding Partner Paul Duffy
Nationwide Attorney Network

### Paul A. Duffy, J.D.



For more than 20 years, Mr. Duffy has been fighting to protect his client's intellectual property rights. He represents the interests of clients before federal district and state courts involving complex consumer fraud, copyright infringement analysis and prosecution, licensing rights, sharing agreements, trademark infringement analysis and prosecution, and website hacking prosecution.

Mr. Duffy and the other intellectual property attorneys of Prenda Law Inc. have been leading a nationwide revolution against internet piracy. He has experience with both prosecution and defense which gives him the ability to see a case from both perspectives. Mr. Duffy's extensive technical background, along with his dedication to comprehensive research and innovative thinking has enabled Prenda Law Inc. to become one of the leading intellectual property law firms in the United States today.

### EDUCATION

Mr. Duffy received his law degree (J.D.) from the DePaul University College of Law, and his Bachelor of Science (B.S.) in Chemistry with a minor in Physics and Mathematics from Elmhurst College.

### ADMISSIONS AND REGISTRATIONS

**State of Illinois**
U.S. District Court for each of the Northern, Central and Southern Districts of Illinois

**State of California**
U.S. District Court for the Southern District of California

**Commonwealth of Massachusetts**
U.S. District Court for the District of Massachusetts

**District of Columbia**
U.S. District Court for the District of Columbia

**Professional Career**

- Freeborn & Peters, attorney and partner
- Winston & Strawn, attorney and partner
- Waste Management, environmental engineering
- Commonwealth Edison Co., environmental and nuclear engineering

### COMMUNITY SERVICE

Mr. Duffy provides pro bono services to three local organizations: the Heartland Alliance, Chicago Volunteer Legal Services, and the Center for Elder and Disability Law.

Prenda Law Inc.                                                          http://www.wefightpiracy.com/prenda-duffy.php

## PRENDA LAW INC. INTELLECTUAL PROPERTY ATTORNEYS BLOG

Please visit our blog to find out about the lastest in the anti-piracy wars.

THE BLOG





2 of 2

**RJN 123**

# EXHIBIT D

# EXHIBIT D

1

2

3

4

5

6

7                           UNITED STATES DISTRICT COURT

8                          CENTRAL DISTRICT OF CALIFORNIA

9

10    INGENUITY 13 LLC,                        Case Nos. 2:12-cv-8333-ODW(JCx)

11                      Plaintiff,             **ORDER**

12          v.

      JOHN DOE,

13

                        Defendant.

14

15          In light of the parties' recent representations made in response to the Court's

16    Order to Show Cause, the Court hereby orders the following:

17          1)     The following persons are hereby **ORDERED** to appear on March 11,

18    2013, at 1:30 p.m.:

19                 a)     John Steele, of Steele Hansmeier PLLC and/or Livewire Holdings

20                        LLC;

21                 b)     Paul Hansmeier, of Steele Hansmeier PLLC and/or Livewire

22                        Holdings LLC;

23                 c)     Paul Duffy, of Prenda Law, Inc.;

24                 d)     Angela Van Den Hemel, of Prenda Law, Inc.;

25                 e)     Mark Lutz, CEO of AF Holdings LLC and Ingenuity 13 LLC;

26                 f)     Alan Cooper, of AF Holdings LLC;

27                 g)     Peter Hansemeier of 6881 Forensics, LLC; and

28                 h)     Alan Cooper, of 2170 Highway 47 North, Isle, MN 56342.

**RJN 124**

2)   Brett L. Gibbs is hereby **ORDERED** to serve a copy of this order on the persons in subparagraphs a–g above by March 7, 2013.

3)   Morgan E. Pietz is hereby **ORDERED** to serve a copy of this order on the person in subparagraph h above by March 7, 2013.

**IT IS SO ORDERED.**

March 5, 2013

OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

2

**RJN 125**