ORAL ARGUMENT NOT YET SCHEDULED

No. 12-7135

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

AF HOLDINGS, LLC,

*Plaintiff-Appellee,*

v.

DOES 1-1,058,

*Defendants,*

and

COX COMMUNICATIONS, INC., *et al*.,

*Appellants.*

_____

On Appeal from the United States District Court
for the District of Columbia
_____

**BRIEF OF AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION,
AMERICAN CIVIL LIBERTIES UNION, ACLU OF THE NATION'S
CAPITAL, PUBLIC CITIZEN, AND PUBLIC KNOWLEDGE IN SUPPORT
OF APPELLANTS, URGING REVERSAL**
_____

Mitchell L. Stoltz
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, California 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email: mitch@eff.org

*Counsel for Amici Curiae*

(*Additional Counsel Listed on Next Page*)

*Of Counsel*:

Arthur B. Spitzer
AMERICAN CIVIL LIBERTIES UNION OF THE NATION'S CAPITAL
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
(202) 457-0800

Catherine Crump
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7806

Sherwin Siy
Vice President, Legal Affairs
PUBLIC KNOWLEDGE
1818 N St. N.W., Suite 410
Washington, DC 20036
(202) 861-0020

Paul Alan Levy
PUBLIC CITIZEN LITIGATION GROUP
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.**    **Parties**

All parties are listed in the Brief of Appellants except for *amici curiae*

Public Knowledge and Public Citizen.

**B.**    **Rulings Under Review**

References to the ruling at issue appear in the Brief for Appellants.

**C.**    **Related Cases**

*Amici curiae* adopt the statement of related cases presented in the Brief for

Appellants.

**D.**    **Statutes And Regulations**

All applicable statutes and regulations are contained in the Brief for

Appellants.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to D.C. Circuit Rule 26.1 and Federal Rule of Appellate Procedure 26.1, *Amici* submit the following corporate disclosure statements:

*Amicus* Electronic Frontier Foundation ("EFF") is a donor-funded, non-profit civil liberties organization. EFF has no parent corporation, and does not issue stock.

*Amicus* American Civil Liberties Union is a non-profit membership organization that has no parent corporation, and does not issue stock.

*Amicus* American Civil Liberties Union of the Nation's Capital is a non-profit membership organization. ACLU of the Nation's Capital has no parent corporation, and does not issue stock.

*Amicus* Public Citizen is a non-profit organization. Public Citizen has no parent corporation, and does not issue stock.

*Amicus* Public Knowledge ("PK") is a non-profit organization. PK has no parent corporation, and does not issue stock.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

CORPORATE DISCLOSURE STATEMENT ....................................................... ii

STATEMENT OF INTEREST ................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................3

I.     The Good Faith Standard Helps Prevent Abuse Of Expedited Discovery ...........................................................................................6

II.    The District Court Erred By Failing To Apply The Good Faith Standard For Early Discovery ..............................................................8

III.    The District Court Erred By Permitting Mass Joinder Of 1,058 Does .................................................................................................11

    A.    Federal Courts Are Increasingly Rejecting Attempts At Mass Joinder ..............................................................................12

    B.    AF Holdings Did Not Show A Concert Of Action Among Defendants ......................................................................14

    C.    Mass Joinder Unfairly Prejudices Defendants, And Under Federal Rule of Civil Procedure 26(d)(1), The Joinder Issue Should Be Considered Now ..............................................18

IV.    The District Court Erred By Refusing To Consider A Facially Obvious Lack Of Personal Jurisdiction And Proper Venue That Will Not Be Cured Later ....................................................................21

    A.    The Relevant Facts Are Undisputed .......................................21

    B.    A Good Faith Basis Is Required For Jurisdictional Discovery – Not A *Prima Facie* Showing Of Personal Jurisdiction ...........22

    C.    Geolocation Tools Can Provide A Good Faith Basis For Jurisdictional Discovery .......................................................24

V.     The District Court Erred In Ignoring The Does' First Amendment
       Right To Communicate Anonymously .............................................25

CONCLUSION ....................................................................................................28

# TABLE OF AUTHORITIES[*]

## Federal Cases

*AF Holdings v. Doe*,
    No. 12-cv-06637-ODW-JC (C.D. Cal. Jan. 25, 2013) .................................. 9

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ........................................................ 26

*BMG Music v. Does 1-203*,
    No. CIV.A. 04-0650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004) ............... 13

*BMG Music v. Does 1-4*,
    No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237
    (N.D. Cal. July 31, 2006) ........................................................... 13

*Call of the Wild Movie, LLC v. Does 1-1,062*,
    770 F. Supp. 2d 332 (D.D.C. 2011) ........................................ 12, 25, 26, 27

*Caribbean Broad. Sys., Ltd., v. Cable & Wireless, PLC*,
    148 F.3d 1080 (D.C. Cir. 1998) ................................................. 6, 7, 8, 22, 23

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000)..................................................... 18

*Coughlin v. Rogers*,
    130 F.3d 1348 (9th Cir. 1997)..................................................... 14

*Disc. Video Ctr., Inc. v. Does 1-29*,
    285 F.R.D. 161 (D. Mass. Aug. 10, 2012) .................................... 9

*Edwards v. Gordon & Co.*,
    94 F.R.D. 584 (D.D.C. 1982) ....................................................... 8

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,
    638 F. Supp. 2d 1 (D.D.C. 2009) ............................................... 22

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) .................................................................... 20

* *Authorities chiefly relied upon are indicated with asterisks.*

*Grandbouche v. Clancy*,
   825 F.2d 1463 (10th Cir. 1987)..................................................................... 26

*In re Verizon Internet Servs. Inc.*,
   257 F. Supp. 2d 244 (D.D.C. 2003),
   *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003) ........................... 26

*Ingenuity 13 LLC v. John Doe*,
   No. 2:12-cv-8333-ODW, 2013 U.S. Dist. LEXIS 64564
   (C.D. Cal. May 6, 2013)..................................................................... 5, 9, 19

