ORAL ARGUMENT NOT YET SCHEDULED

No. 12-7135

─────────────────────────────────────────────

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

─────────────────────────────────────────────

AF HOLDINGS, LLC,

*Plaintiff-Appellee,*

v.

DOES 1-1,058,

*Defendants,*

and

COX COMMUNICATIONS, INC., *et al.*,

*Appellants.*

─────────────────────────────────────────

On Appeal from the United States District Court
for the District of Columbia
────────────────────

**REQUEST FOR JUDICIAL NOTICE OF *AMICI CURIAE***
────────────────────

Mitchell L. Stoltz
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, California 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email: mitch@eff.org

*Counsel for Amici Curiae*

(*Additional Counsel Listed on Next Page*)

*Of Counsel*:

Arthur B. Spitzer
AMERICAN CIVIL LIBERTIES UNION OF THE NATION'S CAPITAL
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
(202) 457-0800

Catherine Crump
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7806

Sherwin Siy
Vice President, Legal Affairs
PUBLIC KNOWLEDGE
1818 N St. N.W., Suite 410
Washington, DC 20036
(202) 861-0020

Paul Alan Levy
PUBLIC CITIZEN LITIGATION GROUP
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Rule 201 of the Federal Rules of Evidence, *Amici Curiae* respectfully request that the Court take judicial notice of the following documents:

**Exhibit 1**: *West Coast Prods., Inc. v. Does 1-1,434*, No. 1:11-cv-55-JEB-JMF (D.D.C. Aug. 6, 2012) Memorandum Opinion (ECF No. 23).

**Exhibit 2**: *AF Holdings v. Doe*, No. 2:12-cv-06637-ODW-JC (C.D. Cal. Jan. 25, 2013) Order Dismissing Case Without Prejudice (ECF No. 21).

**Exhibit 3**: *LFP Internet Group LLC v. Does 1-3,120*, No. 3:10-cv-02095 (N.D. Tex. Feb. 10, 2011) Order Severing Does 2-3,120; Quashing Subpoenas; And Dismissing All Pending Motions As Moot (ECF No. 45).

**Exhibit 4**: *UMG Recordings, Inc. v. Does 1-51*, No. 1:04-cv-00704-LY (W.D. Tex. Nov. 18, 2004) Order Dismissing Does 2-51 Without Prejudice (ECF No. 6).

**Exhibit 5**: *AF Holdings, Inc. v. Does 1-1,058*, 1:12-cv-00048-BAH (D.D.C. Mar. 16, 2012) Transcript of Motion Hearing (ECF No. 53).

**Exhibit 6**: *AF Holdings LLC v. Does 1-96*, No. 3:11-cv-03335-JSC (N.D. Cal. July 11, 2011) Ex Parte Application For, and Memorandum of Law in Support of, Leave to Take Discovery Prior to Rule 26(f) Conference filed by AF Holdings LLC (ECF No. 6).

\* \* \*

The court records identified above are publicly available through the federal courts' PACER/ECF website <www.pacer.gov>, and their authenticity is not subject to reasonable dispute. *See, e.g., Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (citing the court's "authority to judicially notice related proceedings in other courts").   The hearing transcript in the record below (Exhibit 5) may be obtained independently through the court reporter's office of the District Court for the District of California, and its authenticity is not subject to reasonable dispute. *See, e.g.*, *Xydas v. United States*, 445 F.2d 660, 668 n.22 (D.C. Cir. 1971) (court transcripts are properly subject to judicial notice).

Dated:  May 14, 2013                    Respectfully submitted,

                                         /s/ Mitchell L. Stoltz
                                        Mitchell L. Stoltz
                                        ELECTRONIC FRONTIER
                                        FOUNDATION
                                        815 Eddy Street
                                        San Francisco, CA 94109

                                        *Counsel for Amici Curiae*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on May 14, 2013.

All counsel are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Counsel for AF Holdings, LLC,
Plaintiff-Appellee:
Paul A. Duffy, Esquire,
Email: paduffy@wefightpiracy.com

Counsel for Cox Communications,
Verizon Online, LLC, and Bright
House Networks, LLC, Interested
Parties-Appellants:
Deanne Elizabeth Maynard
Email: dmaynard@mofo.com
Benjamin J. Fox, Esquire
Email: BFox@mofo.com
Marc Andrew Hearron
Email: mhearron@mofo.com

Counsel for SBC Internet Services
dba AT&T Internet Services,

Interested Party-Appellant:
Bart Wescott Huffman
Email: bhuffman@lockelord.com
Hugh Scott Balsam
Email: hbalsam@lockelord.com

Counsel for Comcast Cable
Communications, LLC, Interested
Party-Appellant:
Ronald London, Attorney
Email: ronnielondon@dwt.com
Leslie Gallagher Moylan
Email: lesliemoylan@dwt.com
John D. Seiver, Esquire
Email: johnseiver@dwt.com
Lisa Beth Zycherman
Email: lisazycherman@dwt.com

Dated:  May 14, 2013

*/s/ Mitchell L. Stoltz*
Mitchell L. Stoltz
ELECTRONIC FRONTIER
FOUNDATION

*Counsel for Amici Curiae*

3

# Exhibit 1

# Exhibit 1

RJN001

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**WEST COAST PRODUCTIONS, INC.,**

      **Plaintiff,**

          **v.**                               **Civil Action No. 11-55 (JEB/JMF)**

**DOES 1-1,434,**

      **Defendants.**

### MEMORANDUM OPINION

This case was referred to me for full case management. Currently pending and ready for resolution are 1) Plaintiff's Motion for Extension of Time to Name and Serve Defendants [Fed. R. Civ. P. 4(m)] [#16] and 2) plaintiff's Renewed Motion for Leave to Take *Additional* Discovery Prior to Rule 26(f) Conference; Memorandum of Points and Authorities in Support Thereof [#17]. For the reasons stated below, both motions will be granted.

### BACKGROUND

Plaintiff, West Coast Productions, is the owner of the copyright for the motion picture "Juicy White Anal Booty 4." Complaint for Copyright Infringement [#1] ¶5. According to plaintiff, numerous individuals illegally downloaded and distributed its film over the Internet, in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*[1] Id. ¶¶1, 3. At the time the law suit was filed, plaintiff did not know the identities of these individuals. Id. ¶17. Plaintiff did, however, know the Internet Protocol ("IP") addresses of the computers associated with the alleged infringers. Id. Plaintiff therefore filed suit against all the individuals whose IP addresses

---

[1] All references to the United States Code, the D.C. Code, or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

it had, denominating them as "John Doe." Id.  Once the complaint was filed, plaintiff then

moved, pursuant to Rule 26(f) of the Federal Rules of Civil Procedure,[2] to conduct discovery

prior to the conference required by that rule.[3]  At that time, plaintiff was unable to serve a

summons or complaint on any of the Doe defendants, as it did not know who they were or where

they were located.  Plaintiff's motion for discovery was granted on June 28, 2011.[4]

On August 8, 2011, plaintiff moved for leave to take additional discovery.[5]  Thereafter,

the Court denied plaintiff's motion without prejudice and ordered plaintiff to show cause "why

this Court can assert jurisdiction over any defendant (a) who is not domiciled in the District of

Columbia, or (b) as to whom plaintiff lacks a good faith basis to assert that he or she committed

the act that is the premise of the plaintiff's claim for relief in the District of Columbia, and why

venue is proper unless the defendant resides in the District of Columbia." Order [#20] at 1.

These issues will now be resolved.

## DISCUSSION

I.     Introduction

This case and the numerous other cases just like it are extraordinary in that they involve

an effort on the part of movie copyright holders to secure the identities of what may be hundreds

of individuals so that they can be sued in this Court for illegally downloading a movie onto their

---

[2] See Fed. R. Civ. P. 26(d)(1) (party may not seek discovery from any party before Rule 26(f) conference).

[3] See Motion for Leave to Take Discovery Prior to Rule 26(f) Conference [#3].

[4] See Memorandum Order [#11].

[5] See Motion for Leave to Take Additional Discovery Prior to Rule 26(f) Conference; Memorandum of Points and Authorities in Support Thereof [#14].

2

personal computers. As I will explain in more detail below, these cases have imposed and will continue to impose extraordinary burdens on the courts and the Internet Service Providers ("ISPs") that must comply with the subpoenas. Moreover, it confronts the Doe defendants, the alleged infringers, with the necessity of answering a complaint that demands substantial damages, often in courts far from their homes. These burdens convince me that the discovery sought must be conditioned upon certain requirements that I hope will establish a middle ground between the plaintiffs' need for information and the unique burdens being cast upon the courts, the subpoenaed parties, and the Doe defendants.

Additionally, I am concerned that there are significant issues that would preclude this Court from ever asserting personal jurisdiction over individuals who do not reside in the District of Columbia. It may also be true that venue can never be proper in this Court unless the defendant resides here. I do not intend to prejudge those issues before they are legitimately raised by persons who are in fact made parties to this lawsuit. I address them herein solely to alert plaintiff to the principles that will guide my future analysis of whether, as I am requiring plaintiff to do, it can in good faith name as defendants individuals who do not reside in the District of Columbia.

Finally, I will explain why the unique burdens imposed by this lawsuit on the Court, the subpoenaed parties, and the Doe defendants justify the other conditions I am imposing.

II.    Standard of Review

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, although "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," they may do so "when authorized . . . by court order." Fed. R. Civ. P. 26(f). Such authorization, however, must be based on a showing of "good cause." Fed. R. Civ. P. 26(d)(1). "[I]n order to

RJN004

get jurisdictional discovery[,] a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Furthermore, all discovery, whether before or after the Rule 26(f) conference, should be precluded when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(c).[6]

Ultimately, Rule 26 "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Fed. R. Civ. P. 26; Watts v. Sec. & Exch. Comm'n., 482 F.3d 501, 507 (D.C. Cir. 2007) (internal citation omitted). Generally, this Circuit takes a liberal approach to jurisdictional discovery. Caribbean Broad. Sys., Ltd., 148 F.3d at 1090. Plaintiffs are, of course, still subject to Rule 11's good faith requirements. See Fed. R. Civ. P. 11.

III.    Applicable Law

A.    Law Governing Personal Jurisdiction

Plaintiff's cause of action, tortious copyright infringement,[7] is brought under a federal

---

[6] See also Linder v. Dep't of Def., 133 F.3d 17, 24 (D.C. Cir. 1998) ("Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation.") (internal citation omitted); In re Micron Tech., Inc. Sec. Litig., 264 F.R.D. 7, 9 (D.D.C. 2010) ("The 'undue burden' test requires district courts to be 'generally sensitive' to the costs imposed on third parties . . ..") (internal citations omitted); N.C. Right to Life, Inc. v. Leake, 231 F.R.D. 49, 51 (D.D.C. 2005) ("While quashing a subpoena goes against courts' general preference for a broad scope of discovery . . . limiting discovery is appropriate when the burden of providing the documents outweighs the need for it.").

[7] "It is well settled in this jurisdiction [the District of Columbia Circuit] that a claim for copyright infringement sounds in tort." Nu Image, Inc. v. Does 1-23,322, 799 F. Supp. 2d 34, 43, n.3 (D.D.C. 2011) (citing Stabilisierungsfonds Fur Wein v. Kaiser, 647 F.2d 200, 207 (D.C. Cir. 1981)).

4

statute, the Copyright Act. [#1] ¶ 1 (citing 17 U.S.C. § 101).  The statute cited does not provide

for the exercise of personal jurisdiction over alleged infringers on a nationwide or other basis.

Plaintiff must therefore predicate the court's jurisdiction over the infringers on the reach of

District of Columbia law. Fed. R. Civ. P. 4(e)(1).

      With respect to an individual domiciled in the District of Columbia, District of Columbia

law provides for the exercise of personal jurisdiction as to "any claim for relief." D.C. Code §

13-422 (2001).  But, with respect to an individual who is not domiciled in the District of

Columbia, the so-called "long arm" provision of the personal jurisdiction statute imposes a

significant requirement. The statute provides the following:

> (a)    A District of Columbia court may exercise personal jurisdiction over a
> person, who acts directly or by an agent, as to a claim for relief arising
> from the person's - -

* * *

> (3)    causing tortious injury in the District of Columbia
> by an act or omission in the District of Columbia;

D.C. Code § 13-423 (2001).  Thus, to meet the statutory test for imposing jurisdiction over the

person of a putative infringer, it would appear that the plaintiff must show that the infringer

caused the tort of infringing by an act done in the District of Columbia.

      In this context, and in cases similar to this one, it is worth noting that plaintiffs have

argued that the way in which these movies are downloaded, via the BitTorrent protocol, permits

the assertion of jurisdiction by this Court over persons who do not reside in the District of

Columbia.  To better understand the argument, one must first understand the BitTorrent

technology.  The following excerpt is taken from Diabolic Video Productions, Inc. v. Does 1-

2,099, No. 10-CIV-5865, 2011 WL 3100404 (N.D. Cal. May 31, 2011):

5

RJN006

Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data among themselves by exchanging pieces of the file with each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."

The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

Id. at *1-2.

While certain plaintiffs have asserted that the technology associated with this "swarm of peers" permits any court to assert jurisdiction over all of them, that argument has been rejected by some of the courts to whom it has been addressed.  See, e.g., 808 Holdings, LLC v. Collective Sharing Hash E37 . . ., No. 12-CIV-191, 2012 WL 1581987, at *6 (S.D. Cal. May 4, 2012) ("It is unlikely that an individual in a distant jurisdiction would envision that the acts alleged would subject him to the jurisdiction of this Court.  Similarly, any allegation that personal jurisdiction exists because of the swarming activity is inadequate."); Liberty Media Holding, LLC v. Tabora, No. 11-CIV-651, 2012 WL 28788 (S.D. Cal. Jan. 4, 2012) (rejecting swarm technology as basis

6

for establishing personal jurisdiction); <u>Berlin Media Art e.k. v. Does 1–654</u>, No. 11-CIV-3770, 2011 U.S. Dist. LEXIS 120257, *4 (N.D. Cal. Oct. 18, 2011) (rejecting argument that everybody who used . . . BitTorrent would subject themselves to jurisdiction in every state) (internal quotation marks and citation omitted); <u>Millennium TGA v. Doe</u>, 2011 U.S. Dist. LEXIS 110135, at *2–8 (N.D. Ill. Sept. 26, 2011) (same); <u>On the Cheap, LLC v. Does 1-5,011</u>, 280 F.R.D. 500, 505 (N.D. Cal. 2011) (same).

In the current case, if plaintiff claims that this Court may exercise personal jurisdiction over individuals who do not reside in the District of Columbia, I expect it, at the appropriate time,[8] to meet its good faith obligation to explain to me why such jurisdiction is appropriate. Should that response be based on a "swarm of peers" theory, plaintiff will have the burden of proving how that theory permits the exercise of jurisdiction over persons who do not reside in the District of Columbia.

