ORAL ARGUMENT NOT YET SCHEDULED

No. 12-7135

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

AF HOLDINGS, LLC,
*Plaintiff-Appellee*

*v.*

DOES 1-1,058,
*Defendants*

*v.*

COX COMMUNICATIONS, INC., *ET AL*,
*Non-Party Appellants*

On Appeal from the United States District Court
for the District of Columbia, No. 12-cv-00048 (Howell, J.)

## CORRECTED BRIEF FOR PLAINTIFF-APPELLEE

PAUL A. DUFFY
2 N. LaSalle St., 13th Floor
Chicago, IL 60602
 (312) 952-6136
pduffy@pduffygroup.com

October 11, 2013

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

**A.     Parties And Amici**

Pursuant to D.C. Circuit Rule 28(a)(1), Plaintiff-Appellee makes the following certificate of counsel:

Plaintiff-Appellee AF Holdings appeared in the district court and is a party in this Court.

Defendants Does 1-1,058 have not appeared in the district court and are not parties in this Court.

Non-Party-Appellants Bright House Networks, LLC, Cox Communications, Inc., Verizon Online LLC, SBC Internet Services, LLC d/b/a AT&T Internet Services, and Comcast Cable Communications LLC appeared in the district court and are parties in this Court.

The Electronic Frontier Foundation, American Civil Liberties Union Foundation and American Civil Liberties Union of the Nation's Capital appeared as amici in the district court supporting the Non-Party Appellants and are participating in this appeal as amici supporting the Non-Party Appellants.

**B.     Rulings Under Review**

References to the ruling at issue in this appeal appear in the Appellants' Joint Opening Brief.

**C.      Related Cases.**

Appellee is not aware of any related case currently pending before this Court

or the U.S. District Court for the District of Columbia.


/s/ Paul A. Duffy_____
PAUL A. DUFFY

OCTOBER 11, 2013

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Plaintiff-Appellee provides the following corporate disclosure statement:

Plaintiff-Appellee AF Holdings, LLC does not have any parent companies. No publicly held company has a 10% or greater ownership interest in the entity. As is relevant to this litigation, Plaintiff-Appellee AF Holdings, LLC is a copyright holder. Plaintiff-Appellee was represented by Prenda Law, Inc. during the district court proceedings under review.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED
    CASES .............................................................................. i

CORPORATE DISCLOSURE STATEMENT ...................................... iii

TABLE OF AUTHORITIES* ........................................................ vi

GLOSSARY .............................................................................. viii

INTRODUCTION .......................................................................1

JURISDICTIONAL STATEMENT ....................................................4

STATEMENT OF THE ISSUE .........................................................4

RELEVANT STATUTES ...............................................................4

STATEMENT OF THE FACTS ........................................................4

SUMMARY OF ARGUMENT ..........................................................9

STANDARD OF REVIEW ............................................................10

ARGUMENT ...........................................................................11

I.    THE DISTRICT COURT CORRECTLY HELD THAT THE ISPS FAILED
    TO DEMONSTRATE THAT AF HOLDINGS' SUBPOENAS SUBJECTED
    THEM TO AN UNDUE BURDEN ...................................................11

    A.    The ISPs Failed To Present Any Evidence Of Any
        Burden Associated With Complying With AF Holdings'
        Subpoenas....................................................................11

    B.    The ISPs' Arguments Regarding Personal Jurisdiction
        and Venue Lack Merit.....................................................14

    C.    The ISPs' Arguments Regarding Joinder Lack Merit........................17

II.    THE ISPS' CHARACTER ATTACKS ARE UNAVAILING .....................20

CONCLUSION .........................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES[1]*

## CASES

*Anger v. Revco Drug Co.*,
    791 F.2d 956 (D.C. Cir. 1986)........................................................................15

*Burlington Ins. Co. v. Okie Dokie, Inc.*,
    368 F. Supp. 2d 83 (D.D.C. 2005)...............................................................1

*\*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332
    (D.D.C. 2011) ............................................................................. 7, 15, 16, 19

*Ellis v. Fortune Seas Ltd.*,
    175 F.R.D. 308 (S.D. Ind. 1997) ...............................................................17