*IO Group, Inc. v. Does 1-435*,
   No. 10-4382, 2011 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb. 3, 2011) ....... 12

*LaFace Records, LLC v. Does 1-38*,
   No. 5:07-cv-00298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008)... 13, 16

*LFP Internet Group LLC v. Does 1-3,120*,
   No. 3:10-cv-02095-F (N.D. Tex. Feb. 10, 2011) ................................... 13, 16

*Malibu Media, LLC v. Does 1-28*,
   2012 U.S. Dist. LEXIS 144501 (D. Colo. Oct. 25, 2012)........................... 19

*Malibu Media, LLC v. John Does 1-10*, No. 2:12-cv-3623-ODW,
   2012 WL 5382304 (C.D. Cal. June 27, 2012) ............................................. 5

*Mosley v. Gen. Motors Corp.*,
   497 F.2d 1330 (8th Cir. 1974)..................................................................... 14

*New York Times v. Sullivan*,
   376 U.S. 254 (1964) ..................................................................................... 26

*Next Phase Distribution, Inc. v. John Does 1-27*,
   284 F.R.D. 165, 2012 WL 3117182 (S.D.N.Y. July 31, 2012)................... 10

*\*Nu Image,. Inc., v. Does 1–23,322,*
   799 F. Supp. 2d 34 (D.D.C. 2011) ................................................. 22, 24, 25

*Pacific Century Int'l, Ltd. v. Does 1-101*,
   No. 11-cv-02533-DMR, 2011 WL 2690142 (N.D. Cal. July 8, 2011) ........ 17

*Patrick Collins, Inc. v. Does 1-44*,
  2012 U.S. Dist. LEXIS 47686 (D. Md. Apr. 4, 2012) .......................... 13, 17

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*,
  351 F.3d 1229 (D.C. Cir. 2003) ................................................. 11

*SBO Pictures, Inc. v. Does 1-87*,
  2012 U.S. Dist. LEXIS 6968, 2012 WL 177865 (D.D.C. Jan. 19, 2012) .... 23

*Shelley v. Kraemer*,
  334 U.S. 1 (1948) .................................................................. 26

*Silkwood v. Kerr-McGee Corp.*,
  563 F.2d 433 (10th Cir. 1977)................................................... 26

*Sony Music Entm't, Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004)......................................... 26

*Twentieth Century Fox Film Corp. v. Does 1-12*,
  No. C 04-04862-WHA, 2004 WL 3241669 (N.D. Cal. Nov. 16, 2004)...... 14

*UMG Recordings, Inc. v. Does 1-51*,
  No. 1:04-cv-00704-LY (W.D. Tex. Nov. 18, 2004) ............................ 13, 19

*West Coast Prods., Inc. v. Does 1-1,434*,
  No. 1:11-cv-55-JEB-JMF (D.D.C. Aug. 6, 2012)........................... 5

*Yousuf v. Samantar*,
  451 F.3d 248 (D.C. Cir. 2006) ................................................. 7

## State Cases

*Dendrite Int'l, Inc. v. Doe No. 3*,
  775 A.2d 756, 342 N.J. Super. 134 (App. Div. 2001)................................. 27

## Federal Statutes

17 U.S.C. § 512 ........................................................................ 11

## State Statutes

D.C. Code § 13-423........................................................................ 23

## Federal Rules

Fed. R. Civ. P. 1 ................................................................................ 20

Fed. R. Civ. P. 8 ................................................................................ 19

Fed. R. Civ. P. 11 .............................................................................. 19

Fed. R. Civ. P. 12 .............................................................................. 22

Fed. R. Civ. P. 20 ...................................................... 11, 12, 13, 17, 18

Fed. R. Civ. P. 26 .......................................................... 7, 8, 10, 18, 24

Fed. R. Civ. P. 45 ...................................................................... 10, 11

## Constitutional Provisions

First Amendment ........................................................ 1, 19, 20, 25, 26, 27

## Other Authorities

Paul Alan Levy, *Litigating Civil Subpoenas to Identify Anonymous Internet Speakers*, 37 Litigation No. 3 (Spring 2011) .............................................. 27

## GLOSSARY OF ABBREVIATIONS

HTTP ............................................................................Hypertext Transfer Protocol

IP.......................................................................................Internet Protocol

ISP ...................................................................... Internet Service Provider

## STATEMENT OF INTEREST

The Electronic Frontier Foundation ("EFF") is a non-profit, member-supported civil liberties organization working to protect legal rights in the digital world. Founded in 1990, EFF is based in San Francisco, California. EFF has over 18,000 members throughout the United States and internationally, and maintains one of the most linked-to websites in the world (http://www.eff.org). EFF has taken a vital role in assisting the thousands of Internet users who have received monetary demands from attorneys purporting to represent holders of copyright in adult films. As a legal services organization, EFF helps these Internet users obtain counsel. EFF has filed *amicus* briefs, its attorneys have served as *ad litem* counsel, and its staff technologists have provided expert testimony in many such cases. EFF has also played a leading role in educating the public about developments in these cases.

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with over 500,000 members dedicated to the principles of liberty and equality embodied in the U.S. Constitution. The ACLU of the Nation's Capital is the Washington, D.C. affiliate of the ACLU. The protection of principles of freedom of expression as guaranteed by the First Amendment is an area of special concern to the ACLU and its affiliates. In this connection, the ACLU and its affiliates have been at the forefront in numerous state and federal cases

involving freedom of expression on the Internet. The ACLU and its affiliates have also been involved in numerous cases raising issues of due process and the right to engage in anonymous speech.