    B.    Law Governing Venue

Venue in copyright cases is governed exclusively by 28 U.S.C. § 1400, which states the following: "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found."[9] 28 U.S.C. § 1400(a).  Thus, at this point, it

---

[8] <u>See</u> <u>Call of the Wild Movie, LLC v. Does 1-1062</u>, 770 F. Supp. 2d 332, 347 (D.D.C. 2011) (rejecting as premature challenge by ISP to subpoena on grounds that there would be no personal jurisdiction over non-residents because subscribers had not yet been named as defendants); <u>MGCIP v. Does 1-316</u>, No. 10-CIV-6677, 2011 WL 2292958, at *2 (N.D. Ill. June 9, 2011) (same).

[9] For the purposes of this statute, a defendant "may be found" to be in the judicial district where his contacts with that district would support jurisdiction over his person. <u>Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.</u>, 8 F.3d 441, 446 (7th Cir. 1993).

RJN008

would seem that an individual who does not reside in the District of Columbia can avail himself of the defense of improper venue.

IV.    <u>Discovery Must Be Conditioned</u>

Several judicial approaches have emerged with regard to the allowance of jurisdictional discovery in these BitTorrent cases. Viewed on a continuum, these approaches range from permitting the discovery unconditionally, permitting it upon certain conditions, or allowing the case to proceed without jurisdictional discovery against only those Doe defendants who reside in the forum where they have been sued. The latter approach necessitates plaintiffs' utilization of a certain type of software that purportedly allows them to ascertain where the individual associated with a specific IP address is located.

Each approach has practical advantages and disadvantages.

The two approaches that permit discovery, whether or not conditioned upon certain terms, are, in my view, most consistent with plaintiffs' unquestionable right, in this Circuit, to conduct jurisdictional discovery. If the exercise of that "right" was conditioned upon plaintiffs' first establishing the likelihood that the court has jurisdiction over a particular individual, that right would be eviscerated. The simple reality of this technology, however, is that it is impossible for plaintiffs to know the identity of a Doe defendant merely by knowing that a particular IP address is associated with a particular street address. Only the ISP can tie a particular IP address with an individual subscriber and therefore a specific address.[10] In this area

_____

[10] This Court has received several letters and other communications from the Doe defendants insisting that they do not even know how to download a film and could not possibly have done what plaintiffs claim they did. On occasion, they wonder out loud whether someone else in their homes could have downloaded the film or whether someone outside their homes accessed their network connection without permission. As these communications suggest, linking an IP address with a subscriber's name is therefore only the first step in identifying a potential

RJN009

of human creativity, there is the greatest likelihood of massive infringement given the ever

increasing use of the Internet to download digital media.  Paradoxically, the protections provided

to these copyright holders by the Copyright Act would evaporate, unless copyright holders are

permitted to engage in this discovery.

 The approach that requires plaintiffs to use an intermediate technology to first identify

those Doe defendants who live within or nearby the forum constitutes an explicit endorsement of

the accuracy of this technology, even though its scientific foundation and the certainty of its

results have never been tested before this Court by the adversary process.  See Call of the Wild

Movie, LLC, 770 F. Supp. 2d at 347 (finding techniques permitting user to relate IP address of

computer to particular user are "not completely" accurate and "reveal only where a defendant is

likely to be located.").  Surely, in an adjudicatory system that requires expert testimony when the

topic at issue is "based on scientific, technical, or other specialized knowledge,"[11] the blind

acceptance by a court of the efficacy of a particular piece of software is inconsistent with the

traditional manner in which a court resolves factual disputes.  Moreover, this approach implicitly

accepts the defenses of lack of jurisdiction over the person or improper venue before an

individual is even named as a defendant and, more significantly, before plaintiffs have had an

opportunity to make their case.

---

copyright infringer.  See In re BitTorrent Adult Films Copyright Infringement Cases, No. 11-
CIV-2995, 2012 WL 1570765, at *3-4 (E.D.N.Y. May 1, 2012) (exploring the reasons why
knowing an IP address may not justify conclusion that subscriber is the person who in fact
downloaded the film and this inability and other factors justified refusal to grant pre-26(f)
discovery).

[11] Fed. R. Evid. 701(c).  Cf. United States v. O'Keefe, 537 F. Supp. 2d 14, 24 (D.D.C. 2008)
(assertion of inadequacy of search terms should be premised on expert evidence admissible
under Fed. R. Evid. 702 where that topic, the adequacy of search terms used to search a
computer, was beyond the ken of laymen).

RJN010

However, the unconditioned discovery plaintiffs seek presents other dangers and problems. First, it is a rare non-class action in the federal courts that involves five or more defendants; this one involves hundreds of putative defendants. Second, parties traditionally communicate with the Court electronically through the Court's Electronic Court Filing system. In these cases, until these individuals are named as actual, and not Doe defendants, they must resort to communicating with the Court either in writing or by phone. Their doing so in such large numbers has placed a significant new and unique burden on the Clerk's Office. As a result, a member of the Clerk's Office has had to be specifically assigned to handle all these communications.

While the Clerk's Office must meet the public's needs, the cost of these cases in terms of resources, time, and money is significant and not alleviated by the filing fees plaintiffs have paid. By combining all of the Doe defendants in one case, plaintiffs avoid having to pay multiple filing fees, even though their cases impose significant clerical costs upon the Court.[12] Conditions that would alleviate this burden but still permit plaintiffs to get the information they need are certainly advisable.

Furthermore, unconditioned discovery also creates a distinct burden on the ISPs, who are obliged by plaintiffs' subpoenas to match IP addresses with subscribers. The ISPs are, of course, large corporations with sufficient funds to hire expert counsel to protect their interests by, for

---

[12] Notably, some courts have held that joining all the Doe defendants in one case violates Rule 20 of the Federal Rules of Civil Procedure. E.g. Third Degree Films, Inc. v. Does 1-108, No. 11-CIV-3007, 2012 WL 1514807, at *3 (D. Md. Apr. 27, 2012); Media Products v. Does, No. 12-CIV-348, 2012 WL 1150816, at *2 (D. Md. Apr. 4, 2012); Nu Image, Inc. v. Does 1-3,932, No. 11-CIV-545, 2012 WL 646070, at *6 (M.D. Fla. Feb. 28, 2012). Contra Raw Films, Ltd. v. John Does 1-11, No. 12-CIV-368, 2012 WL 684763, at *3-4 (N.D. Cal. Mar. 2, 2012); Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 451 n.6 (D. Mass 2011).

RJN011

example, contesting the subpoenas as overly burdensome under Rule 45 of the Federal Rules of Civil Procedure. See, e.g., Call of the Wild Movie, LLC, 770 F. Supp. at 354-59. That expense, however, may make it cheaper and more efficient for the ISP to comply rather than resist the subpoenas. Nevertheless, the Court should not impose any unnecessary burden on the ISPs, lest the cost ultimately be passed on to their consumers, which, these days, means almost everyone in the United States.

Finally, and most importantly, the interests of the Doe defendants must be addressed. The federal courts have always expressed their solicitude for parties who proceed *pro se* by requiring, for example, that they receive notice of the consequences of failing to answer a particular pleading. Angellino v. Royal Family Al-Saud, 681 F.3d 463, 470 (D.C. Cir. 2012); Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993). Additionally, their filings are to be liberally construed and their pleadings are not held to the stringent standards that apply to pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Kim v. U.S., 840 F. Supp. 2d 180, 185 (D.D.C. 2012).

Similarly, when lawyers speak to unrepresented parties or negotiate with them, they too have specific responsibilities. Stephen Gillers, Roy D. Simon & Andrew M. Perlman, Regulation of Lawyers: Statutes and Standards 921 (2012) (Under Rule 4.3 of the D.C. Rules of Professional Conduct, when dealing with an unrepresented person on behalf of a client, a lawyer 1) may not give advice, other than the advice to get a lawyer; 2) may not state that she is disinterested; and 3) must correct any misunderstanding of her role).

This solicitude and concern for *pro se* parties should also be extended to Doe defendants. This is particularly so when one appreciates how unfamiliar with court proceedings many of these individuals may be. A layperson who is served with a "summons" and "complaint"

RJN012

demanding that he or she file an "answer" or risk "default" in a court far from home, may not

understand the legal terminology and may find the entire matter baffling and distressing, to say

the least. Confronted with that reality, the individual will first have to decide whether to hire, at

a substantial expense, a lawyer who may not be admitted to the bar of the forum court. If, on the

other hand, the individual decides to proceed *pro se*, without a lawyer, then he will have to

defend himself as best as he can, either by relying on his own wits or by resorting to "legal"

forms available on the Internet.[13] The point is significant. It is hard to believe that on the crucial

issue presented–whether this Court may assert jurisdiction over their persons–lay persons would

have the knowledge and experience to assert the defense of lack of personal jurisdiction. At

least equally uncertain is that they would know that the defense is waived if they answer the

complaint without either asserting it or moving to dismiss the complaint, on that basis, prior to

answering. See Fed. R. Civ. P. 12; Angellino, 681 F.3d at 463 (dismissal of *pro se* complaint for

failure to effect service reversed because district court did not provide minimal notice of

consequences of failing to comply with procedural rules); Moore, 994 F.2d at 876 (same).

    Finally, there is the problem of the creation of "settlement" websites by the plaintiffs in

these BitTorrent copyright cases. Apparently, as soon as the Doe defendants are identified by

name and address, plaintiffs send them a notice inviting them to settle the case for a specified

sum.[14] These individuals are then directed to websites where they can make payment via credit

---

[13] These documents may or may not have been drafted by a lawyer. Furthermore, the act of
downloading forms posted on the Internet is, of course, utterly void of the competent
representation that would be provided by a lawyer to his client had that lawyer been retained.
See Regulation of Lawyers: Statutes and Standards at 827 (Under D. C. Rule of Professional
Conduct 1.1(a), a lawyer shall provide competent representation to a client).

[14] See Mick Haig Prods. E.K. v. Does 1-670, No. 11-CIV-10977, 2012 WL 2849378, at *3 (5th
Cir. July 12, 2012) (condemning tactic of "suing anonymous internet users for allegedly

RJN013

card or Paypal.  To my knowledge, neither I nor any other judge have exerted control over the

contents of these websites, since asserting such control may be inconsistent with traditional

notions of judicial impartiality.  It is equally true, however, that the court processes are being

used to further these efforts.  In other words, settlement offers are being made to individuals who

may not understand that they have defenses to the lawsuit which, if successfully pled, would bar

plaintiffs from any recovery.  Of course,  plaintiffs' counsel will not inform these individuals of

their rights because, as indicated above, they are not permitted by the ethical rules to give legal

advice to unrepresented persons other than the advice to get counsel.

 While I disagree with the judicial approach that favors ruling on the questions of

jurisdiction over the person, venue, and possible misjoinder, before a person is even named as a

defendant, and while I will not insist upon the use of some kind of identification software, I am

firmly convinced that it would be a gross abuse of discretion for me not to impose certain

conditions upon plaintiffs being permitted to take the jurisdictional discovery they seek.  There is

simply nothing ordinary about these cases and they require something more than ordinary

judicial passivity while service is accomplished.

 I will therefore impose the following conditions on the discovery sought, which speak to

each of the concerns I have just addressed.

---

downloading pornography illegally, using the powers of the court to find their identity, then
shaming or intimidating them into settling for thousands of dollars–a tactic that [the copyright
holder's counsel] has employed all across the state and that has been replicated by others across
the country").  See also In re BitTorrent Adult Films Copyright Infringement Cases, 2012 WL
1570765, at *3-4; Third Degree Films, Inc., 2012 WL 1514807, at *4; First Time Videos, LLC
v. Doe, No. 12-CIV-621, 2012 WL 1355725, at *5 (E.D. Cal. Apr. 18, 2012); Pacific Century
Int'l, Ltd. v. Does 1-37, ___ F.R.D. ___, 2012 WL 1072312, at *3, 5 (N.D. Ill. Mar. 30, 2012);
On the Cheap, LLC, 280 F.R.D. at 505.  In all of these cases the courts expressed their grave
concerns about settlement overtures to the Doe defendants.

RJN014

A.     First Condition:  To Alleviate the Burden on the Court

Plaintiff shall provide the ISPs with the attached notice.  The ISPs will then forward the notice to the Doe defendants.  The notice explains the lawsuit and its significance to them.  By doing this, I hope to alleviate any concerns the Doe defendants might have that would otherwise cause them to communicate with me, my chambers, or the Clerk's office.  I also hope to avoid the awkwardness of the Court (myself, my chambers, or the Clerk's office) having to decline speaking *ex parte* to people who, understandably, have questions and concerns.  With respect to the Clerk's office, I am afraid that I cannot think of any conditions that would alleviate their other burdens.

B.     Second Condition: To Alleviate the Burden on the ISPs

Since the ISPs are the only source of the information plaintiff needs to proceed, plaintiff must be permitted to subpoena the ISPs.  Of course, the ISPs unquestionably have the right to challenge those subpoenas under Rule 45 if they see fit.  I will not prejudge any such challenge at this point because I believe that the ISPs can fend for themselves.

C.     Third Condition: To Alleviate the Burden on the Doe Defendants

As I noted above, I am concerned by the prospect of plaintiff's making settlement offers to the Doe defendants when these individuals may not be aware that they have legitimate defenses, particularly the defenses of lack of jurisdiction over the person, improper venue, and improper joinder.  I have no inclination to dictate to plaintiff (or any one else) what they may or may not say during settlement negotiations.  However, I have decided to preclude plaintiff from communicating directly with the Doe defendants prior to plaintiff's naming these individuals as actual defendants in the complaint.  Once they are named, further communications with them will require my permission.

14

RJN015

D.     Fourth Condition:  Good Faith Requirement

Finally, I am requiring plaintiff to name as actual defendants only those Doe defendants who it believes, in good faith, to be amendable to the assertion of jurisdiction by this Court over their persons and as to whom venue is proper in this forum.  I am not prejudging any argument as to either of those issues.  While plaintiff will have an opportunity to address them in the ordinary course, if this case survives the naming of the defendants, I remind plaintiff that I purposefully identified the relevant principles pertaining to personal jurisdiction and venue.  I expect that they will be ready to establish why this Court may assert personal jurisdiction over the Doe defendants who do not reside in the District of Columbia and why venue over any non-resident is proper in this judicial district.

In this context, good faith means good faith in fact and law.  If plaintiff cannot factually or legally support naming as a defendant an individual who is not a resident of the District of Columbia, it runs the risk of my finding that their doing so was not in good faith.  Plaintiff would thereby not only violate my Order but would run the risk of violating the requirements of Rule 11 of the Federal Rules of Civil Procedure and the prohibition against such behavior contained in 28 U.S.C. § 1927, which states that any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay resulting costs.

An order accompanies this Memorandum Opinion.



Digitally signed by John M. Facciola
DN: c=US, st=DC, ou=District of
Columbia,
email=John_M._Facciola@dcd.uscou
rts.gov, o=U.S. District Court, District
of Columbia, cn=John M. Facciola
Date: 2012.08.06 16:19:06 -04'00'

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

15

RJN016

# Exhibit 2

# Exhibit 2

RJN017

**JS-6**

1

2

3

4

5

6

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| 10    AF HOLDINGS LLC, | Case No. 2:12-cv-6637-ODW(JCx) |
| 11                    Plaintiff, | **ORDER DISMISSING CASE** |
| 12        v. | |
| 13    JOHN DOE, | |
| 14                    Defendant. | |

15        Under Federal Rule of Civil Procedure 4(m), a defendant must be served within

16    120 days after the complaint is filed, or else the Court "must dismiss the action

17    without prejudice." Fed. R. Civ. P. 4(m). This action commenced on August 1, 2012.