*Food Lion, Inc. v. United Food & Comm'l Working Int'l Union*,
    103 F.3d 1007 (D.C. Cir. 1997)....................................................................1

*Hagen v. U-Haul Co. of Tenn.*,
    613 F. Supp. 2d 986 (W.D. Tenn. 2009) ...................................................14

*Hansen v. Neumueller GmbH*,
    163 F.R.D. 471 (D. Del. 1995) ..................................................................14

*In re sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997)...................................................................10

*Irons v. Karceski*,
    74 F.3d 1262 (D.C. Cir. 1995)...................................................................11

*Mosley v. General Motors Corp.*,
    497 F.2d 1330 (8th Cir. 1974) ...................................................................18

*Northrop Corp. v. McDonnell Douglas Corp.*,
    751 F.2d 395 (D.C. Cir. 1984)...................................................................11

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978).............................................................................1, 13

---

*Authorities upon which we chiefly rely are marked with asterisks.

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966)........................................................................18

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ............................................................................14

Fed. R. Civ. P. 26 ............................................................................1

*Fed. R. Civ. P. 45 ......................................................................1, 11

## GLOSSARY

**IP address**          Internet Protocol address

**ISP**                 Internet Service Provider

## INTRODUCTION

The Federal Rules of Civil Procedure provide a broad scope for discovery in civil actions, permitting a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," which matter expressly includes "the identity and location of person who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). For purposes of discovery, relevance is liberally construed. *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D.D.C. 2005) (citing Rule 26(b)(1)); *Food Lion, Inc. v. United Food & Comm'l Working Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). The broad scope of discovery is "designed to help define and clarify the issues" in litigation and is fundamental to the "notice-pleading system established by the Rules." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-352 (1978).

Discovery obtained from a nonparty pursuant to Rule 45 has "the same scope as provided in Rule 26(b), thus promoting uniformity." Advisory Committee Note to 1946 Amendment to Rule 45(d). Accordingly, nonparties occupy a crucial role in the notice-pleading system established by the Federal Rules. *See id.* As is relevant here, the Federal Rules provide nonparties protection from subpoenas that impose an "undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv).

The Nonparty-Appellant Internet Service Providers seek to avoid compliance with Plaintiff's subpoenas on the grounds that complying with the

subpoenas would impose an undue burden. Yet, the ISPs' approach to undue

burden is unprecedented. In challenging AF Holdings' subpoenas, the ISPs did not

offer any evidence of a logistical, financial or temporal burden associated with

providing the information sought in the subpoenas. When offered a second chance

to do so by the district court, the ISPs still failed to offer evidence.

Instead, the ISPs compiled the information sought in Plaintiff's subpoenas,

reviewed it themselves, and concluded on the basis of that review that: (1) their

subscribers might be innocent; and (2) their subscribers—if they chose to do so—

could challenge personal jurisdiction or joinder. Based on the conclusions they

reached during their unilateral review of the information in their sole possession,

the ISPs adopted the position that "any burden put upon a third-party to identify

Defendants is an *undue* burden."

The district court (Howell, J.) correctly ruled that the non-party ISPs'

arguments on the merits were not only premature, but also inappropriate. Further,

the district court correctly held that AF Holdings' subpoenas did not impose an

undue burden on the ISPs, and, consequently, the ISPs must produce the

information requested by AF Holdings. The question of whether to raise or waive a

personal jurisdiction or venue defense or challenge joinder is for a Defendant to

make, not his or her ISP. Further, and most importantly, definitive conclusions

regarding personal jurisdiction, venue and joinder cannot possibly be properly

addressed before Defendants have been identified. Thus, the district court correctly held that these questions are premature at this stage of the litigation.

For all of these reasons, this Court should affirm the district court's order requiring the ISPs to comply with Plaintiff's subpoenas. The ISPs are entitled to protection from genuine undue burden, but they cannot refuse to comply with subpoenas for reasons that have no basis in the Federal Rules or this Court's precedent.

## JURISDICTIONAL STATEMENT

A description of the district court's jurisdiction and this Court's jurisdiction appears in the Appellants' Joint Opening Brief.