Public Citizen, Inc., is a public interest organization based in Washington, D.C. It has more than 300,000 members and supporters. Since its founding in 1971, Public Citizen has encouraged public participation in civic affairs, and has brought and defended numerous cases involving the First Amendment rights. It pioneered the defense of subpoenas to identify anonymous Internet users sued because their speech was allegedly tortious. In mass infringement cases filed by recording companies as early as 2004, Public Citizen argued that a similar defense should apply, not because there was any reason to believe that well-established recording companies would seek subpoenas improperly, but because, unless scrutiny was applied in those cases, a day would come when less reputable plaintiffs represented by unscrupulous lawyers would take advantage of a "copyright exception" to use subpoenas for nefarious purposes. In light of the facts here, that argument seems eerily prescient. Public Citizen takes no view about whether plaintiff can show a sound evidentiary basis for seeking to identify the Doe defendants sued here, but joins this brief because the district court's failure to apply any test to protect the rights of the Doe was error.

Public Knowledge ("PK") is a non-profit public interest 501(c)(3) corporation, and its primary mission is to promote technological innovation, protect the legal rights of all users of copyrighted works, and ensure that emerging copyright and telecommunications policies serve the public interest. Applying its years of expertise in these areas, PK frequently files amicus briefs at the district and appellate level in cases that raise novel issues at the intersection of media, copyright, and telecommunications law.

*Amici*'s authority to file is based on Fed. R. App. P. 29(a) and (b). Appellants Cox Communications, Inc., *et al.* consent to the filing of this brief. Appellee AF Holdings LLC does not consent. The John Doe Appellees have not yet appeared in the action. Accordingly, *amici* have submitted a Motion for Leave to File.

Pursuant to Fed. R. App. P. 29(c)(5), *amici curiae* state that no party's counsel authored the brief in whole or in part, no party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person other than *amici curiae*, their members, or their counsel contributed money to fund the preparation or submission of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Imagine a home Internet subscriber receives a letter in the mail. His Internet account, the letter says, was "observed . . . illegally downloading" a pornographic

movie. The letter explains that a copyright lawsuit has been filed against thousands of John and Jane Doe defendants in a court far from his home, and that the subscriber will be named in that lawsuit and potentially liable for up to $150,000 in statutory damages unless he settles the case for a sum in the neighborhood of $3,000. The subscriber knows he hasn't downloaded any pornographic film. Still, defending a lawsuit would cost far more, the law firm is leaving increasingly threatening messages, and being publicly accused of downloading pornography may cost him a job, friends, and relationships. The subscriber writes a check for $3,000.

Now, imagine this process is repeated thousands of times: a single lawsuit is filed against hundreds or thousands of Does in a court that is convenient for the plaintiff's attorney, the attorney immediately files a motion for early discovery based on a list of IP addresses allegedly associated with infringement and, once the Does are identified, settlement letters go out. Some, even many, of those subscribers may have infringed copyright, but many others have not. Either way, the process is unfair.

Of course there is no need to imagine this scenario, for it is all too real.[1] Mass copyright lawsuit are clogging dockets around the country, "using boilerplate

---

[1] *See Hard Drive Prods. v. Does 1-48*, No. 3:11-cv-01957-JCS, July 13, 2011 Letter from Steele Hansmeier to Liuxia Wong (ECF No. 4-1).

complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort." *Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-8333-ODW, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013).

But the tide is turning, as judges across the country are recognizing that these lawsuits are "essentially an extortion scheme." *Malibu Media, LLC v. John Does 1-10*, No. 2:12-cv-3623-ODW, 2012 WL 5382304, at *4 (C.D. Cal. June 27, 2012); *see also, e.g., West Coast Prods., Inc. v. Does 1-1,434*, No. 1:11-cv-55-JEB-JMF, Mem. Op. 13 (ECF No. 23) (D.D.C. Aug. 6, 2012) Amici's Request for Judicial Notice Ex. 1) ("RJN") ("There is simply nothing ordinary about these cases and they require something more than ordinary judicial passivity while service is accomplished.").[2] Judges are also recognizing that a court's decision on the motion for early discovery or a motion to quash may be the last chance that the court has to ensure that the Defendants are treated justly.

Thus, the district court's opinion here is, increasingly, an outlier, and it is unfortunate that this matter could not have been resolved without assistance from this Court. However, this appeal presents an important opportunity for a higher court to rule on this misuse of expedited discovery.

---

[2] Appellee AF Holdings and several of its attorneys were recently sanctioned for fraud on the court and "moral turpitude unbecoming of an officer of the court" arising from four cases similar to this one. *Ingenuity 13*, 2013 U.S. Dist. LEXIS 64564, at *8-11.

This Court requires plaintiffs to demonstrate "at least a good faith belief that such discovery will enable it to show" required elements such as jurisdiction. *Caribbean Broad. Sys., Ltd., v. Cable & Wireless, PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). In the ruling at issue here, the district court cited the *Caribbean Broadcasting* standard but largely disregarded it. In essence, the district court appears to have concluded that discovery should be permitted because it would be efficient for the plaintiff. But that is not enough. AF Holdings did not form, and demonstrably cannot have formed, a good faith belief that the district court had personal jurisdiction over all but a few of the 1,058 Doe Defendants, or that venue as to all but a few of them is properly laid in this District.

The district court also erred in holding that joinder of 1,058 Doe Defendants is proper at this stage. Defendants' alleged use of the BitTorrent protocol alone does not establish a concert of action among them, and AF Holdings' evidence shows little else. Thus, the district court's holding on this point was an additional error of law.

*Amici* urge the Court to reverse the district court's decision, quash the subpoenas at issue, and deny AF Holdings' motion to compel.