18        On December 20, 2012, the Court ordered Plaintiff to show cause why it failed

19    to timely serve the Defendant; or if the Defendant has already been served, to submit

20    the proof of service. (ECF No. 16.)

21        In response, Plaintiff noted that the delay was because it lacked the means to

22    identify John Doe. (ECF No. 17.) Without early discovery and without the

23    cooperation of the responsible ISP, Plaintiff argues that it could not proceed in this

24    case with just an IP address. Plaintiff also contends that the 120-day service deadline

25    should not serve as an outer limit, but rather as a guideline. *Henderson v. United*

26    *States*, 517 U.S. 654, 661 (1996).

27        If a plaintiff shows good cause for the delay, the court must extend the time for

28    service. Fed. R. Civ. P. 4(m). And a court has discretion to extend the time for

RJN018

1   service even in the absence of good cause.  *Efaw v. Williams*, 473 F.3d 1038, 1040

2   (9th Cir. 2007).  Nevertheless, that discretion is not limitless.  *See id.* at 1041.

3        Here, the Court finds that Plaintiff's technological problem of identifying John

4   Doe does not suffice for good cause.  First, the Court is not convinced that that there is

5   no way of identifying John Doe through an IP address other than obtaining ISP

6   subscriber information—Plaintiff has presented nothing but argument suggesting that

7   it is so.  Second, as outlined in the Court's October 19, 2012 Order vacating early

8   discovery orders, it is dubious whether Plaintiff will be able to identify the actual

9   infringer even if Plaintiff is given the subscriber information for the IP address—in

10   other words, the actual infringer may not be the subscriber, but rather someone else.

11   And third, possession of nothing other than an IP address alone suggests the lack of a

12   good faith basis to bring a copyright infringement lawsuit.  *See e.g.*, Fed. R. Civ.

13   P. 11(b)(2), (3).

14        Upon review the docket and the circumstances of this case, the Court concludes

15   that this delay stems from either Plaintiff's lack of diligence, or its impatience in

16   rushing to the courthouse.  Plaintiff filed its Complaint 176 days ago.  Given that

17   passage of time and the lack of good cause, the Court finds no reason to extend the

18   120-day limit for service under Rule 4(m).

19        Accordingly, this case is dismissed without prejudice.  The Clerk of Court shall

20   close this case.

21   **IT IS SO ORDERED.**

22   January 25, 2012

23

24   _____

25         **OTIS D. WRIGHT, II**

26     **UNITED STATES DISTRICT JUDGE**

27

28

RJN019

# Exhibit 3

# Exhibit 3

RJN020

Case 3:10-cv-02095-F   Document 45   Filed 02/10/11   Page 1 of 6   PageID 229



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

FEB 10 2011

CLERK, U.S. DISTRICT COURT
By _____
              Deputy 6:14p.m.

LFP INTERNET GROUP LLC,        §
    Plaintiff,                 §
                               §
                               §    Civil No. 10-cv-2095-F
v.                             §
                               §
DOES 1-3,120,                  §
    Defendants,                §
                               §
                               §

**ORDER SEVERING DOES 2-3,120; QUASHING SUBPOENAS; AND**
**DISMISSING ALL PENDING MOTIONS AS MOOT**

    Plaintiff, LFP Internet Group, LLC, filed its Original Complaint on October 17, 2010,

against Does 1-3,120 alleging copyright infringement of the motion picture, "This Ain't

Avatar XXX," via the internet. When Plaintiff filed the suit it did not know the names of the

alleged infringers, but had identified the Internet Protocol ("IP") addresses assigned to each

Defendant by his or her Internet Service Provider ("ISP"). To discover the actual names of

the Doe Defendants in this case, Plaintiff filed a Motion for Leave to Take Discovery Prior

to Rule 26(f) Conference, which the Court granted. *See* Docket No. 8. Plaintiff subpoenaed

the ISPs who provide service to the identified IP addresses seeking information sufficient to

identify each Doe Defendant, including their names, current (and permanent) addresses,

telephone numbers, email addresses, and Media Access Control addresses. This case was

transferred to this Court on January 26, 2011. *See* Docket No. 40.

1

Upon inspection of Plaintiff's Complaint, the Court finds that Doe Defendants 2-3,120 have been improperly joined. For the reasons stated below, the Court finds that all Defendants except Doe 1 should be SEVERED from this action.

## DISCUSSION

In its Complaint, Plaintiff alleges that "Defendants collectively participated, via the internet, in the unlawful reproduction and distribution of Plaintiff's copyrighted motion picture, '*This Ain't Avatar XXX*,' by means of file transfer technology called, BitTorrent." Docket No. 1 at 1-2. According to the Complaint, the BitTorrent software allows a user to log onto a private website, select a reference file containing the desired movie, and load that reference file onto a computer program designed to read such files. After the reference file is loaded, the BitTorrent program is able to employ the BitTorrent protocol to initiate simultaneous connection to hundreds of other users possessing and "sharing" copies of the digital media in the reference file, in this case, Plaintiff's motion picture. The program then coordinates the copying of the film to the user's computer from the other users "sharing" the film. As the film is being copied to the user's computer, the downloaded pieces are immediately made available to other users seeking to obtain the file. Plaintiff alleges that this is how each Defendant simultaneously reproduced and/or distributed the motion picture.

However, there are no allegations in Plaintiff's Complaint that the Defendants are in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions. The Complaint only alleges that "each Defendant, without the permission

2

or consent of the Plaintiff, has used, and continues to use, BitTorrent software to reproduce and/or distribute Plaintiff's motion picture to hundreds of other BitTorrent users." Docket No. 1 at 5. The Federal Rules of Civil Procedure provide that multiple parties may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20 (a)(2).

Plaintiff makes no allegation in this case that the claims against the joined defendants "arise out of the same transaction, occurrence, or series of transactions or occurrences." Instead, it seems that the copyright infringement claim against each Defendant is based on the individual acts of each Defendant. Plaintiff only alleges in its Complaint that each defendant uses the same method for committing the infringement, but "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *West Coast Prods., Inc. v. Does 1-535*, No. 3:10-CV-94 (N.D. W. Va. Dec. 16, 2010) (order severing all defendants from action except Doe 1) (quoting *Laface Records, LLC v. Does 1-38*, 2008 WL 544992, *2 (E.D.N.C. Feb. 27, 2008)).

In fact, several courts agree that where there is no allegation that multiple defendants have acted in concert, joinder is improper. *See, e.g. Fonovisa Inc. et al. v. Does 1-41*, No. A-04-CA-550-LY (W.D. Tex. Nov. 17, 2004) (*sua sponte* dismissing without prejudice all

3

but the first defendant in several cases filed by recording companies against numerous Does accused of violating federal copyright laws by downloading music from an "online media distribution system"); *BMG Music v. Does 1-4*, 2006 U.S. Dist. LEXIS 53237, *5-6 (N.D. Cal. July 31, 2006) (*sua sponte* severing multiple defendants in action where only connection between them was allegation they used same ISP to conduct copyright infringement). Accordingly, the Court finds that Defendants' alleged use of the BitTorrent software system to commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20.

Additionally, permissive joinder is improper in this case because each Defendant will also likely have a different defense. Another district court finding improper joinder explained it this way:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.

*West Coast Prods., Inc.*, No. 3:10-CV-94 (quoting *BMG Music v. Does 1-203*, 2004 WL 953888, *1 (E.D. Pa. Apr. 2, 2004)). Therefore, the Court finds joinder of Defendants 2-3,120 in this case improper.

However, Federal Rule of Civil Procedure 21 states that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R.

4

Civ. P. 21. Accordingly, the Court will sever all Defendants from this case except Doe 1.

Because all claims except Doe 1 will be severed from this action, the subpoenas served in this

action pertaining to any other Defendant's ISP are no longer valid. Additionally, the Court

is of the opinion that the subpoena served pertaining to Doe 1 should be quashed pending this

Court's determination as to whether an attorney ad litem should be appointed to protect

Doe 1's interests.

## CONCLUSION

For the forgoing reasons, the Court ORDERS that:

(1) All Defendants except Doe 1 are hereby SEVERED from this action;

(2) The subpoenas served on the ISPs listed in Exhibit A of Plaintiff's Complaint

(Docket No. 1-1) are hereby QUASHED as to all Defendants, Does 1-3,120. Plaintiff

SHALL IMMEDIATELY NOTIFY the recipients of these subpoenas that said subpoenas

have been quashed;

(3) Within 30 days from the date of this order, Plaintiff may file individual complaints

against those Does whom they wish to proceed. Upon election to proceed, Plaintiff shall

submit to the Clerk of the Court filing fees for each of the complaints against those Does

whom Plaintiff wishes to proceed. Such cases will be assigned separate civil action numbers

and placed on this Court's docket;

(4) Civil Action No. 3:10-cv-2095-F shall be assigned to Doe No. 1 as an individual

defendant. The actions filed within 30 days of this Order against any other Doe Defendant

5

severed from this case, will be deemed to have been filed as of October 17, 2010, the date of the filing of the original Complaint;

(5) The pending Motion to Quash (Docket No. 24), as well as any filings that can be construed as motions, in Civil Action No. 3:10-cv-2095-F are hereby DENIED AS MOOT. The Court DENIES WITHOUT PREJUDICE Plaintiff's Motion to Compel (Docket No. 41). because there does not appear to be any objections filed by Doe 1, who is now the only Defendant in this case, the Court is of the opinion the Motion to Compel is now moot, however, Plaintiff is free to re-file the Motion to Compel if necessary; and

(6) The Clerk is directed to transmit copies of this Order to counsel of record and mail a certified copy to each interested party of record.

It is so Ordered.

Signed this 10th day of February, 2011.

Royal Furgeson
Senior United States District Judge

6

# Exhibit 4

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

UMG RECORDINGS, INC.,                    §
A DELAWARE CORPORATION;                  §
ATLANTIC RECORDING                       §
CORPORATION, A DELAWARE                   §
CORPORATION;                             §
ELEKTRA ENTERTAINMENT GROUP              §
INC., A DELAWARE CORPORATION;            §
MAVERICK RECORDING                       §
COMPANY, A CALIFORNIA JOINT              §
VENTURE; FONOVISA, INC., A               §
CALIFORNIA CORPORATION; WARNER§
BROS. RECORDS, INC.,                     §
A DELAWARE CORPORATION;                  §
PRIORITY RECORDS L.L.C.;                 §
A CALIFORNIA LIMITED LIABILITY           §
COMPANY; MOTOWN RECORD,                  §
COMPANY, L.P.A CALIFORNIA                §
LIMITED PARTNERSHIP;                     §
BMG MUSIC, A NEW YORK GENERAL            §
PARTNERSHIP; SONY BMG MUSIC              §
ENTERTAINMENT, A DELAWARE                §
GENERAL PARTNERSHIP;                     §
VIRGIN RECORDS AMERICA, INC.,            §
A CALIFORNIA CORPOARTION;                §
INTERSCOPE RECORDS, A                    §
CALIFORNIA                               §
GENERAL PARTNERSHIP; CAPITOL             §
RECORDS, INC., A DELAWARE                §
CORPORATION; ARISTA RECORDS              §
L.L.C., A DELAWARE LIMITED               §
LIABILITY COMPANY,                       §
                    PLAINTIFFS,           §
                                          §
V.                                        §    CAUSE NO. A-04-CA-704-LY
                                          §
DOES 1-51,                                §
                    DEFENDANTS.           §

**ORDER**

Pursuant to the General Order in re Cases Filed by Recording Companies signed November



RJN028

17, 2004, in the United States District Court for the Western District of Texas, Austin Division, a

copy of which is attached hereto, the Court enters the following order:

**IT IS HEREBY ORDERED** that Does 2-51 in the above-styled cause are **DISMISSED**

**WITHOUT PREJUDICE** to refiling their claims in the manner described in the attached General

Order.

SIGNED this _____ day of November, 2004.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | § § § | GENERAL ORDER |
| CASES FILED BY | § |  |
| RECORDING COMPANIES | § |  |

### ORDER

A consortium of recording companies have filed several recent lawsuits in this Court, alleging that numerous unnamed defendants ("Does") have violated federal copyright laws by downloading music from an "online media distribution system." (See attached list of cases.) Each of these cases names multiple defendants, with as many as 151 "Does" being named in one of the actions. The recent cases actually encompass 254 defendants. It appears that the Plaintiffs may intend to file future suits as well. There are no allegations in any of the cases that the defendants are in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions.

With regard to joinder of claims, the Federal Rules of Civil Procedure provide that multiple parties:

> may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a). There is no allegation in the recently-filed cases that the claims against the joined defendants "arise out of the same transaction, occurrence or series of transactions or occurrences." The claim against each defendant is individual, based on individual acts of each

defendant, and, if proven, will result in unique damage claims. The defendants are not properly joined under Rule 20.

Moreover, there are practical reasons supporting severing the claims against the defendants. The filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100. That is a considerable loss of revenue to the public coffers. Moreover, the closing of one 151-defendant case is treated as a single case for statistical purposes, when in fact each defendant should be treated as a single case for such purposes, given that the claim against each defendant is a separate.

Because these four suits are in actuality 254 separate lawsuits, the Court *sua sponte* will dismiss without prejudice all but the first defendant in each case. Plaintiffs will be permitted to refile against the other defendants separately, upon the payment of the appropriate filing fee. In addition, Plaintiffs are ordered to file any future cases of this nature against one defendant at a time, and may not join defendants for their convenience.