## STATEMENT OF THE ISSUE

Whether the district court correctly held that the ISPs failed to demonstrate that Plaintiff's subpoenas subjected them to an undue burden.

## RELEVANT STATUTES

The relevant statutes and rules are in an addendum to this brief.

## STATEMENT OF THE FACTS

This appeal arises from the efforts of several nonparty Internet Service Providers ("ISPs") to intercede with and derail a lawsuit against individuals whom AF Holdings alleges committed illegal acts: downloading, uploading and distributing a copyright-protected work among themselves and possibly thousands of others. AF Holdings had good reason to believe that individuals using Internet Protocol ("IP") addresses attached to the Complaint conducted that activity, because computer technicians physically observed those IP addresses collaborating in the illegal infringement of the copyright-protected work.

The ISPs introduced themselves into this action by refusing to comply with subpoenas issued to them pursuant to an order that the district court entered allowing the subpoenas to issue. In doing so, they strayed far beyond the grounds

provided in the Federal Rules of Civil Procedure for a nonparty subpoena recipient to object to a subpoena:  privilege and undue burden.  They chose instead to raise substantive defenses that could be raised (or waived) by individuals, if any had been named in this lawsuit: lack of standing, lack of personal jurisdiction, improper joinder and other arguments as set forth below.  But despite their endless extraneous *ad hominem* assaults leveled against AF Holdings, despite a host of meaningless arguments that they advance as if they were parties to this lawsuit, and despite the fact that their sole connection to this case is their exclusive possession of information essential to the identification of Internet infringers who have violated federal law, at the end of the day, all that these ISPs really want is one thing. In a request made with an air of moral superiority, they want this Court to aid them in blocking the identification of those Internet subscribers who used their subscriptions to commit copyright infringement. They solicit this Court's help in thwarting the Plaintiff's effort to vindicate its legal rights by barring its only means of determining the identity of those who violated them.

Plaintiff-Appellee ("AF Holdings") filed its complaint in this action on January 11, 2012.  (App. 1-33.) In it, AF Holdings alleged infringement of a copyrighted work that was unlawfully converted from the original DVD format into a downloadable video file and then sharing the file with others through the use of a "BitTorrent protocol" or a "torrent".  (App. 1, ¶3.)  AF Holdings alleged that

the Defendants (Does 1-1,058) unlawfully obtained and distributed for free the copyrighted work; each time a Defendant unlawfully distributed a free copy of AF Holdings' copyrighted work to others over the Internet, each person who copied the video could then distribute the unlawful copy to others without any significant degradation in sound and picture quality. (App. 1, ¶¶3-4.) AF Holdings alleged that, as a consequence, a Defendant's distribution of even one unlawful copy of the copyrighted work could result in the nearly instantaneous worldwide distribution of that copy to a limitless number of people.  (App. 3-4, ¶¶8-9.)

The identities of the Doe Defendants were, and remain, unknown to AF Holdings. (App. 4, ¶11.)  Each Defendant was identified only by the IP address assigned to that defendant by his or her internet service provider on the date and at the time at which the infringing activity of each Defendant was observed. (*Id.*) The IP address of each Defendant was identified, at the date and time at which his or her infringing activity was observed to have occurred, were listed at Exhibit A to AF Holdings' complaint.  (App. 4, ¶11; App. 8-31.)  The only means possible for AF Holdings to determine who infringed its copyright in that fashion is to obtain the identifying information for the IP address' owner.  (App. 4, ¶11.) Contrary to the underlying premise of the ISPs' argument, a plaintiff is not required to "prove" an ISP subscriber's guilt before learning the subscriber's identity.  *See Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332,

350-51 (D.D.C. 2011) (rejecting an Internet Service Provider's argument that plaintiff must prove its case before ascertaining the Doe Defendants' basic identifying information).

In order to determine the identities of the Doe Defendants, AF Holdings filed a Motion For Order For Leave To Take Discovery Prior To Rule 26(f) Conference (App. 34), which the Court granted on January 30, 2012. (App. 58.) As authorized by that Order, AF Holdings served subpoenas upon several internet service providers ("ISPs") seeking the identities of the Defendants.  Several ISPs objected to the production of that information upon the grounds that they now assert in their Opening Brief.  AF Holdings filed a motion to compel one of the ISPs, Comcast Cable Communications, LLC ("Comcast"), to respond to the subpoena served upon it. (*See* Docket  printout in Appellant's  Appendix, ECF #7.) A group of four other ISPs filed a motion to quash subpoenas served upon them on March 2, 2012. (*Id.* at ECF #8.)