## I.    The Good Faith Standard Helps Prevent Abuse Of Expedited Discovery.

This Court reviews the district court's discovery orders for abuse of discretion, except as to questions of law, which receive *de novo* review. *Yousuf v.*

*Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006). At issue here is the standard for conducting expedited discovery, as expressed in *Caribbean Broadcasting*. That opinion concerned personal jurisdiction, and held that "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." 148 F.3d at 1090. This standard is consistent with the text of Fed. R. Civ. P. 26(d)(1), and necessarily requires more than a complaint stating a *prima facie* claim. *Id.*

The district court's failure to apply that standard was an error of law that must be corrected. Over the past three years, hundreds of thousands of Does have been sued in state and federal courts around the country. It's a profitable business: for the price of a single filing fee, plaintiffs and their attorneys can collect tens or hundreds of thousands of dollars from frightened Does who are unwilling or unable to fight back. In most if not all of these cases, it appears the plaintiffs have no interest in actually litigating. Rather, they hope to take advantage of the threat of an award of statutory damages and attorneys' fees, the ignorance of those sued about their potential defenses, and the burden of litigating in a distant jurisdiction, to induce the anonymous defendants into settling the case for a payment that is less than a defendant would likely have to spend just to hire a lawyer to move to have the case against him or her dismissed. Thus, as a practical matter, this kind of

litigation begins and ends before the complaint is ever served: once the identifying information is disclosed, the process of extracting settlements begins, with the deck firmly stacked against the Defendants.

Rule 26 is intended to limit discovery abuse by generally prohibiting discovery before defendants have appeared and conferred with the plaintiff. The good faith belief standard embraced by this Court in *Caribbean Broadcasting* follows the letter and spirit of that rule by ensuring that judicial exceptions to it require more than a facially valid complaint. "Complaints should not be conceived merely as tokens, guaranteeing access to a world of discovery." *Edwards v. Gordon & Co.*, 94 F.R.D. 584, 586 (D.D.C. 1982). Expedited discovery is not granted upon request – it requires a minimal factual showing that discovery is likely to be fruitful. *Caribbean Broadcasting*, 148 F.3d at 1090 (denying jurisdictional discovery where "[plaintiff] did not allege any facts remotely suggesting that [defendant] had any connection to the District of Columbia").

## II.     The District Court Erred By Failing To Apply The Good Faith Standard For Early Discovery.

The district court improperly allowed AF Holdings to conduct expedited discovery without considering whether AF Holdings had a good faith belief that discovery would allow the litigation to progress. And in denying the ISPs' motion to quash, the court refused to consider evidence that AF Holdings *does not and cannot* have formed a good faith belief that jurisdiction and venue will ever be

8

proper as to all but a few of the Does. Similarly, the district court held that misjoinder is, in effect, irrelevant to expedited discovery, despite the obvious and well-documented prejudice to defendants it causes.

The district court applied a test that is 180 degrees opposite this Court's test, ruling that "[i]n circumstances where the plaintiff knows only the IP addresses associated with computers being used allegedly to infringe its copyright, the plaintiff is entitled to a period of discovery to obtain information to identify the ISPs' customers who may be using those computers in order to determine whether to name those individuals as defendants." Appellants' Appendix ("App.") 118. Under the district court's test, merely filing a complaint alleging copyright infringement by anonymous Internet users gives the plaintiff access to the court's subpoena power and lets them "borrow the authority of the Court to pressure settlement,"[3] despite obvious and insurmountable jurisdiction and joinder problems.[4] In other words, the district court held that a good faith belief is *not*

---

[3] *Ingenuity 13*, 2013 U.S. Dist. LEXIS 64564 at *5.

[4] In mass copyright litigation where evidence shows that plaintiffs demand settlement from ISP subscribers without regard to who actually infringed, an IP address alone cannot create a good faith basis for discovery. An IP address identifies only the ISP subscriber, not the person using the Internet connection at a given time. *AF Holdings v. Doe*, No. 12-cv-06637-ODW-JC, (ECF No. 21) (C.D. Cal. Jan. 25, 2013) (RJN Ex. 2) ("The actual infringer may not be the subscriber, but rather someone else . . . possession of nothing other than an IP address alone suggests the lack of a good faith basis to bring a copyright infringement lawsuit."); *see also Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 2012
*(cont'd)*

required and, going even further, that it is "inappropriate" for a movant to show a lack thereof.  App. 118.

The district court based its ruling instead on AF Holdings' alleged need for the Does' identities. App. 127 ("there is no way for the plaintiff to identify the unknown individuals referenced in the Complaint without responses to the subpoenas . . .").  This focus on need ignores the plain intent of Rule 26(d)(1) that expedited discovery requires a greater showing than that required for discovery after service of process in an adversarial setting.  Plaintiffs' need, in the absence of a good faith basis for proceeding, cannot be sufficient to make that showing.  If the case obviously will *not* proceed against all or most of the defendants, then the plaintiff is likely seeking the discovery for other, abusive purposes.  The District Court's holding to the contrary was an error of law and an abuse of discretion.

The district court also suggested that Rules 26(d)(1) and 45(c) operate differently in copyright cases. In the "Statutory Background" section of its Memorandum Opinion, the court recounted the legislative history of the Digital Millennium Copyright Act of 1998, including its subpoena provision. App. 121-27.

---

*(cont'd from previous page)*
WL 3117182 (S.D.N.Y. July 31, 2012) ("the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time"); *Disc. Video Ctr., Inc. v. Does 1-29*, 285 F.R.D. 161, 166 n.7 (D. Mass. Aug. 10, 2012) (Does "become defendants on the basis of their allegedly infringing activity, not due to their status as subscribers of the IP address utilized.").

The district court implied that because this Court limited the use of 17 U.S.C. § 512(h) subpoenas to ISPs for subscriber information,[5] and cast doubt on their constitutionality, ISPs must instead comply with expedited Rule 45 subpoenas, even if those subpoenas are not issued in good faith.

*Amici* urge the Court to reject this flawed reasoning. This Court's decision in *RIAA v. Verizon* did not affect the scope of Rule 45 subpoenas, nor create a special exception for copyright cases, which are as susceptible to abusive litigation tactics as any other type of case.

### III.    The District Court Erred By Permitting Mass Joinder Of 1,058 Does.

If the district court had applied the appropriate test, *amici* submit it could not have concluded that expedited discovery was appropriate.   The district court should have considered the issue of misjoinder, rather than dismissing the question as "premature."  App. 118.  Where joinder is facially defective, plaintiffs lack a good faith basis for expedited discovery.