IT IS SO ORDERED, this /7ᵗʰ day of November, 2004.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

2

### List of cases

1.   *Fonovisa, Inc. et al. v. Does 1-41*; No. A-04-CA-550 LY

2.   *Atlantic Recording Corporation, et al. v. Does 1-151*; No. A-04-CA-636 SS

3.   *Elektra Entertainment Group, Inc., et al. v. Does 1-11*; No. A-04-CA-703 LY

4.   *UMG Recordings, Inc., et al. v. Does 1-51*; No. A-04-CA-704 LY

RJN032

# Exhibit 5

# Exhibit 5

RJN033

— 1 —

```
 1                  UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLUMBIA

 3
      AF HOLDINGS LLC,        )     Civil Action No.
 4                            )     12-00048-BAH
             Plaintiff.       )
 5                            )
         v.                   )
 6                            )
      DOES 1-1058,            )     April 27, 2012
 7                            )     11:42 a.m.
             Defendants.      )
 8    -----------------------
                                    Washington, D.C.
 9

10

11
                   TRANSCRIPT OF MOTION HEARING
12

13
             BEFORE THE HONORABLE BERYL A. HOWELL
14                UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20
      COURT REPORTER:   PATRICIA A. KANESHIRO-MILLER, RMR
21                      Certified Realtime Reporter
                        Official Court Reporter
22                      Room 4704B, U.S. Courthouse
                        Washington, D.C. 20001
23                      202-354-3243

24

25
```

RJN034

—2—

```
1                        APPEARANCES

2

3     FOR THE PLAINTIFF:
      JOHN L. STEELE, ESQ.
4     Prenda Law Inc.
      161 North Clark Street
5     Suite 3200
      Chicago, Illinois  60601

6

7     FOR COX COMMUNICATIONS, INC.,
      VERIZON ONLINE LLC, BRIGHT HOUSE
8     NETWORKS LLC:
      BENJAMIN JONATHAN FOX, ESQ.
9     Morrison & Foerster, LLP
      555 West 5th Street
10    Los Angeles, CA  90013

11

12    FOR SBC INTERNET SERVICES, INC.,
      DOING BUSINESS AS AT&T INTERNET
      SERVICES:
13    BART W. HUFFMAN, ESQ.
      Locke Lord LLP
14    100 Congress
      Suite 300
15    Austin, Texas  78701

16    FOR COMCAST CABLE COMMUNICATIONS LLC:
      JOHN DAVID SEIVER, ESQ.
17    Davis Wright Tremaine, LLP
      1919 Pennsylvania Avenue, N.W.
18    Suite 800
      Washington, D.C.  20006
19
      FOR ELECTRONIC FRONTIER FOUNDATION:
20    MITCHELL L. STOLTZ, ESQ.
      Electronic Frontier Foundation
21    454 Shotwell Street
      San Francisco, California  94110

22

23

24

25
```

3

1                                CONTENTS

2

3      WITNESS                                            PAGE

4         STEVEN W. SMOOT
                   Direct Examination                     7, 14
5                  Voir Dire                              10
                   Cross-Examination by Mr. Huffman       41
6                  Cross-Examination by Mr. Seiver        49
                   Cross-Examination by Mr. Fox           54
7
          SETH SCHOEN
8                  Direct Examination                     62
                   Cross-Examination                      83
9

10

11                                EXHIBITS

12

       Plaintiff's Exhibit 1              Page 14
13     Plaintiff's Exhibit 2              Page 24
       Plaintiff's Exhibit 3              Page 24
14     Plaintiff's Exhibit 5              Page 30
       Plaintiff's Exhibit 6              Page 33
15     Plaintiff's Exhibit 7              Page 37

16

17

18

19

20

21

22

23

24

25

—24—

1           MR. SEIVER:  It's a hearsay exhibit.  It wasn't

2      prepared by this witness.  We don't know what its relevance is

3      to this proceeding, either.  There has been no connection at

4      least in the foundational part that it has anything to do with

5      what the issues are for the Court's resolution or even for the

6      resolution of the Complaint.

7           THE COURT:  Thank you.  Overruled.

8           Please proceed.

9           They will both be admitted.

10          (Plaintiff's Exhibits 2 and 3 admitted in evidence)

11          MR. STEELE:  Thank you, Your Honor.

12          BY MR. STEELE:

13     Q.   Mr. Smoot, you stated that the identified and

14     non-copyrighted percentage of the top 10,000 torrents tracked

15     in December 2010 was .01 percent, but as an actual number, of

16     those 10,000 torrents, how many of those torrents were found

17     to be non-copyrighted?

18     A.   One.

19     Q.   One torrent?

20     A.   One torrent was of non-copyrighted content.

21     Q.   Okay.  I'm going to show you a page entitled number 4.  Do

22     you recognize that document?

23     A.   Yes, I do.

24     Q.   And what is that document?

25     A.   This is a screen capture of a application running on a

—25—

1     Macintosh.  It is known as uTorrent.  The same application is

2     available for the PC.  The particular screen capture here

3     indicates that a single torrent is being downloaded.  It

4     happens to be a Ubunto Linux distribution --

5             THE COURT:  Before you go into what the contents are

6     again, Mr. Smoot, what is the date of the screen capture?

7             THE WITNESS:  I did not take the screen capture.  I'm

8     not sure of the date.

9             THE COURT:  And do you know who did the screen

10    capture?

11            THE WITNESS:  I believe Mr. Steele did.  I don't know

12    the time or date that occurred.

13            THE COURT:  But you did not do it?

14            THE WITNESS:  I did not.

15            THE COURT:  And have you ever used uTorrent yourself?

16            THE WITNESS:  Yes, ma'am, I have.

17            THE COURT:  All right.  Please proceed, Mr. Steele.

18            MR. SEIVER:  Your Honor, may I be heard if he's going

19    to move it in?

20            THE COURT:  I don't know whether he is or not.

21            MR. STEELE:  I'm not, Your Honor.

22            BY MR. STEELE:

23    Q.  I have handed you a document titled number 5.  Do you

24    recognize that document?

25    A.  Yes, I do.

— 26 —

```
 1              THE COURT:  Just to be absolutely clear for the
 2      record, this is Plaintiff's Exhibit 5, the document itself is
 3      not titled 5; correct?
 4              MR. STEELE:  You're right, Your Honor.  I apologize,
 5      Your Honor.  It is Plaintiff's Exhibit 5.
 6              THE COURT:  All right.  Please proceed.
 7              BY MR. STEELE:
 8      Q.   Do you recognize Plaintiff's Exhibit 5?
 9      A.   Yes, I do.  I recognize the content of the document.  It's
10      another screen capture.  It happens to be on the PC platform
11      this time.
12      Q.   And I believe . . .
13              Your Honor, for the record, this has been admitted.
14      This is a part of a pleading that has already been admitted in
15      this case.  It is a document that is already in the court file
16      in this case.  I believe it's pleading document 27-1 in this
17      case.
18              THE COURT:  27?
19              MR. STEELE:  Yes, Your Honor, 27-1.
20              BY MR. STEELE:
21      Q.   And you said you're familiar with this screen shot,
22      Steve -- Mr. Smoot?
23      A.   Yes, I recognize what this screen shot represents, yes.
24      Q.   Okay.  Is this a typical screen shot that one would see if
25      they were downloading a file using BitTorrent?
```

—27—

1          MR. HUFFMAN:  Your Honor, may we object if he is going

2    to move to admit this?

3          THE COURT:  I'm just getting to this.  Hold on a

4    second.

5          Yes, what's your objection?

6          MR. HUFFMAN:  Your Honor, this is, I believe, an

7    exhibit to the declaration of Mr. Hansmeier, who was

8    designated as a potential witness today, who we were hoping

9    would show up because he, in fact, is the sole evidentiary

10   basis on which this plaintiff seeks to obtain the discovery of

11   thousands of individuals, and Mr. Hansmeier is not here to

12   testify to this.  There is no foundation laid for this.  And

13   this witness has absolutely no knowledge of it.  It hasn't

14   been admitted at all.  To the contrary, it was submitted as

15   part of an ex parte submission to the Court that the very

16   inability to challenge which goes to the core of the reasons

17   why we believe this discovery is improper.

18         THE COURT:  It's overruled.

19         Go ahead.

20         BY MR. STEELE:

21   Q.  Mr. Smoot, just so I remember your answer here, is this

22   typical of what it looks like when someone is downloading a

23   file using BitTorrent?

24         MR. SEIVER:  Objection, Your Honor.  It's leading, but

25   I was letting it go before.  I apologize.  He's suggesting the

—28—

1    answer to the witness.

2              THE COURT:  Overruled.  Please proceed.

3              THE WITNESS:  Yes, this is typical.  It shows the

4    files that are being downloaded and various statistics and

5    other information related to the download process.

6              BY MR. STEELE:

7    Q.   Okay.  On the right-hand side, what does -- there's a

8    number underneath the word "seeds."  What does that mean?

9    A.   That's the number of other computers that are cooperating

10   and providing information about the network of computers that

11   are involved in the download and providing information about

12   the parts of the download that are available.

13   Q.   Okay.  So when someone is running this program, is this on

14   their screen?

15   A.   Yes, it would typically be.  The application must be

16   running in order to perform its function, and as part of its

17   function, it collects this information during the download

18   process.

19   Q.   Okay.  And on the bottom half of the screen --

20             THE COURT:  Before you leave the question, under

21   seeds, as I read it on document 27-1, page 2 of 2, under

22   seeds, it has the number 11, and then, in parentheses, 184.

23   What is the difference between the 11 and the 184?

24             THE WITNESS:  The 184 is actually the number of seeds

25   that are collected in the torrent.  The 11 is the currently

— 29 —

1   active seeds.

2            THE COURT:  Meaning the 11 reflects the number of

3   users who are actively online at that time?

4            THE WITNESS:  Providing parts of the file.

5            THE COURT:  Got it, thank you.

6            BY MR. STEELE:

7   Q.  In the bottom half of the screen shot, what are

8   these -- all these numbers underneath the word "IP"?

9   A.  The numbers are the IP addresses or the apparent IP

10  addresses of the machines that are actually taking part in the

11  download.

12  Q.  So these IP addresses are the other computers or other

13  identifying numbers of the people that are sharing the

14  information with the person?

15            MR. SEIVER:  Objection, Your Honor.  It's leading.

16            THE COURT:  Given the informality of this hearing, I'm

17  going to allow -- just so we don't keep interrupting with a

18  number of objections, I'm going to allow great leeway for both

19  this witness and your witnesses since it is almost 12:30, so

20  just so you all can relax, enjoy the testimony.  If there is

21  something severely objectionable that you really think ought

22  to be cautioned before I hear it, please do not hesitate to

23  rise and let me know.

24            Please continue, Mr. Steele.

25            BY MR. STEELE:

―30―

1    Q.   All right, so -- one moment.

2           So you stated earlier that there were 11 peers

3    actively sharing data with this person at this screen shot.

4    How many IP addresses are underneath the word "IP" here?

5    A.   Eleven.

6    Q.   In your expert testimony, is there a correlation between

7    these 11 IP addresses and the word "11" -- or the number "11"

8    underneath the word "seeds" in the screen shot?

9    A.   It is my expectation that the 11 in the top part of the

10   screen represents the number of users who were participating,

11   and it is my expectation that the addresses of those users are

12   shown in the bottom.

13          MR. STEELE:  I would ask that Exhibit 5 be entered

14   into evidence.

15          MR. SEIVER:  We object, Your Honor.

16          THE COURT:  Overruled.  It will be admitted.

17          (Plaintiff's Exhibit 5 admitted into evidence)

18          MR. STEELE:  Thank you, Your Honor.

19          BY MR. STEELE:

20   Q.   Lastly, I'm going to show you document --

21          THE COURT:  Before we leave this, I understand that

22   you have some digital forensic expertise.

23          THE WITNESS:  Yes.

24          THE COURT:  And is this list of IP addresses involved

25   in this download, is this logged anywhere on the application

—31—

```
1    so that -- and stored so it is retrievable?
2                THE WITNESS:  It depends on the application.  Some
3    applications do log this information.  I'm not sure it is a
4    requirement that all applications must log this information.
5    But during the time that --
6                THE COURT:  And even if not within the application
7    itself, within the operating system, which has internet
8    history, logs of all different kinds, I mean are there other
9    places, depending on the operating system of the computer,
10   where this kind of information through a forensic examination
11   could be obtained?
12               THE WITNESS:  Yes.  At least in the area of the IP
13   addresses itself.  You won't necessarily receive all the other
14   information unless that is completely logged, but the history
15   of IP addresses that are contacted is typically logged at the
16   operating system level.
17               MR. STEELE:  May I proceed?
18               THE COURT:  Proceed.
19               MR. STEELE:  Thank you, Your Honor.
20               BY MR. STEELE:
21   Q.  I'm showing you a document marked number 6.  Are you
22   familiar with this document?
23   A.  Yes, I am.
24   Q.  How are you familiar with this document?
25   A.  I reviewed this document online as part of my
```

73

1    BitTorrent protocol usage by multiple users, what does the

2    tracker, what information about a given swarm does the tracker

3    retain?

4    A.   Well, the tracker is a computer that facilitates

5    BitTorrent transfers by introducing peers to one another.

6    Q.   So the peers don't direct -- the peers don't introduce

7    themselves to one another?

8    A.   There are technologies that move in that direction.  In

9    the context in which I think BitTorrent has been discussed in

10   this case by all of the declarants and all of the witnesses so

11   far, we're talking about the traditional style with

12   centralized trackers which have the responsibility for

13   introducing peers to one another.

14   Q.   So a given user doesn't necessarily know who they're

15   uploading or downloading from or to, nor do they direct that

16   traffic; is that correct?

17   A.   Well, that relies on making a distinction between the user

18   and between their software or their computer.  So their

19   software or their computer certainly does have that

20   information and is certainly using it and directing it.

21   That's information that would be available to the user if they

22   were interested.  It's not information that the user is

23   required to know in order for BitTorrent to work properly.

24   Q.   So in the typical use of the BitTorrent software, to

25   upload or download files, is the user going to be directing a

— 74 —

```
1    given packet, either in or out of that user's computer, or is

2    that going to be done automatically by the software?

3    A.   That's going to be done automatically by the software.

4    Q.   When we speak about a swarm, a swarm can involve thousands

5    of individuals or thousands of individual users; is that

6    correct?

7    A.   Yes, an enormous number of users.

8    Q.   Are they typically global swarms or typically restricted

9    to a given country?

10   A.   It's possible that interest in joining a particular swarm

11   might be concentrated in a particular country.  For example,

12   if the swarm is distributing something in a certain language

13   that's commonly spoken in a particular place, it might be

14   primarily in that place, but generally swarms are open to

15   participation by people all around the world.  And certainly

16   if we look at swarms, for example, distributing Linux

17   operating system CDs, those typically do include people from

18   all around the world simultaneously.

19   Q.   So if a given number of Does are served in a particular

20   lawsuit and are said to be members of a swarm, is there any

21   necessary connection between the percentage of does in that

22   list, in that list that had been sued in the lawsuit, and the

23   percentage of does in the overall swarm from which the subset

24   of defendants were chosen?

25   A.   Presumably, the plaintiffs in bringing a lawsuit would
```

—75—

1    have the ability to choose which Does they want to sue in the

2    lawsuit, and not necessarily all the participants in the swarm

3    would be known to them.

4    Q.  For an individual in a swarm on let's just say point in

5    time X and another individual in a swarm at point in time X

6    plus 3 months, is it the case that the individual at the

7    3-month later point in time necessarily had any connection to

8    the first Doe?  Any direct connection to the first individual?

9    Excuse me.

10   A.  I think it depends on what you mean by "connection."

11   Q.  I mean uploading or downloading of files in common with.

12   A.  Well, they haven't necessarily communicated directly with

13   one another, if that's what you mean.

14   Q.  In fact, does that grow less likely as time passes?

15   A.  Yeah, as people's presence in or participation in a swarm

16   is more removed in time, it's less likely that those people

17   have communicated directly with one another using BitTorrent.

18   Q.  Do most people stay in the swarm --

19        THE COURT:  Excuse me just a second.  When you say

20   "users," we're talking about computers communicating with one

21   to another, we're not talking about the actual computer user

22   communicating with anyone else in the swarm; right?

23        THE WITNESS:  I think computing may be more afflicted

24   with metonymy than any other field or profession.  So I hope

25   you'll excuse my metonymies.  We sort of use them all day long

138

1                CERTIFICATE OF OFFICIAL COURT REPORTER

2

3         I, Patricia A. Kaneshiro-Miller, certify that the

4    foregoing is a correct transcript from the record of

5    proceedings in the above-entitled matter.