The district court subsequently held an evidentiary hearing on April 27, 2012. (*See* App. 114.) Among other things, AF Holdings introduced the expert testimony of an individual in connection with matters relating to the BitTorrent file transfer protocol, geolocation technology and bandwidth allocation and other matters relevant to AF Holdings' claims. The nonparty ISPs were given the opportunity to present evidence and argument as to the existence and extent of any

- 7 -

burden upon them of responding to the subpoenas. They failed to produce such evidence, and instead focused on arguing about the merits of the underlying lawsuit.  The district court noted the oddity of the nonparty ISPs, whose only connection to the litigation was their receipt of a federal court-authorized subpoena, stepping  into the shoes of their subscribers and determining, on their own, whether to respond to a subpoena based upon its analysis of the merits of the underlying case:

> Court: "I have to say that this has been a very interesting argument to read, as non-parties, that all these ISPs are scrutinizing the merits of an underlying case to which they're not a party to evaluate whether or not it is sufficiently meritorious for the ISPs, as third parties, to produce information. . . . And the effort to evaluate the merits of all of those cases to make a determination of whether or not the underlying case is meritorious in terms of whether or not it's an undue burden for you to comply with a subpoena is a pretty amazing argument for the ISPs to make . . . that ISP's are going to review the merits of the underlying cases before deciding whether or not to comply with subpoenas.

(ECF #52; Motion to Quash Hearing Transcript at 95-96, Apr. 27, 2012.)

The district court on August 6, 2012 entered an Order granting Plaintiff's Motion to Compel Comcast to respond to the subpoena; and denying the other nonparty ISPs' Motion to Quash the Subpoenas served upon them. (App. 114.) The nonparty ISPs have appealed that decision to this Court.

## SUMMARY OF ARGUMENT

The district court correctly held that the ISPs failed to demonstrate that AF Holdings' subpoenas subjected them to an undue burden. The ISPs' contrary arguments are foreclosed by the Federal Rules of Civil Procedure and by this Court's precedent.

This Court has held that a nonparty seeking to avoid compliance with a subpoena on the grounds of oppressiveness bears a heavy burden in making this showing. Despite being granted multiple opportunities to do so, the ISPs failed to present any evidence of any burden associated with complying with Plaintiff's subpoenas. The ISPs are not entitled to avoid complying with Plaintiff's subpoenas on the grounds of undue burden without actually demonstrating through evidence that such a burden exists. *See infra* Part I.A.

Contrary to the ISPs' assertion that the district court "ignored" the legal issues of personal jurisdiction and venue, the district court thoroughly analyzed these issues, devoting over a quarter of its extensive Memorandum Opinion to addressing them.  (App. 133-140; App. 141-151.)  The district court correctly concluded that challenges to personal jurisdiction and venue are premature at this stage of the litigation. The ISPs' contention that a district court must perform a "threshold analysis" is contrary to the Federal Rules and this Court's precedent.

The district court also correctly concluded that AF Holdings has satisfied the requirements of permissive joinder at this stage of its case. The ISPs assert that copyright holder plaintiffs should be required to show that joinder is proper before seeking discovery, but fail to acknowledge that the district court performed a thorough analysis of the issue. The district court heard expert testimony on the nature of the BitTorrent file distribution protocol, considered the allegations in AF Holdings' complaint, and analyzed each of the elements of permissive joinder in its Memorandum Opinion. After weighing all of these factors, the district held that the elements of permissive joinder are presently satisfied. *See infra* Part I.C.

The ISPs' arguments regarding the potential "innocence" of their subscribers, "forum shopping," the so-called "waves of doe pornography cases" and their efforts to paint adult content copyright holders as "unsavory" are all unrelated to a proper undue burden analysis. *See infra* Part II.