Rule 20 of the Federal Rules of Civil Procedure ("Rule 20") allows for joinder of defendants when the plaintiff's "right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and

---

[5] *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003).

"any question of law or fact common to all defendants arise[s] in the action." Even if these requirements are satisfied, courts will order severance "to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Fed. R. Civ. P. 20(b). In this case, there is ample factual and legal basis to find misjoinder.

In addition, massive misjoinder prejudices victims of this scheme who may be innocent but will be hard-pressed to defend themselves individually. The district court's refusal to consider serious joinder problems at this stage was an error of law, or, alternatively, an abuse of discretion.

### A.    Federal Courts Are Increasingly Rejecting Attempts At Mass Joinder.

The current wave of mass copyright litigation began in the District of Columbia. At that point, Judge Howell, the district court judge in this case, determined that consideration of misjoinder was premature. *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 342-45 (D.D.C. 2011) (permitting joinder of 4,350 defendants in a related case).

But as district courts have become aware of the true nature of these lawsuits, many have found that they deny individual justice to the Defendants. *See, e.g.*, *IO Group, Inc. v. Does 1-435*, No. 10-4382, 2011 U.S. Dist. LEXIS 14123, at *19-20 (N.D. Cal. Feb. 3, 2011) ("filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for"); *LFP Internet Group LLC v. Does 1-*

12

*3,120*, No. 3:10-cv-02095-F (ECF No. 45), at 2 (N.D. Tex. Feb. 10, 2011) (RJN Ex. 3) (quashing subpoenas, holding that Plaintiff did not show that the defendants were "in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions"); *Patrick Collins, Inc. v. Does 1-44*, 2012 U.S. Dist. LEXIS 47686, at *18 (D. Md. Apr. 4, 2012) ("A majority of courts . . . have specifically held that the properties of BitTorrent are insufficient to support joinder.").

These orders, disapproving of joining large numbers of defendants in a single action under Rule 20, follow a pattern that began as early as 2004 in suits by record labels and film producers. *See, e.g.*, *BMG Music v. Does 1-203*, No. CIV.A. 04-0650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); *LaFace Records, LLC v. Does 1-38*, No. 5:07-cv-00298-BR, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) (severing a lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same networks); *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing, *sua sponte*, multiple defendants, where the only connection between them was allegation they used same ISP to conduct copyright infringement); *UMG Recordings, Inc. v. Does 1-51*, No. 1:04-cv-00704-LY (ECF No. 6) (W.D. Tex. Nov. 18, 2004) (RJN Ex. 4) (dismissing without prejudice all but the first of 254

defendants accused of unauthorized music file-sharing); *Twentieth Century Fox Film Corp. v. Does 1-12*, No. C 04-04862-WHA, 2004 WL 3241669 (N.D. Cal. Nov. 16, 2004) (permitting discovery to identify first of twelve Doe defendants but staying case against remaining Does until plaintiff could demonstrate proper joinder).

### B.    AF Holdings Did Not Show A Concert Of Action Among Defendants.

This case, like the severed cases mentioned above, is a textbook example of misjoinder. The "same transaction" requirement for joinder "refers to similarity in the factual background of a claim." *Coughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997).  The requirement is evaluated on a case-by-case basis. *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

When a person uses the BitTorrent protocol, their computer requests pieces of a file from multiple other computers on the Internet.  Decl. of Seth Schoen ¶ 5 (ECF No. 24-1 in the record below) ("Schoen Decl.").  This behavior is common to many Internet communications protocols, including Hypertext Transfer Protocol (HTTP), the protocol used by the World Wide Web.  *Id.*  That multiple people (known as "peers" in BitTorrent terminology) used BitTorrent to download the same file as part of a "swarm" over a period of months does not mean that any Doe Defendant had knowing or meaningful interaction with any other Doe Defendant. In fact, "[i]t is highly unlikely that all or even a significant number of the

14

defendants who downloaded the . . . work here stayed on the network and became a source for another later-connecting defendant to download from days or weeks later." *Id.* at ¶ 18.

The complaint in this case alleged that various Doe Defendants infringed AF Holdings' copyright over a period of nearly four months.   App. 8-31. AF Holdings also alleged that when using BitTorrent, "any [] peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer *so long as the first [] peer is online at the time the subsequent peer downloads a file*." App. 2-3 (emphasis added). Crucially, AF Holdings has never articulated any basis for the assumption that any Defendant in fact shared part of a copyrighted movie file with any other.

To the contrary, given that AF Holdings allegedly collected IP addresses over a four-month period, the evidence strongly suggests that most of the 1,058 Does did not share data with any other Doe.   At the hearing on these motions, AF Holdings called a witness who testified that the screen capture provided as part of the declaration showed only eleven BitTorrent users sharing pieces of a file at a given time.  Transcript of Motion Hearing of April 12, 2012 at 24:21-30:16 (RJN Ex. 5).  Thus, AF Holdings' own evidence suggests that far fewer than the 1,058 Does in this case were conceivably engaged in concerted action by supplying "a source for a subsequent peer."

The ISPs' expert, Mr. Seth Schoen, submitted unrebutted evidence that this observation was typical. Two academic studies have found that very few BitTorrent users remain online, sharing pieces of a downloaded file with others, after their own download has completed. Schoen Decl. ¶¶ 16-17.  Mr. Schoen concluded that "it is highly unlikely all or even a significant number of the defendants who downloaded the subject copyrighted work here stayed on the network and became a source for another later-connecting defendant to download from days or weeks later."  Mr. Schoen also testified that "as people's presence in or participation in a swarm is more removed in time, it's less likely that those people have communicated directly with one another using BitTorrent."  Tr. 75:4-17 (RJN Ex. 5).