6

7

8    --------------------------------    ------------------------

9    PATRICIA A. KANESHIRO-MILLER                    DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RJN048

# Exhibit 6

# Exhibit 6

RJN049

1  Brett L. Gibbs, Esq. (SBN 251000)
2  Steele Hansmeier PLLC.
   38 Miller Avenue, #263
3  Mill Valley, CA 94941
   415-325-5900
4  blgibbs@wefightpiracy.com

5  *Attorney for Plaintiff*

6

7              IN THE UNITED STATES DISTRICT COURT FOR THE

8                  NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO DIVISION

10

11

12  AF HOLDINGS LLC,              )    **No. C-11-03335 JSC**
                                  )
13          Plaintiff,            )    **PLAINTIFF'S *EX PARTE* APPLICATION**
          v.                      )    **FOR LEAVE TO TAKE**
14                                )    **EXPEDITED DISCOVERY**
    DOES 1-96,                    )
15                                )
            Defendants.           )
16                                )
    _____ )

17

18

19

20

21

22

23

24

25

26

27

28

RJN050

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 2

III.   FACTS ..................................................................................................................... 3

IV.    PLAINTIFF'S LEGAL BASIS FOR EXPEDITED DISCOVERY IN THIS MATTER ........... 4

   1.   Legal Standard for Expedited Discovery. ........................................................4

   2.   Plaintiff Satisfies the Three-Pronged Seescandy.com Test. ...........................6

       (a)   Plaintiff identifies Doe Defendants with sufficient specificity. ...............6

       (b)   Plaintiff has adequately exhausted all possible means to identify Does. ...6

       (c)   Plaintiff's complaint would survive a motion to dismiss. ........................7

   3.   Plaintiff Satisfies the Semitool "Good Cause" Standard for Expedited Discovery. .................8

   4.   Doe Defendants Have No Legitimate Expectation of First Amendment Privacy...................9

V.     PLAINTIFF'S BASIS FOR JOINING DOES 1-96 ..................................................... 10

   1.   Joinder of Does 1-96 is Appropriate in This Case. ........................................10

   2.   Legal Standard. ..............................................................................................10

   3.   Individuals Using the BitTorrent Protocol Engage in Deep and Sustained Collaboration
        With Their Fellow Infringers. ........................................................................13

       (a)   Comparing BitTorrent-based collaboration to collaboration in other cases......13

       (b)   Distinguishing the BitTorrent and FastTrack file transfer protocols. ...........15

   4.   Plaintiff's Allegations Satisfy the Legal Requirements of Joinder........................17

       (a)   Plaintiff has asserted a right to relief against the Doe Defendants jointly, severally or
             with respect to the same series of transactions and occurrences....................18

       (b)   A question of law or fact common to all Doe Defendants will arise in this action............19

       (c)   Joinder will not result in prejudice to any parties or cause undue delay. .......................19

       (d)   Plaintiff's pleadings differ materially from the pleadings in previously severed
             copyright infringement cases. ....................20

       (e)   Courts readily approve joinder in copyright infringement cases.....................................21

ii

1

VII. CONCLUSION ................................................................................................ 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE EXPEDITED DISCOVERY    No. C-11-03335 JSC

RJN052

**TABLE OF AUTHORITIES**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)....................................... 8

*Arista Records, Inc., et al., v. Does 1-12*, 2008 U.S. Dist. LEXIS 82548, 08-CV-1242 (E.D. Cal.) (GSA)………………………………………………………………………………………..2

*Arista Records LLC v. Does 1-16*, Case. No. 08-765 (GTS/RFT), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009) ..................................................................... 23

*Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1 (D.D.C. 2008)................................. 23

*Arista Records, LLC v. Does 1-27,* 527 F. Supp. 2d 240 (D. Me. 2008)....................... 22, 23

*Bautista v. Los Angeles County*, 216 F.3d 837 (9th Cir. 2000) ...................................... 12

*BMG Music v. Does 1-4*, Case No. 06-1579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. 2006)........ 20

*Brereton v. Commc'ns Satellite Corp.*, 116 F.R.D. 162 (D.D.C. 1987) .............................. 12

*Call of the Wild Movie, LLC v. Does 1–1,062*, No. 10-455, 2011 WL 996786 (D.D.C. Mar. 22, 2011) ............................................................................. 23

*Collins, Inc. v. Does 1-1219*, 97 U.S.P.Q.2D (BNA) 1667 (N.D. Cal. 2010)…………………………..2

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ....................... 5, 6

*Columbia Pictures Industries, Inc. v. John Doe* (67.123.19.140), Case No. C-04-5243 (N.D. Cal.) (Hamilton)…………………………………………………………………………………..2

*Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997) ...................................................... 12

*Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7 (D.D.C. 2004) ................................ 12

*Elvis Presley Enter., Inc. v. Passport Video*, 349 F.3d 622 (9th Circuit 2003) .................. 8

*Equidyne Corp. v. Does 1-21*, 279 F.Supp. 2d 481 (D. Del. 2003) ............................. 4, 15

*First Time Videos, LLC v. Does 1-37*, 2011 WL 1431619, C-11-1675 (N.D. Cal 2011) (Beeler)……2

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE EXPEDITED DISCOVERY    No. C-11-03335 JSC

RJN053

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ............................................... 5

*Guest v. Leis*, 255 F.3d 325 (6th Cir. 2001).......................................................... 9

*Hard Drive Prods. v. Does 1-118*, 2011 WL 1431612, C-11-1567 (N.D. Cal 2011)

     (Beeler).........................................................................................................2

*Hard Drive Prods. v. Does 1–188*, No C-11-01566 (N.D. Cal. Apr. 22, 2011) (Spero)................10

*In re Aimster Copyright Litig.*, 334 F.3d 643 (7th Cir. 2003)............................... 8

*In re Gren*, 633 F.2d 825 (9th Cir. 1980).......................................................... 10

*In re High Fructose Corn Syrup Antitrust Litigation*, 293 F.Supp.2d 854 (C.D.Ill. 2003)

     (Mihm, J.)..................................................................................... 17

*In the Matter of DirecTV, Inc. Case Pending in the Northern District of California*, Case No.

     02-5912, 2004 WL 2645971 (N.D. Cal. July 26, 2006) .............................. 14

*Interscope Records v. Does 1-14,* 558 F.Supp.2d 1176 (D. Kan 2008).................... 9

*Interscope Records v. Does 1–25*, 2004 U.S. Dist. Lexis 27782 (M.D. Fla. Apr. 1, 2004) .............. 20

*IO Group Inc. v. Does 1-435*, Case No. 10-4382 (DKT#9) (N.D. Cal. Oct. 15, 2010) (Ryu)............2

*IO Group v. Does 1-435,* Case No. 10-4382, 2011 WL 445043 (N.D. Cal. Feb. 3, 2011) ......... 20, 21

*IO Group, Inc. v. Does 1-65*, 2010 U.S. Dist. LEXIS 114039, Case No. 10-4377 (N.D. Cal.

     2010) ...................................................................................................... 5

*Laface Records, LLC v. Does 1-38*, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008) ........ 20

*Laxalt v. McClatchy*, 809 F.2d 885 (D.C. Cir. 1987) ........................................ 10

*Libtery Media Holdings, LLC v. Swarm of November 27, 2010 to January 31, 2011, et al.,* Case No.

     11-C-394, 2011 WL 17401181 (E.D. Wis. May 3, 2011) (Randa)................................2

*London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) ............................ 19

*MCGIP, LLC v. Does 1–18*, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011) (Chen)............13, 22

*Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926) ................................ 11

*Mosely v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974) ...................................... 11

*Pod-Ners, LLC v. Northern Feed & Bean of Lucerne, LLC*, 204 F.R.D. 675 (D. Colo. 2002)........... 8

*Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418 (D. Colo. 2003).............. 7, 8

*Rocker Mgmt. LLC v. John Does*, WL 22149380, Case No. 03-MC-33 (N.D. Cal. 2003)….........2, 5

*SEC v. Leslie, et al.*, No. C 07-3444, 2010 WL 2991038 (N.D. Cal. July 29, 2010) ........................ 11

*Semitool v. Tokyo Electron America, Inc., et al.*, 208 F.R.D. 273 (N.D. Cal. 2002)............... 4, 5, 7, 8

*Sony Music Entertainment, Inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004)........................ 9

*Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)................................. 22

*Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358 (2d Cir. 1974) .................................... 11

*Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551 (N.D. Ill. 1964) ........................................ 11

*Texas Guaranteed Student Loan Corp. v. Deepinder Dhindsa*, 2010 U.S. Dist. LEXIS 65753,

    Case No. 10-00335 (E.D. Cal. 2010) ........................................................................................ 4

*Turner v. LaFond and Does 1-20*, 09-0683, 2009 WL 34000987 (N.D. Cal. Oct. 20, 2009) ...... 12, 18

*Twentieth Century Fox Film Corp. v. Does 1-12*, No. 04-4862 (N.D. Cal. Nov. 16, 2004) ............. 20

*U.S. ex rel. Anthony v. Burke Engineering Co.*, 356 F.Supp.2d 1119 (C.D. Cal. 2005) ................... 12

*U.S. v. Hambrick*, 55 F.Supp.2d 504 (W.D. Va. 1999), *aff'd*, 225 F.3d 656 (4th Cir. 2000).............. 9

*UMG Recordings, Inc. v. Does 1-4*, 64 Fed. R. Serv.3d 305 (N.D. Cal. 2006)........................... 5, 8, 9

*UMG Recordings, Inc. v. John Doe*, 2008 U.S. Dist. LEXIS 79087, Case No. 08-1193 (N.D.

    Cal. 2008)................................................................................................................................ 8

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)....................................................................... 11

*United States v. Testa*, 548 F.2d 847 (9th Cir. 1977)........................................................................ 10

*Voltage Pictures, LLC v. Does 1–5,000*, No. 10-0873, 2011 WL 1807438, at *4 (D.D.C. May 12,

    2011) (Howell)……………………………………………………………………………………13

*Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999) ................................................................... 4

*Warner Bros. Records, Inc. v. Does 1-6*, 527 F.Supp. 2d 1 (D.D.C. 2007)....................................... 4, 7

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612 (D. Ariz. 2001) ......................... 7

*VPR Internationale v. Does 1-17*, 2011 WL 1465836, C-11-1494 (N.D. Cal 2011) (Beeler)..............2

*Zaldana v. KB Home, et al.*, C 08-3399, 2010 WL 4313777 (N.D. Cal. Oct. 26, 2010)................... 11

*Zoosk Inc. v. Does 1-25*, 2010 U.S. Dist. LEXIS 134292 (N.D. Cal. 2010) ....................................... 5

**Statutes**

17 U.S.C. § 106(1)(3) ....................................................................................................................... 7

**Other Authorities**

Jessica Wood, *The Darknet: A Digital Copyright Revolution*, XVI Rich. J.L. & Tech. 14

    (2010)........................................................................................................................... 15

**Rules**

Fed. R. Civ. P. 20 .............................................................................................. 10, 11, 12, 17

Fed. R. Civ. P. 21 ................................................................................................................ 10

**Treatises**

7 C. Wright Federal Practice and Procedure § 1653........................................................... 11

Schwarzer, Tashima, and Wagstaffe, *Cal. Prac. Guide Fed. Civ. Pro. Before Trial* Ch.

    16:160.3 .......................................................................................................................... 12

**PLAINTIFF'S *EX PARTE* APPLICATION FOR, AND MEMORANDUM OF LAW IN SUPPORT OF, LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE**

Plaintiff AF Holdings LLC, by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure ("FRCP") 26 and 45, hereby moves this Court *ex parte* for an Order permitting Plaintiff to take limited discovery prior to the FRCP 26(f) conference. Plaintiff's Application is in accordance with the Court's Local Rule ("L.R.") 7-10, as it is authorized under FRCP 26(d) and 45.

Plaintiff hereby respectfully requests this matter be heard, or a decision be reached without a hearing, by the Court as soon as is practicable. As described below, due to the nature of Plaintiff's investigation, time is of the essence when identifying the Doe Defendants.

## I.    INTRODUCTION

Plaintiff AF Holdings LLC filed this action to stop Defendants from reproducing and distributing to others over the Internet unauthorized copies of its unique content (hereinafter "the Works"), and to pursue monetary damages from Defendants. Using so-called "peer-to-peer" (hereinafter "P2P") file "swapping" networks, Defendants' copyright infringements allow them and untold others to unlawfully obtain and distribute for free and without Plaintiff's permission the copyrighted Works that Plaintiff has invested substantial sums of money to create. Plaintiffs are suing Defendants as Doe Defendants because Defendants committed their infringement under the cover of Internet Protocol (hereinafter "IP") addresses, as opposed to using their actual names. Plaintiff has identified Doe Defendants' IP addresses (as well as other pertinent information), and attached this list to the Complaint as Exhibit A (DKT #1 at 13.)

Plaintiff seeks leave of Court to serve *limited* discovery prior to a Rule 26(f) conference on several enumerated non-party Internet Service Providers ("ISPs") *solely* to determine the true identities of Doe Defendants that Plaintiff will fully identify during the course of this litigation, as Plaintiff's infringement prevention efforts are on-going and continuing. The only way that Plaintiff can determine Defendant's actual names is from the ISPs to which Defendants subscribe and from

RJN057

1   which Defendants obtain Internet access.  This information is readily available to the ISPs from

2   documents they keep in the regular course of business, and getting it is of minimal effort to them.

3                                    **II.     BACKGROUND**

4           This request is far from unique.  Granting such applications is commonplace.  Over the past

5   decade, federal district courts throughout the Ninth Circuit and the United States have freely

6   permitted expedited discovery in Doe Defendant lawsuits with factually interchangeable scenarios.[1]

7           As this Court is aware, in these types of cases, copyright-holder plaintiffs use information

8   similar to that gathered by Plaintiff in the instant case as the basis for their proposed subpoenas to

9   the ISPs. As evidenced by the various court opinions, such information, combined with pleadings

10  alleging the defendants' general online conduct, is sufficient for such expedited subpoenas.  Through

11  the information they gather from the ISPs via these subpoenas, the plaintiffs are able to fully

12  "identify" – i.e. retrieve name, address, telephone number, e-mail address, and Media Access

13  Control (hereinafter "MAC") information – each P2P network user suspected of violating the

14  plaintiff's copyright.  As the Court understands, usually, in the interest of due process, the court will

15  order the ISP to adequately notify the network user whose contact information was turned over to the

16  plaintiff that such action has occurred, giving them ample opportunity to respond.  Once the plaintiff

17  has a doe defendant's contact information, the defendant will be contacted and formally named in

18  the suit, service will be effectuated, and the case will be allowed to proceed as usual. (*See* Decl. of

19  Brett L. Gibbs (hereinafter "Gibbs Decl.") ¶ 4, Exhibit B to this Application).

---

[1] *See, e.g., UMG Recordings*, 64 Fed. R. Serv.3d 305 (N.D. Cal. 2006); *Warner Bros. Records, Inc. v. Does 1-6*, 527 F.Supp.2d 1 (D.D.C. 2007); *Columbia Pictures Industries, Inc. v. John Doe* (67.123.19.140), Case No. C-04-5243 (N.D. Cal.) (Hamilton); *Rocker Mgmt. LLC v. John Does*, No. 03-MC-33 2003 WL 22149380 (N.D. Cal 2003); *UMG Recordings, Inc. v. John Doe*, 2008 U.S. Dist. LEXIS 79087, Case No. 08-1193 (N.D. Cal. 2008) (Armstrong) (in a strikling similar case, Judge Armstrong grants *ex parte* application for expedited discovery); *Collins, Inc. v. Does 1-1219*, 97 U.S.P.Q.2D (BNA) 1667 (N.D. Cal. 2010) (in another similar case, Magistrate Judge Beeler grants *ex parte* application for expedited discovery); *VPR Internationale v. Does 1-17*, 2011 WL 1465836, C-11-1494 (N.D. Cal 2011) (Beeler); *Hard Drive Productions, Inc. v. Does 1-118*, 2011 WL 1431612, C-11-1567 (N.D. Cal 2011) (Beeler); *First Time Videos, LLC v. Does 1-37*, 2011 WL 1431619, C-11-1675 (N.D. Cal 2011) (Beeler); *IO Group, Inc. v. Does 1-65*, 2010 U.S. Dist. LEXIS 114039, Case No. 10-4377 (N.D. Cal. 2010) (Conti); *Arista Records, Inc., et al., v. Does 1-12*, 2008 U.S. Dist. LEXIS 82548, 08-CV-1242 (E.D. Cal.) (GSA); *Libtery Media Holdings, LLC v. Swarm of November 27, 2010 to January 31, 2011, et al.*, Case No. 11-C-394, 2011 WL 17401181 (E.D. Wis. May 3, 2011) (Randa).