## STANDARD OF REVIEW

The Court reviews a district court's ruling on a subpoena for the production of documentary evidence only for arbitrariness or abuse of discretion. *In re sealed Case,* 121 F.3d 729, 740 (D.C. Cir. 1997).

# ARGUMENT

## I.   THE DISTRICT COURT CORRECTLY HELD THAT THE ISPS FAILED TO DEMONSTRATE THAT AF HOLDINGS' SUBPOENAS SUBJECTED THEM TO AN UNDUE BURDEN

### A.   The ISPs Failed To Present Any Evidence Of Any Burden Associated With Complying With AF Holdings' Subpoenas

The principal issue before this Court is whether the ISPs made a sufficient showing that AF Holdings' subpoenas subjected them to an undue burden. In challenging AF Holdings' subpoenas, the ISPs relied on Federal Rule of Civil Procedure 45(c)(3)(A)(iv), which requires a court to quash a subpoena if it subjects a third-party to an undue burden. The person seeking relief from subpoena compliance bears the burden of demonstrating that a subpoena should be modified or quashed. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984). A party moving to quash on the grounds of undue burden "bears a heavy burden of proof." *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995). The phrase "undue burden" is not an incantation that provides automatic relief from a subpoena; a claim of undue burden must be substantiated through evidence. *Id.*

### 1.   No evidence of burden was presented to the district court

The ISPs failed to offer any detailed explanation, affidavit, or other evidence to show that complying with discovery would cause them to suffer an undue burden. In their motion papers, the ISPs supplied declarations from five

individuals, but as the district court noted, "only two of those declarations

mentioned – those from the representatives of Cox Communications and Verizon –

mention the administrative burden, and that is essentially all they do." (App. 130.)

These two declarations merely stated "in conclusory fashion that subpoenas

associated with similar copyright infringement cases 'have imposed (and continue

to impose) a substantial administrative burden …." (*Id*.)  The declarations did not

provide any detail of the "cost of complying with [AF Holdings'] subpoenas, the

time associated with producing the requested information, or the procedure by with

the information is obtained and released."  (App. 131.)  The declarations from the

ISPs did not mention any burden whatsoever associated with complying with AF

Holdings' subpoenas.  (*Id.*)

      The district court offered the ISPs a renewed opportunity to present evidence

of undue burden by inviting the ISPs to "present witnesses at the motions hearing."

(App.  131.)  Instead of offering evidence of undue burden, the ISPs presented

testimony from a staff technologist of the amicus curiae Electronic Frontier

Foundation. Thus, the "only evidence before the [district court] to establish the

burden incurred by the Movant ISPs]" by AF Holdings' subpoenas were the

"declarations originally supplied" in support of the papers.  (*Id.*)  These papers

contained no evidence of burden. In fact, these papers contained analyses of the

information AF Holdings was seeking. In other words, as the ISPs were

complaining to the district court that AF Holdings subpoenas imposed an undue

burden, they were at the same time using the information sought in the subpoenas

to challenge AF Holdings' position.   (*See generally* App. 63-105.)

## 2.    The ISPs' argument that "any burden" is an undue burden is unavailing

The ISPs apparently concede that they failed to present evidence of a burden

associated with complying with AF Holdings' subpoenas; they now argue that

"any burden" imposed on them is an "undue burden." This is not a tenable

position. In support of their position, the ISPs rely heavily on *Oppenheimer Fund,*

*Inc. v. Sanders*, 437 U.S. 340 (1978). Yet, *Oppenheimer* does not stand for the

proposition that a nonparty is entitled to review the merits of an action before

deciding whether to comply with a subpoena. *See id.* Instead, in *Oppenheimer*, the

Court rejected a class representative plaintiff's attempt to shift onto the defendant

the costs of compiling a list of class members. *See id.* The plaintiff argued that the

defendant should bear the costs of compiling the list because information about

potential class members could be relevant to the plaintiff's claims and defenses.

*See id.* at 352. The Court held that the plaintiff did not make a sufficient showing

of relevance. *See id*. In this case, the ISPs cannot plausibly argue that the

Defendants' identities are not relevant. As the district court observed, "[AF

Holdings] must obtain information necessary to identify those allegedly infringing

- 13 -

its copyright in order to proceed with a lawsuit…." (App. 129.) The ISPs inability

to demonstrate otherwise leaves their reliance on *Oppenheimer* unavailing.