Thus, AF Holdings failed to connect any two putative defendants, alleging only that they committed the violation in the same way.  "[M]erely committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2. Accordingly, numerous courts have found misjoinder based on similar evidence, where "[t]he copyright infringement claim against each Defendant is based on the individual acts of each Defendant," not on a common transaction or occurrence. *See, e.g., LFP Internet Group*, No. 10-2095, at 3-4 (finding "that Defendants' alleged use of the BitTorrent software system to commit copyright infringement is, without more,

insufficient for permissive joinder under Rule 20"); *Patrick Collins, Inc.*, 2012 U.S. Dist. LEXIS 47686, at *18.

The same is true even where, as here, a plaintiff alleges infringement of the same copyrighted work. *See* Order Severing Doe Def's. and Dismissing Claims 4, *Pacific Century Int'l, Ltd. v. Does 1-101*, No. 11-cv-02533-DMR, 2011 WL 2690142, *3 (N.D. Cal. July 8, 2011) ("That BitTorrent users have downloaded the same copyrighted work does not, therefore, evidence that they have acted together to obtain it.").

The district court, citing to the complaint alone, nonetheless held that joinder was proper "at the pleading stage." This was erroneous, for two reasons. First, as the district court acknowledged, this case is not at the pleading stage. *Id.* at 15. No motion to dismiss is pending. The question at hand is not the sufficiency of the pleadings, but whether the plaintiff has shown a good faith belief that its case can proceed after expedited discovery. That showing requires more than a facially valid complaint. *See* Part II, *supra.*

Second, the court ignored the substantial evidence, described above, showing that a concert of action between all but a few of the Doe Defendants was unlikely. Based on that evidence, the use of BitTorrent alone does not create a basis for joinder any more than the use of other common Internet communication protocols such as the Hypertext Transfer Protocol (HTTP), all of which rely in a

17

trivial sense on the passive cooperation of people unknown to each other and located all over the world. *See* Schoen Decl. ¶¶ 3-11. The district court's holding thus implies that users of the World Wide Web would be subject to joinder in a single lawsuit, solely because of their use of HTTP. That would be an absurd result, never intended by Rule 20.

### C. Mass Joinder Unfairly Prejudices Defendants, And Under Federal Rule Of Civil Procedure 26(d)(1), The Joinder Issue Should Be Considered Now.

Even if a plaintiff meets the requirements for permissive joinder under Rule 20(a), courts have broad discretion to refuse joinder or to sever a case in order "to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Fed. R. Civ. P. 20(b); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (explaining that permissive joinder must "comport with the principles of fundamental fairness").

The district court found no prejudice "at this stage in the proceedings" because defendants "have no obligation to respond to the Complaint or assert a defense." App. 138. In fact, mass joinder prejudices defendants in mass copyright litigation in at least three ways. First, each Doe's liability turns on numerous factual and legal issues that will vary widely. "For example, 'Subscriber John Doe 1 could be an innocent parent whose Internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed

Plaintiffs' Works.'" *Malibu Media, LLC v. Does 1-28*, 2012 U.S. Dist. LEXIS 144501, *9 (D. Colo. Oct. 25, 2012). In other instances, a wireless networking signal "could be received by someone outside the residence." *Ingenuity 13*, 2013 U.S. Dist. LEXIS 64564, at *6. Including over a thousand Does in a lawsuit virtually ensures that those important factual differences will not receive adequate consideration.

Second, mass joinder significantly lowers the cost of filing suit, which in turn reduces the plaintiff's incentive to bring only meritorious claims. In cases like this one, defendants have a strong incentive to settle after being identified and before any further court proceedings.[6] In these circumstances, neither the Rule 8 nor 11 pleading standards discourage improper lawsuits. Filing fees can and should serve that role. *See, e.g.*, *UMG Recordings* (RJN Ex. 4), at *2 (ordering severance of 254 defendants in four cases, noting that "filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100").

Third, those who use the Internet have an undisputed, though qualified, First Amendment right to anonymous communication. *See* Part V. Allowing plaintiffs to use a single lawsuit to unmask hundreds of anonymous speakers precludes any

---

[6] Further court proceedings are highly unlikely in cases like this. Plaintiff's counsel stated in a February 24, 2012 declaration that it had filed 118 cases against thousands of Does without serving a single defendant. App. 99-105.

meaningful consideration of their First Amendment rights, which vary with the strength of the plaintiff's case against each. *Id.* Thus, mass joinder prejudices defendants through an abrogation of their First Amendment rights.

The court also observed that defendants can, in theory, challenge joinder after being identified, named, and served with process. App. 137-38.  However, ample evidence – cited but ignored by the district court – shows that defendants never get a practical opportunity to challenge joinder at a later time given the strong economic and reputational pressure to settle even frivolous claims.

Finally, the district court believed that if the defendants were severed (or early discovery denied for lack of a good faith basis as to joinder), AF Holdings would either have to "file 1,058 separate cases" or be utterly unable "to protect its copyright."  App. 137, 139.  This is incorrect. Given the ample evidence that AF Holdings files lawsuits against many defendants who probably did not copy its films, the actual number of meritorious suits that could be brought is undoubtedly considerably lower. This is the right result, because "the policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement," *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 526 (1994).  Likewise, the goals of the Federal Rules of Civil Procedure include "the *just* . . . determination of every action." Fed. R. Civ. P. 1 (emphasis added). Plaintiff's need to "protect its copyright" cannot justify ignoring

procedural defects with serious consequences that cannot and will not be corrected later.

**IV.  The District Court Erred By Refusing To Consider A Facially Obvious Lack Of Personal Jurisdiction And Proper Venue That Will Not Be Cured Later.**

### A.    The Relevant Facts Are Undisputed.

Regarding personal jurisdiction and venue, there is no material dispute as to the facts.  The Doe Defendants are spread across the country.  App. 53 (Plaintiff's declarant stating that the Does were identified from "a swarm that was thousands of users large that contained peers from states across the United States as well as many countries around the world."); Schoen Decl. ¶¶ 21-28 & Ex. A.; App. 64, 72, 78 (Movant ISPs' attorneys' declarations discussing the location of the Does).  Only about 22 of 1,058 Does used computers located in the District of Columbia.  Schoen Decl. ¶¶ 27-28; App. 64, 72, 78.