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE EXPEDITED DISCOVERY          No. C-11-03335 JSC

Plaintiff respectfully requests that this Court follow the well-established precedent by granting Plaintiff's application for leave to take expedited discovery in serving the subpoenas against those ISPs listed in Exhibit A to the Complaint (DKT #1 at 13.)

### III.    FACTS

Doe Defendants, without authorization, used an online P2P media distribution system to download Plaintiff's copyrighted works and distribute Plaintiff's copyrighted works to the public, including making Plaintiff's copyrighted works available for distribution to others. (*See* DKT #1.). Defendants operated under the cover of network addresses when they swarmed and distributed Plaintiff's copyrighted works.  As such, Plaintiff is unaware of Doe Defendants' actual names. (*See* Declaration of Peter Hansmeier (hereinafter "Hansmeier Decl.") ¶¶ 21-22, Exhibit A to this Application.)   As referenced above, Plaintiff has identified each Doe Defendant by a unique IP address, assigned to him/her by his/her ISP on the date and at the time of the Doe Defendant's infringing activity. (*See Id.* ¶ 15.)  Plaintiff, by and through its investigators, also made a copy of substantial portions of the copyrighted work that each Defendant unlawfully distributed or made available for distribution through the file sharing networks, and confirmed that such files contained the work that was copyrighted by Plaintiff. (*See Id.* ¶ 19.)  A technician collected this data through specific systems and procedures designed to ensure that the information gathered on each Doe Defendant was accurate. (*See Id.* ¶ 12.)

By using Media Copyright Group, LLC's (hereinafter "MCG") proprietary file sharing forensic software to capture the unique IP address of each Doe Defendant, Plaintiffs have been able to identify certain ISPs that provided Internet access and unique IP addresses to each Doe Defendant. (*See Id.* ¶¶ 15-17.)  When provided with a Doe Defendant's IP address and the date and time of the infringing activity, an ISP can accurately identify the Doe Defendant (i.e. provide Plaintiff with the Doe Defendant's necessary contact information) because such information is contained in the ISP's subscriber activity log files. (*See Id.* ¶¶ 21-22.)

In Plaintiff's case, time for discovery is of the essence. (*See* Gibbs Del. ¶ 5.)  Typically, ISPs keep log files of subscriber activities for only limited periods of time before erasing the data. Sometimes this storage may only last for only weeks or even days. (*See Id.* ¶ 21-22.) In similar cases where courts have delayed ruling on similar applications, and subpoenas have gone out weeks or even months after initial applications, the ISPs have commonly informed the plaintiffs in those cases that the information the plaintiffs sought was no longer available in light of their highly dynamic systems, which are consistently purged of information after weeks or months of prior subscriber use. (*See* Gibbs Del. ¶ 6.)

Some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. (*See Id.* ¶ 23.)  These lessor ISPs, therefore, have no direct contractual or business relationship with the end-user.  Because of this detachment, they are unable to identify the Doe Defendants through their logs on their own without the assistance of their intermediary ISPs that should be able to identify the Doe Defendants by reference to their own user logs and records working in conjunction with the lessor ISPs. (*See Id.* ¶ 23.)

## IV.    PLAINTIFF'S LEGAL BASIS FOR EXPEDITED DISCOVERY IN THIS MATTER

### 1.    *Legal Standard for Expedited Discovery.*

As District Court Judge Chen has pointed out, courts have wide discretion in organizing discovery. *See Semitool v. Tokyo Electron America, Inc., et al.*, 208 F.R.D. 273 (N.D. Cal. 2002). Courts typically allow for expedited discovery "in the interests of justice" under Rule 26(d). *See, e.g, Id.; Texas Guaranteed Student Loan Corp. v. Deepinder Dhindsa*, 2010 U.S. Dist. LEXIS 65753, Case No. 10-00335 (E.D. Cal. 2010).  Courts commonly find it "in the interests of justice" to allow accelerated discovery to identify doe defendants. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("…district court erred in dismissing [Plaintiff's] complaint against Doe simply because [Plaintiff] was not aware of Doe's identity at the time he filed the complaint."); *Equidyne*

1  *Corp. v. Does 1-21*, 279 F.Supp. 2d 481, 483 (D. Del. 2003) (district court granted expedited

2  discovery motion to allow the plaintiff to identify unknown defendants).  In similarly situated

3  copyright infringement actions brought by other motion picture studios, record companies, and

4  producers against doe defendants, courts have consistently granted plaintiffs' motions for leave to

5  take expedited discovery to serve subpoenas on ISPs to immediately obtain the identities of doe

6  defendants prior to a Rule 26(f) conference. *See, e.g., Warner Bros. Records, Inc. v. Does 1-6*, 527

7  F.Supp. 2d 1 (D.D.C. 2007) (plaintiff requests, and court allows, expedited Rule 45 subpoena service

8  on Georgetown University to obtain identifying information – including name, current and

9  permanent addresses, telephone numbers, email addresses, and MAC addresses – of doe defendants).

10  The Federal Court for the Northern District of California rulings have steadfastly followed this

11  established rule.  *See, e.g., UMG Recordings, Inc. v. Does 1-4*, 64 Fed. R. Serv.3d 305 (N.D. Cal.

12  2006); *IO Group, Inc. v. Does 1-65*, 2010 U.S. Dist. LEXIS 114039, Case No. 10-4377 (N.D. Cal.

13  2010); *Zoosk Inc. v. Does 1-25*, 2010 U.S. Dist. LEXIS 134292 (N.D. Cal. 2010).

14      When the identity of a doe defendant is indeterminable at the time the complaint is filed, the

15  plaintiff "should be given an opportunity through discovery to identify the unknown defendants,

16  unless it is clear that discovery would not uncover the identities, or that the complaint would be

17  dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Based in part

18  on *Gillespie*, a three-prong expedited-discovery-qualifying test was outlined by this Court in

19  *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999).  In order for a plaintiff to

20  qualify for expedited discovery to identify nameless Internet users, the plaintiff must: (1) show

21  whether the plaintiff can identify the missing party with sufficient specificity such that the Court can

22  determine that the defendant is a real person or entity capable of being sued in federal court; (2)

23  identify all previous steps taken to locate elusive defendant; and (3) establish that the suit could

24  withstand a motion to dismiss. *Seescandy.com*, 185 F.R.D. at 578-578; *see also Rocker Mgmt. LLC*

*v. John Does*, WL 22149380, Case No. 03-MC-33 (N.D. Cal. 2003) (court interprets and applies *Seescandy.com* standard in allowing limited expedited discovery).

In determining whether a plaintiff is entitled to expedited discovery in identifying a doe defendant, the district courts in the Ninth Circuit implement an overarching "good cause" standard. *See Semitool,* 208 F.R.D. at 273, 276 (N.D. Cal. 2002).  "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id*; *see also UMG Recordings,* 64 Fed. R. Serv.3d 305 (Magistrate Judge Edward M. Chen perfectly lays out all of the issues, analyzes the application of rules to facts, and concludes that the plaintiff is entitled to leave to take immediate discovery).

### 2. *Plaintiff Satisfies the Three-Pronged Seescandy.com Test.*

#### (a) Plaintiff identifies Doe Defendants with sufficient specificity.

As required, Plaintiff has sufficiently identified the Doe Defendants through locating the unique IP address each Doe Defendant was assigned at the time of the unauthorized distribution of the copyrighted Works. (Hansmeier Decl. ¶¶ 15-17); *see also, e.g.*, *Seescandy.com*, 185 F.R.D. at 578-580 (such information satisfies "sufficient specificity" prong).  These Doe Defendants gained access to the Internet through their respective ISPs (undercover of an IP address) only by setting up an account with the various ISPs. (Hansmeier Decl. ¶¶ 15-17.)   The ISPs can identify each Defendant by name through the IP address by reviewing its subscriber activity logs.  (*See Id*. ¶¶ 21-23.)  Thus, Plaintiff can show that all Defendants are "real persons" who are known to the ISP and who can be sued in federal court.  Plaintiff simply requests that this Application be granted so that Plaintiff can match the IP address with its "real person" counterpart.

#### (b) Plaintiff has adequately exhausted all possible means to identify Does.

Plaintiff has exhausted all possible means to attempt to find the Doe Defendants' names, addresses, phone numbers, email addresses, and MAC addresses.  Plaintiff lacks any other means to obtain the subpoenaed information expect from discovery through the ISPs themselves.  Plaintiff has

specifically identified the steps taken to identify Doe Defendants' identities. (*See Id.* ¶¶ 12-20.)

Plaintiff has obtained each Doe Defendant's IP address and the date and time of the Defendant's

infringing activities, has traced each IP address to specific ISPs, and has made copies of the Works

each Defendant unlawfully distributed or made available for distribution. (*Id.* ¶¶ 15-18.)   At this

point, Plaintiff has obtained all of the necessary information it possibly can on each Doe Defendant

without discovery from the ISPs. (Gibbs Decl. ¶ 3.)  Plaintiff needs this limited information from the

ISPs to simply connect the dots.

<u>(c)      Plaintiff's complaint would survive a motion to dismiss.</u>

If the Court denies this Application, the Court would strike a fatal blow in Plaintiff's

otherwise meritorious case. (*See* Gibbs Del. ¶ 2.)  Ascertaining the true identities of these copyright

infringers is the only thing holding this case back from proceeding forward. (*See Id.* ¶ 4.)  The only

way to timely ascertain these identities is for the Court to grant this application.

Plaintiff has asserted a *prima facie* claim for direct copyright infringement in its Complaint

that can withstand a motion to dismiss.  Specifically, Plaintiff has alleged that: (a) it owns the

exclusive reproduction and distribution rights, and exclusive rights under the copyright for the

Works for which a valid application for registration has been filed, and (b) the Doe Defendants

copied or distributed the copyrighted Works without Plaintiff's authorization. (*See* DKT#1).  These

allegations adequately state a claim for copyright infringement. *See* 17 U.S.C. § 106(1)(3); *A&M

Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-15 (9th Cir. 2001) ("Napster users who upload

file names to the search index for others to copy violate plaintiffs' distribution rights.  Napster users

who download files containing copyrighted music violate plaintiffs' reproduction rights."); *In re

Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003).

There is little question that the Doe Defendants violated Plaintiff's rights.  Now Plaintiff

simply must be allowed to identify who they are.

### 3.     Plaintiff Satisfies the Semitool "Good Cause" Standard for Expedited Discovery.

As District Court Judge Chen stated in *Semitool*, "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." 208 F.R.D. at 276.  Courts have wide discretion in discovery matters and in interpreting "good cause." *See Id.;* Q*west Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001); *Warner Bros.,* 527 F.Supp.2d at 2.

In this case, good cause exists because knowing the true identities of the copyright violators, and thus allowing Plaintiff to carry forward with its case, outweighs negligible prejudice to the copyright violating Doe Defendants and the ISPs.

Good cause exists here because ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data. (*See* Hansmeier Decl. ¶¶ 21-23; Gibbs Decl. ¶ 6.)  If that information is erased, Plaintiff will have no ability to fully identify the Doe Defendants, and thus will be unable to pursue a lawsuit protecting itself against their devious copyrighting tactics.  (*Id*.)  Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause exists for expedited discovery under FRCP 26(d). *Qwest Comm.*, 213 F.R.D. at 419; *see also Pod-Ners, LLC v. Northern Feed & Bean of Lucerne, LLC,* 204 F.R.D. 675, 676 (D. Colo. 2002) (court allowed for expedited discovery where evidence would not be available to the plaintiff in the normal course).  Put simply, Plaintiff may lose the ability to bring this suit without being able to timely serve the ISPs with subpoenas.

Good cause also exists because Plaintiff's claim for copyright infringement presumes irreparable harm to copyright owner. *See UMG Recordings, Inc. v. John Doe*, 2008 U.S. Dist. LEXIS 79087, Case No. 08-1193 (N.D. Cal. 2008) (the Honorable Judge Armstrong noted that, "In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to

discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the Doe defendant, and *there is a risk an ISP will destroy its logs prior to the conference*… This is because, in considering 'the administration of justice,' early discovery avoids ongoing, continuous harm to the infringed party and there is no other way to advance the litigation."); *see also Semitool*, 208 F.R.D. at 277; *Elvis Presley Enter., Inc. v. Passport Video*, 349 F.3d 622, 631 (9th Circuit 2003).   Not only will Plaintiff's suit will be mortally wounded if not permitted to conduct expedited discovery, but Plaintiff's own unique copyrighted Works will be instantly devalued if the Court denies this motion.

### 4.   *Doe Defendants Have No Legitimate Expectation of First Amendment Privacy*

As District Court Judge Chen pointed out in *UMG Recordings*, Doe Defendants who "open[ed] their computers to others through peer-to-peer sharing" and signed service agreements with ISPs that did not have privacy stipulations, "had little expectation of privacy." 64 Fed. R. Serv.3d at 305.   The Doe Defendants here fall under this purview for the same reasons.   The Doe Defendants are, at best, involved in quasi-speech, and Plaintiff's overriding interests in protecting its copyright overshadow any limited speech implications on the part of the Defendants.   They have no legitimate expectation of privacy in the subscriber information they voluntarily provided to third-parties, i.e. the ISPs, much less in downloading and distributing copyrighted Works without Plaintiff's permission. *See id.*; *see also Sony Music Entertainment, Inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (court finds that "defendants have little expectations of privacy in downloading and distributing copyrighted songs without permission"); *Interscope Records v. Does 1-14,* 558 F.Supp.2d 1176, 1178 (D. Kan 2008); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001); *U.S. v. Hambrick*, 55 F.Supp.2d 504, 508 (W.D. Va. 1999), *aff'd,* 225 F.3d 656 (4th Cir. 2000).