### B. The ISPs' Arguments Regarding Personal Jurisdiction and Venue Lack Merit

The ISPs assert that the district court should have raised issues of personal

jurisdiction and venue *sua sponte*. There are several problems with the ISPs'

assertion.

*First,* the district court exhaustively analyzed personal jurisdiction and

venue issues in its Memorandum Opinion. (App. 141-151.) The ISPs' suggestion

that the district court "ignored" these matters is entirely disingenuous.

*Second*, the ISPs' suggestion that the district courts can raise questions of

personal jurisdiction and venue *sua sponte* is contrary to the Federal Rules and this

Court's precedent. Federal Rule of Civil Procedure 8 requires a complaint to

include: (1) a short and plain statement of the grounds for the court's jurisdiction;

(2) a short and plain statement of the pleader's claim; and (3) a demand for the

relief sought. Fed. R. Civ. P. 8. It does not require a plaintiff to plead, much less

prove, personal jurisdiction or venue at the pleading stage. *Hagen v. U-Haul Co. of*

*Tenn.*, 613 F. Supp. 2d 986, 1001 (W.D. Tenn. 2009); *Hansen v. Neumueller*

*GmbH*, 163 F.R.D. 471, 474-75 (D. Del. 1995) (noting Rule 8 does not require

plaintiffs to state grounds on which personal jurisdiction is alleged and that the

plaintiff's pleading burden changes once the defendant challenges personal

- 14 -

jurisdiction). Thus, the Federal Rules do not contemplate that district courts would

perform a personal jurisdiction/venue screening function prior to the time that a

defendant is named and served. This Court's precedent does not either.

This Court has admonished that "the Federal Rules of Civil Procedure

indicate that personal jurisdiction is a matter to be raised by motion or responsive

pleading, not by the court *sua sponte*. Therefore, before the complaint has been

served and a response received, the court is not positioned to determine

conclusively whether personal jurisdiction exists." *Anger v. Revco Drug Co.*, 791

F.2d 956, 958 (D.C. Cir. 1986) (per curiam). Further, as the district court noted,

"The D.C. Circuit concurred with the Third Circuit's conclusion that it is

'inappropriate for the trial court to dispose of the case *sua sponte* on an objection

to the complaint which would be waived if not raised by the defendant(s) in a

timely manner.'" (App. 145.) Yet, this is exactly what the ISPs are asking the

district court to do here.

*Third*, at this stage of the litigation, "the [district court] and the parties are in

no position yet to evaluate" personal jurisdiction or venue defenses. *Call of the

Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 348 (D.D.C. 2011).

Neither the district court nor the parties can have a meaningful discussion about

personal jurisdiction or venue prior to at least learning the Defendants' identities.

The ISPs urged the district court to adopt geolocation as a proxy for personal jurisdiction and venue. After hearing expert testimony on the technical aspects of geolocation and the BitTorrent file distribution protocol, the district court declined to do so. First, as the ISPs' expert witness has conceded, geolocation tools "are not completely accurate" and thus do "not resolve the question of whether personal jurisdiction would be proper." *Id.* Second, "the nature of the BitTorrent technology enables every user of the file-sharing protocol to access copyrighted material from other peers, who may be located in multiple jurisdictions around the country, including this one." *Id.* (citation omitted). Finally, until a defendant is identified and named, "the [district court] has limited information to assess whether any putative defendant has a viable defense of lack of personal jurisdiction or to evaluate possible alternate bases to establish jurisdiction." *Id.* For all of these reasons, until the putative defendants have been named, a threshold personal jurisdiction and venue analysis is impossible to perform.