AF Holdings could have used commercially available geolocation tools to determine the location of the Does based on their IP addresses.  *See Nu Image*, 799 F. Supp. 2d 34, 42 (holding that geolocation can create a good faith basis as to defendants' location).  In fact, AF Holdings has done so in other cases.  *See, e.g.,* Ex parte Appl. for Leave to Take Expedited Disc. at 17, n.2, *AF Holdings LLC v. Does 1-96*, No. 3:11-cv-03335-JSC (ECF No. 6) (N.D. Cal. July 11, 2011) (RJN Ex. 6) ("[T]his particular lawsuit is isolated to peers who are believed to be located

exclusively in California . . . This is a key distinction between Plaintiff's lawsuit and other lawsuits . . . Plaintiff mindfully controls for that factor.").  While not perfect, these tools are highly accurate at pinpointing the physical location of an IP address to within a metropolitan area.  Schoen Decl. ¶¶ 22-24; *see Nu Image,. Inc., v. Does 1–23,322,* 799 F. Supp. 2d 34, 42 (D.D.C. 2011).  Thus, at minimal expense, AF Holdings could have determined which of the Does lived in or near this District, and eliminated the 98% who were unlikely to live or work here, before filing suit.

**B.    A Good Faith Basis Is Required For Jurisdictional Discovery – Not A *Prima Facie* Showing Of Personal Jurisdiction.**

The district court chose not to consider these undisputed facts, finding that "personal jurisdiction is irrelevant" at this stage of the case because, *inter alia,* "[t]he plaintiff need only establish personal jurisdiction after it has been raised and contested by a defendant through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(2)," and because a plaintiff cannot "anticipate and rebut personal jurisdiction arguments" before a defendant moves to dismiss. App. 53.

The district court's analysis failed to address a crucial point. While a plaintiff need not make a *prima facie* showing of personal jurisdiction before a motion to dismiss is made, in order to conduct jurisdictional discovery, the plaintiff must "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad*.,

148 F.3d at 1090; *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11 (D.D.C. 2009).

Personal jurisdiction requires either that a defendant reside in the District of Columbia or, under the District's long arm statute, "an act or omission in the District of Columbia" that causes injury. D.C. Code § 13-423; *see SBO Pictures, Inc. v. Does 1-87*, 2012 U.S. Dist. LEXIS 6968, 2012 WL 177865, at *3-4 (D.D.C. Jan. 19, 2012). Where, as here, evidence available to the plaintiff shows that most of the defendants live far from the District, expedited discovery will not advance the case. It will be used, if at all, for impermissible purposes outside of the lawsuit for which it was purportedly sought.

Because AF Holdings did not and cannot make this minimum showing as to approximately 1,036 of the 1,058 Does, the district court should not have allowed AF Holdings to issue subpoenas for those Does' identities. This error has serious consequences: the prospect of having to defend oneself far from home is a major factor in pressuring Doe Defendants to settle meritless claims.

The district court's holding that plaintiffs can pursue expedited discovery merely by "setting forth *prima facie* allegations of copyright infringement predicated upon capture of . . . IP Addresses engaged in allegedly infringing activity" is tantamount to holding that expedited discovery is to be granted on request to any plaintiff who files a facially valid complaint alleging copyright

infringement.  App. 149-50.  This is contrary to both *Caribbean Broadcasting* and Rule 26(d)(1), which contemplates a higher threshold for early discovery than that required for discovery in the normal course of litigation.

### C.   Geolocation Tools Can Provide A Good Faith Basis For Jurisdictional Discovery.

As the ISPs and *amici* explained to the district court, geolocation services are available for a small fee, and plaintiff could have used such a service to satisfy its duty to establish a good faith belief that its chosen defendants could be sued in this District.   For example, Neustar IP Intelligence (formerly called Quova) provides an on-demand geolocation service for $8 per 1,000 addresses.   This service was audited independently by PriceWaterhouseCoopers in 2011 and found to be between 95.5% and 96.1% accurate at identifying the U.S. state in which a given IP address is located. Even where geolocation using current technology does not identify the correct state, it is generally accurate to within one city away from a user's actual location.  *Nu Image*, 799 F. Supp. 2d at 40-41.

Applying the Neustar service to the 1,058 IP addresses at issue in this case revealed nearly the same location information provided by the ISPs from their records.  Schoen Decl. ¶¶ 25, 28.  Thus, for far less than the cost of filing a civil complaint, AF Holdings could have learned with a fair degree of accuracy – before filing suit – which defendants could properly be sued in this District. It did not, instead alleging "on information and belief" that all defendants are "found in this

district," despite being identified in a *nationwide* search that included ISPs that had *no* customers in the District of Columbia. *See, e.g.*, App. 63-64. This Court need not determine precisely what constitutes a showing of good faith – *i.e.*, whether limiting discovery to IP addresses that geolocation places within 30 or 50 miles of the District of Columbia raises a reasonable probability that defendants so identified will be subject to jurisdiction. *Cf. Nu Image*, 799 F. Supp. at 41 (finding a good faith basis as to personal jurisdiction for IP addresses geolocated within 30 miles of the District of Columbia.). On the facts of this case, the Court should simply hold that there can be no good faith basis, and thus no expedited discovery, with respect to IP addresses gathered nationwide, without any attempt to limit them geographically.

## V.     The District Court Erred In Ignoring The Does' First Amendment Right To Communicate Anonymously.

The district court's order also failed to consider the Does' First Amendment right to communicate anonymously on the Internet, including by the use of BitTorrent. While this right is qualified, it must be given meaning in a copyright case as in any other. At a minimum, it requires that Internet users' anonymity not be pierced in situations like this one where litigation demonstrably cannot proceed against most of the Does.

BitTorrent users have a First Amendment right to engage in anonymous speech. *See Call of the Wild Movie,* 770 F. Supp. 2d at 350*; see also Sony Music*

*Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("[T]he use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection."); *In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003).