Doe Defendants copied and distributed the Works without authorization under the cover of their IP addresses, and, therefore, their conduct was not entirely anonymous.   They still are identifiable by the ISPs.   Using publicly available technology, the unique IP address assigned to each

9

Defendant at the time of infringement can be readily identified. (*See* Hansmeier Decl. ¶¶ 12-20.) When Doe Defendants entered into a service agreement with the ISPs, they knowingly and voluntarily disclosed personal identification to it.  As set forth above, this identification information is linked to the Doe Defendants' IP addresses at the time of infringement, and recorded in the ISPs' respective subscriber activity logs.  Since Doe Defendants can, as a consequence, have no legitimate expectation of privacy in this information, this Court should grant Plaintiff leave to seek expedited discovery of their indentifying information.  Absent such leave, Plaintiff will be unable to protect its copyright its copyrighted Works from continued infringement.

Where federal privacy statutes authorize disclosure pursuant to a court order, courts have held that a plaintiff must make no more than a showing of relevance under the traditional standards of Rule 26. *See Laxalt v. McClatchy*, 809 F.2d 885, 888 (D.C. Cir. 1987); *see also In re Gren*, 633 F.2d 825 n.3 (9th Cir. 1980) ("court order . . . [only requires] good faith showing that the consumer records sought are relevant.")  Clearly, Plaintiff meets the relevance standard.

## V.    PLAINTIFF'S BASIS FOR JOINING DOES 1-96

### 1.    *Joinder of Does 1-96 is Appropriate in This Case.*

In the event this Court has any questions on joinder of Doe Defendants in this matter, Plaintiff will put those questions to rest over the following pages. Joinder is appropriate at this stage of the case for two key reasons.  First, individuals using the BitTorrent protocol engage in deep and sustained collaboration with their peers.  This characteristic makes the BitTorrent protocol materially distinguishable from less-advanced file transfer protocols.  It also leaves individuals who use the protocol for illegal ends susceptible to being joined in a single action.  Second, Plaintiff's allegations exhaustively satisfy the pleading requirements for joinder at this stage of the litigation.

### 2.    *Legal Standard.*

Pursuant to FRCP 20,

Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action. FRCP 20(a)(2).

"Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms add or drop a party." FRCP 21. The determination of whether to sever parties "involves the sound discretion of the trial court." *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977). "Application of Rule 21 involves consideration of *convenience* and *fairness* [and] [i]t also presupposes basic conditions of separability in law and logic." *SEC v. Leslie, et al.*, No. C 07-3444, 2010 WL 2991038 at *4 (N.D. Cal. July 29, 2010) (Fogel) (internal quotations omitted; emphasis added). "Rules 20 and 21 are intended to promote trial convenience, to expedite the determination of litigation, and *to avoid multiplicity of suits*." *Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 554 (N.D. Ill. 1964).

While joinder rules are discretionary in nature, a trial court's discretion is not without limit. As the Supreme Court stated in *United Mine Workers v. Gibbs*, joinder rules should be liberally construed, as "[j]oinder of claims, parties and remedies is strongly encouraged." *Gibbs*, 383 U.S. 715, 724 (1966). The Second Circuit stated, "an attempt to separate an essentially unitary problem is an abuse of discretion." *Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) (emphasis added); *see also Leslie*, 2010 WL 2991038 at *4 (citing the abuse of discretion standard set forth in *Spencer, White & Prentis, Inc.*); *Zaldana v. KB Home, et al.*, C 08-3399, 2010 WL 4313777 at *1 (N.D. Cal. Oct. 26, 2010) (Chesney).

In satisfying the first prong of FRCP 20(a), "the courts seem to have adopted a case-by-case approach." 7 C. Wright Federal Practice and Procedure § 1653. Generally, the courts look to FRCP 13(a) (dealing with counterclaims), and adopt the same construction of the terms "transaction or occurrence." FRCP 20. "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their

11

1   logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926). As the Eighth

2   Circuit explains, "[a]ccordingly '*logically related*' *events* entitling a person to institute a legal action

3   against another generally are regarded as comprising a transaction or occurrence. The analogous

4   interpretation of the terms as used in Rule 20 would *permit all reasonably related claims for relief*

5   *by or against different parties to be tried in a single proceeding*." *Mosely v. General Motors Corp.*,

6   497 F.2d 1330, 1333 (8th Cir. 1974) (emphasis added). The Ninth Circuit also follows the logical

7   relationship test. *See Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000). Claims

8   possess sufficient factual similarity if they "arise out of a systematic pattern of events." *Coughlin v.*

9   *Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *see also U.S. ex rel. Anthony v. Burke Engineering*

10  *Co.*, 356 F.Supp.2d 1119, 1121-2 (C.D. Cal. 2005) (finds that both tests are the same). No matter

11  what test is used, both are flexible and promote joinder where practicable. *See Mosely*, 497 F.2d at

12  1334; *Anthony*, 356 F.Supp.2d at 1121; *Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7, 10

13  (D.D.C. 2004).

14

15      The second prong of FRCP 20(a) requires that alleged claims share a common question of

16  law or fact. "The rule does not require that all questions of law and fact raised by the dispute be

17  common. . . . [C]ommon questions have been found to exist in a wide range of context." *Mosely*, 497

18  F.2d at 1334; *see also, e.g.*, *Turner v. LaFond and Does 1-20*, 09-0683, 2009 WL 34000987, at *4

19  (N.D. Cal. Oct. 20, 2009) (The Honorable Judge Patel, in finding joinder proper, finds that, although

20  plaintiff's "claims arise out of disparate factual circumstances, the primary thrust of their allegations

21  is identical…").

22

23      The court should consider whether an order under Rule 21 would prejudice any party or

24  would result in undue delay. *See Brereton v. Commc'ns Satellite Corp.*, 116 F.R.D. 162, 163 (D.D.C.

25  1987) (finding that Rule 21 must be read in conjunction with Rule 42(b)). The Court must also take

26  into consideration judicial economy in understanding whether combined, as opposed to separate,

27  trial would be "conducive to expedition and economy." Schwarzer, Tashima, and Wagstaffe, *Cal.*

28

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE EXPEDITED DISCOVERY          No. C-11-03335 JSC

*Prac. Guide Fed. Civ. Pro. Before Trial* Ch. 16:160.3; *see also Leslie, et al.*, 2010 WL 2991038 at

*4 (Judge Fogel finds that severance would not result in judicial economy, but a waste of judicial

resources).

Lastly, a recent decision by District Judge Chen dealing with near-identical facts cogently

explains why attacking joinder at this point would be premature:

> [A]t this stage in the litigation, . . . when discovery is underway [only] to learn identifying facts necessary to permit service on Doe defendants, joinder . . . of unknown parties identified only by IP addresses is proper, particularly where . . . the complaint contains allegations that Doe Defendants have infringed Plaintiff's copyright through the same file-sharing software program (*i.e.*, BitTorrent) that operates through simultaneous and sequential computer connections and data transfers among the users.

*MCGIP, LLC v. Does 1–18*, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011) (Chen)

(quoting *Voltage Pictures, LLC v. Does 1–5,000*, No. 10-0873, 2011 WL 1807438, at *4 (D.D.C.

May 12, 2011) (Howell)) (internal quotation marks omitted).

### 3. Individuals Using the BitTorrent Protocol Engage in Deep and Sustained Collaboration With Their Fellow Infringers.

Individuals using the BitTorrent protocol engage in deep and sustained collaboration with

their fellow infringers.  The degree of this collaboration can be understood by comparing the nature

of collaboration in the *DirecTV* line of cases, the copyright infringement cases involving older peer-

to-peer file transfer protocols, and the present case involving the BitTorrent protocol.  Further, this

collaboration can be understood by comparing technical specifications of the FastTrack protocol—

the protocol associated with many oft-cited misjoinder decisions—to the specifications of the

BitTorrent protocol.

#### (a) Comparing BitTorrent-based collaboration to collaboration in other cases.

In a line of cases commonly known as "the *DirecTV* cases," DirecTV sued significant

numbers of alleged satellite TV pirates, and, at least initially, brought the suits as mass actions

against thousands of defendants.  When confronted with joinder questions, attorneys for DirecTV

understood, given the non-collaborative nature of satellite TV piracy, that there was no connectivity between the defendants aside from the fact that they were all committing the same unlawful acts. DirecTV readily admitted in those cases that there was "no evidence that defendants acted in concert with each other or had any relationship with each other." Ultimately, this district found that the "transactionally unrelated defendants" should not be joined. *See In the Matter of DirecTV, Inc. Case Pending in the Northern District of California*, Case No. 02-5912, 2004 WL 2645971 (N.D. Cal. July 26, 2006).

Beginning in the late 1990's, a wave of multi-defendant copyright infringement cases were filed across the United States against individuals who used early generation peer-to-peer file transfer protocols to illegally obtain copyrighted works—typically music files. The networks associated with these lawsuits (e.g. Kazaa) were generally based on file transfer protocols that involved peer-to-peer sharing on a one-to-one basis. In other words, an infringer would connect with a single user to download an entire copy of a file. The courts were mixed on allowing joinder in these cases (discussed below). On the one hand, there was a degree of interconnectivity between infringers because the infringers had to connect to one other infringer to secure a copy of a file. On the other hand, the interconnectivity was limited by the one-to-one nature of the file transfers. Certain courts determined that joinder was appropriate in these cases. Others disagreed. Notably, many of the cases that were ultimately severed involved pleadings that failed to *allege* connectivity between the putative defendants. Indeed, the joinder pleadings in these cases were not substantially different than the pleadings in the *DirectTv* cases.

Recently, the BitTorrent protocol has assumed a leading position among the peer-to-peer file transfer protocols. Unlike antiquated protocols, an infringer does not connect with a single user to download a file. Instead, an infringer connects with dozens, if not hundreds, of users (collectively referred to as the "swarm") to distribute a file. (*See* Hansmeier Decl. ¶ 10.) This greater interactivity makes the BitTorrent protocol among the most reliable, efficient and robust methods for

14

1  transferring data.  (*Id.* ¶ 7.)    It also makes its users susceptible to being joined with their co-

2  conspirators.

3          Using BitTorrent is substantially more complicated than streaming content from an instant-

4  watch website such as YouTube, or even downloading from Napster.   First, a user must download

5  software that executes the BitTorrent file transfer protocol.   (*Id.* ¶ 9.)   Next, a user must locate a

6  "torrent" file, which contains information about the file being shared and information about the

7  location of the swarm.  (*Id.*)  Users typically visit torrent indexing sites, such as ThePirateBay.org, to

8  search for torrent files.  Then, the user must load the torrent file into the BitTorrent software, which

9  uses information contained in the torrent file to connect to the swarm and begin downloading and

10  distributing the file.  (*Id.* 9.)  Suffice it to say, BitTorrent users must possess an above-average level

11  of computer savvy to successfully acquire illegal content via the BitTorrent protocol.

12

13          (b)     Distinguishing the BitTorrent and FastTrack file transfer protocols.

14          The peer-to-peer ("P2P") protocol underlying the decisions most frequently cited in past

15  copyright infringement misjoinder decisions is the FastTrack protocol.  FastTrack was an early peer-

16  to-peer protocol utilized and made popular by a notorious digital piracy program called Grokster.

17  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*. 545 U.S. 913, 621 (2005); *see also* Jessica

18  Wood, *The Darknet: A Digital Copyright Revolution*, XVI Rich. J.L. & Tech. 14, 21–27 (2010),

19  http://jolt.richmond.edu/v16i4/article14.pdf (discussing evolution of file-sharing protocols from

20  centralized networks to "semi-distributed hybrid systems, such as the FastTrack protocol" to fully-

21  distributed protocols, such as BitTorrent, which "make collaboration [among users] mandatory").

22  Despite its name, FastTrack was slow and inefficient.  Unlike BitTorrent, which breaks up a file into

23  small, easily shareable pieces, FastTrack operated using whole files, one peer to one other peer.  (*Id.*)

24  Unlike BitTorrent users, who can receive many pieces of a given file from hundreds of different

25  users, FastTrack users could only download from one person at a time, meaning that multiple

26  downloads between different users over different times are separate and discrete actions.  Unlike

27

28

1   BitTorrent users, who start uploading as soon as they receive any part of the file, FastTrack users

2   have to wait until fully completing a download before they could begin uploading.   Unlike the

3   BitTorrent protocol, FastTrack severely limited the upload—and thus, distribution—capabilities of a

4   user because it operated using whole files, not pieces.

5           The BitTorrent protocol, on the other hand, involves a much higher degree of interactivity

6   than one-to-one file distribution. (*See* Hansmeier Decl. ¶¶ 4-10.)  First, the protocol breaks a single

7   large file into a series of smaller distributable pieces. (*Id.*)   Then, an initial file-provider (the

8   "seeder") intentionally elects to distribute the pieces to third parties. (*Id.*)  This is called "seeding."

9   Other users ("peers") on the network download a small "torrent" file that contains directions on

10  where to find the seeder as well as an index of the pieces. (*Id.*)   The torrent file is loaded into

11  BitTorrent software, and the software follows the directions in the torrent file to connect to the

12  seeder. (*Id.*)   When peers connect to the seeder, they download random pieces of the file being

13  seeded.  When a piece download is complete, the peers automatically become seeders with respect to

14  the downloaded pieces. (*Id.*)   In other words, each peer in a swarm transforms from a pure

15  downloader (a "leecher" in BitTorrent vernacular) to a peer that is simultaneously downloading and

16  distributing pieces of a file. (*Id.*) By this mechanism, each peer collaborates with others in the swarm

17  to complete the distribution of a file. (*Id.*)  A piece shared by the initial seeder or any later seeders

18  will be distributed amongst the peers countless times over—even if the seeder leaves the swarm.

19  (*Id.*) Users can be connected to one another over the span of weeks simply via the initial download.

20          Unlike FastTrack where interaction is simply between one uploader and one downloader,

21  each new peer in a BitTorrent swarm receives a different piece of data from users who have already

22  downloaded that piece of data. (*Id.*)   In turn, every "node"—or peer user who has a copy of the

23  infringing copyrighted material (or even a portion of a copy)—is also a source of download for that

24  infringing file, potentially both copying and distributing the infringing work simultaneously.  (*Id.*)

The BitTorrent file distribution protocol leads to a rapid viral spreading of a file through willful peer users, all of whom are both *intentionally* uploading and downloading portions of the file simultaneously. (*Id.*)  As more peers *intentionally* join the swarm for the copyrighted Works, the likelihood of a successful download increases. (*Id.*)  Due to the nature of the BitTorrent protocol, any peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible, and even a likely, source of the file for the subsequent peer. (*Id.*)  Indeed, a majority of the prominent adult content torrent-indexing websites mandate that users maintain a minimum upload/download ratio, which means that users who download a file via the BitTorrent protocol are highly likely to serve as seeders in order to assure that they meet ratio requirements. Essentially, because of the nature of the swarm downloads (see *infra* III Facts section), every infringer is simultaneously illegally downloading and distributing copyrighted material through collaboration from many other infringers, through a number of ISPs, in numerous jurisdictions around the country—although this particular lawsuit is isolated to peers who are believed to be located exclusively in California.[2]

### 4.     Plaintiff's Allegations Satisfy the Legal Requirements of Joinder.

Plaintiff has sufficiently pled joinder at this stage of the litigation.  Plaintiff's allegations regarding BitTorrent-based interactions amongst the Doe Defendants and civil conspiracy allegations readily satisfy the first prong of FRCP 20(a)(2). Further, Plaintiff's complaint identifies at least five common questions of law or fact, thus satisfying the second and final prong of FRCP 20(a)(2).  Finally, joinder at this stage of the litigation does not violate the implied requirement against prejudice to the parties.  In similar cases courts have not found misjoinder.