*Fourth*, it would be inappropriate for a district court, AF Holdings or the ISPs to usurp the rights of the Defendants to make strategic decision litigations decisions, including the decision of whether to raise or waive a personal jurisdiction or venue defense. Assuming for the sake of argument that there are Defendants who could ultimately raise a good-faith personal jurisdiction or venue

defense, it does not necessarily follow that any such Defendant would choose to do

so. A Defendant who:

> Receives a complaint and summons from a court in
> another jurisdiction and believes she is not subject to that
> court's jurisdiction … has several alternatives available
> to her. First, she may ignore the complaint and summons
> and then, if a default judgment is issued against her, may
> challenge the issuing court's jurisdiction in a collateral
> proceeding (presumably closer to home or other assets)
> when the plaintiff seeks to enforce the judgment. Second,
> she may voluntarily waive any lack of personal
> jurisdiction and submit to the district court's jurisdiction.
> Third, she may appear in the distant court for the limited
> purpose of deciding the jurisdictional issue.

*Ellis v. Fortune Seas Ltd.*, 175 F.R.D. 308, 311 (S.D. Ind. 1997). Defendants might

elect to waive personal jurisdiction and venue defenses in order to, for example,

secure the benefits of a collective defense. In fact, in its Memorandum Opinion, the

district court noted examples of putative Defendants waiving potential personal

jurisdiction and venue defenses. (App. 145.)

### C.     The ISPs' Arguments Regarding Joinder Lack Merit

The ISPs assert that plaintiffs in multi-doe lawsuits should be required to

show that joinder is proper as a prerequisite for pursuing discovery from ISPs.

What the ISPs ignore is that the district court the district court exhaustively

analyzed joinder issues in its Memorandum Opinion and found that the

requirements of permissive joinder are satisfied at this juncture of the case. The

- 17 -

ISPs' assert that joinder is inappropriate here because other district courts[2] have severed BitTorrent-based copyright infringement cases. This argument is without merit for several reasons.

*First,* the notion that some other courts may have decided the joinder issue differently is not, by itself, a reason to overturn a joinder ruling. Joinder is a fact-intensive inquiry, and "the scope of the civil action is made a matter for the discretion of the district court, and a determination on the question of joinder of parties will be reversed on appeal only upon a showing of abuse of that discretion." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). It is difficult to show that a district court abused its discretion by entertaining a broad scope of action at the outset of a case when the Supreme Court has instructed that the purpose of permissive joinder is to provide for the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

*Second,* notwithstanding the efforts of the ISPs to lump all copyright infringement cases together, each case presents unique facts, circumstances, pleadings and procedural developments. For example, in several of the decisions

---

[2] The ISPs describe these decisions as being part of a "growing majority", but they do not offer any statistics to substantiate this description.

cited by the ISPs a severance order was issued only after one of the putative

defendants challenged joinder. Here, the challenge to joinder arises from a third-

party company with no interest at stake in the underlying litigation. A district court

would be justified in treating the ISPs' joinder challenge differently than that of an

actual party. Further, the pleadings in this case are different than the pleadings in

other cases. In several of the decisions cited by the ISPs the courts were unable to

find allegations sufficient to support the "same transaction or occurrence" prong of

permissive joinder. In contrast, in this case the district court found that plaintiff's

pleadings were sufficient in this regard.  (App. 135.)

Third, the district court's analysis of joinder was more exhaustive and

persuasive than the handful of severance decisions cited by the ISPs. In contrast to

the courts issuing the decisions cited by the ISPs, for example, the district court

heard testimony from the ISPs' expert witness on the nature of BitTorrent

technology as it pertains to joinder. (See App. 137.)   Further, the district court has

previously addressed similar challenges from the amicus curiae Electronic Frontier

Foundation and other Internet Service Providers regarding subscriber identification

subpoenas. See Call of the Wild Movie, 770 F. Supp. 2d at 338. As a result of its

diligence in learning about the BitTorrent file distribution protocol and experience

in addressing challenges to joinder in this context, the district court is arguably

more knowledgeable about the nexus of the BitTorrent file distribution protocol

- 19 -

and the requirements of permissive joinder than any other district court nationwide. As a result, the fact that some other courts may have ruled differently is not a basis for concluding that the district court abused its discretion.

## II.   The ISPs' Character Attacks are Unavailing

The ISPs go to great lengths to cast AF Holdings, its attorneys and adult content copyright holder plaintiffs in general as unsavory. They even go so far as to suggest that this Court base its ruling on the policy outcome of whether it will encourage more copyright holders to protect their rights. Finally, they describe a parade of horribles associated with copyright holder plaintiffs learning the identities of those who have infringed on their works. The horribles paraded by the ISPs are entirely unrelated to the issues before the Court. Indeed, each of these is issues are fully addressable by district courts in the exercise of their inherent powers.