The district court here did not address the Does' First Amendment right. In a similar case, the court acknowledged that the right exists, but held that merely filing a complaint for copyright infringement suffices to overcome it. *Call of the Wild Movie, LLC,* 770 F. Supp. 2d at 350 (citing *Sony Music Entm't*, 326 F. Supp. 2d at 564-65). But most courts have taken a different approach, holding that mere payment of a filing fee is not enough reason to overcome the right to speak anonymously. *See, e.g., Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("To the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity.").

Efforts to use the power of the courts to pierce anonymous speech are subject to a qualified privilege that a court must consider before authorizing discovery.[7]  *See, e.g., Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977))

---

[7] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.").

Specifically, in a series of cases beginning with *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760-61, 342 N.J. Super. 134 (App. Div. 2001), courts have adopted a balancing standard to assess requests for early discovery to identify anonymous online speakers that protects the right to speak anonymously while at the same time ensuring that plaintiffs who have valid claims are able to pursue them.  Without such a standard, abusive plaintiffs could too easily use extrajudicial means against defendants from whom they could not, in the end, obtain judicial redress.  *See* Levy, *Litigating Civil Subpoenas to Identify Anonymous Internet Speakers*, 37 Litigation No. 3 (Spring 2011).

The use of BitTorrent to select and share movies is expressive and, therefore, protected by the First Amendment.  *Call of the Wild Movie*, 770 F. Supp. 2d at 350 ("[F]ile-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants' anonymity.").

Although the expressive aspect of the conduct alleged here – the posting of copyrighted movies to BitTorrent – is somewhat minimal, that does not mean that

discovery to identify the anonymous user without adequate initial evidence that individual Doe Defendants committed the alleged infringement. The weakness of AF Holdings' assertions of personal jurisdiction and proper joinder means that First Amendment concerns weigh more strongly here in favor of quashing the subpoenas. Certainly it was not appropriate for the district court to ignore the question altogether.

## CONCLUSION

AF Holdings' litigation campaign inevitably leads to hundreds or thousands of Internet subscribers paying thousands of dollars to settle claims that lack merit and could not even be litigated in the lawsuits that are filed. Its ability to conduct this campaign depends on being allowed to serve subpoenas in an *ex parte* posture without making any good faith showing. Thus, application of this Court's standard for expedited discovery is not an academic exercise here – it has very real consequences for numerous people whose only act was to subscribe to an Internet service. Those people have rights of due process and fairness both before and after they are served with process. They should not be threatened with suits and public humiliation based on discovery obtained on a plaintiff's unsupported request.

The district court held that upon filing a complaint for copyright infringement – a complaint that cannot be questioned either by unknowing Does or by nonparty ISPs – a plaintiff is "entitled to seek settlement" from Does.

App. 145.  While other courts have described this as an extortion scheme with the courts as unwitting accomplices, the district court in this case believed that it "serves our system of justice" to allow it.  *Id.*  It does not. Copyright owners have a right to pursue infringement claims, including Internet-related claims. But like any other plaintiff, a copyright owner must justify its extraordinary use of the court's subpoena power with a minimum showing, providing assurance to the court that the subpoenas will not be used in the service of a shakedown.  *Amici* urge the Court to reverse the district court's denial of the motion to quash subpoenas and the grant of the motion to compel production.

Dated:  May 14, 2013                     Respectfully submitted,

                                                */s/ Mitchell L. Stoltz*
                                              Mitchell L. Stoltz
                                              (D.C. Cir. Bar No. 51536)
                                              ELECTRONIC FRONTIER
                                              FOUNDATION
                                              815 Eddy Street
                                              San Francisco, California 94109

                                              *Counsel for Amici Curiae*

                                              *Of Counsel:*

                                              Arthur B. Spitzer
                                              AMERICAN CIVIL LIBERTIES UNION
                                              OF THE NATION'S CAPITAL
                                              4301 Connecticut Avenue, N.W., Suite 434
                                              Washington, D.C. 20008

Catherine Crump
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

Sherwin Siy
Vice President, Legal Affairs
PUBLIC KNOWLEDGE
1818 N Street, N.W., Suite 410
Washington, DC 20036

Paul Alan Levy
PUBLIC CITIZEN LITIGATION GROUP
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains 6,988 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [  ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in 14pt Times New Roman; *or*

    [  ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 14, 2013                        */s/ Mitchell L. Stoltz*
                                           Mitchell L. Stoltz
                                           ELECTRONIC FRONTIER
                                           FOUNDATION

                                           *Counsel for Amici Curiae*

31

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on May 14, 2013.

All counsel are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Counsel for AF Holdings, LLC,
Plaintiff-Appellee:
Paul A. Duffy, Esquire,
Email: paduffy@wefightpiracy.com

Counsel for Cox Communications,
Verizon Online, LLC, and Bright
House Networks, LLC, Interested
Parties-Appellants:
Deanne Elizabeth Maynard
Email: dmaynard@mofo.com
Benjamin J. Fox, Esquire
Email: BFox@mofo.com
Marc Andrew Hearron
Email: mhearron@mofo.com

Counsel for SBC Internet Services
dba AT&T Internet Services,

Dated:  May 14, 2013

Interested Party-Appellant:
Bart Wescott Huffman
Email: bhuffman@lockelord.com
Hugh Scott Balsam
Email: hbalsam@lockelord.com

Counsel for Comcast Cable
Communications, LLC, Interested
Party-Appellant:
Ronald London, Attorney
Email: ronnielondon@dwt.com
Leslie Gallagher Moylan
Email: lesliemoylan@dwt.com
John D. Seiver, Esquire
Email: johnseiver@dwt.com
Lisa Beth Zycherman
Email: lisazycherman@dwt.com

*/s/ Mitchell L. Stoltz*
Mitchell L. Stoltz
ELECTRONIC FRONTIER
FOUNDATION

*Counsel for Amici Curiae*