---

[2] This is a key distinction between Plaintiff's lawsuit and other lawsuits naming hundreds or even thousands of Doe defendants who are spread out across the United States, and maybe even across the world.  While they have no barriers in that regard, Plaintiff mindfully controls for that factor.

(a)    <u>Plaintiff has asserted a right to relief against the Doe Defendants jointly, severally or with respect to the same series of transactions and occurrences.</u>

Plaintiff's allegations readily satisfy the first prong of FRCP 20(a).  Specifically, Plaintiff has alleged that each Doe Defendant intentionally entered a torrent swarm specific to the Work at subject in this action and illegally reproduced and distributed pieces of the file amongst the other Doe Defendants in this action.  Plaintiff's allegations are not restricted to the "committing the same illegal act" style allegations that doomed joinder attempts in prior actions.  Here, Plaintiff has actually asserted that Defendants collaborated with one another—both contemporaneously and over time—to maintain swarms that allowed thousands of infringers to illegally obtain copies of Plaintiff's copyrighted work.  Indeed, Plaintiff has asserted a count for civil conspiracy against the Doe Defendants and asked the Court to find Defendants jointly and severally liable to Plaintiff for the damages caused by their tortious activity.  Courts typically do not sever cases involving civil conspiracy allegations.  *See In re High Fructose Corn Syrup Antitrust Litigation,* 293 F.Supp.2d 854 (C.D.Ill. 2003) (Mihm)  ("[D]iligent research by both parties and the Court has uncovered no case in which a Rule 21 severance has been granted in a civil conspiracy case.")  Even though all of the Doe Defendants may not have been physically present in the swarm on the exact same day and time, all of the events involving the Doe Defendants are logically related to the illegal distribution of a single file and consist of the same series of transactions or occurrences because all of the Defendants served to maintain the existence of the swarm by reproducing and distributing pieces amongst the swarm participants. Thus, all Doe Defendants participated in maintaining the interwoven conspiracy.

Based on these allegations, Plaintiff's claims against the Doe Defendants are logically related.  Each defendant is a possible source of Plaintiff's file, and may be responsible for distributing the file to the other defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material.  While the Doe Defendants may be able to rebut these allegations

later, Plaintiff has sufficiently alleged that its claims against the Doe Defendants potentially stem from the same transaction or occurrence, and are logically related.

>    (b)    <u>A question of law or fact common to all Doe Defendants will arise in this action</u>.

Plaintiff's complaint lists multiple common questions of law and fact that will arise in this action. Examples of such common questions include: 1) whether Plaintiff is the exclusive rightsholder in the copyrighted work at issue in this action; 2) whether "copying" has occurred within the meaning of the Copyright Act; 3) whether entering a swarm constitutes a willful act of infringement; 4) whether entering a swarm constitutes civil conspiracy; and 5) the extent to which Plaintiff has been damaged by the Doe Defendant's conduct. Plaintiff has satisfied the second prong of Rule 20(a)(2). *See, e.g.*, *Turner*, 2009 WL 34000987, at *4.

Although each Doe Defendant may later present different factual and substantive legal defenses, that does not defeat, at *this stage of the proceedings*, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B).

>    (c)    <u>Joinder will not result in prejudice to any parties or cause undue delay</u>.

The Court must assess whether joinder would prejudice the parties or result in needless delay. At this stage of the litigation, joinder in a single case of the Doe Defendants who infringed the same copyrighted material promotes judicial efficiency and is beneficial to both Plaintiff and the Doe Defendants. *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.").

At this stage of the litigation the Doe Defendants have been identified solely by IP addresses. In the experience of Plaintiff's counsel, it is almost certain that certain Doe Defendants will be associated with multiple IP addresses. Severance of a Doe Defendant associated with multiple IP addresses would subject the Doe Defendant to multiple suits for difference instances of allegedly infringing activity and, thus, would not be in the interests the Doe Defendants. In addition, the Doe Defendants will be forced to pay higher costs to defend their lawsuit as individuals versus in a collective action. Doe Defendants in this case would likely much rather be one of many being sued for their wrongdoings, as opposed to one-on-one with Plaintiff's attorneys.

Prejudice to Plaintiff is obvious in this matter – Plaintiff will be forced to file separate lawsuits for each Doe Defendant if the Court severs the current suit. Though this does not, in and of itself, justify joinder, it is a factor weighing in favor of not severing the case *sua sponte*. Delay and judicial economy appear to go hand-in-hand. If this action is severed, it will turn into a large number of individual cases for Northern District, cases that will be hard to manage.

While understandably not decisive on their own, these factors favor allowing Plaintiff to proceed with this matter as a single suit.

   (d) <u>Plaintiff's pleadings differ materially from the pleadings in previously severed copyright infringement cases.</u>

Any case over the past fifteen-plus years that involved a joinder issue whereby the plaintiff identified doe defendants through Grokster, Kazaa, Limewire, Gnutella, and/or eDonkey is entirely distinguishable. Such cases have no bearing on this one.[3] The fundamental differences in the ways these protocols operate create fundamentally different legal consequences for its users, specifically

---

[3] These cases are raised for the Court to contrast their circumstances to Plaintiff's. *See, e.g. BMG Music v. Does 1-4,* Case No. 06-1579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. 2006) (The Honorable Judge Patel severed an action with no conspiracy allegations and infringers used classic FastTrack technology (*see* Case No. 06-1579, DKT#6); *IO Group v. Does 1-435,* Case No. 10-4382, 2011 WL 445043 (N.D. Cal. Feb. 3, 2011) (The Honorable Judge Illston severed the doe defendants in a situation where doe defendants were using eDonkey, a protocol similar to FastTrack, to upload and download copyrighted files, and the plaintiff failed to "appropriately allege[]" conspiracy); *Laface Records, LLC v. Does 1-38,* 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008) (ordering severance where doe defendants were alleged to have participated in a FastTrack P2P); *Interscope Records v. Does 1–25,* 2004 U.S. Dist. Lexis 27782 (M.D. Fla. Apr. 1, 2004) (same); *Twentieth Century Fox Film Corp. v. Does 1-12,* No. 04-4862 (N.D. Cal. Nov. 16, 2004) (The Honorable Judge Alsup severs twelve doe defendants where plaintiff failed to allege that doced acted in concert).

issues effecting joinder. FastTrack never had swarms that required the cooperation and concerted action of many sophisticated users.  It only had individuals clicking a download button on their computers.  As such, some argument can be made in favor of severance of the FastTrack cases.  Plaintiff's case, for the reasons described above, does not suffer from the same issues.  The pleading and nature of the infringement software make this a fundamentally different case.

In fact, the referenced cases only make Plaintiff's joinder argument stronger.  The judges in these cases point out that plaintiffs failed to adequately plead any interconnectivity.  For example, in *IO Group v. Does 1-435*, Judge Illston points out:

> Looking closely at the factual allegations regarding the Doe defendants here, it becomes clear there is no basis to find the defendants were involved in the same transaction or series of transactions. Doe 1 is the only defendant alleged to have "distributed" plaintiff's work "Breakers." Proposed FAC, ¶22. There is no allegation that any other Doe defendant distributed, viewed or downloaded "Breakers." The vast majority of Does are alleged to have "distributed" different movies, on different days, at different times. Most of the Doe defendants are alleged to have distributed one of plaintiff's titles, but one is alleged to have distributed two titles. Id., ¶ 32. While there are a few instances where different Doe defendants distributed the same titles, those distributions took place at different times and there are no allegations that those defendants distributed the film to each other or had any connection to each other. 2011 WL 445043 at *4.

Plaintiff's Complaint has no such issues.  There is no similarity between Plaintiff's facts, pleadings, and technology, and its counterpart in *IO Group,* or the other case listed in the above footnote.

      (e)     <u>Courts readily approve joinder in copyright infringement cases</u>.

In an opinion of the United States District Court for the District of Maine, the Court found joinder appropriate in a case with even less connectivity than what was pled in this case.  *Arista Records, LLC v. Does 1-27,* 527 F. Supp. 2d 240 (D. Me. 2008).

In *Arista,* a group of copyright owners and licensees brought a copyright infringement action against 27 unidentified students at the University of Maine. *See* 527 F. Supp. 2d at 241.  In relation to a number of motions to dismiss filed by various doe defendants, the magistrate judge suggested that the court enter an order to show cause why the plaintiffs should not be sanctioned pursuant to

Rule 11, recommending that the plaintiffs demonstrate that they have adequate evidentiary support for their factual contentions regarding joinder. *Id.* at 250-251.

The district court did not act on the recommendation, did not issue the show cause order, but did address the joinder issue in the context of the motions to dismiss. *See id.* at 251. The court stated that it was not troubled with the joinder of the multiple doe defendants in one lawsuit. *Id.* The court based its conclusion upon consideration of the plaintiffs' allegations regarding whether they had asserted that their right to relief related to or arose out of the same transaction or occurrence. The court noted that:

> [T]he Complaint alleges the Doe Defendants (1) engaged in copyright infringement on the internet; (2) uploaded and downloaded copyrighted sound recordings using peer-to-peer networks; and (3) accessed the peer-to-peer network though a common ISP--the same University. The Plaintiffs further assert that twenty-five of the twenty-seven Doe Defendants used the same peer-to-peer network and many infringed the same copyrighted sound recording or different copyrighted sound recordings from the same artist. Finally, they allege that the Doe Defendants have been "active participants in what can only be described as an online music swap meet, unlawfully copying copyrighted works from other users and distributing such works to other users."
> *Id.* (internal citations omitted).

The court then stated that "[a]t the very least, it seems premature to make a final determination that joinder is not permissible under Rule 20." *Id.* As a practical matter, the court noted that, because the court cannot dismiss a case for misjoinder pursuant to Rule 21, the "remedy, then, would be to break up this one lawsuit into individual causes of action, an alternative that does not exactly resonate with practicality." *Id.* at 251. Further, the court went on to state:

> Regarding the magistrate judge's concern about the possibility of abuse of the litigation process by the Plaintiffs, the Court is again more sanguine. It is true, as the magistrate judge observes, that the Plaintiffs have not identified and served the Doe Defendants and that they seek their names through this lawsuit. It is also possible that once identified and served, the Doe Defendants will determine that it is in their best interests to resolve the case. But, the Court begins with the premise that the *Plaintiffs have a statutorily protected interest in their copyrighted material* and that the Doe Defendants, at least by allegation, have deliberately infringed that interest without consent or payment. Under the law, the Plaintiffs are entitled to protect their copyrighted material and it is difficult to discern how else in this unique circumstance the Plaintiffs could act. *Not to act would be to allow those who would take what is not theirs to remain*

> *hidden behind their ISPs and to diminish and even destroy the intrinsic value of the*
> *Plaintiffs' legal interests. Id.* at 252 (emphasis added).

Overall, the District Court of Maine addressed not only Rule 20, but also the same practical arguments presented here.  In light of Plaintiff's allegations, it is too premature to definitively state that the Doe Defendants have been improperly joined in one lawsuit. *See also MCGIP, LLC v. Does 1–18*, 2011 WL 2181620, at *2 (N.D. Cal. June 2, 2011) (Chen).  To hold otherwise would practically prevent copyright holder plaintiffs from being able to protect their material and/or would unnecessarily burden the courts with additional cases.

Additionally, numerous other courts in similar cases, including this District, have declined to find misjoinder.[4]  Overall, there have been many Court orders in the Northern District of California and around the nation that have apparently approved of joinder in similar cases, and supported positions such as Plaintiff's in granting similar applications.  Indeed, the most thorough examination of joinder in the BitTorrent protocol context was seen in a recent ruling from the United States District Court for the District of Columbia. *Call of the Wild Movie, LLC v. Does 1–1,062*, No. 10-455, 2011 WL 996786 (D.D.C. Mar. 22, 2011).  In deciding on the issue of joinder in that case, Judge Howell rejected misjoinder arguments brought by certain *amici* and an Internet Service Provider.  This 42-page opinion is perhaps the most comprehensive and robust examination to date of the issues surrounding joinder in BitTorrent protocol copyright infringement context.

## VII. CONCLUSION

Plaintiff applies for leave to, upon Court authorization, immediately serve FRCP 45 subpoenas to compel listed ISPs in Complaint (DKT#1), or a further discovered relevant subsidiary, to within fifteen (15) days turnover personal identification information it currently possesses for

---

[4] See, e.g., *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1 (D.D.C. 2008) (Kollar-Kotelly, C.) ("While the Court notes that the remedy for improper joinder is severance and not dismissal, … the Court also finds that this inquiry is *premature* with first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct") (emphasis added); *Arista Records LLC v. Does 1-16*, Case. No. 08-765 (GTS/RFT), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009), *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004).

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE EXPEDITED DISCOVERY          No. C-11-03335 JSC

RJN079

each IP address linked to each individual Doe Defendant described in Attachment A to the Complaint (DKT#1 at 13), including each Doe Defendant's:

- True Name;
- Address;
- Telephone Number;
- E-mail Address; and
- Media Access Control Address.

Plaintiff will *only* use this information to prosecute the claims made in its Complaint. Further, Plaintiff understands that the subpoenaed ISPs will be able to notify their subscribers that this information is being sought, and each Doe Defendant will have the opportunity to raise any objections before this Court prior to the return date of the subpoena. Thus, to the extent that any Defendant wishes to object, he or she may do so.

All factors discussed weigh heavily in favor of compelling disclosure of the Doe Defendants' identifying information. Without disclosure of the Doe Defendants' identities, Plaintiff's litigation cannot proceed. To deny this motion would be to give those committing this online, peer-to-peer piracy *carte blanche* to repeat their infringing conduct. Permitting these acts would essentially render the federal copyright laws inapplicable to illegal Internet interconnected "sharing." Plaintiff prays that the Court recognize this, and grant this Application by entering the later filed proposed order, or the Court's own order.

//
//
//
//
//
//

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE EXPEDITED DISCOVERY        No. C-11-03335 JSC

RJN080

1         For the reasons described, Plaintiff respectfully requests that the Court issue order on this

2    Application as soon as practicable.

3

4    Respectfully Submitted,

5
                                        STEELE HANSMEIER, PLLC,
6
     **DATED: July 7, 2011**
7
                                        By:    _____/s/  Brett L. Gibbs, Esq._____
8
9                                       Brett L. Gibbs, Esq. (SBN 251000)
                                        Steele Hansmeier PLLC.
10                                      38 Miller Avenue, #263
                                        Mill Valley, CA 94941
11                                      blgibbs@wefightpiracy.com
                                        *Attorney for Plaintiff*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE EXPEDITED DISCOVERY    No. C-11-03335 JSC

RJN081