The ISPs suggest that "multi-doe" lawsuits might lead to confusion on the part of their subscribers. The district court addressed this concern by ordering AF Holdings to issue a court-drafted notice to the ISPs' subscribers. The notice included information about the case, information about the legal rights of the subscribers and information about obtaining legal counsel in the District of Columbia.

The ISPs suggest that copyright infringement suits relating to pornography are particularly susceptible to coercive settlement tactics. Although this case has not been allowed to proceed to the phase where settlements would be possible, other district courts have addressed these concerns. For example, a district court in the District of Minnesota ordered the plaintiff's counsel to transcribe and submit under seal every one of its settlement communication with every doe defendant. *See* Order, No. 0:12-cv-1445 (D. Minn. Aug. 3, 2012).

The ISPs suggest that copyright holder plaintiffs never name and serve defendants or have their cases tested on the merits—and, thus, it is difficult to determine whether the lawsuits could ever be tried successfully in court. In light of these concerns, a district court in the Eastern District of Pennsylvania ordered bellwether trials in BitTorrent copyright infringement lawsuits. *See* Order for Expedited Proceedings Leading to Bellwether Trial, No. 5:12-cv-2088 (E.D. Pa. Oct. 3, 2012). The results of the trials were judgments on the merits against all of the non-settling defendants.

The theme that emerges when evaluating the ISPs' concerns is that each of the concerns is fully capable of being addressed—and actually has been addressed—by district courts that have shared the ISPs' concerns. This is even true for the ISPs' concerns regarding personal jurisdiction and joinder. Thus, if this Court shares the ISPs' concerns, the appropriate course of action is not to deny AF

- 21 -

Holdings the right to discover the Defendants' identities, but to affirm the district court's order and allow the district court to exercise its inherent powers to ensure that principles of fairness and professionalism are upheld.

## CONCLUSION

The district court's order should be affirmed.


Respectfully submitted,


/s/ Paul A. Duffy
PAUL A. DUFFY
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602
(312) 952-6136
pduffy@pduffygroup.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7) and D.C. Circuit Rule 32(a)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.      Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 5,672 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2007 is 14 point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


/s/ Paul A. Duffy                              
PAUL A. DUFFY

OCTOBER 11, 2013

- 23 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of October, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF System. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Paul A. Duffy
PAUL A. DUFFY

**STATUTORY ADDENDUM**

**Federal Rule of Civil Procedure 8. General Rules of Pleading**

(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:

>   (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

>   (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

>   (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

**Federal Rule of Civil Procedure 26. Duty to Disclose; General Provisions Governing Discovery**

(b) DISCOVERY SCOPE AND LIMITS.

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense— including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

(2) *Limitations on Frequency and Extent.*

(A) *When Permitted.* By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

(B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

A2

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

(3) *Trial Preparation: Materials.*

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

(C) *Previous Statement.* Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

(i) a written statement that the person has signed or otherwise adopted or approved; or

A3

(ii) a contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim the person's oral statement.

(4) *Trial Preparation: Experts.*

   (A) *Deposition of an Expert Who May Testify.* A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

   (B) *Trial-Preparation Protection for Draft Reports or Disclosures.* Rules 26(b)(3)(A) and(B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

   (C) *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

      (i) relate to compensation for the expert's study or testimony;

      (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

      (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

   (D) *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

      (i) as provided in Rule 35(b); or

A4

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(E) *Payment.* Unless manifest injustice would result, the court must require that the party seeking discovery:

(i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

(ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

(5) *Claiming Privilege or Protecting Trial-Preparation Materials.*

(A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(B) *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

A5

**Federal Rule of Civil Procedure 45. Subpoena**

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

>   (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

>   (2) *Command to Produce Materials or Permit Inspection.*

>>   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

>>   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

>>>   (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

>>>   (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

>   (3) *Quashing or Modifying a Subpoena.*

>>   (A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

A6

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

A7